Conformed Copy

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

1  Jordan L. Lurie (SBN 130013)
   JLurie@initiativelegal.com
2  Andrew J. Sokolowski (SBN 226685)
   ASokolowski@initiativelegal.com
3  Tarek H. Zohdy (SBN 247775)
   TZohdy@initiativelegal.com
4  Initiative Legal Group APC
   1800 Century Park East, 2nd Floor
5  Los Angeles, California 90067
   Telephone:  (310) 556-5637
6  Facsimile:   (310) 861-9051

7  Attorneys for Plaintiff Omar Vargas

8              UNITED STATES DISTRICT COURT

9      CENTRAL DISTRICT OF CALIFORNIA—WESTERN DIVISION

10

11  OMAR VARGAS, individually, and        Case No.:
    on behalf of a class of similarly
12  situated individuals,                 **CLASS ACTION COMPLAINT FOR:**

13                Plaintiff,              (1) Violations of California Consumer
                                              Legal Remedies Act
14        v.                             (2) Violations of Unfair Competition
                                              Law
15  FORD MOTOR COMPANY,                  (3) Breach of Implied Warranty pursuant
                                              to Song-Beverly Consumer Warranty
16                Defendants.                 Act
                                         (4) Breach of Express Warranty under
17                                            Cal. Com. Code § 2313

18                                       **DEMAND FOR JURY TRIAL**

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT

# INTRODUCTION

1.     Plaintiff Omar Vargas ("Plaintiff") brings this action for himself and on behalf all persons in the United States who purchased or leased any 2011 through 2013 Ford Fiesta and/or 2012 through 2013 Ford Focus vehicles equipped with Ford's dual clutch transmission ("Dual Clutch Transmission" or "PowerShift Transmission") (collectively, "Class Vehicles") designed manufactured, marketed, distributed, sold, warranted and serviced by Ford Motor Company ("Ford" or "Defendant").

2.     Ford designed and marketed its "PowerShift Transmission" as a more advanced and fuel efficient alternative to a traditional manual or automatic transmission and offered it as the sole "Automatic" option in the Class Vehicles.

3.     The PowerShift Transmission is a $1,095.00 option for the Class Vehicles.

4.     Traditional manual transmissions use a driver-controlled clutch.  By pressing and releasing a foot pedal, the driver engages and disengages the engine from the transmission, allowing the vehicle to travel smoothly while the driver manually changes gears.

5.     In contrast, typical automatic transmissions free the driver from operating the clutch through the use of a fluid-filled device called a torque converter.  The torque converter substitutes for the manual transmission's clutch, transmitting power from the engine to the transmission through a fluid medium.

6.     While typical automatic transmissions offer increased convenience, they are generally less fuel efficient and slower-shifting than their manual counterparts.  This is because the torque converter transfers power less efficiently than a clutch.  As a result, Ford marketed and sold its Powershift Transmission as a best of both worlds alternative offering a manual transmission's fuel economy with an automatic transmission's ease of operation and shift quality.

CLASS ACTION COMPLAINT

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

7.     Ford's PowerShift Transmission, while sometimes referred to as an automatic, is actually a set of computerized manual transmissions.  It lacks a torque converter, instead using two "dry" clutches to directly engage and disengage the engine with and from the transmission.  Whereas similar "automated manual" transmissions on the market use "wet" clutches bathed in oil, Ford's PowerShift Transmission clutches lack the oil pumps and other components of a wet clutch system, and instead operate "dry."

8.     Ford designed the Class Vehicles' computerized "automated manual" transmissions in an effort to meet heightened governmental and consumer expectations for fuel economy, performance and efficiency. According to Ford's own press release dated March 10, 2010, "PowerShift with dry-clutch facings and new energy-saving electromechanical actuation for clutches and gear shifts saves weight, improves efficiency, increases smoothness, adds durability and is sealed with low-friction gear lubricant for the life of the vehicle.  This transmission requires no regular maintenance."

9.     Theoretically, an automated manual transmission should have the convenience of an automatic transmission without sacrificing the fuel efficiency and shift speed of a manually shifted vehicle.  In practice, however, Ford's PowerShift Transmission is plagued by numerous problems and safety concerns.

10.     The PowerShift Transmission contains one or more design and/or manufacturing defects that cause, among other problems, transmission slips, bucking, kicking, jerking, harsh engagement, premature internal wear, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle (the "Transmission Defect").

11.     The Transmission Defect causes unsafe conditions, including, but not limited to, Class Vehicles suddenly lurching forward, delayed acceleration, and sudden loss of forward propulsion.  These conditions present a safety hazard because they severely affect the driver's ability to control the car's speed,

1    acceleration, and deceleration.  For example, these conditions make it difficult to
2    safely merge into traffic.  Even more troubling, the Transmission Defect can
3    cause the vehicle to fail to downshift and decelerate when the brakes are
4    depressed.  As a result, Plaintiff and Class Members have experienced their cars
5    lurching forward into intersections at red lights due to the failure of their braking
6    efforts to stop the car.[1]

7        12.    On information and belief, the Transmission Defect also causes
8    premature wear to the Dual Clutch Transmission's clutch plates and other
9    components, which results in premature transmission failure and requires
10   expensive repairs, including transmission replacement.

11       13.    Beginning as early as 2010, Defendant knew or should have known
12   that the Class Vehicles and the PowerShift Transmission contain one or more
13   design and/or manufacturing defects that negatively affect the drivability of the
14   Class Vehicles and cause safety hazards.

15       14.    The Ford Fiesta and Ford Focus have the same or substantially
16   identical optional PowerShift Transmission, and the Transmission Defect is the
17   same for both vehicles.

18       15.    Before offering the vehicle for sale in the United States, Ford
19   offered the same vehicles, equipped with a similar dual-clutch transmission, in
20   Europe and Australia. Although the United States version utilizes dry-clutches as
21   opposed to the European and Australian version's wet-clutches, Ford
22   acknowledged that the transmission offered for sale in the United States is

23

24   _____
     [1] See, for example, this 2011 Fiesta owner's complaint to the National
     Highway Traffic Safety Administration ("NHTSA"):  THE TRANSMISSION
25   SEEMS TO FAIL TO GO INTO NEUTRAL WHEN BRAKES ARE APPLIED.
     CAR STARTED WITH TRANSMISSION ISSUES INITIALLY WITH THE
     CAR TRYING TO FIGHT THE BRAKES A FEW TIMES JUST BEFORE
26   STOPPING.  AT TIMES THE CAR SIGNIFICANTLY OVERCOMES THE
     BRAKES.  ON ONE INSTANCE THE CAR FAILED TO STOP AT RED
27   LIGHT AND MANAGED TO CREEP INTO THE INTERSECTION BEFORE
     STOPPING.  (Safecar.gov, *Search for Complaints* (August 6, 2012), http://www-
28   odi.nhtsa.dot.gov/complaints/).

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

1   "derivative" of the design from the European and Australian models.  European

2   and Australian versions of the dual-clutch transmission suffered from similar

3   defects known to Ford as alleged herein.

4       16.   In addition to having years of feedback and testing from its

5   European and Australian dual-clutch transmission, according to Ford, its team:

6          "logged approximately three years or 6,000 man-hours
             of computer-aided mathematical modeling, simulation
7         and analysis of engine speeds, torque and clutch
             capacity in only 24 months real time to prove the THF
8         concept was production ready."

9       17.   Torque Hole Vectoring ("THF") is a program in the PowerShift

10   Transmission that uses a combination of computer algorithms and computer

11   aided tools to fill the torque hole, or what is more commonly perceived as a

12   hesitation, while shifting.  Ford claimed the THF technology would create a

13   smoother driving experience for the customer.

14       18.   Despite these claims, consumers have not experienced a smoother

15   ride from THF or any other technology incorporated in the PowerShift

16   Transmission.  Multiple reviews in automotive journals and customer complaints

17   documented and confirmed that the Class Vehicles' transmissions were

18   exhibiting the defects, malfunctions, misadjustments, and nonconformities that

19   the Plaintiff and Class Members now complain of.

20       19.   In a 2011 *New York Times*' review of the Ford Focus, the reviewer

21   stated that "Ford programmed the PowerShift dual-clutch transmission to change

22   gears in odd and infuriating ways" and that "[t]he transmission is often in the

23   wrong gear at the wrong time, resulting in jerks, pauses and lethargic

24   acceleration."

25       20.   In response to these criticisms, Greg Burgess, an engineer at Ford,

26   conceded in the same *New York Times* article that "[i]t is quite a challenge to

27   deliver something that is very, very fuel-efficient and yet feels like a

28   conventional automatic, and there are some balances and some tradeoffs that we

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

1   make."

2       21.    As a result of the Transmission Defect, in 2010 and 2011, Ford even

3   issued several Technical Service Bulletins ("TSBs") to its dealers in the United

4   States acknowledging defects in the PowerShift Transmission. Ford's TSB from

5   September 2010, covering the 2011 Ford Fiesta, informed dealers of "concerns

6   such as no engagement or intermittent no engagement in Drive or Reverse when

7   shifting from Park to Drive or Reverse, grinding noise during engagement,

8   and/or a check engine light with transmission control module (TCM) diagnostic

9   trouble code…"

10       22.    Similarly, Ford's TSB released on January 1, 2011, covering the

11   2011 Ford Fiesta with the PowerShift Transmission, informs dealers of problems

12   with the PowerShift Transmission causing "a loss of power, hesitation, surge, or

13   lack of throttle response while driving."

