1  Jordan L. Lurie (SBN 130013)
2  Jordan.Lurie@capstonelawyers.com
   David L. Cheng (SBN 240926)
3  David.Cheng@capstonelawyers.com
   Tarek H. Zohdy (SBN 247775)
4  Tarek.Zohdy@capstonelawyers.com
   Capstone Law APC
5  1840 Century Park East, Suite 450
   Los Angeles, California 90067
6  Telephone:  (310) 556-4811
   Facsimile:   (310) 943-0396
7
   Attorneys for Plaintiff Omar Vargas
8
                UNITED STATES DISTRICT COURT
9
        CENTRAL DISTRICT OF CALIFORNIA—WESTERN DIVISION
10

11  OMAR VARGAS, individually, and         Case No.: 2:12-cv-08388 ABC (FFMx)
    on behalf of a class of similarly
12  situated individuals,                   Hon. Judge Audrey B. Collins
                                            Courtroom 680
13              Plaintiff,
                                            **FIRST AMENDED CLASS ACTION**
14       v.                                 **COMPLAINT**
                                            **(TO INCLUDE A REQUEST FOR**
15  FORD MOTOR COMPANY,                     **DAMAGES PURSUANT TO CAL.**
                                            **CIV. CODE § 1782(d))**
16              Defendant.
                                            **DEMAND FOR JURY TRIAL**
17

18

19

20

21

22

23

24

25

26

27

28

# INTRODUCTION

**Plaintiff hereby amends his complaint to include a request for damages (at paragraph 106 and in the Relief Requested) pursuant to Cal. Civ. Code § 1782(d).   The other allegations are unchanged.**

1.     Plaintiff Omar Vargas ("Plaintiff") brings this action for himself and on behalf all persons in the United States who purchased or leased any 2011 through 2013 Ford Fiesta and/or 2012 through 2013 Ford Focus vehicles equipped with Ford's dual clutch transmission ("Dual Clutch Transmission" or "PowerShift Transmission") (collectively, "Class Vehicles") designed manufactured, marketed, distributed, sold, warranted and serviced by Ford Motor Company ("Ford" or "Defendant").

2.     Ford designed and marketed its "PowerShift Transmission" as a more advanced and fuel efficient alternative to a traditional manual or automatic transmission and offered it as the sole "Automatic" option in the Class Vehicles.

3.     The PowerShift Transmission is a $1,095.00 option for the Class Vehicles.

4.     Traditional manual transmissions use a driver-controlled clutch.  By pressing and releasing a foot pedal, the driver engages and disengages the engine from the transmission, allowing the vehicle to travel smoothly while the driver manually changes gears.

5.     In contrast, typical automatic transmissions free the driver from operating the clutch through the use of a fluid-filled device called a torque converter.  The torque converter substitutes for the manual transmission's clutch, transmitting power from the engine to the transmission through a fluid medium.

6.     While typical automatic transmissions offer increased convenience, they are generally less fuel efficient and slower-shifting than their manual counterparts.  This is because the torque converter transfers power less efficiently than a clutch.  As a result, Ford marketed and sold its Powershift

Transmission as a best of both worlds alternative offering a manual transmission's fuel economy with an automatic transmission's ease of operation and shift quality.

7.    Ford's PowerShift Transmission, while sometimes referred to as an automatic, is actually a set of computerized manual transmissions.  It lacks a torque converter, instead using two "dry" clutches to directly engage and disengage the engine with and from the transmission.  Whereas similar "automated manual" transmissions on the market use "wet" clutches bathed in oil, Ford's PowerShift Transmission clutches lack the oil pumps and other components of a wet clutch system, and instead operate "dry."

8.    Ford designed the Class Vehicles' computerized "automated manual" transmissions in an effort to meet heightened governmental and consumer expectations for fuel economy, performance and efficiency. According to Ford's own press release dated March 10, 2010, "PowerShift with dry-clutch facings and new energy-saving electromechanical actuation for clutches and gear shifts saves weight, improves efficiency, increases smoothness, adds durability and is sealed with low-friction gear lubricant for the life of the vehicle.  This transmission requires no regular maintenance."

9.    Theoretically, an automated manual transmission should have the convenience of an automatic transmission without sacrificing the fuel efficiency and shift speed of a manually shifted vehicle.  In practice, however, Ford's PowerShift Transmission is plagued by numerous problems and safety concerns.

10.    The PowerShift Transmission contains one or more design and/or manufacturing defects that cause, among other problems, transmission slips, bucking, kicking, jerking, harsh engagement, premature internal wear, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle (the "Transmission Defect").

11.    The Transmission Defect causes unsafe conditions, including, but

1  not limited to, Class Vehicles suddenly lurching forward, delayed acceleration,

2  and sudden loss of forward propulsion.  These conditions present a safety hazard

3  because they severely affect the driver's ability to control the car's speed,

4  acceleration, and deceleration.  For example, these conditions make it difficult to

5  safely merge into traffic.  Even more troubling, the Transmission Defect can

6  cause the vehicle to fail to downshift and decelerate when the brakes are

7  depressed.  As a result, Plaintiff and Class Members have experienced their cars

8  lurching forward into intersections at red lights due to the failure of their braking

9  efforts to stop the car.[1]

10        12.    On information and belief, the Transmission Defect also causes

11  premature wear to the Dual Clutch Transmission's clutch plates and other

12  components, which results in premature transmission failure and requires

13  expensive repairs, including transmission replacement.

14        13.    Beginning as early as 2010, Defendant knew or should have known

15  that the Class Vehicles and the PowerShift Transmission contain one or more

16  design and/or manufacturing defects that negatively affect the drivability of the

17  Class Vehicles and cause safety hazards.

18        14.    The Ford Fiesta and Ford Focus have the same or substantially

19  identical optional PowerShift Transmission, and the Transmission Defect is the

20  same for both vehicles.

21        15.    Before offering the vehicle for sale in the United States, Ford

22  offered the same vehicles, equipped with a similar dual-clutch transmission, in

23

24  [1] *See*, for example, this 2011 Fiesta owner's complaint to the National
    Highway Traffic Safety Administration ("NHTSA"):  THE TRANSMISSION
25  SEEMS TO FAIL TO GO INTO NEUTRAL WHEN BRAKES ARE APPLIED.
    CAR STARTED WITH TRANSMISSION ISSUES INITIALLY WITH THE
26  CAR TRYING TO FIGHT THE BRAKES A FEW TIMES JUST BEFORE
    STOPPING.  AT TIMES THE CAR SIGNIFICANTLY OVERCOMES THE
27  BRAKES.  ON ONE INSTANCE THE CAR FAILED TO STOP AT RED
    LIGHT AND MANAGED TO CREEP INTO THE INTERSECTION BEFORE
28  STOPPING.  (Safecar.gov, *Search for Complaints* (August 6, 2012), http://www-
    odi.nhtsa.dot.gov/complaints/).

FIRST AMENDED CLASS ACTION COMPLAINT

Europe and Australia. Although the United States version utilizes dry-clutches as opposed to the European and Australian version's wet-clutches, Ford acknowledged that the transmission offered for sale in the United States is "derivative" of the design from the European and Australian models.  European and Australian versions of the dual-clutch transmission suffered from similar defects known to Ford as alleged herein.

16.    In addition to having years of feedback and testing from its European and Australian dual-clutch transmission, according to Ford, its team:

> "logged approximately three years or 6,000 man-hours of computer-aided mathematical modeling, simulation and analysis of engine speeds, torque and clutch capacity in only 24 months real time to prove the THF concept was production ready."

17.    Torque Hole Vectoring ("THF") is a program in the PowerShift Transmission that uses a combination of computer algorithms and computer aided tools to fill the torque hole, or what is more commonly perceived as a hesitation, while shifting.  Ford claimed the THF technology would create a smoother driving experience for the customer.

18.    Despite these claims, consumers have not experienced a smoother ride from THF or any other technology incorporated in the PowerShift Transmission.  Multiple reviews in automotive journals and customer complaints documented and confirmed that the Class Vehicles' transmissions were exhibiting the defects, malfunctions, misadjustments, and nonconformities that the Plaintiff and Class Members now complain of.

19.    In a 2011 *New York Times*' review of the Ford Focus, the reviewer stated that "Ford programmed the PowerShift dual-clutch transmission to change gears in odd and infuriating ways" and that "[t]he transmission is often in the wrong gear at the wrong time, resulting in jerks, pauses and lethargic acceleration."