14       23.    Ford's TSB from March 31, 2011, also covering the 2011 Ford

15   Fiesta, informs dealers of problems where the PowerShift Transmission

16   "exhibit[s] a rattle/grind noise in reverse only."

17       24.    Ford issued two separate TSBs in May of 2011, both covering the

18   Ford Fiesta. These TSBs addressed problems with the PowerShift Transmission

19   including "concerns in Drive or Reverse when shifting from Park to Drive or

20   reverse, no engagement, delayed engagement, intermittent engagement, noise

21   during engagement. . ."

22       25.    Another Ford TSB released in September 2011 advised dealers to

23   reprogram the transmission computer if 2011 Ford Fiesta owners complained

24   about "hesitation when accelerating from a low speed after coast down, harsh or

25   late 1-2 upshift, harsh shifting during low-speed tip-in or tip-out maneuvers

26   and/or engine r.p.m. flare when coasting to a stop."

27       26.    The 2012 Ford Focus was the subject of a September 2011 Ford

28   TSB, which informed dealers of transmission problems including: "RPM flare on

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

1   deceleration coming to a stop, rough idle on deceleration coming to a stop,
2   intermittent engine idle fluctuations at a stop, intermittent vehicle speed control
3   inoperative, intermittent harsh engagement/shift…"

4       27.   In May of 2012, Ford issued a "Customer Satisfaction Program:
5   Program Number 12B37." In a letter sent to 2012 Ford Focus drivers, Ford
6   indicated that drivers "may experience rough or jerky automatic transmission
7   shifts. In addition, the vehicle may experience roll back when the driver is
8   transitioning from the brake pedal to the accelerator pedal while on a slight
9   incline." Significantly, Ford did not issue a recall and did not warn drivers of the
10  safety risks associated with these known problems.

11      28.   Because Ford will not notify Class Members that the transmission is
12  defective, Plaintiff and Class Members (as well as members of the general
13  public) are subjected to dangerous driving conditions that often occur without
14  warning.

15      29.   Defendant knew about and concealed the Transmission Defect
16  present in every Class Vehicle, along with the attendant dangerous safety and
17  driveability problems, from Plaintiff and Class Members, at the time of sale,
18  lease, and repair and thereafter. In fact, instead of repairing the defects in the
19  PowerShift Transmission, Ford either refused to acknowledge their existence, or
20  performed ineffectual software upgrades that simply masked the defects.

21      30.   If Plaintiff and the Class Members knew about these defects at the
22  time of sale or lease, Plaintiff and Class Members would not have purchased or
23  leased the Class Vehicles or would have paid less for them.

24      31.   As a result of their reliance on Defendant's omissions and/or
25  misrepresentations, owners and/or lessees of the Class Vehicles suffered an
26  ascertainable loss of money, property, and/or value of their Class Vehicles,
27  including, but not limited to, out of pocket costs for the PowerShift Tranmission.
28  Additionally, as a result of the Transmission Defect, Plaintiff and the Class

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

1  Members were harmed and suffered actual damages in that the Class Vehicles'

2  transmissions are substantially certain to fail before their expected useful life has

3  run.

4  ## PARTIES

5  ### Plaintiff

6      32.    Plaintiff Omar Vargas is a California citizen who resides in Los

7  Angeles, California.  On or about August 1, 2011, Plaintiff leased a new 2011

8  Ford Fiesta from Sunrise Ford of North Hollywood, an authorized Ford dealer in

9  Los Angeles County.  His vehicle was equipped with an optional PowerShift

10  Transmission that cost him $1,095.00.

11      33.    Plaintiff leased his vehicle primarily for personal, family, or

12  household use.  Ford manufactured, sold, distributed, advertised, marketed, and

13  warranted the vehicle.

14      34.    During the first three (3) months of the lease, Mr. Vargas noticed

15  symptoms of the Transmission Defect, including lunging or jerking forward

16  when attempting to decelerate, hesitation, and jerking when attempting to

17  accelerate, akin to a slingshot effect.

18      35.    On or about November 2011, Plaintiff took his vehicle to Buerge

19  Ford, an authorized Ford dealer in Los Angeles, California, complaining that the

20  vehicle was jerking, lunging and unsafe to drive.  The service advisor told

21  Plaintiff that these symptoms were normal because the transmission acts like it

22  has a clutch.  The service advisor also said that the dealership would not attempt

23  to repair his vehicle because it was purchased from a different dealership.

24      36.    On or about February 2012, Plaintiff attempted to contact the

25  salesman from Sunrise Ford who leased him the vehicle.  The salesman did not

26  return Plaintiff's multiple calls.

27      37.    On or about February 2012, Plaintiff contacted the service

28  department at Sunrise Ford, once again complaining that the vehicle was jerking,

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

CLASS ACTION COMPLAINT

1   lunging and unsafe to drive.  The service advisor told Plaintiff that these
2   symptoms were normal for this vehicle and that there was nothing the service
3   department could do to repair the vehicle.

4        38.   On June 2, 2012 Plaintiff brought his vehicle to Sunrise Ford for a
5   scheduled service appointment.  While at the dealership, Plaintiff once again
6   explained to the service department that his vehicle was jerking, lunging and
7   unsafe to drive.  Plaintiff requested that a technician test drive the vehicle with
8   him so they could observe the problems and fix the vehicle.  The dealership
9   personnel refused to test drive Plaintiff's vehicle.  Furthermore, the transmission
10  technician was unavailable at that time and the dealership would not inspect or
11  attempt to repair Plaintiff's vehicle.

12       39.   On August 15, 2012 Plaintiff contacted the service department at
13  Star Ford, an authorized Ford dealer in Glendale, California.  Plaintiff explained
14  to the service advisor that his vehicle was jerking, lunging and unsafe to drive.
15  The service advisor acknowledged that the dealership had received many
16  complaints about the PowerShift dual-clutch transmission in the Ford Fiesta but
17  said there was nothing that the dealership could do about it.

18       40.   On or about August 22, 2012, Plaintiff contacted Buerge Ford again
19  and advised the dealer that he was still experiencing problems with his
20  PowerShift dual-clutch transmission.  For the second time, the service advisor
21  asked Plaintiff to bring the vehicle to the dealer that he purchased it from and
22  claimed that Buerge Ford was too busy with other service appointments to
23  inspect his vehicle.

24       41.   That same day Plaintiff also contacted 101 Vermont Ford, an
25  authorized Ford dealer in Los Angeles, California.  Similar to the response from
26  Buerge Ford, the service advisor at 101 Vermont Ford asked Plaintiff to bring his
27  vehicle to the dealer from which he purchased the vehicle.

28       42.   On or about September 1, 2012, Plaintiff took his vehicle back to

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

1    Sunrise Ford, complaining that the vehicle jerks back and forth at any speed.

2    The dealer verified Plaintiff's concerns and reprogrammed the transmission

3    control module.  However, the dealer noted that a shudder was still felt after the

4    reprograming.  The dealer diagnosed a transmission fluid leak from the clutch

5    housing and replaced the clutch assembly.

6        43.    Despite these repair attempts by Ford and its dealers, Plaintiff

7    continues to experience the Transmission Defect, including, but not limited to

8    transmission slips, bucking, kicking, jerking, harsh engagement, premature

9    internal wear, sudden acceleration, delay in downshifts, and delayed

10   acceleration.

11       44.    At all times, Plaintiff, like all Class Members, has driven his vehicle

12   in a foreseeable manner and in the manner in which it was intended to be used.

13   **Defendant**

14       45.    Defendant Ford Motor Company is a corporation organized and in

15   existence under the laws of the State of Delaware and registered with the

16   California Department of Corporations to conduct business in California.  Ford

17   Motor Company's Corporate Headquarters is located in Dearborn, Michigan.

18   Ford Motor Company designs and manufactures motor vehicles, parts, and other

19   products for sale in the United States and throughout the world.  Ford Motor

20   Company is the warrantor and distributor of the Class Vehicles in the United

21   States.

22       46.    At all relevant times, Defendant was and is engaged in the business

23   of designing, manufacturing, constructing, assembling, marketing, distributing,

24   and selling automobiles and motor vehicle components in California and

25   throughout the United States of America.

26                              **JURISDICTION**

27       47.    This is a class action.

28       48.    Plaintiff and other members of the Proposed Class are citizens of

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

1    states different from the home state of Defendants.

2        49.    On information and belief, aggregate claims of individual Class

3    Members exceed $5,000,000.00 in value, exclusive of interest and costs.

4        50.    Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(d).

5                              **VENUE**

6        51.    Ford, through its business of distributing, selling, and leasing the

7    Class Vehicles, has established sufficient contacts in this district such that

8    personal jurisdiction is appropriate.  Defendant is deemed to reside in this district

9    pursuant to 28 U.S.C. § 1391(a).

10       52.    In addition, a substantial part of the events or omissions giving rise

11   to these claims and a substantial part of the property that is the subject of this

12   action are in this district.  In addition, Plaintiff's Declaration, as required under

13   California Civil Code section 1780(d) but not pursuant to *Erie* and federal

14   procedural rules, which reflects that a substantial part of the events or omissions

15   giving rise to the claims alleged herein occurred, or a substantial part of property

16   that is the subject of this action, is situated in Los Angeles County, California.

17   Plaintiff's Declaration regarding venue is attached as Exhibit 1.

18       53.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a).