20.    In response to these criticisms, Greg Burgess, an engineer at Ford,

FIRST AMENDED CLASS ACTION COMPLAINT

conceded in the same *New York Times* article that "[i]t is quite a challenge to deliver something that is very, very fuel-efficient and yet feels like a conventional automatic, and there are some balances and some tradeoffs that we make."

21.   As a result of the Transmission Defect, in 2010 and 2011, Ford even issued several Technical Service Bulletins ("TSBs") to its dealers in the United States acknowledging defects in the PowerShift Transmission.  Ford's TSB from September 2010, covering the 2011 Ford Fiesta, informed dealers of "concerns such as no engagement or intermittent no engagement in Drive or Reverse when shifting from Park to Drive or Reverse, grinding noise during engagement, and/or a check engine light with transmission control module (TCM) diagnostic trouble code…"

22.   Similarly, Ford's TSB released on January 1, 2011, covering the 2011 Ford Fiesta with the PowerShift Transmission, informs dealers of problems with the PowerShift Transmission causing "a loss of power, hesitation, surge, or lack of throttle response while driving."

23.   Ford's TSB from March 31, 2011, also covering the 2011 Ford Fiesta, informs dealers of problems where the PowerShift Transmission "exhibit[s] a rattle/grind noise in reverse only."

24.   Ford issued two separate TSBs in May of 2011, both covering the Ford Fiesta.  These TSBs addressed problems with the PowerShift Transmission including "concerns in Drive or Reverse when shifting from Park to Drive or reverse, no engagement, delayed engagement, intermittent engagement, noise during engagement. . ."

25.   Another Ford TSB released in September 2011 advised dealers to reprogram the transmission computer if 2011 Ford Fiesta owners complained about "hesitation when accelerating from a low speed after coast down, harsh or late 1-2 upshift, harsh shifting during low-speed tip-in or tip-out maneuvers

1    and/or engine r.p.m. flare when coasting to a stop."

2        26.    The 2012 Ford Focus was the subject of a September 2011 Ford

3    TSB, which informed dealers of transmission problems including: "RPM flare on

4    deceleration coming to a stop, rough idle on deceleration coming to a stop,

5    intermittent engine idle fluctuations at a stop, intermittent vehicle speed control

6    inoperative, intermittent harsh engagement/shift…"

7        27.    In May of 2012, Ford issued a "Customer Satisfaction Program:

8    Program Number 12B37."  In a letter sent to 2012 Ford Focus drivers, Ford

9    indicated that drivers "may experience rough or jerky automatic transmission

10   shifts.  In addition, the vehicle may experience roll back when the driver is

11   transitioning from the brake pedal to the accelerator pedal while on a slight

12   incline."  Significantly, Ford did not issue a recall and did not warn drivers of the

13   safety risks associated with these known problems.

14       28.    Because Ford will not notify Class Members that the transmission is

15   defective, Plaintiff and Class Members (as well as members of the general

16   public) are subjected to dangerous driving conditions that often occur without

17   warning.

18       29.    Defendant knew about and concealed the Transmission Defect

19   present in every Class Vehicle, along with the attendant dangerous safety and

20   driveability problems, from Plaintiff and Class Members, at the time of sale,

21   lease, and repair and thereafter.  In fact, instead of repairing the defects in the

22   PowerShift Transmission, Ford either refused to acknowledge their existence, or

23   performed ineffectual software upgrades that simply masked the defects.

24       30.    If Plaintiff and the Class Members knew about these defects at the

25   time of sale or lease, Plaintiff and Class Members would not have purchased or

26   leased the Class Vehicles or would have paid less for them.

27       31.    As a result of their reliance on Defendant's omissions and/or

28   misrepresentations, owners and/or lessees of the Class Vehicles suffered an

FIRST AMENDED CLASS ACTION COMPLAINT

1  ascertainable loss of money, property, and/or value of their Class Vehicles,

2  including, but not limited to, out of pocket costs for the PowerShift

3  Transmission.  Additionally, as a result of the Transmission Defect, Plaintiff and

4  the Class Members were harmed and suffered actual damages in that the Class

5  Vehicles' transmissions are substantially certain to fail before their expected

6  useful life has run.

7  <center>**PARTIES**</center>

8  <u>**Plaintiff**</u>

9      32.   Plaintiff Omar Vargas is a California citizen who resides in

10  Los Angeles, California.  On or about August 1, 2011, Plaintiff leased a new

11  2011 Ford Fiesta from Sunrise Ford of North Hollywood, an authorized Ford

12  dealer in Los Angeles County.  His vehicle was equipped with an optional

13  PowerShift Transmission that cost him $1,095.00.

14      33.   Plaintiff leased his vehicle primarily for personal, family, or

15  household use.  Ford manufactured, sold, distributed, advertised, marketed, and

16  warranted the vehicle.

17      34.   During the first three (3) months of the lease, Mr. Vargas noticed

18  symptoms of the Transmission Defect, including lunging or jerking forward

19  when attempting to decelerate, hesitation, and jerking when attempting to

20  accelerate, akin to a slingshot effect.

21      35.   On or about November 2011, Plaintiff took his vehicle to Buerge

22  Ford, an authorized Ford dealer in Los Angeles, California, complaining that the

23  vehicle was jerking, lunging and unsafe to drive.  The service advisor told

24  Plaintiff that these symptoms were normal because the transmission acts like it

25  has a clutch.  The service advisor also said that the dealership would not attempt

26  to repair his vehicle because it was purchased from a different dealership.

27      36.   On or about February 2012, Plaintiff attempted to contact the

28  salesman from Sunrise Ford who leased him the vehicle.  The salesman did not

1    return Plaintiff's multiple calls.

2         37.    On or about February 2012, Plaintiff contacted the service

3    department at Sunrise Ford, once again complaining that the vehicle was jerking,

4    lunging and unsafe to drive.  The service advisor told Plaintiff that these

5    symptoms were normal for this vehicle and that there was nothing the service

6    department could do to repair the vehicle.

7         38.    On June 2, 2012 Plaintiff brought his vehicle to Sunrise Ford for a

8    scheduled service appointment.  While at the dealership, Plaintiff once again

9    explained to the service department that his vehicle was jerking, lunging and

10   unsafe to drive.  Plaintiff requested that a technician test drive the vehicle with

11   him so they could observe the problems and fix the vehicle.  The dealership

12   personnel refused to test drive Plaintiff's vehicle.  Furthermore, the transmission

13   technician was unavailable at that time and the dealership would not inspect or

14   attempt to repair Plaintiff's vehicle.

15        39.    On August 15, 2012 Plaintiff contacted the service department at

16   Star Ford, an authorized Ford dealer in Glendale, California.  Plaintiff explained

17   to the service advisor that his vehicle was jerking, lunging and unsafe to drive.

18   The service advisor acknowledged that the dealership had received many

19   complaints about the PowerShift dual-clutch transmission in the Ford Fiesta but

20   said there was nothing that the dealership could do about it.

21        40.    On or about August 22, 2012, Plaintiff contacted Buerge Ford again

22   and advised the dealer that he was still experiencing problems with his

23   PowerShift dual-clutch transmission.  For the second time, the service advisor

24   asked Plaintiff to bring the vehicle to the dealer that he purchased it from and

25   claimed that Buerge Ford was too busy with other service appointments to

26   inspect his vehicle.

27        41.    That same day Plaintiff also contacted 101 Vermont Ford, an

28   authorized Ford dealer in Los Angeles, California.  Similar to the response from

Buerge Ford, the service advisor at 101 Vermont Ford asked Plaintiff to bring his vehicle to the dealer from which he purchased the vehicle.

42. On or about September 1, 2012, Plaintiff took his vehicle back to Sunrise Ford, complaining that the vehicle jerks back and forth at any speed. The dealer verified Plaintiff's concerns and reprogrammed the transmission control module. However, the dealer noted that a shudder was still felt after the reprograming. The dealer diagnosed a transmission fluid leak from the clutch housing and replaced the clutch assembly.

43. Despite these repair attempts by Ford and its dealers, Plaintiff continues to experience the Transmission Defect, including, but not limited to transmission slips, bucking, kicking, jerking, harsh engagement, premature internal wear, sudden acceleration, delay in downshifts, and delayed acceleration.

44. At all times, Plaintiff, like all Class Members, has driven his vehicle in a foreseeable manner and in the manner in which it was intended to be used.