19                      **FACTUAL ALLEGATIONS**

20       54.    Since 2010, Ford has designed, manufactured, distributed, sold, and

21   leased the Class Vehicles.  Ford has sold, directly or indirectly, through dealers

22   and other retail outlets, thousands of Class Vehicles equipped with the

23   PowerShift Transmission in California and Nationwide.

24       55.    Ford's PowerShift Transmission, while sometimes referred to as an

25   automatic, is actually a set of computerized manual transmissions.  It lacks a

26   torque converter, instead using two "dry" clutches to directly connect and

27   disconnect the engine to and from the transmission.  Whereas other automated

28   manual transmissions on the market use "wet" clutches bathed in oil, Ford's

INITIATIVE LEGAL GROUP APC
1880 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

1    PowerShift clutches lack the oil pumps and other components of a wet clutch
2    system, and instead operate dry.

3         56.    The PowerShift Transmission is offered as the sole "automatic"
4    option for both the Ford Fiesta and Ford Focus and is priced at $1,095.00.  The
5    PowerShift Transmissions for both vehicles have the same design and
6    components.

7         57.    On information and belief, Ford designed the Class Vehicles'
8    computerized "automated manual" transmissions in an effort to meet heightened
9    governmental and consumer expectations for fuel economy, performance and
10   efficiency.  Theoretically, such a transmission should have the convenience of an
11   automatic transmission without sacrificing fuel efficiency.  In practice, however,
12   Ford's PowerShift Transmission has been plagued by numerous problems and
13   safety hazards.

14        58.    Dating back to at least 2010, Ford was aware of the defects of the
15   PowerShift Transmission.  Ford, however, failed and refused to disclose these
16   known defects to consumers.  As a result of this failure, Plaintiff and Class
17   Members have been damaged.

18   **The Transmission Defect Poses an Unreasonable Safety Hazard**

19        59.    The Transmission Defect causes unsafe conditions in the Class
20   Vehicles, including but not limited vehicles suddenly lurching forward, sudden
21   loss of forward propulsion, and significant delays in acceleration.  These
22   conditions present a safety hazard because they severely affect the driver's
23   ability to control the Class Vehicle's speed, acceleration, and deceleration of the
24   car.  Even more troubling, the Transmission Defect can cause the vehicle to fail
25   to downshift and decelerate when the brakes are depressed.  As a result, Plaintiff
26   and Class Members have experienced their cars lurching forward into
27   intersections at red lights due to the failure of their braking efforts to stop the
28   car.

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

INITIATIVE LEGAL GROUP APC.
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

60.    Hundreds, if not thousands, of purchasers and lessees of the Class
Vehicles have experienced problems with the transmission.  Complaints filed by
consumers with the National Highway Traffic Safety Administration
("NHTSA") demonstrate that the defect is widespread and dangerous and that it
manifests without warning.  The complaints also indicate Defendant's awareness
of the problems with the transmission and how potentially dangerous the
defective condition is for consumers.  The following are some safety complaints
relating to PowerShift Transmission Defects (spelling and grammar mistakes
remain as found in the original) (Safecar.gov, *Search for Complaints* (July 24,
2012), http://www-odi.nhtsa.dot.gov/complaints/):

**NHTSA Complaints:**

a.    [2011 Ford Fiesta] TRANSMISSION SHIFT ERRATICLY WHEN SLOWING DOWN OR WHILE DRIVING IN HEAVILY CONGESTED TRAFFIC. SOMETIMES IT WILL MAKE VEHICLE LUNGE FORWARD WITH VERY LIGHT FUEL PEDAL APPLICATION. TRANSMISSION IS ALSO MAKING AN AUDIBLE "CLUNK" WHEN THIS HAPPENS. MAYBE A PCM RE FLASH COULD CORRECT THE PROBLEM? THIS HAS BEEN AN ONGOING ISSUE SINCE DAY ONE STARTING IN DECEMBER 2010. *TR

b.    I RECENTLY PURCHASED A BRAND NEW 2011 FORD FIESTA. IN THE PAST 5 MONTHS I HAVE TAKEN IT TO THE DEALERSHIP I PURCHASED IT FROM 5 TIMES BECAUSE THE TRANSMISSION MAKES A LOUD GRINDING NOISE AND LURCHES FORWARD WHEN I AM ON A HILL OR IN STOP AND GO TRAFFIC. I HAVE CONTACTED FORD DIRECTLY AND GOT THE SAME RESPONSE AS WHEN I TOOK IT TO THE DEALER. THEY BOTH SAY IT IS "NORMAL". AFTER CONTACTING FORD DIRECTLY THE SERVICE MANAGER AT MY LOCAL FORD CONTACTED ME AND WENT ON A TEST DRIVE WITH ME WHERE HE SAID HE BOTH HEARD AND FELT WHAT I WAS TALKING ABOUT. HE THEN TOOK A CAR RIGHT OFF THE LOT FOR A TEST DRIVE AND TOLD ME THAT ONE DID NOT DO ANY OF THE THINGS MINE IS DOING. A COUPLE HOURS LATER I GET A CALL FROM HIM STATING FORD HAS TOLD HIM THIS IS NORMAL FOR THE CAR TO MAKE THESE NOISES AND LURCH FORWARD AND THAT THERE IS NOTHING ELSE THEY CAN DO FOR ME. ASSURING ME THAT THE CAR IS UNDER WARRANTY AND THAT IF THE TRANSMISSION FAILS IT WILL BE COVERED. I DRIVE 70 MILES A DAY IN RUSH HOUR TRAFFIC ON HILLS AND TO ME THIS IS A

HUGE SAFETY CONCERN. THERE ARE MANY PEOPLE THAT HAVE COMPLAINED TO FORD ABOUT THE SAME PROBLEM SO THEY DID THE TSB FOR THIS ISSUE AND IT MADE THE PROBLEM WORSE NOW WHEN I AM ON A HILL THE CAR ROLLS BACK AND THE GRINDING NOISE IS WORSE. I TOOK THE CAR BACK RIGHT AFTER THEY PERFORMED THE TSB AND TOLD THEM AND THEY ARE STILL SAYING THIS IS NORMAL. *TR

c.   TL* THE CONTACT OWNS A 2011 FORD FIESTA. WHILE DRIVING APPROXIMATELY 5 MPH, THE ACCELERATOR PEDAL WAS ENGAGED FOLLOWED BY A THREE SECOND DELAY RESPONSE. THE FAILURE WOULD OCCUR AT ANY GIVEN TIME. THE VEHICLE WAS TAKEN TO AN AUTHORIZED DEALER WHERE THEY INFORMED THE CONTACTS THAT THE VEHICLE WAS OPERATING PROPERLY. THE FAILURE MILEAGE WAS APPROXIMATELY 3,700. UPDATED 05/25/11 *BF THE CONSUMER STATED O SEVERAL OCCASIONS THE VEHICLE COULD NOT DECIDE WHICH GEAR TO GO INTO. THERE WAS DELAY IN ACCELERATION. UPDATED 07/08/11

d.   [2011 Ford Fiesta] THE TRANSMISSION SEEMS TO FAIL TO GO INTO NEUTRAL WHEN BRAKES ARE APPLIED. CAR STARTED WITH TRANSMISSION ISSUES INITIALLY WITH THE CAR TRYING TO FIGHT THE BRAKES A FEW TIMES JUST BEFORE STOPPING. AT TIMES THE CAR SIGNIFICANTLY OVERCOMES THE BRAKES. ON ONE INSTANCE THE CAR FAILED TO STOP AT RED LIGHT AND MANAGED TO CREEP INTO THE INTERSECTION BEFORE STOPPING. THE TRANSMISSION DOES SEEM TO HAVE SAFETY PROBLEMS PARTICULARLY IT MAKES IT HARD TO PREDICT HOW THE CAR WILL COME TO A STOP FROM A HIGH RATE OF SPEED. THE STOPPING IS JERKY AND THE STOPPING DISTANCE IS VARIABLE AND INCONSISTENT DUE TO THE "JERKY" BEHAVIOR OF TRANSMISSION. *TR

e.   [2011 Ford Fiesta] VEHICLE HESITATES GREATLY UPON ACCELERATION AND STUTTERS LIKE IT IS JUMPING IN AND OUT OF GEAR. IT IS AN AUTOMATIC. *TR

f.   THIS IS IN REGARDS TO A NEW 2011 FORD FIESTA WITH THE POWERSHIFT 6-SPEED DUAL-CLUTCH TRANSMISSION. 3 TIMES NOW I HAVE EXPERIENCED THE TRANSMISSION HESITATE FOR AN EXTENDED PERIOD OF TIME BEFORE ENGAGING. EACH TIME IT HAS HAPPENED I HAVE BEEN COASTING IN TRAFFIC AT SPEEDS BETWEEN 15-25 MPH OR SO, WAITING FOR ONCOMING TRAFFIC TO PASS AND THEN ATTEMPTING TO ACCELERATE ACROSS LANES OF TRAFFIC WITHOUT GETTING HIT. WHEN DOING THIS, INSTEAD OF ACCELERATING QUICKLY TO AVOID GETTING HIT BY TRAFFIC THE CAR WOULD ACT LIKE IT WAS REVVING