**Defendant**

45. Defendant Ford Motor Company is a corporation organized and in existence under the laws of the State of Delaware and registered with the California Department of Corporations to conduct business in California. Ford Motor Company's Corporate Headquarters is located in Dearborn, Michigan. Ford Motor Company designs and manufactures motor vehicles, parts, and other products for sale in the United States and throughout the world. Ford Motor Company is the warrantor and distributor of the Class Vehicles in the United States.

46. At all relevant times, Defendant was and is engaged in the business of designing, manufacturing, constructing, assembling, marketing, distributing, and selling automobiles and motor vehicle components in California and throughout the United States of America.

## JURISDICTION

47.     This is a class action.

48.     Plaintiff and other members of the Proposed Class are citizens of states different from the home state of Defendants.

49.     On information and belief, aggregate claims of individual Class Members exceed $5,000,000.00 in value, exclusive of interest and costs.

50.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(d).

## VENUE

51.     Ford, through its business of distributing, selling, and leasing the Class Vehicles, has established sufficient contacts in this district such that personal jurisdiction is appropriate.  Defendant is deemed to reside in this district pursuant to 28 U.S.C. § 1391(a).

52.     In addition, a substantial part of the events or omissions giving rise to these claims and a substantial part of the property that is the subject of this action are in this district.  In addition, Plaintiff's Declaration, as required under California Civil Code section 1780(d) but not pursuant to *Erie* and federal procedural rules, which reflects that a substantial part of the events or omissions giving rise to the claims alleged herein occurred, or a substantial part of property that is the subject of this action, is situated in Los Angeles County, California.  Plaintiff's Declaration regarding venue is attached as Exhibit 1.

53.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a).

## FACTUAL ALLEGATIONS

54.     Since 2010, Ford has designed, manufactured, distributed, sold, and leased the Class Vehicles.  Ford has sold, directly or indirectly, through dealers and other retail outlets, thousands of Class Vehicles equipped with the PowerShift Transmission in California and Nationwide.

55.     Ford's PowerShift Transmission, while sometimes referred to as an automatic, is actually a set of computerized manual transmissions.  It lacks a

torque converter, instead using two "dry" clutches to directly connect and disconnect the engine to and from the transmission.  Whereas other automated manual transmissions on the market use "wet" clutches bathed in oil, Ford's PowerShift clutches lack the oil pumps and other components of a wet clutch system, and instead operate dry.

56.   The PowerShift Transmission is offered as the sole "automatic" option for both the Ford Fiesta and Ford Focus and is priced at $1,095.00.  The PowerShift Transmissions for both vehicles have the same design and components.

57.   On information and belief, Ford designed the Class Vehicles' computerized "automated manual" transmissions in an effort to meet heightened governmental and consumer expectations for fuel economy, performance and efficiency.  Theoretically, such a transmission should have the convenience of an automatic transmission without sacrificing fuel efficiency.  In practice, however, Ford's PowerShift Transmission has been plagued by numerous problems and safety hazards.

58.   Dating back to at least 2010, Ford was aware of the defects of the PowerShift Transmission.  Ford, however, failed and refused to disclose these known defects to consumers.  As a result of this failure, Plaintiff and Class Members have been damaged.

**The Transmission Defect Poses an Unreasonable Safety Hazard**

59.   The Transmission Defect causes unsafe conditions in the Class Vehicles, including but not limited vehicles suddenly lurching forward, sudden loss of forward propulsion, and significant delays in acceleration.  These conditions present a safety hazard because they severely affect the driver's ability to control the Class Vehicle's speed, acceleration, and deceleration of the car. Even more troubling, the Transmission Defect can cause the vehicle to fail to downshift and decelerate when the brakes are depressed.  As a result, Plaintiff

1   and Class Members have experienced their cars lurching forward into

2   intersections at red lights due to the failure of their braking efforts to stop the

3   car.

4          60.     Hundreds, if not thousands, of purchasers and lessees of the Class

5   Vehicles have experienced problems with the transmission.  Complaints filed by

6   consumers with the National Highway Traffic Safety Administration

7   ("NHTSA") demonstrate that the defect is widespread and dangerous and that it

8   manifests without warning.  The complaints also indicate Defendant's awareness

9   of the problems with the transmission and how potentially dangerous the

10  defective condition is for consumers.  The following are some safety complaints

11  relating to PowerShift Transmission Defects (spelling and grammar mistakes

12  remain as found in the original) (Safecar.gov, *Search for Complaints* (July 24,

13  2012), http://www-odi.nhtsa.dot.gov/complaints/):

14      **NHTSA Complaints:**

15      a.   [2011 Ford Fiesta] TRANSMISSION SHIFT ERRATICLY
            WHEN SLOWING DOWN OR WHILE DRIVING IN
16          HEAVILY CONGESTED TRAFFIC. SOMETIMES IT WILL
            MAKE VEHICLE LUNGE FORWARD WITH VERY LIGHT
17          FUEL PEDAL APPLICATION. TRANSMISSION IS ALSO
            MAKING AN AUDIBLE "CLUNK" WHEN THIS HAPPENS.
18          MAYBE A PCM RE FLASH COULD CORRECT THE
            PROBLEM? THIS HAS BEEN AN ONGOING ISSUE SINCE
19          DAY ONE STARTING IN DECEMBER 2010. *TR

20      b.   I RECENTLY PURCHASED A BRAND NEW 2011 FORD
            FIESTA. IN THE PAST 5 MONTHS I HAVE TAKEN IT TO
21          THE DEALERSHIP I PURCHASED IT FROM 5 TIMES
            BECAUSE THE TRANSMISSION MAKES A LOUD
22          GRINDING NOISE AND LURCHES FORWARD WHEN I AM
            ON A HILL OR IN STOP AND GO TRAFFIC. I HAVE
23          CONTACTED FORD DIRECTLY AND GOT THE SAME
            RESPONSE AS WHEN I TOOK IT TO THE DEALER. THEY
24          BOTH SAY IT IS "NORMAL". AFTER CONTACTING FORD
            DIRECTLY THE SERVICE MANAGER AT MY LOCAL
25          FORD CONTACTED ME AND WENT ON A TEST DRIVE
            WITH ME WHERE HE SAID HE BOTH HEARD AND FELT
26          WHAT I WAS TALKING ABOUT. HE THEN TOOK A CAR
            RIGHT OFF THE LOT FOR A TEST DRIVE AND TOLD ME
27          THAT ONE DID NOT DO ANY OF THE THINGS MINE IS
            DOING. A COUPLE HOURS LATER I GET A CALL FROM
28          HIM STATING FORD HAS TOLD HIM THIS IS NORMAL

FOR THE CAR TO MAKE THESE NOISES AND LURCH FORWARD AND THAT THERE IS NOTHING ELSE THEY CAN DO FOR ME. ASSURING ME THAT THE CAR IS UNDER WARRANTY AND THAT IF THE TRANSMISSION FAILS IT WILL BE COVERED. I DRIVE 70 MILES A DAY IN RUSH HOUR TRAFFIC ON HILLS AND TO ME THIS IS A HUGE SAFETY CONCERN. THERE ARE MANY PEOPLE THAT HAVE COMPLAINED TO FORD ABOUT THE SAME PROBLEM SO THEY DID THE TSB FOR THIS ISSUE AND IT MADE THE PROBLEM WORSE NOW WHEN I AM ON A HILL THE CAR ROLLS BACK AND THE GRINDING NOISE IS WORSE. I TOOK THE CAR BACK RIGHT AFTER THEY PERFORMED THE TSB AND TOLD THEM AND THEY ARE STILL SAYING THIS IS NORMAL. *TR

c.   TL* THE CONTACT OWNS A 2011 FORD FIESTA. WHILE DRIVING APPROXIMATELY 5 MPH, THE ACCELERATOR PEDAL WAS ENGAGED FOLLOWED BY A THREE SECOND DELAY RESPONSE. THE FAILURE WOULD OCCUR AT ANY GIVEN TIME. THE VEHICLE WAS TAKEN TO AN AUTHORIZED DEALER WHERE THEY INFORMED THE CONTACTS THAT THE VEHICLE WAS OPERATING PROPERLY. THE FAILURE MILEAGE WAS APPROXIMATELY 3,700. UPDATED 05/25/11 *BF THE CONSUMER STATED O SEVERAL OCCASIONS THE VEHICLE COULD NOT DECIDE WHICH GEAR TO GO INTO. THERE WAS DELAY IN ACCELERATION. UPDATED 07/08/11