CLASS ACTION COMPLAINT

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

BUT NOT ENGAGING THE CLUTCH SO I WOULD END UP JUST COASTING ACROSS LANES OF INCOMING TRAFFIC. TO AVOID HAVING THIS HAPPEN I HAVE LEARNED THAT I HAVE TO QUICKLY AND FULLY STOMP ON THE GAS PEDAL IN ORDER FOR THE TRANSMISSION TO REALIZE I'M IN NEED OF QUICK ACCELERATION. USING ONLY MODERATE PRESSURE ON THE GAS PEDAL YIELDS THE SCARY HESITATION THAT HAS LEAD TO NEAR IMMINENT COLLISIONS. LIGHT PRESSURE TO THE GAS PEDAL TENDS TO MAKE THE CAR BARELY ACCELERATE AT ALL AND SOMETIMES FEEL LIKE IT'S ABOUT TO STALL. IT SEEMS TO ME THE COMPUTER GETS CONFUSED IN THIS SCENARIO SINCE YOU ARE FIRST DECELERATING, THEN COASTING, THEN TRYING TO ACCELERATE AGAIN ALL WITHIN A SHORT TIME-FRAME. *TR

g.  TL* THE CONTACT OWNS A 2011 FORD FIESTA. WHILE DRIVING DRIVING APPROXIMATELY 10 MPH, THE TRANSMISSION EMITTED A LOUD GRINDING NOISE WITH EXCESSIVE HESITATION. ON A SEPARATE OCCASION THE TRANSMISSION FAILED TO RESPOND DURING ACCELERATION. THE VEHICLE WAS TAKEN TO AN AUTHORIZED DEALER FOUR DIFFERENT TIMES FOR THE IDENTICAL FAILURE. MOST RECENT THE VEHICLE WAS TAKEN TO THE DEALER AND AN ENGINEER INSPECTED THE VEHICLE AND STATED THE TRANSMISSION RESPONSE WAS A COMMON CHARACTERISTIC. THE VEHICLE HAD NOT BEEN REPAIRED. THE MANUFACTURER WAS NOT MADE AWARE OF THE DEFECT. THE APPROXIMATE FAILURE MILEAGE WAS 500.

h.  MY 2011 FORD FIESTA HAS ISSUES WITH THE TRANSMISSION. IT SHIFTS HARD AND IRRATICALLY SHIFTS AT LOWER SPEEDS. I HAVE TAKEN IT BACK INTO THE DEALERSHIP 2 TIMES IN THE FIRST 5 MONTHS OF OWNING IT AND ALL THEY DID WAS A SOFTWARE UPDATE ON THE SECOND VISIT. THE FIRST VISIT, THEY SAID THEY COULD NOT FIND ANYTHING WRONG WITH IT. I NOW HAVE ANOTHER APPOINTMENT FOR TOMORROW AND I HAVE ONLY HAD THIS CAR SINCE FEBRUARY. I HAVE DRIVEN IT HOPING THAT IT WOULD JUST WORK ITSELF OUT SINCE IT WAS NEW BUT IT HAS GOTTEN WORSE OVER TIME. *KB

i.  [2011 Ford Fiesta] TRANSMISSION UP SHIFTS/DOWN SHIFTS VERY HARD AT SPEEDS BETWEEN 10-30MPH. WORSE WHEN IN TRAFFIC. *TR

j.  [2012 Ford Fiesta] WHILE DRIVING THE VEHICLE, DRIVER WAS ENTERING THE FREEWAY, THE VEHICLE SHIFTED THROUGH ALL THE GEARS RAPIDLY LEAVING THE VEHICLE MOVING AT ~40 - 45MPH AND NOT SPEEDING UP. THE ACCELERATION PEDAL WAS TO THE FLOOR

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

CLASS ACTION COMPLAINT

AND THE CARE DIDN'T INCREASE IN SPEED AND WAS ALMOST REAR ENDED BECAUSE ALL OTHER DRIVERS ON THE ROAD WAY WERE MOVING AT ~60MPH. THE DRIVER THEN LET OFF THE ACCELERATOR AND PRESSED DOWN AGAIN THE VEHICLE THEN REVVED REAL HIGH THEN SHIFTED VERY HARD AND SHOOK THROWING THE PASSENGERS FORWARD AND BACK CAUSING A WHIP-LASH TYPE OF MOVEMENT AMONG PASSENGERS. THE VEHICLE OFTEN GRINDS WHILE SHIFTING AND DECELERATING. OWNER TOOK THE VEHICLE TO DEALERSHIP AND THE SERVICE DEPARTMENT HOURS LATER CALLED TO REPORT THE VEHICLE IS DRIVING AS EXPECTED AND NO ISSUES WITH THE VEHICLE AND THAT THE GRINDING GEARS WAS EXPECTED. *TR

k.   [2012 Ford Focus] AUTOMATIC TRANSMISSION DOES NOT SHIFT SMOOTHLY. INTERMITTENT VIBRATES, BUCKS, HESITATES, SLIPS & JERKS. CAN'T RELY ON TAKE-OFF ACCELERATION WHETHER IT WILL ENGAGE PROPERLY, PULLING INTO TRAFFIC IS VERY DANGEROUS. STOP AND GO TRAFFIC IS VERY DANGEROUS. IT'S LIKE SOMEONE DRIVING A STICK SHIFT AND NOT HAVING THE CLUTCH & GAS IN SYNC, ONLY IT'S AN AUTOMATIC SO YOU CAN'T DO ANYTHING ABOUT IT. I HAVE HAD THE CAR IN TO THE SERVICE DEPARTMENT ON 3 OCCASIONS. THE FIRST TIME THE TECH LAUGHED AT ME AND TOLD ME IT WAS JUST THE "NEW" 6-SPEED TRANSMISSION. 2ND TIME, THEY REPLACED SOME PARTS IN THE TRANSMISSION. 3RD TIME, THEY HAD THE CAR 4 DAYS & SAID THERE WAS NOTHING OUT OF THE ORDINARY HAPPENING. THERE IS DEFINITELY SOMETHING WRONG WITH THIS TRANSMISSION, AND FORD NEEDS TO DO SOMETHING TO FIX THEM BEFORE AN ACCIDENT HAPPENS.

l     TL* THE CONTACT OWNS A 2012 FORD FOCUS. THE CONTACT STATED THAT WHILE DRIVING APPROXIMATELY 5 MPH, THE TRANSMISSION BEGAN TO HESITATE IN A JERKING MOTION AND THE VEHICLE STALLED. THE ENGINE RESTARTED AND THE VEHICLE WAS ABLE TO RESUME. IN ADDITION, ON A SEPARATE OCCASSION THE TRANSMISSION WARNING INDICATOR ILLUMINATED ON THE INSTRUMENT PANEL FOR A FEW SECONDS. THE FAILURES OCCURRED NUMEROUS TIMES. THE VEHICLE WAS TAKEN TO AN AUTHORIZED DEALER EIGHT TIMES FOR THE SAME MALFUNCTION. A DIAGNOSIS WAS PERFORMED IN WHICH A TROUBLE CODE WAS NOT DETECTED. THE COMPUTER SYSTEM, ABS, AND DRIVE TRAIN WERE REPROGRAMMED MORE THAN ONE TIME. THE FAILURE PERSISTED AND THE DEALER WAS UNABLE TO RESOLVE THE PROBLEM. THE MANUFACTURER AND DEALER STATED THAT THE VEHICLE FUNCTIONED AS DESIGNED. THE APPROXIMATE FAILURE MILEAGE WAS 350.

INITIATIVE LEGAL GROUP APC.
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

CLASS ACTION COMPLAINT

m.  PURCHASED A NEW 2012 FORD FOCUS WITH AUTOMATIC TRANSMISSION IN APRIL, 2012. IMMEDIATELY EXPERIENCED LOW SPEED TRANSMISSION SHIFTING PROBLEMS AND ALSO DISCOVERED COMPLETE FREE ROLL BACKWARD, UNENDING, UNTIL HITTING LEVEL GROUND AND/OR HITTING AN OBJECT WHILE ROLLING BACKWARDS ON AN INCLINE, EVEN WHILE IN GEAR. THIS IS A SERIOUS SAFETY AND DRIVER LIABILITY ISSUE . DEALERSHIP HAS RE-PROGRAMMED TRANSMISSION ON A TECHNICAL SERVICE BULLETIN WITHOUT SUCCESS. DEALERSHIP HAD ME TEST DRIVE ANOTHER 2012 FOCUS THINKING IT WOULD NOT DEMONSTRATE THE SAME SAFETY PROBLEM...AND TO THEIR SURPRISE..THE TEST DRIVE VEHICLE THEY GAVE ME ALSO PERFORMED THE SAME WAY ON THE FREE ROLLBACK WHILE IN GEAR. I BELIEVE THE FUNDAMENTAL PROBLEM HERE IS THAT FORD HAS DESIGNED AND MANUFACTURED IN THE 2012 FOCUS LINE A STANDARD/MANUAL TRANSMISSION (POORLY SHIFTED BY SOFTWARE AND DYSFUNCTIONAL ON THE FREE ROLL BACK ISSUE) AND IS MARKETING IT TO ALL CONSUMERS AS AN AUTOMATIC TRANSMISSION. SERVICE DEPARTMENT ACKNOWLEDGES THAT IT TRULY IS A STANDARD/MANUAL DESIGN. THE WINDOW STICKER AND SALES PROCESS MISREPRESENTS TO THE CONSUMER THAT IT IS AN AUTOMATIC TRANSMISSION. THIS MAY CONSTITUTE CONSUMER FRAUD ON A NATIONAL LEVEL LEADING TO EITHER CLASS ACTION LITIGATION, TOTAL RECALL AND/OR INDIVIDUAL CASES OF LITIGATION. I AM CONSIDERING ALL OF THE ABOVE AS THE PROBLEM REMAINS AND HAS NOT BEEN RECTIFIED. *TR

n  WHEN ACCELERATING CAR JUMPS OR HOPS VIOLENTLY. ENGINE MAKES GRINDING/CHATTERING NOISE WHEN CHANGING GEARS. EXPERIENCE ROLL BACK WHEN ON A SLIGHT INCLINE. POWER SHIFT 6 SPEED IS NOT SAFE. HAVE TROUBLE CROSSING LANES OF TRAFFIC FOR THE JUMPING/LAUNCH JUDDER PROBLEM. *TR

61.  The Transmission Defect poses an unreasonable safety risk for Class Members, as well as the drivers, passengers, and pedestrians sharing the road with Class Vehicles.  A vehicle's ability to have forward propulsion, not to stall, not to surge or jerk unexpectedly, and the ability of a vehicle's transmission to perform properly are each critical to a vehicle's safe operation.  A defect that causes one or more of these negative characteristics poses a safety hazard to the

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

1    general public, and increases the risk of automobile accidents.