d.   [2011 Ford Fiesta] THE TRANSMISSION SEEMS TO FAIL TO GO INTO NEUTRAL WHEN BRAKES ARE APPLIED. CAR STARTED WITH TRANSMISSION ISSUES INITIALLY WITH THE CAR TRYING TO FIGHT THE BRAKES A FEW TIMES JUST BEFORE STOPPING. AT TIMES THE CAR SIGNIFICANTLY OVERCOMES THE BRAKES. ON ONE INSTANCE THE CAR FAILED TO STOP AT RED LIGHT AND MANAGED TO CREEP INTO THE INTERSECTION BEFORE STOPPING. THE TRANSMISSION DOES SEEM TO HAVE SAFETY PROBLEMS PARTICULARLY IT MAKES IT HARD TO PREDICT HOW THE CAR WILL COME TO A STOP FROM A HIGH RATE OF SPEED. THE STOPPING IS JERKY AND THE STOPPING DISTANCE IS VARIABLE AND INCONSISTENT DUE TO THE "JERKY" BEHAVIOR OF TRANSMISSION. *TR

e.   [2011 Ford Fiesta] VEHICLE HESITATES GREATLY UPON ACCELERATION AND STUTTERS LIKE IT IS JUMPING IN AND OUT OF GEAR. IT IS AN AUTOMATIC. *TR

f.   THIS IS IN REGARDS TO A NEW 2011 FORD FIESTA WITH THE POWERSHIFT 6-SPEED DUAL-CLUTCH TRANSMISSION. 3 TIMES NOW I HAVE EXPERIENCED THE TRANSMISSION HESITATE FOR AN EXTENDED PERIOD OF TIME BEFORE ENGAGING. EACH TIME IT HAS HAPPENED I HAVE BEEN COASTING IN TRAFFIC AT

SPEEDS BETWEEN 15-25 MPH OR SO, WAITING FOR ONCOMING TRAFFIC TO PASS AND THEN ATTEMPTING TO ACCELERATE ACROSS LANES OF TRAFFIC WITHOUT GETTING HIT. WHEN DOING THIS, INSTEAD OF ACCELERATING QUICKLY TO AVOID GETTING HIT BY TRAFFIC THE CAR WOULD ACT LIKE IT WAS REVVING BUT NOT ENGAGING THE CLUTCH SO I WOULD END UP JUST COASTING ACROSS LANES OF INCOMING TRAFFIC. TO AVOID HAVING THIS HAPPEN I HAVE LEARNED THAT I HAVE TO QUICKLY AND FULLY STOMP ON THE GAS PEDAL IN ORDER FOR THE TRANSMISSION TO REALIZE I'M IN NEED OF QUICK ACCELERATION. USING ONLY MODERATE PRESSURE ON THE GAS PEDAL YIELDS THE SCARY HESITATION THAT HAS LEAD TO NEAR IMMINENT COLLISIONS. LIGHT PRESSURE TO THE GAS PEDAL TENDS TO MAKE THE CAR BARELY ACCELERATE AT ALL AND SOMETIMES FEEL LIKE IT'S ABOUT TO STALL. IT SEEMS TO ME THE COMPUTER GETS CONFUSED IN THIS SCENARIO SINCE YOU ARE FIRST DECELERATING, THEN COASTING, THEN TRYING TO ACCELERATE AGAIN ALL WITHIN A SHORT TIME-FRAME. *TR

g.   TL* THE CONTACT OWNS A 2011 FORD FIESTA. WHILE DRIVING DRIVING APPROXIMATELY 10 MPH, THE TRANSMISSION EMITTED A LOUD GRINDING NOISE WITH EXCESSIVE HESITATION. ON A SEPARATE OCCASION THE TRANSMISSION FAILED TO RESPOND DURING ACCELERATION. THE VEHICLE WAS TAKEN TO AN AUTHORIZED DEALER FOUR DIFFERENT TIMES FOR THE IDENTICAL FAILURE. MOST RECENT THE VEHICLE WAS TAKEN TO THE DEALER AND AN ENGINEER INSPECTED THE VEHICLE AND STATED THE TRANSMISSION RESPONSE WAS A COMMON CHARACTERISTIC. THE VEHICLE HAD NOT BEEN REPAIRED. THE MANUFACTURER WAS NOT MADE AWARE OF THE DEFECT. THE APPROXIMATE FAILURE MILEAGE WAS 500.

h.   MY 2011 FORD FIESTA HAS ISSUES WITH THE TRANSMISSION. IT SHIFTS HARD AND IRRATICALLY SHIFTS AT LOWER SPEEDS. I HAVE TAKEN IT BACK INTO THE DEALERSHIP 2 TIMES IN THE FIRST 5 MONTHS OF OWNING IT AND ALL THEY DID WAS A SOFTWARE UPDATE ON THE SECOND VISIT. THE FIRST VISIT, THEY SAID THEY COULD NOT FIND ANYTHING WRONG WITH IT. I NOW HAVE ANOTHER APPOINTMENT FOR TOMORROW AND I HAVE ONLY HAD THIS CAR SINCE FEBRUARY. I HAVE DRIVEN IT HOPING THAT IT WOULD JUST WORK ITSELF OUT SINCE IT WAS NEW BUT IT HAS GOTTEN WORSE OVER TIME. *KB

i.   [2011 Ford Fiesta] TRANSMISSION UP SHIFTS/DOWN SHIFTS VERY HARD AT SPEEDS BETWEEN 10-30MPH. WORSE WHEN IN TRAFFIC. *TR

j.  [2012 Ford Fiesta] WHILE DRIVING THE VEHICLE, DRIVER WAS ENTERING THE FREEWAY, THE VEHICLE SHIFTED THROUGH ALL THE GEARS RAPIDLY LEAVING THE VEHICLE MOVING AT ~40 - 45MPH AND NOT SPEEDING UP. THE ACCELERATION PEDAL WAS TO THE FLOOR AND THE CARE DIDN'T INCREASE IN SPEED AND WAS ALMOST REAR ENDED BECAUSE ALL OTHER DRIVERS ON THE ROAD WAY WERE MOVING AT ~60MPH. THE DRIVER THEN LET OFF THE ACCELERATOR AND PRESSED DOWN AGAIN THE VEHICLE THEN REVVED REAL HIGH THEN SHIFTED VERY HARD AND SHOOK THROWING THE PASSENGERS FORWARD AND BACK CAUSING A WHIP-LASH TYPE OF MOVEMENT AMONG PASSENGERS. THE VEHICLE OFTEN GRINDS WHILE SHIFTING AND DECELERATING. OWNER TOOK THE VEHICLE TO DEALERSHIP AND THE SERVICE DEPARTMENT HOURS LATER CALLED TO REPORT THE VEHICLE IS DRIVING AS EXPECTED AND NO ISSUES WITH THE VEHICLE AND THAT THE GRINDING GEARS WAS EXPECTED. *TR

k.  [2012 Ford Focus] AUTOMATIC TRANSMISSION DOES NOT SHIFT SMOOTHLY. INTERMITTENT VIBRATES, BUCKS, HESITATES, SLIPS & JERKS. CAN'T RELY ON TAKE-OFF ACCELERATION WHETHER IT WILL ENGAGE PROPERLY, PULLING INTO TRAFFIC IS VERY DANGEROUS. STOP AND GO TRAFFIC IS VERY DANGEROUS. IT'S LIKE SOMEONE DRIVING A STICK SHIFT AND NOT HAVING THE CLUTCH & GAS IN SYNC, ONLY IT'S AN AUTOMATIC SO YOU CAN'T DO ANYTHING ABOUT IT. I HAVE HAD THE CAR IN TO THE SERVICE DEPARTMENT ON 3 OCCASIONS. THE FIRST TIME THE TECH LAUGHED AT ME AND TOLD ME IT WAS JUST THE "NEW" 6-SPEED TRANSMISSION. 2ND TIME, THEY REPLACED SOME PARTS IN THE TRANSMISSION. 3RD TIME, THEY HAD THE CAR 4 DAYS & SAID THERE WAS NOTHING OUT OF THE ORDINARY HAPPENING. THERE IS DEFINITELY SOMETHING WRONG WITH THIS TRANSMISSION, AND FORD NEEDS TO DO SOMETHING TO FIX THEM BEFORE AN ACCIDENT HAPPENS.