2                    **Ford Has Exclusive Knowledge of the Transmission Defect**

3           62.    Ford had superior and exclusive knowledge of the transmission

4    defect, and knew or should have known that the defect was not known or

5    reasonably discoverable by Plaintiff and Class Members before they purchased

6    or leased the Class Vehicles.

7           63.    Plaintiff is informed and believes and based thereon alleges that

8    before Plaintiff leased his Class Vehicle, and since at least 2010, Ford knew

9    about the Transmission Defect through sources not available to consumers,

10   including pre-release testing data, early consumer complaints about the

11   transmission defects to Ford and its dealers, testing conducted in response to

12   those complaints, high failure rates and replacement part sales data, aggregate

13   data from Ford dealers, among other internal sources of aggregate information

14   about the problem.

15          64.    Before the Class vehicles were available for sale in the United

16   States, Ford offered the same vehicles, equipped with a similar dual-clutch

17   transmission, in Europe and Australia. Although the United States version

18   utilizes dry-clutches as opposed to the European and Australian version's wet-

19   clutches, Ford acknowledged in its own press release that the transmission

20   offered for sale in the United States is a "derivative" of the design from the

21   European and Australian models. European and Australian versions of the dual-

22   clutch transmission suffered from similar defects as alleged herein.

23          65.    In addition to having years of analysis and feedback with the prior

24   dual-clutch design, Ford also acknowledged in its own press releases the

25   extensive pre-release testing and computer-aided modeling, simulation, and

26   analysis it conducted before bringing the PowerShift Transmission to the United

27   States market.

28          66.    Ford was also aware of the Transmission Defect through the

CLASS ACTION COMPLAINT

1    numerous complaints it received, both from consumers and from automotive

2    journalists, who roundly criticised the performance of the PowerShift

3    Transmission.  Indeed, a July 15, 2011 *New York Times* review of the Ford Focus

4    criticized the PowerShift transmission's "jerks, pauses and lethargic

5    acceleration."  In that same article, Greg Burgess, a Ford engineer, admitted that

6    Ford made "tradeoffs" in terms of drivability in order to "deliver something that

7    is very, very fuel-efficient."

8         67.    The review went on to state:  "the logical explanation is that they

9    [the Ford Engineers] were given a fuel economy target and no option but to meet

10   it.  One might wonder why a top executive didn't step in to keep the transmission

11   from reaching market."

12        68.    The existence of the Transmission Defect is a material fact that a

13   reasonable consumer would consider when deciding whether to purchase or lease

14   a vehicle that was equipped with an automatic transmission.  Had Plaintiff and

15   other Class Members known that the Class Vehicles were equipped with

16   defective transmissions, they would not have purchased or leased the Class

17   Vehicles equipped with the PowerShift Transmissions or would have paid less

18   for them.

19        69.    Reasonable consumers, like Plaintiff, reasonably expect that a

20   vehicle's transmission is safe, will function in a manner that will not pose a

21   safety hazard, and is free from defects.  Plaintiff and Class Members further

22   reasonably expect that Ford will not sell or lease vehicles with known safety

23   defects, such as the Transmission Defect, and will disclose any such defects to its

24   consumers when it learns of them.  They did not expect Ford to fail to disclose

25   the Transmission Defect to them and to continually deny the defect.

26              **Ford Has Actively Concealed the Transmission Defect**

27        70.    While Ford has been fully aware of the Transmission Defect in the

28   Class Vehicles, it actively concealed the existence and nature of the defect from

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

1  Plaintiff and Class Members at the time of purchase, lease or repair and
2  thereafter.  Specifically, Ford failed to disclose or actively concealed at and after
3  the time of purchase, lease, or repair:

4  (a)  any and all known material defects or material nonconformity
5  of the Class Vehicles, including the defects relating to the
6  PowerShift Transmission;

7  (b)  that the Class Vehicles, including their PowerShift
8  Transmission, were not in good in working order, were
9  defective, and were not fit for their intended purposes; and

10  (c)  that the Class Vehicles and their PowerShift Transmission
11  were defective, despite the fact that Ford learned of such
12  defects through alarming failure rates, customer complaints,
13  as well as through other internal sources, as early as 2010.

14  71.  As a result of the Transmission Defect, Ford was inundated with
15  complaints regarding the PowerShift Transmission.  In July 2011, Ford
16  implemented a communications strategy to enlighten consumers about some of
17  the behavior characteristics of the transmission in order to "improve customer
18  expectations."  In a memo with instructions sent to Ford dealers and service
19  personnel, Ford noted that some of the common characteristics of the PowerShift
20  Transmission include double clicking metal sounds, coast down whine, low
21  speed grinding, and reverse gear whine.

22  72.  However, despite Ford's public insistence that these behavioral
23  characteristics of the PowerShift Transmission were normal, in 2010 and 2011,
24  Ford issued several Technical Service Bulletins ("TSBs") to its dealers in the
25  United States acknowledging defects in the PowerShift Transmission.  Ford's
26  TSB from September 2010, covering the 2011 Ford Fiesta, informs dealers of
27  "concerns such as no engagement or intermittent no engagement in Drive or
28  Reverse when shifting from Park to Drive or Reverse, grinding noise during

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

1 engagement, and/or a check engine light with transmission control module

2 (TCM) diagnostic trouble code…"

3      73.   Ford's TSB released on January 1, 2011, covering the 2011 Fiesta

4 with the PowerShift Transmission, informs dealers of problems with the

5 PowerShift Transmission causing "a loss of power, hesitation, surge, or lack of

6 throttle response while driving."

7      74.   Ford's TSB from March 31, 2011, also covering the 2011 Ford

8 Fiesta, informs dealers of problems where the PowerShift Transmission

9 "exhibit[s] a rattle/grind noise in reverse only."

10      75.   Ford issued two separate TSBs in May of 2011, both covering the

11 Ford Fiesta.  These TSBs addressed problems with the PowerShift Transmission

12 including "concerns in Drive or Reverse when shifting from Park to Drive or

13 reverse, no engagement, delayed engagement, intermittent engagement, noise

14 during engagement. . ."

15      76.   On information and belief, another Ford TSB released in September

16 2011 advised dealers to reprogram the transmission computer if 2011 Fiesta

17 owners complained about "hesitation when accelerating from a low speed after

18 coast down, harsh or late 1-2 upshift, harsh shifting during low-speed tip-in or

19 tip-out maneuvers and/or engine r.p.m. flare when coasting to a stop."

20      77.   The 2012 Ford Focus was the subject of a Ford TSB in September

21 2011, which informed dealers of transmission problems including:  "RPM flare

22 on deceleration coming to a stop, rough idle on deceleration coming to a stop,

23 intermittent engine idle fluctuations at a stop, intermittent vehicle speed control

24 inoperative, intermittent harsh engagement/shift…."

25      78.   In December of 2011, *Motor Trend* magazine called these efforts by

26 Ford a "stealth upgrade" and that while [t]here's no official recall or service

27 campaign . . . anybody who complains or requests an upgrade at the dealership

28 can have their powertrain control computer re-flashed."

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

1    79.    On information and belief, the software upgrades outlined by the

2    various TSBs issued by Ford were ineffective at addressing the Transmission

3    Defect.

4    80.    When consumers present the Class Vehicles to an authorized Ford

5    dealer for repair of the transmission, rather than repair the problem under

6    warranty, Ford dealers either inform consumers that their vehicles are

7    functioning properly, or conduct software updates that delay the manifestation of

8    defect in an attempt not to pay for it under warranty.

9    81.    To this day, Ford still has not notified Plaintiff and the Class

10   Members that the Class Vehicles suffer from a systemic defect that causes the

11   transmission to malfunction.

12   82.    Ford has caused Plaintiff and Class Members to expend money at its

13   dealerships to diagnose, repair or replace the Class Vehicles' transmissions,

14   despite Ford's knowledge of the Transmission Defect.

15                    **CLASS ACTION ALLEGATIONS**

16   83.    Plaintiff brings this lawsuit as a class action on behalf of himself

17   and all others similarly situated as members of the proposed Class pursuant to

18   Federal Rules of Civil Procedure 23(a) and 23(b)(3). This action satisfies the

19   numerosity, commonality, typicality, adequacy, predominance, and superiority

20   requirements of those provisions.

21   84.    The Class and Sub-Class are defined as:

22   **Class**:   All individuals in the United States who
     purchased or leased any 2011 through 2013 Ford Fiesta
23   or 2012 through 2013 Ford Focus vehicles equipped
     with a PowerShift Transmission.