l   TL* THE CONTACT OWNS A 2012 FORD FOCUS. THE CONTACT STATED THAT WHILE DRIVING APPROXIMATELY 5 MPH, THE TRANSMISSION BEGAN TO HESITATE IN A JERKING MOTION AND THE VEHICLE STALLED. THE ENGINE RESTARTED AND THE VEHICLE WAS ABLE TO RESUME. IN ADDITION, ON A SEPARATE OCCASSION THE TRANSMISSION WARNING INDICATOR ILLUMINATED ON THE INSTRUMENT PANEL FOR A FEW SECONDS. THE FAILURES OCCURRED NUMEROUS TIMES. THE VEHICLE WAS TAKEN TO AN AUTHORIZED DEALER EIGHT TIMES FOR THE SAME MALFUNCTION. A DIAGNOSIS WAS PERFORMED IN WHICH A TROUBLE CODE WAS NOT DETECTED. THE COMPUTER SYSTEM, ABS, AND DRIVE TRAIN WERE REPROGRAMMED MORE

THAN ONE TIME. THE FAILURE PERSISTED AND THE DEALER WAS UNABLE TO RESOLVE THE PROBLEM. THE MANUFACTURER AND DEALER STATED THAT THE VEHICLE FUNCTIONED AS DESIGNED. THE APPROXIMATE FAILURE MILEAGE WAS 350.

m.   PURCHASED A NEW 2012 FORD FOCUS WITH AUTOMATIC TRANSMISSION IN APRIL, 2012. IMMEDIATELY EXPERIENCED LOW SPEED TRANSMISSION SHIFTING PROBLEMS AND ALSO DISCOVERED COMPLETE FREE ROLL BACKWARD, UNENDING, UNTIL HITTING LEVEL GROUND AND/OR HITTING AN OBJECT WHILE ROLLING BACKWARDS ON AN INCLINE, EVEN WHILE IN GEAR. THIS IS A SERIOUS SAFETY AND DRIVER LIABILITY ISSUE . DEALERSHIP HAS RE-PROGRAMMED TRANSMISSION ON A TECHNICAL SERVICE BULLETIN WITHOUT SUCCESS. DEALERSHIP HAD ME TEST DRIVE ANOTHER 2012 FOCUS THINKING IT WOULD NOT DEMONSTRATE THE SAME SAFETY PROBLEM...AND TO THEIR SURPRISE..THE TEST DRIVE VEHICLE THEY GAVE ME ALSO PERFORMED THE SAME WAY ON THE FREE ROLLBACK WHILE IN GEAR. I BELIEVE THE FUNDAMENTAL PROBLEM HERE IS THAT FORD HAS DESIGNED AND MANUFACTURED IN THE 2012 FOCUS LINE A STANDARD/MANUAL TRANSMISSION (POORLY SHIFTED BY SOFTWARE AND DYSFUNCTIONAL ON THE FREE ROLL BACK ISSUE) AND IS MARKETING IT TO ALL CONSUMERS AS AN AUTOMATIC TRANSMISSION. SERVICE DEPARTMENT ACKNOWLEDGES THAT IT TRULY IS A STANDARD/MANUAL DESIGN. THE WINDOW STICKER AND SALES PROCESS MISREPRESENTS TO THE CONSUMER THAT IT IS AN AUTOMATIC TRANSMISSION. THIS MAY CONSTITUTE CONSUMER FRAUD ON A NATIONAL LEVEL LEADING TO EITHER CLASS ACTION LITIGATION, TOTAL RECALL AND/OR INDIVIDUAL CASES OF LITIGATION. I AM CONSIDERING ALL OF THE ABOVE AS THE PROBLEM REMAINS AND HAS NOT BEEN RECTIFIED. *TR

n    WHEN ACCELERATING CAR JUMPS OR HOPS VIOLENTLY. ENGINE MAKES GRINDING/CHATTERING NOISE WHEN CHANGING GEARS. EXPERIENCE ROLL BACK WHEN ON A SLIGHT INCLINE. POWER SHIFT 6 SPEED IS NOT SAFE. HAVE TROUBLE CROSSING LANES OF TRAFFIC FOR THE JUMPING/LAUNCH JUDDER PROBLEM. *TR

61.   The Transmission Defect poses an unreasonable safety risk for Class Members, as well as the drivers, passengers, and pedestrians sharing the road with Class Vehicles.  A vehicle's ability to have forward propulsion, not to stall,

not to surge or jerk unexpectedly, and the ability of a vehicle's transmission to perform properly are each critical to a vehicle's safe operation. A defect that causes one or more of these negative characteristics poses a safety hazard to the general public, and increases the risk of automobile accidents.

**Ford Has Exclusive Knowledge of the Transmission Defect**

62.     Ford had superior and exclusive knowledge of the transmission defect, and knew or should have known that the defect was not known or reasonably discoverable by Plaintiff and Class Members before they purchased or leased the Class Vehicles.

63.     Plaintiff is informed and believes and based thereon alleges that before Plaintiff leased his Class Vehicle, and since at least 2010, Ford knew about the Transmission Defect through sources not available to consumers, including pre-release testing data, early consumer complaints about the transmission defects to Ford and its dealers, testing conducted in response to those complaints, high failure rates and replacement part sales data, aggregate data from Ford dealers, among other internal sources of aggregate information about the problem.

64.     Before the Class vehicles were available for sale in the United States, Ford offered the same vehicles, equipped with a similar dual-clutch transmission, in Europe and Australia. Although the United States version utilizes dry-clutches as opposed to the European and Australian version's wet-clutches, Ford acknowledged in its own press release that the transmission offered for sale in the United States is a "derivative" of the design from the European and Australian models. European and Australian versions of the dual-clutch transmission suffered from similar defects as alleged herein.

65.     In addition to having years of analysis and feedback with the prior dual-clutch design, Ford also acknowledged in its own press releases the extensive pre-release testing and computer-aided modeling, simulation, and

analysis it conducted before bringing the PowerShift Transmission to the United States market.

66.     Ford was also aware of the Transmission Defect through the numerous complaints it received, both from consumers and from automotive journalists, who roundly criticised the performance of the PowerShift Transmission.  Indeed, a July 15, 2011 *New York Times* review of the Ford Focus criticized the PowerShift transmission's "jerks, pauses and lethargic acceleration."  In that same article, Greg Burgess, a Ford engineer, admitted that Ford made "tradeoffs" in terms of drivability in order to "deliver something that is very, very fuel-efficient."

67.     The review went on to state:  "the logical explanation is that they [the Ford Engineers] were given a fuel economy target and no option but to meet it.  One might wonder why a top executive didn't step in to keep the transmission from reaching market."

68.     The existence of the Transmission Defect is a material fact that a reasonable consumer would consider when deciding whether to purchase or lease a vehicle that was equipped with an automatic transmission.  Had Plaintiff and other Class Members known that the Class Vehicles were equipped with defective transmissions, they would not have purchased or leased the Class Vehicles equipped with the PowerShift Transmissions or would have paid less for them.

69.     Reasonable consumers, like Plaintiff, reasonably expect that a vehicle's transmission is safe, will function in a manner that will not pose a safety hazard, and is free from defects.  Plaintiff and Class Members further reasonably expect that Ford will not sell or lease vehicles with known safety defects, such as the Transmission Defect, and will disclose any such defects to its consumers when it learns of them.  They did not expect Ford to fail to disclose the Transmission Defect to them and to continually deny the defect.

**Ford Has Actively Concealed the Transmission Defect**

70.     While Ford has been fully aware of the Transmission Defect in the Class Vehicles, it actively concealed the existence and nature of the defect from Plaintiff and Class Members at the time of purchase, lease or repair and thereafter.  Specifically, Ford failed to disclose or actively concealed at and after the time of purchase, lease, or repair:

        (a)    any and all known material defects or material nonconformity of the Class Vehicles, including the defects relating to the PowerShift Transmission;

        (b)    that the Class Vehicles, including their PowerShift Transmission, were not in good in working order, were defective, and were not fit for their intended purposes; and

        (c)    that the Class Vehicles and their PowerShift Transmission were defective, despite the fact that Ford learned of such defects through alarming failure rates, customer complaints, as well as through other internal sources, as early as 2010.