24   **California Sub-Class**:  All individuals in the State of
25   California who purchased or leased any 2011 through
     2013 Ford Fiesta or 2012 through 2013 Ford Focus
26   vehicles equipped with a PowerShift Transmission.

27   **CLRA Sub-Class**: All California Class Members who
     are "consumers" within the meaning of California Civil
28   Code § 1761(d) ("the CLRA Sub-Class").

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

1       85.     Excluded from the Class and Sub-Class are: (1) Defendant, any
2    entity or division in which Defendant has a controlling interest, and their legal
3    representatives, officers, directors, assigns, and successors; (2) the Judge to
4    whom this case is assigned and the Judge's staff; and (3) those persons who have
5    suffered personal injuries as a result of the facts alleged herein. Plaintiff reserves
6    the right to amend the Class and Sub-Class definitions if discovery and further
7    investigation reveal that the Class and Sub-Class should be expanded or
8    otherwise modified.

9       86.     Numerosity: Although the exact number of Class Members is
10   uncertain and can only be ascertained through appropriate discovery, the number
11   is great enough such that joinder is impracticable. The disposition of the claims
12   of these Class Members in a single action will provide substantial benefits to all
13   parties and to the Court. The Class Members are readily identifiable from
14   information and records in Defendant's possession, custody, or control, as well
15   as from records kept by the Department of Motor Vehicles.

16      87.     Typicality: Plaintiff's claims are typical of the claims of the Class
17   in that Plaintiff, like all Class Members, purchased or leased a Class Vehicle
18   designed, manufactured, and distributed by Ford, and equipped with a
19   PowerShift Transmission. The representative Plaintiff, like all Class Members,
20   has been damaged by Defendant's misconduct in that he has incurred or will
21   incur the cost of repairing or replacing the defective transmission. Furthermore,
22   the factual bases of Ford's misconduct are common to all Class Members and
23   represent a common thread resulting in injury to all Class Members.

24      88.     Commonality: There are numerous questions of law and fact
25   common to Plaintiff and the Class that predominate over any question affecting
26   only individual Class Members. These common legal and factual issues include
27   the following:

28              (a)     Whether Class Vehicles suffer from defects relating to the

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

1    PowerShift Transmission;

2        (b)   Whether the defects relating to the PowerShift Transmission

3    constitute an unreasonable safety risk;

4        (c)   Whether Defendant knows about the defects relating to the

5    PowerShift Transmission and, if so, how long Defendant has

6    known of the defect;

7        (d)   Whether the defective nature of the PowerShift Transmission

8    constitutes a material fact;

9        (e)   Whether Defendant has a duty to disclose the defective nature

10   of the PowerShift Transmission to Plaintiff and Class

11   Members;

12       (f)   Whether Plaintiff and the other Class Members are entitled to

13   equitable relief, including but not limited to a preliminary

14   and/or permanent injunction;

15       (g)   Whether Defendant knew or reasonably should have known of

16   the defects relating to the PowerShift Transmission before it

17   sold and leased Class Vehicles to Class Members;

18       (h)   Whether Defendant should be declared financially responsible

19   for notifying all Class Members of the problems with the

20   Class Vehicles and for the costs and expenses of repairing and

21   replacing the defective PowerShift Transmission;

22       (i)   Whether Defendant is obligated to inform California Class

23   Members of their right to seek reimbursement for having paid

24   to diagnose, repair, or replace their defective PowerShift

25   Transmission; and

26       (j)   Whether Defendant breached the implied warranty of

27   merchantability pursuant to the Song-Beverly Act.

28   89.   Adequate Representation:  Plaintiff will fairly and adequately

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

1    protect the interests of the Class Members.  Plaintiff has retained attorneys
2    experienced in the prosecution of class actions, including consumer and product
3    defect class actions, and Plaintiff intends to prosecute this action vigorously.

4         90.    Predominance and Superiority:  Plaintiff and the Class Members
5    have all suffered and will continue to suffer harm and damages as a result of
6    Defendant's unlawful and wrongful conduct.  A class action is superior to other
7    available methods for the fair and efficient adjudication of the controversy.
8    Absent a class action, most Class Members would likely find the cost of
9    litigating their claims prohibitively high and would therefore have no effective
10   remedy at law.  Because of the relatively small size of the individual Class
11   Members' claims, it is likely that only a few Class Members could afford to seek
12   legal redress for Defendant's misconduct.  Absent a class action, Class Members
13   will continue to incur damages, and Defendant's misconduct will continue
14   without remedy.  Class treatment of common questions of law and fact would
15   also be a superior method to multiple individual actions or piecemeal litigation in
16   that class treatment will conserve the resources of the courts and the litigants,
17   and will promote consistency and efficiency of adjudication.

18                          **FIRST CAUSE OF ACTION**
19            **(Violation of California's Consumer Legal Remedies Act,**
20               **California Civil Code § 1750, *et seq.*)**

21        91.    Plaintiff incorporates by reference the allegations contained in the
22   preceding paragraphs of this Complaint.

23        92.    Plaintiff brings this cause of action on behalf of himself and on
24   behalf of the members of the CLRA Sub-Class.

25        93.    Defendant is a "person" as defined by California Civil Code
26   § 1761(c).

27        94.    Plaintiff and CLRA Sub-class Members are "consumers" within the
28   meaning of California Civil Code § 1761(d) because they purchased their Class

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

1    Vehicles primarily for personal, family or household use.

2    95.   By failing to disclose and concealing the defective nature of the

3    transmissions from Plaintiff and prospective Class Members, Defendant violated

4    California Civil Code § 1770(a), as it represented that the Class Vehicles and

5    their transmissions had characteristics and benefits that they do not have, and

6    represented that the Class Vehicles and their transmissions were of a particular

7    standard, quality, or grade when they were of another. *See* Cal. Civ. Code §§

8    1770(a)(5) & (7).

9    96.   Defendant's unfair and deceptive acts or practices occurred

10    repeatedly in Defendant's trade or business, were capable of deceiving a

11    substantial portion of the purchasing public, and imposed a serious safety risk on

12    the public.

13    97.   Defendant knew that the Class Vehicles and their transmissions

14    suffered from an inherent defect, were defectively designed or manufactured, and

15    were not suitable for their intended use.

16    98.   As a result of their reliance on Defendant's omissions and/or

17    misrepresentations, owners and/or lessees of the Class Vehicles suffered an

18    ascertainable loss of money, property, and/or value of their Class Vehicles.

19    Additionally, as a result of the Transmission Defect, Plaintiff and the Class

20    Members were harmed and suffered actual damages in that the Class Vehicles'

21    transmissions are substantially certain to fail before their expected useful life has

22    run.

23    99.   Defendant was under a duty to Plaintiff and the Class Members to

24    disclose the defective nature of the transmissions and/or the associated repair

25    costs because:

26        (a)   Defendant was in a superior position to know the true state of

27               facts about the safety defect in the Class Vehicles'

28               transmissions;

CLASS ACTION COMPLAINT

(b)    Plaintiff and the Class Members could not reasonably have been expected to learn or discover that their transmissions had a dangerous safety defect until it manifested; and

(c)    Defendant knew that Plaintiff and the Class Members could not reasonably have been expected to learn of or discover the safety defect.

100.    In failing to disclose the defective nature of the transmissions, Defendant knowingly and intentionally concealed material facts and breached its duty not to do so.

101.    The facts Defendant concealed from or did not disclose to Plaintiff and the Class Members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Class Vehicles or pay less. Had Plaintiff and other Class Members known that the Class Vehicles' transmissions were defective, they would not have purchased or leased the Class Vehicles or would have paid less for them.

102.    Plaintiff and the Class Members are reasonable consumers who do not expect the transmissions installed in their vehicles to exhibit transmission slips, kicking forward, jerking, premature internal wear, delayed acceleration, and/or difficulty in stopping the vehicle. This is the reasonable and objective consumer expectation relating to vehicle transmissions.

103.    As a result of Defendant's conduct, Plaintiff and Class Members were harmed and suffered actual damages in that the Class Vehicles experienced and will continue to experience transmission slips, kicking forward, jerking, increased stopping times, premature internal wear, and delayed acceleration.

104.    As a direct and proximate result of Defendant's unfair or deceptive acts or practices, Plaintiff and Class Members suffered and will continue to suffer actual damages.

105.    Plaintiff and the Class are entitled to equitable relief.

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

1    106.   Plaintiff provided Defendant with notice of its violations of the

2  CLRA pursuant to California Civil Code § 1782(a).  If, within 30 days,

3  Defendant fails to provide appropriate relief for their violations of the CLRA,

4  Plaintiff will amend this Complaint to seek monetary, compensatory, and

5  punitive damages, in addition to the injunctive and equitable relief that he seeks

6  now.

7                              **SECOND CAUSE OF ACTION**

8         **Violation of California Business & Professions Code § 17200, *et seq.***

9    107.   Plaintiff incorporates by reference the allegations contained in the

10  preceding paragraphs of this Complaint.

11    108.   Plaintiff brings this cause of action on behalf of himself and on

12  behalf of all Class Members.

13    109.   As a result of their reliance on Defendant's omissions and/or

14  misrepresentations, owners and/or lessees of the Class Vehicles suffered an

15  ascertainable loss of money, property, and/or value of their Class Vehicles.