71.     As a result of the Transmission Defect, Ford was inundated with complaints regarding the PowerShift Transmission.  In July 2011, Ford implemented a communications strategy to enlighten consumers about some of the behavior characteristics of the transmission in order to "improve customer expectations."  In a memo with instructions sent to Ford dealers and service personnel, Ford noted that some of the common characteristics of the PowerShift Transmission include double clicking metal sounds, coast down whine, low speed grinding, and reverse gear whine.

72.     However, despite Ford's public insistence that these behavioral characteristics of the PowerShift Transmission were normal, in 2010 and 2011, Ford issued several Technical Service Bulletins ("TSBs") to its dealers in the United States acknowledging defects in the PowerShift Transmission.  Ford's

TSB from September 2010, covering the 2011 Ford Fiesta, informs dealers of "concerns such as no engagement or intermittent no engagement in Drive or Reverse when shifting from Park to Drive or Reverse, grinding noise during engagement, and/or a check engine light with transmission control module (TCM) diagnostic trouble code…"

73.   Ford's TSB released on January 1, 2011, covering the 2011 Fiesta with the PowerShift Transmission, informs dealers of problems with the PowerShift Transmission causing "a loss of power, hesitation, surge, or lack of throttle response while driving."

74.   Ford's TSB from March 31, 2011, also covering the 2011 Ford Fiesta, informs dealers of problems where the PowerShift Transmission "exhibit[s] a rattle/grind noise in reverse only."

75.   Ford issued two separate TSBs in May of 2011, both covering the Ford Fiesta.  These TSBs addressed problems with the PowerShift Transmission including "concerns in Drive or Reverse when shifting from Park to Drive or reverse, no engagement, delayed engagement, intermittent engagement, noise during engagement. . ."

76.   On information and belief, another Ford TSB released in September 2011 advised dealers to reprogram the transmission computer if 2011 Fiesta owners complained about "hesitation when accelerating from a low speed after coast down, harsh or late 1-2 upshift, harsh shifting during low-speed tip-in or tip-out maneuvers and/or engine r.p.m. flare when coasting to a stop."

77.   The 2012 Ford Focus was the subject of a Ford TSB in September 2011, which informed dealers of transmission problems including:  "RPM flare on deceleration coming to a stop, rough idle on deceleration coming to a stop, intermittent engine idle fluctuations at a stop, intermittent vehicle speed control inoperative, intermittent harsh engagement/shift…."

78.   In December of 2011, *Motor Trend* magazine called these efforts by

Ford a "stealth upgrade" and that while [t]here's no official recall or service campaign . . . anybody who complains or requests an upgrade at the dealership can have their powertrain control computer re-flashed."

79.     On information and belief, the software upgrades outlined by the various TSBs issued by Ford were ineffective at addressing the Transmission Defect.

80.     When consumers present the Class Vehicles to an authorized Ford dealer for repair of the transmission, rather than repair the problem under warranty, Ford dealers either inform consumers that their vehicles are functioning properly, or conduct software updates that delay the manifestation of defect in an attempt not to pay for it under warranty.

81.     To this day, Ford still has not notified Plaintiff and the Class Members that the Class Vehicles suffer from a systemic defect that causes the transmission to malfunction.

82.     Ford has caused Plaintiff and Class Members to expend money at its dealerships to diagnose, repair or replace the Class Vehicles' transmissions, despite Ford's knowledge of the Transmission Defect.

## CLASS ACTION ALLEGATIONS

83.     Plaintiff brings this lawsuit as a class action on behalf of himself and all others similarly situated as members of the proposed Class pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3). This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

84.     The Class and Sub-Class are defined as:

> **Class**:   All individuals in the United States who purchased or leased any 2011 through 2013 Ford Fiesta or 2012 through 2013 Ford Focus vehicles equipped with a PowerShift Transmission.
>
> **California Sub-Class**: All individuals in the State of California who purchased or leased any 2011 through

2013 Ford Fiesta or 2012 through 2013 Ford Focus vehicles equipped with a PowerShift Transmission.

**CLRA Sub-Class**: All California Class Members who are "consumers" within the meaning of California Civil Code § 1761(d) ("the CLRA Sub-Class").

85.   Excluded from the Class and Sub-Class are: (1) Defendant, any entity or division in which Defendant has a controlling interest, and their legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; and (3) those persons who have suffered personal injuries as a result of the facts alleged herein.  Plaintiff reserves the right to amend the Class and Sub-Class definitions if discovery and further investigation reveal that the Class and Sub-Class should be expanded or otherwise modified.

86.   Numerosity:  Although the exact number of Class Members is uncertain and can only be ascertained through appropriate discovery, the number is great enough such that joinder is impracticable.  The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court.  The Class Members are readily identifiable from information and records in Defendant's possession, custody, or control, as well as from records kept by the Department of Motor Vehicles.

87.   Typicality:  Plaintiff's claims are typical of the claims of the Class in that Plaintiff, like all Class Members, purchased or leased a Class Vehicle designed, manufactured, and distributed by Ford, and equipped with a PowerShift Transmission.  The representative Plaintiff, like all Class Members, has been damaged by Defendant's misconduct in that he has incurred or will incur the cost of repairing or replacing the defective transmission.  Furthermore, the factual bases of Ford's misconduct are common to all Class Members and represent a common thread resulting in injury to all Class Members.

88.   Commonality:  There are numerous questions of law and fact

common to Plaintiff and the Class that predominate over any question affecting only individual Class Members. These common legal and factual issues include the following:

(a)     Whether Class Vehicles suffer from defects relating to the PowerShift Transmission;

(b)     Whether the defects relating to the PowerShift Transmission constitute an unreasonable safety risk;

(c)     Whether Defendant knows about the defects relating to the PowerShift Transmission and, if so, how long Defendant has known of the defect;

(d)     Whether the defective nature of the PowerShift Transmission constitutes a material fact;

(e)     Whether Defendant has a duty to disclose the defective nature of the PowerShift Transmission to Plaintiff and Class Members;

(f)     Whether Plaintiff and the other Class Members are entitled to equitable relief, including but not limited to a preliminary and/or permanent injunction;

(g)     Whether Defendant knew or reasonably should have known of the defects relating to the PowerShift Transmission before it sold and leased Class Vehicles to Class Members;

(h)     Whether Defendant should be declared financially responsible for notifying all Class Members of the problems with the Class Vehicles and for the costs and expenses of repairing and replacing the defective PowerShift Transmission;

(i)     Whether Defendant is obligated to inform California Class Members of their right to seek reimbursement for having paid to diagnose, repair, or replace their defective PowerShift

1    Transmission; and

2    (j)    Whether Defendant breached the implied warranty of

3    merchantability pursuant to the Song-Beverly Act.

4    89.    <u>Adequate Representation</u>:  Plaintiff will fairly and adequately

5    protect the interests of the Class Members.  Plaintiff has retained attorneys

6    experienced in the prosecution of class actions, including consumer and product

7    defect class actions, and Plaintiff intends to prosecute this action vigorously.

8    90.    <u>Predominance and Superiority</u>:  Plaintiff and the Class Members

9    have all suffered and will continue to suffer harm and damages as a result of

10    Defendant's unlawful and wrongful conduct.  A class action is superior to other

11    available methods for the fair and efficient adjudication of the controversy.

12    Absent a class action, most Class Members would likely find the cost of

13    litigating their claims prohibitively high and would therefore have no effective

14    remedy at law.  Because of the relatively small size of the individual Class

15    Members' claims, it is likely that only a few Class Members could afford to seek

16    legal redress for Defendant's misconduct.  Absent a class action, Class Members

17    will continue to incur damages, and Defendant's misconduct will continue

18    without remedy.  Class treatment of common questions of law and fact would

19    also be a superior method to multiple individual actions or piecemeal litigation in

20    that class treatment will conserve the resources of the courts and the litigants,

21    and will promote consistency and efficiency of adjudication.

## FIRST CAUSE OF ACTION

### (Violation of California's Consumer Legal Remedies Act,

### California Civil Code § 1750, *et seq.*)

25    91.    Plaintiff incorporates by reference the allegations contained in the

26    preceding paragraphs of this Complaint.

27    92.    Plaintiff brings this cause of action on behalf of himself and on

28    behalf of the members of the CLRA Sub-Class.

93.     Defendant is a "person" as defined by California Civil Code § 1761(c).

94.     Plaintiff and CLRA Sub-class Members are "consumers" within the meaning of California Civil Code § 1761(d) because they purchased their Class Vehicles primarily for personal, family or household use.