16  Additionally, as a result of the Transmission Defect, Plaintiff and the Class

17  Members were harmed and suffered actual damages in that the Class Vehicles'

18  transmissions are substantially certain to fail before their expected useful life has

19  run.

20    110.   California Business & Professions Code § 17200 prohibits acts of

21  "unfair competition," including any "unlawful, unfair or fraudulent business act

22  or practice" and "unfair, deceptive, untrue or misleading advertising."

23    111.   Plaintiff and the Class Members are reasonable consumers who do

24  not expect their transmissions to exhibit transmission slips, kicking forward,

25  jerking, increased stopping times, premature internal wear, and/or delayed

26  acceleration.

27    112.   Defendant knew the Class Vehicles and their transmissions suffered

28  from inherent defects, were defectively designed or manufactured, would fail

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

1    prematurely, and were not suitable for their intended use.

2         113.   In failing to disclose the defects with the transmission, Defendant

3    has knowingly and intentionally concealed material facts and breached its duty

4    not to do so.

5         114.   Defendant was under a duty to Plaintiff and the Class Members to

6    disclose the defective nature of the Class Vehicles and their transmissions:

7              (a)   Defendant was in a superior position to know the true state of

8                     facts about the safety defect in the Class Vehicles'

9                     transmissions;

10            (b)   Defendant made partial disclosures about the quality of the

11                     Class Vehicles without revealing the defective nature of the

12                     Class Vehicles and their transmissions; and

13            (c)   Defendant actively concealed the defective nature of the Class

14                     Vehicles and their transmissions from Plaintiff and the Class.

15         115.   The facts Defendant concealed from or not disclosed to Plaintiff and

16    the Class Members are material in that a reasonable person would have

17    considered them to be important in deciding whether to purchase or lease Class

18    Vehicles. Had Plaintiff and other Class Members known that the Class Vehicles'

19    transmissions were defective and posed a safety hazard, then Plaintiff and the

20    other Class Members would not have purchased or leased Class Vehicles

21    equipped with transmissions, or would have paid less for them.

22         116.   Defendant continued to conceal the defective nature of the Class

23    Vehicles and their transmissions even after Class Members began to report

24    problems. Indeed, Defendant continues to cover up and conceal the true nature

25    of the problem.

26         117.   Defendant's conduct was and is likely to deceive consumers.

27         118.   Defendant's acts, conduct and practices were unlawful, in that they

28    constituted:

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

CLASS ACTION COMPLAINT

1         (a)     Violations of the California Consumer Legal Remedies Act;

2         (b)     Violations of the Song-Beverly Consumer Warranty Act; and

3         (c)     Violations of the express warranty provisions of California

4               Commercial Code section 2313.

5     119.   By its conduct, Defendant has engaged in unfair competition and

6 unlawful, unfair, and fraudulent business practices.

7     120.   Defendant's unfair or deceptive acts or practices occurred

8 repeatedly in Defendant's trade or business, and were capable of deceiving a

9 substantial portion of the purchasing public.

10     121.   As a direct and proximate result of Defendant's unfair and deceptive

11 practices, Plaintiff and the Class have suffered and will continue to suffer actual

12 damages.

13     122.   Defendant has been unjustly enriched and should be required to

14 make restitution to Plaintiff and the Class pursuant to §§ 17203 and 17204 of the

15 Business & Professions Code.

16                      **THIRD CAUSE OF ACTION**

17       **(Breach of Implied Warranty Pursuant to  Song-Beverly**

18 **Consumer Warranty Act, California Civil Code §§ 1792 and 1791.1, *et seq.*)**

19     123.   Plaintiff incorporates by reference the allegations contained in the

20 preceding paragraphs of this Complaint.

21     124.   Plaintiff brings this cause of action against Defendant on behalf of

22 himself and on behalf of the members of the Implied Warranty Sub-Class.

23     125.   Defendant was at all relevant times the manufacturer, distributor,

24 warrantor, and/or seller of the Class Vehicles.  Defendant knew or had reason to

25 know of the specific use for which the Class Vehicles were purchased or leased.

26     126.   Defendant provided Plaintiff and Class Members with an implied

27 warranty that the Class Vehicles and their components and parts are

28 merchantable and fit for the ordinary purposes for which they were sold.

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

1    However, the Class Vehicles are not fit for their ordinary purpose of providing

2    reasonably reliable and safe transportation because, *inter alia*, the Class Vehicles

3    and their transmissions suffered from an inherent defect at the time of sale and

4    thereafter are not fit for their particular purpose of providing safe and reliable

5    transportation.

6         127.   Defendant impliedly warranted that the Class Vehicles were of

7    merchantable quality and fit for such use.  This implied warranty included,

8    among other things:  (i) a warranty that the Class Vehicles and their

9    transmissions were manufactured, supplied, distributed, and/or sold by Ford

10   were safe and reliable for providing transportation; and (ii) a warranty that the

11   Class Vehicles and their transmissions would be fit for their intended use while

12   the Class Vehicles were being operated.

13        128.   Contrary to the applicable implied warranties, the Class Vehicles

14   and their transmissions at the time of sale and thereafter were not fit for their

15   ordinary and intended purpose of providing Plaintiff and the Class Members with

16   reliable, durable, and safe transportation.  Instead, the Class Vehicles are

17   defective, including but not limited to the defective design and manufacture of

18   their transmissions.

19        129.   As a result of Defendant's breach of the applicable implied

20   warranties, owners and/or lessees of the Class Vehicles suffered an ascertainable

21   loss of money, property, and/or value of their Class Vehicles. Additionally, as a

22   result of the Transmission Defect, Plaintiff and the Class Members were harmed

23   and suffered actual damages in that the Class Vehicles' transmissions are

24   substantially certain to fail before their expected useful life has run.

25        130.   Defendant's actions, as complained of herein, breached the implied

26   warranty that the Class Vehicles were of merchantable quality and fit for such

27   use in violation of California Civil Code §§ 1792 and 1791.1.

28

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

1

**FOURTH CAUSE OF ACTION**

2

**(For Breach of Express Warranty Under Cal. Comm. Code § 2313)**

3    131.   Plaintiff incorporates by reference the allegations contained in the

4    preceding paragraphs of this Complaint.

5    132.   Plaintiff brings this cause of action on behalf of himself and on

6    behalf of the Class Members against Defendant.

7    133.   As a result of Defendant's breach of the applicable express

8    warranties, owners and/or lessees of the Class Vehicles suffered an ascertainable

9    loss of money, property, and/or value of their Class Vehicles. Additionally, as a

10   result of the Transmission Defect, Plaintiff and the Class Members were harmed

11   and suffered actual damages in that the Class Vehicles' transmissions are

12   substantially certain to fail before their expected useful life has run.

13   134.   Defendant provided all purchasers and lessees of the Class Vehicles

14   with the express warranty described herein, which became a material part of the

15   bargain.  Accordingly, Defendant's express warranty is an express warranty

16   under California law.

17   135.   Defendant manufactured and/or installed the transmission and its

18   component parts in the Class Vehicles and the transmission and its component

19   parts are covered by the express warranty.

20   136.   Defendant breached the express warranty by:

21          (a)   Extending a 5 year/60,000 miles powertrain warranty with the

22                purchase or lease of the Class Vehicles, thereby warranting to

23                repair or replace any part defective in material or

24                workmanship, including the subject transmission, at no cost to

25                the owner or lessee;

26          (b)   Selling and leasing Class Vehicles with a transmission that

27                was defective in material and workmanship, requiring repair

28                or replacement within the warranty period; and

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

(c)    Refusing to honor the express warranty by repairing or
replacing, free of charge, the transmission or any of its
component parts.

137.    Plaintiff was not required to notify Ford of the breach and/or was
not required to do so because affording Ford a reasonable opportunity to cure its
breach of written warranty would have been futile. Defendant was also on notice
of the defect from the complaints and service requests it received from Class
Members, from repairs and/or replacements of the transmission or a component
thereof, and through other internal sources.

138.    As a direct and proximate cause of Defendant's breach, Plaintiff and
the other Class Members suffered damages and continue to suffer damages,
including economic damages at the point of sale or lease. Additionally, Plaintiff
and the other Class Members either have incurred or will incur economic
damages at the point of repair in the form of the cost of repair.

139.    Plaintiff and the other Class Members are entitled to legal and
equitable relief against Defendant, including actual damages, consequential
damages, specific performance, attorneys' fees, costs of suit, and other relief as
appropriate.

**RELIEF REQUESTED**

140.    Plaintiff, on behalf of himself, and all others similarly situated,
requests the Court to enter judgment against Defendant, as follows:

(a)    An order certifying the proposed Class and Sub-Classes,
designating Plaintiff as named representative of the Class, and
designating the undersigned as Class Counsel;

(b)    A declaration that Defendant is financially responsible for
notifying all Class Members about the defective nature of the
transmission, including the need for period maintenance;

(c)    An order enjoining Defendant from further deceptive

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

1    distribution, sales, and lease practices with respect to Class

2    Vehicles, and to remove and replace Plaintiff and Class

3    Members' transmissions with a suitable alternative product;

4    (d)    A declaration requiring Defendant to comply with the various

5    provisions of the Song-Beverly Act alleged herein and to

6    make all the required disclosures;

7    (e)    An award to Plaintiff and the Class for compensatory,

8    exemplary, and statutory damages, including interest, in an

9    amount to be proven at trial, except at this time Plaintiff does

10    not pray for any monetary damages as a result of Defendant's

11    violation of the California Consumer Legal Remedies Act;

12    (f)    Any and all remedies provided pursuant to the Song-Beverly

13    Act, including California Civil Code section 1794;

14    (g)    A declaration that Defendant must disgorge, for the benefit of

15    the Class, all or part of the ill-gotten profits it received from

16    the sale or lease of its Class Vehicles, or make full restitution

17    to Plaintiff and Class Members;

18    (h)    An award of attorneys' fees and costs, as allowed by law;

19    (i)    An award of attorneys' fees and costs pursuant to California

20    Code of Civil Procedure § 1021.5;

21    (j)    An award of pre-judgment and post-judgment interest, as

22    provided by law;

23    (k)    Leave to amend the Complaint to conform to the evidence

24    produced at trial; and

25    (l)    Such other relief as may be appropriate under the

26    circumstances.