95.     By failing to disclose and concealing the defective nature of the transmissions from Plaintiff and prospective Class Members, Defendant violated California Civil Code § 1770(a), as it represented that the Class Vehicles and their transmissions had characteristics and benefits that they do not have, and represented that the Class Vehicles and their transmissions were of a particular standard, quality, or grade when they were of another.  *See* Cal. Civ. Code §§ 1770(a)(5) & (7).

96.     Defendant's unfair and deceptive acts or practices occurred repeatedly in Defendant's trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

97.     Defendant knew that the Class Vehicles and their transmissions suffered from an inherent defect, were defectively designed or manufactured, and were not suitable for their intended use.

98.     As a result of their reliance on Defendant's omissions and/or misrepresentations, owners and/or lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the Transmission Defect, Plaintiff and the Class Members were harmed and suffered actual damages in that the Class Vehicles' transmissions are substantially certain to fail before their expected useful life has run.

99.     Defendant was under a duty to Plaintiff and the Class Members to disclose the defective nature of the transmissions and/or the associated repair

costs because:

    (a)    Defendant was in a superior position to know the true state of facts about the safety defect in the Class Vehicles' transmissions;

    (b)    Plaintiff and the Class Members could not reasonably have been expected to learn or discover that their transmissions had a dangerous safety defect until it manifested; and

    (c)    Defendant knew that Plaintiff and the Class Members could not reasonably have been expected to learn of or discover the safety defect.

100.   In failing to disclose the defective nature of the transmissions, Defendant knowingly and intentionally concealed material facts and breached its duty not to do so.

101.   The facts Defendant concealed from or did not disclose to Plaintiff and the Class Members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Class Vehicles or pay less.  Had Plaintiff and other Class Members known that the Class Vehicles' transmissions were defective, they would not have purchased or leased the Class Vehicles or would have paid less for them.

102.   Plaintiff and the Class Members are reasonable consumers who do not expect the transmissions installed in their vehicles to exhibit transmission slips, kicking forward, jerking, premature internal wear, delayed acceleration, and/or difficulty in stopping the vehicle.  This is the reasonable and objective consumer expectation relating to vehicle transmissions.

103.   As a result of Defendant's conduct, Plaintiff and Class Members were harmed and suffered actual damages in that the Class Vehicles experienced and will continue to experience transmission slips, kicking forward, jerking, increased stopping times, premature internal wear, and delayed acceleration.

104.   As a direct and proximate result of Defendant's unfair or deceptive acts or practices, Plaintiff and Class Members suffered and will continue to suffer actual damages.

105.   Plaintiff and the Class are entitled to equitable relief.

106.   On September 28, 2012, Plaintiff sent Defendant a notice of its alleged violations of the CLRA pursuant to California Civil Code § 1782(a) via certified mail, return receipt requested.  Defendant failed to provide appropriate relief for its violations of the CLRA.  As a result, Plaintiff now seeks monetary and compensatory damages, including the additional cost of the PowerShift Transmission option, in addition to injunctive and equitable relief.

## SECOND CAUSE OF ACTION

### Violation of California Business & Professions Code § 17200, *et seq.*

107.   Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

108.   Plaintiff brings this cause of action on behalf of himself and on behalf of all Class Members.

109.   As a result of their reliance on Defendant's omissions and/or misrepresentations, owners and/or lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the Transmission Defect, Plaintiff and the Class Members were harmed and suffered actual damages in that the Class Vehicles' transmissions are substantially certain to fail before their expected useful life has run.

110.   California Business & Professions Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

111.   Plaintiff and the Class Members are reasonable consumers who do not expect their transmissions to exhibit transmission slips, kicking forward,

jerking, increased stopping times, premature internal wear, and/or delayed acceleration.

112.   Defendant knew the Class Vehicles and their transmissions suffered from inherent defects, were defectively designed or manufactured, would fail prematurely, and were not suitable for their intended use.

113.   In failing to disclose the defects with the transmission, Defendant has knowingly and intentionally concealed material facts and breached its duty not to do so.

114.   Defendant was under a duty to Plaintiff and the Class Members to disclose the defective nature of the Class Vehicles and their transmissions:

    (a)   Defendant was in a superior position to know the true state of facts about the safety defect in the Class Vehicles' transmissions;

    (b)   Defendant made partial disclosures about the quality of the Class Vehicles without revealing the defective nature of the Class Vehicles and their transmissions; and

    (c)   Defendant actively concealed the defective nature of the Class Vehicles and their transmissions from Plaintiff and the Class.

115.   The facts Defendant concealed from or not disclosed to Plaintiff and the Class Members are material in that a reasonable person would have considered them to be important in deciding whether to purchase or lease Class Vehicles.  Had Plaintiff and other Class Members known that the Class Vehicles' transmissions were defective and posed a safety hazard, then Plaintiff and the other Class Members would not have purchased or leased Class Vehicles equipped with transmissions, or would have paid less for them.

116.   Defendant continued to conceal the defective nature of the Class Vehicles and their transmissions even after Class Members began to report problems.  Indeed, Defendant continues to cover up and conceal the true nature

1    of the problem.

2        117.  Defendant's conduct was and is likely to deceive consumers.

3        118.  Defendant's acts, conduct and practices were unlawful, in that they

4    constituted:

5              (a)    Violations of the California Consumer Legal Remedies Act;

6              (b)    Violations of the Song-Beverly Consumer Warranty Act; and

7              (c)    Violations of the express warranty provisions of California

8                      Commercial Code section 2313.

9        119.  By its conduct, Defendant has engaged in unfair competition and

10   unlawful, unfair, and fraudulent business practices.

11       120.  Defendant's unfair or deceptive acts or practices occurred

12   repeatedly in Defendant's trade or business, and were capable of deceiving a

13   substantial portion of the purchasing public.

14       121.  As a direct and proximate result of Defendant's unfair and deceptive

15   practices, Plaintiff and the Class have suffered and will continue to suffer actual

16   damages.

17       122.  Defendant has been unjustly enriched and should be required to

18   make restitution to Plaintiff and the Class pursuant to §§ 17203 and 17204 of the

19   Business & Professions Code.

20   **THIRD CAUSE OF ACTION**

21   **(Breach of Implied Warranty Pursuant to  Song-Beverly**

22   **Consumer Warranty Act, California Civil Code §§ 1792 and 1791.1, *et seq.*)**

23       123.  Plaintiff incorporates by reference the allegations contained in the

24   preceding paragraphs of this Complaint.

25       124.  Plaintiff brings this cause of action against Defendant on behalf of

26   himself and on behalf of the members of the Implied Warranty Sub-Class.

27       125.  Defendant was at all relevant times the manufacturer, distributor,

28   warrantor, and/or seller of the Class Vehicles.  Defendant knew or had reason to

1    know of the specific use for which the Class Vehicles were purchased or leased.

2        126.   Defendant provided Plaintiff and Class Members with an implied

3    warranty that the Class Vehicles and their components and parts are

4    merchantable and fit for the ordinary purposes for which they were sold.

5    However, the Class Vehicles are not fit for their ordinary purpose of providing

6    reasonably reliable and safe transportation because, *inter alia*, the Class Vehicles

7    and their transmissions suffered from an inherent defect at the time of sale and

8    thereafter are not fit for their particular purpose of providing safe and reliable

9    transportation.

10       127.   Defendant impliedly warranted that the Class Vehicles were of

11   merchantable quality and fit for such use.  This implied warranty included,

12   among other things:  (i) a warranty that the Class Vehicles and their

13   transmissions were manufactured, supplied, distributed, and/or sold by Ford

14   were safe and reliable for providing transportation; and (ii) a warranty that the

15   Class Vehicles and their transmissions would be fit for their intended use while

16   the Class Vehicles were being operated.

17       128.   Contrary to the applicable implied warranties, the Class Vehicles

18   and their transmissions at the time of sale and thereafter were not fit for their

19   ordinary and intended purpose of providing Plaintiff and the Class Members with

20   reliable, durable, and safe transportation.  Instead, the Class Vehicles are

21   defective, including but not limited to the defective design and manufacture of

22   their transmissions.

23       129.   As a result of Defendant's breach of the applicable implied

24   warranties, owners and/or lessees of the Class Vehicles suffered an ascertainable

25   loss of money, property, and/or value of their Class Vehicles. Additionally, as a

26   result of the Transmission Defect, Plaintiff and the Class Members were harmed

27   and suffered actual damages in that the Class Vehicles' transmissions are

28   substantially certain to fail before their expected useful life has run.

130.   Defendant's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use in violation of California Civil Code §§ 1792 and 1791.1.

**FOURTH CAUSE OF ACTION**

**(For Breach of Express Warranty Under Cal. Comm. Code § 2313)**

131.   Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

132.   Plaintiff brings this cause of action on behalf of himself and on behalf of the Class Members against Defendant.

133.   As a result of Defendant's breach of the applicable express warranties, owners and/or lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the Transmission Defect, Plaintiff and the Class Members were harmed and suffered actual damages in that the Class Vehicles' transmissions are substantially certain to fail before their expected useful life has run.

134.   Defendant provided all purchasers and lessees of the Class Vehicles with the express warranty described herein, which became a material part of the bargain.  Accordingly, Defendant's express warranty is an express warranty under California law.

135.   Defendant manufactured and/or installed the transmission and its component parts in the Class Vehicles and the transmission and its component parts are covered by the express warranty.

136.   Defendant breached the express warranty by:

(a)   Extending a 5 year/60,000 miles powertrain warranty with the purchase or lease of the Class Vehicles, thereby warranting to repair or replace any part defective in material or workmanship, including the subject transmission, at no cost to the owner or lessee;

1
2
3

    (b)    Selling and leasing Class Vehicles with a transmission that was defective in material and workmanship, requiring repair or replacement within the warranty period; and

4
5
6

    (c)    Refusing to honor the express warranty by repairing or replacing, free of charge, the transmission or any of its component parts.

7   137.   Plaintiff was not required to notify Ford of the breach and/or was
8   not required to do so because affording Ford a reasonable opportunity to cure its
9   breach of written warranty would have been futile.  Defendant was also on notice
10  of the defect from the complaints and service requests it received from Class
11  Members, from repairs and/or replacements of the transmission or a component
12  thereof, and through other internal sources.

13  138.   As a direct and proximate cause of Defendant's breach, Plaintiff and
14  the other Class Members suffered damages and continue to suffer damages,
15  including economic damages at the point of sale or lease.  Additionally, Plaintiff
16  and the other Class Members either have incurred or will incur economic
17  damages at the point of repair in the form of the cost of repair.

18  139.   Plaintiff and the other Class Members are entitled to legal and
19  equitable relief against Defendant, including actual damages, consequential
20  damages, specific performance, attorneys' fees, costs of suit, and other relief as
21  appropriate.

22  **RELIEF REQUESTED**

23  140.   Plaintiff, on behalf of himself, and all others similarly situated,
24  requests the Court to enter judgment against Defendant, as follows:

25
26
27

    (a)    An order certifying the proposed Class and Sub-Classes, designating Plaintiff as named representative of the Class, and designating the undersigned as Class Counsel;

28      (b)    A declaration that Defendant is financially responsible for

1    notifying all Class Members about the defective nature of the

2    transmission, including the need for period maintenance;

3    (c)   An order enjoining Defendant from further deceptive

4    distribution, sales, and lease practices with respect to Class

5    Vehicles, and to remove and replace Plaintiff and Class

6    Members' transmissions with a suitable alternative product;

7    (d)   A declaration requiring Defendant to comply with the various

8    provisions of the Song-Beverly Act alleged herein and to

9    make all the required disclosures;

10   (e)   An award to Plaintiff and the Class for compensatory,

11   exemplary, and statutory damages, including interest, and

12   including the additional purchase cost of the PowerShift

13   Transmission option, in an amount to be proven at trial;

14   (f)   Any and all remedies provided pursuant to the Song-Beverly

15   Act, including California Civil Code section 1794;

16   (g)   A declaration that Defendant must disgorge, for the benefit of

17   the Class, all or part of the ill-gotten profits it received from

18   the sale or lease of its Class Vehicles, or make full restitution

19   to Plaintiff and Class Members;

20   (h)   An award of attorneys' fees and costs, as allowed by law;

21   (i)   An award of attorneys' fees and costs pursuant to California

22   Code of Civil Procedure § 1021.5;

23   (j)   An award of pre-judgment and post-judgment interest, as

24   provided by law;

25   (k)   Leave to amend the Complaint to conform to the evidence

26   produced at trial; and

27   (l)   Such other relief as may be appropriate under the

28   circumstances.

FIRST AMENDED CLASS ACTION COMPLAINT

1

**DEMAND FOR JURY TRIAL**

2          141.   Pursuant to Federal Rule of Civil Procedure 38(b) and Central

3    District of California Local Rule 38-1, Plaintiff demands a trial by jury of any

4    and all issues in this action so triable.

5

6    Dated:  December 12, 2012                    Respectfully submitted,

7                                                  Capstone Law Group, APC

8

9                                          By:_____

10                                               Jordan L. Lurie
                                                 David L. Cheng
11                                               Tarek H. Zohdy

12                                               Attorneys for Plaintiff Omar Vargas

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FIRST AMENDED CLASS ACTION COMPLAINT

1  Jordan L. Lurie (SBN 130013)
    JLurie@initiativelegal.com
2  Andrew J. Sokolowski (SBN 226685)
    ASokolowski@initiativelegal.com
3  Tarek H. Zohdy (SBN 247775)
    TZohdy@initiativelegal.com
4  Initiative Legal Group APC
    1800 Century Park East, 2nd Floor
5  Los Angeles, California 90067
    Telephone:  (310) 556-5637
6  Facsimile:   (310) 861-9051

7  Attorneys for Plaintiff Omar Vargas

8              UNITED STATES DISTRICT COURT

9      CENTRAL DISTRICT OF CALIFORNIA—WESTERN DIVISION

10  OMAR VARGAS, individually, and    Case No:
    on behalf of other members of the
11  general public similarly situated,    **DECLARATION OF OMAR**
12                   **VARGAS IN SUPPORT OF**
             Plaintiff,     **PLAINTIFF'S SELECTION OF**
13                   **VENUE FOR TRIAL OF CLAIMS**
       vs.               **ARISING UNDER THE**
14                   **CALIFORNIA CONSUMER LEGAL**
    FORD MOTOR COMPANY,     **REMEDIES ACT**
15
             Defendant.    [Cal. Civ. Code, § 1780, subd. (d)]
16

17

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF OMAR VARGAS

I, Omar Vargas, declare under penalty of perjury as follows:

1.   I make this declaration based upon my personal knowledge except as to those matters stated herein that are based upon information and belief, which I believe to be true.  Unless the context indicates otherwise, I have personal knowledge of the facts stated in this Declaration and if called as a witness, I could and would competently testify thereto.  I am Plaintiff Omar Vargas in the above-captioned matter.

2.   Pursuant to California Civil Code section 1780(d), this Declaration is submitted in support of Plaintiff's Selection of Venue for the Trial of Plaintiff's Cause of Action alleging violation of California's Consumer Legal Remedies Act.

3.   I leased my 2011 Ford Fiesta, which is the vehicle at issue in this action, from authorized Ford dealer, Sunrise Ford, in Los Angeles County. In addition, I serviced my 2011 Ford Fiesta at authorized Ford dealerships in Los Angeles County.

4.   On information and belief, Defendant Ford Motor Company is a corporation organized and in existence under the laws of the State of California and registered with the California Department of Corporations to conduct business in California.  Defendant is engaged in the business of designing, manufacturing, constructing, assembling, marketing, distributing, or selling automobiles and other motor vehicles and motor vehicle components throughout the United States of America, including Los Angeles County, California.

5.   Based on the facts set forth herein, this Court is a proper venue for the prosecution of Plaintiff's Cause of Action alleging violation of California's Consumer Legal Remedies Act because Defendant conducts business activities in the County of Los Angeles, California, including, but not limited to marketing, distributing and/or selling Class Vehicles to Class Members.  In addition, the transaction at issue, or a substantial portion thereof, occurred in Los Angeles

Initiative Legal Group apc

1  County. *See,* Cal. Civ. Code § 1780(d).

2       I declare under penalty of perjury under the laws of the State of California

3  that the forgoing is true and correct. Executed this 26 th day of September, 2012 at

4  Los Angeles, California.

5

6  _____

7  Omar Vargas

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF OMAR VARGAS IN SUPPORT OF PLAINTIFF'S SELECTION OF VENUE FOR TRIAL

*Initiative Legal Group apc*