27    **DEMAND FOR JURY TRIAL**

28    141.   Pursuant to Federal Rule of Civil Procedure 38(b) and Central

District of California Local Rule 38-1, Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

Dated:  September 28, 2012

Respectfully submitted,

Initiative Legal Group APC

By:_____

Jordan L. Lurie
Andrew J. Sokolowski
Tarek H. Zohdy

Attorneys for Plaintiff Omar Vargas

CLASS ACTION COMPLAINT

# EXHIBIT 1

Jordan L. Lurie (SBN 130013)
JLurie@initiativelegal.com
Andrew J. Sokolowski (SBN 226685)
ASokolowski@initiativelegal.com
Tarek H. Zohdy (SBN 247775)
TZohdy@initiativelegal.com
Initiative Legal Group APC
1800 Century Park East, 2nd Floor
Los Angeles, California 90067
Telephone:   (310) 556-5637
Facsimile:   (310) 861-9051

Attorneys for Plaintiff Omar Vargas

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA—WESTERN DIVISION

| | |
|---|---|
| OMAR VARGAS, individually, and on behalf of other members of the general public similarly situated,<br><br>    Plaintiff,<br><br>    vs.<br><br>FORD MOTOR COMPANY,<br><br>    Defendant. | Case No:<br><br>**DECLARATION OF OMAR VARGAS IN SUPPORT OF PLAINTIFF'S SELECTION OF VENUE FOR TRIAL OF CLAIMS ARISING UNDER THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT**<br><br>[Cal. Civ. Code, § 1780, subd. (d)] |

**DECLARATION OF OMAR VARGAS**

I, Omar Vargas, declare under penalty of perjury as follows:

1.      I make this declaration based upon my personal knowledge except as to those matters stated herein that are based upon information and belief, which I believe to be true.  Unless the context indicates otherwise, I have personal knowledge of the facts stated in this Declaration and if called as a witness, I could and would competently testify thereto.  I am Plaintiff Omar Vargas in the above-captioned matter.

2.      Pursuant to California Civil Code section 1780(d), this Declaration is submitted in support of Plaintiff's Selection of Venue for the Trial of Plaintiff's Cause of Action alleging violation of California's Consumer Legal Remedies Act.

3.      I leased my 2011 Ford Fiesta, which is the vehicle at issue in this action, from authorized Ford dealer, Sunrise Ford, in Los Angeles County.  In addition, I serviced my 2011 Ford Fiesta at authorized Ford dealerships in Los Angeles County.

4.      On information and belief, Defendant Ford Motor Company is a corporation organized and in existence under the laws of the State of California and registered with the California Department of Corporations to conduct business in California.  Defendant is engaged in the business of designing, manufacturing, constructing, assembling, marketing, distributing, or selling automobiles and other motor vehicles and motor vehicle components throughout the United States of America, including Los Angeles County, California.

5.      Based on the facts set forth herein, this Court is a proper venue for the prosecution of Plaintiff's Cause of Action alleging violation of California's Consumer Legal Remedies Act because Defendant conducts business activities in the County of Los Angeles, California, including, but not limited to marketing, distributing and/or selling Class Vehicles to Class Members.  In addition, the transaction at issue, or a substantial portion thereof, occurred in Los Angeles

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

DECLARATION OF OMAR VARGAS IN SUPPORT OF PLAINTIFF'S SELECTION OF FORUM FOR TRIAL

1 | County. *See,* Cal. Civ. Code § 1780(d).

2 |     I declare under penalty of perjury under the laws of the State of California

3 | that the forgoing is true and correct. Executed this 26 th day of September, 2012 at

4 | Los Angeles, California.

5

6

7 | Omar Vargas

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF OMAR VARGAS IN SUPPORT OF PLAINTIFF'S SELECTION OF VENUE FOR TRIAL

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Audrey B. Collins and the assigned discovery Magistrate Judge is Frederick F. Mumm.

The case number on all documents filed with the Court should read as follows:

## CV12- 8388 ABC (FFMx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

[X] **Western Division**
    **312 N. Spring St., Rm. G-8**
    **Los Angeles, CA 90012**

[ ] **Southern Division**
    **411 West Fourth St., Rm. 1-053**
    **Santa Ana, CA 92701-4516**

[ ] **Eastern Division**
    **3470 Twelfth St., Rm. 134**
    **Riverside, CA 92501**

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)        NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

ORIGINAL

Name & Address:
Andrew J. Sokolowski
Initiative Legal Group APC
1800 Century Park East, 2nd Floor
Los Angeles, California 90067

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

OMAR VARGAS, individually, and on behalf of a
class of similarly situated individuals,

PLAINTIFF(S)

v.

FORD MOTOR COMPANY,

DEFENDANT(S).

CASE NUMBER

**CV12-08388** ABC (FFMx)

**SUMMONS**

TO:     DEFENDANT(S):

A lawsuit has been filed against you.

Within ___21___ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.   The answer or motion must be served on the plaintiff's attorney, _Andrew J. Sokolowski_____, whose address is _1800 Century Park East, 2nd Floor Los Angeles, California 90067_____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Dated: _____ SEP 2 8 2012

Clerk, U.S. District Court

By: _____

Deputy Clerk

(Seal of the Court)

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

Conformed Copy

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
OMAR VARGAS, individually, and on behalf of a class of similarly situated individuals,

**DEFENDANTS**
FORD MOTOR COMPANY.

(b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)
Andrew J. Sokolowski, Initiative Legal Group APC1800 Century Park East, 2nd Floor
Los Angeles, California 90067, Telephone: (310) 556-5637

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff ☐ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant ☑ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☑ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☑ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify): ☐ 6 Multi-District Litigation ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☑ Yes ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☑ Yes ☐ No ☑ **MONEY DEMANDED IN COMPLAINT: $** Greater than $5,000,000.00

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
California Civil Code § 1750, et seq.; California Business & Professions Code § 17200; California Civil Code §§ 1792 and 1791.1; Cal. Comm. Code § 2313

**VII. NATURE OF SUIT (Place an X in one box only.)**

**OTHER STATUTES**
☐ 400 State Reapportionment
☐ 410 Antitrust
☐ 430 Banks and Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation
☐ 470 Racketeer Influenced and Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Sat TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☑ 890 Other Statutory Actions
☐ 891 Agricultural Act
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 895 Freedom of Info. Act
☐ 900 Appeal of Fee Determination Under Equal Access to Justice
☐ 950 Constitutionality of State Statutes

**CONTRACT**
☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans)
☐ 153 Recovery of Overpayment of Veteran's Benefits
☐ 160 Stockholders' Suits
☐ 190 Other Contract
☐ 195 Contract Product Liability
☐ 196 Franchise

**REAL PROPERTY**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**TORTS — PERSONAL INJURY**
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Fed. Employers' Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Personal Injury-Med Malpractice
☐ 365 Personal Injury-Product Liability
☐ 368 Asbestos Personal Injury Product Liability

**IMMIGRATION**
☐ 462 Naturalization Application
☐ 463 Habeas Corpus-Alien Detainee
☐ 465 Other Immigration Actions

**TORTS — PERSONAL PROPERTY**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**BANKRUPTCY**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**CIVIL RIGHTS**
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/Accommodations
☐ 444 Welfare
☐ 445 American with Disabilities - Employment
☐ 446 American with Disabilities - Other
☐ 440 Other Civil Rights

**PRISONER PETITIONS**
☐ 510 Motions to Vacate Sentence Habeas Corpus
☐ 530 General
☐ 535 Death Penalty
☐ 540 Mandamus/ Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**FORFEITURE / PENALTY**
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 R.R. & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety /Health
☐ 690 Other

**LABOR**
☐ 710 Fair Labor Standards Act
☐ 720 Labor/Mgmt. Relations
☐ 730 Labor/Mgmt. Reporting & Disclosure Act
☐ 740 Railway Labor Act
☐ 790 Other Labor Litigation
☐ 791 Empl. Ret. Inc. Security Act

**PROPERTY RIGHTS**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**SOCIAL SECURITY**
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
☐ 870 Taxes (U.S. Plaintiff or Defendant)
☐ 871 IRS-Third Party 26 USC 7609

CV12-08388

**FOR OFFICE USE ONLY:** Case Number: ____________

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No  ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No  ☐ Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)    ☐ A. Arise from the same or closely related transactions, happenings, or events; or
                       ☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
                       ☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
                       ☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐  Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Plaintiff OMAR VARGAS: Los Angeles, California | |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐  Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | FORD MOTOR COMPANY, Michigan |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
     **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles, California | |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

X.  SIGNATURE OF ATTORNEY (OR PRO PER):  _Andrew J. Shlevand_  Date  September 28, 2012

Notice to Counsel/Parties:  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |