*Conformed Copy*

Jordan L. Lurie (SBN 130013)
Jordan.Lurie@capstonelawyers.com
Tarek H. Zohdy (SBN 247775)
Tarek.Zohdy@capstonelawyers.com
Cody R. Padgett (SBN 275553)
Cody.Padgett@capstonelawyers.com
Capstone Law APC
1840 Century Park East, Suite 450
Los Angeles, California 90067
Telephone:   (310) 556-4811
Facsimile:   (310) 943-0396

Attorneys for Plaintiffs Omar Vargas,
Robert Bertone, Michelle Harris and Sharon Heberling

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA—WESTERN DIVISION

| | |
|---|---|
| OMAR VARGAS, ROBERT BERTONE, MICHELLE HARRIS, and SHARON HEBERLING individually, and on behalf of a class of similarly situated individuals, <br><br> Plaintiffs, <br><br> v. <br><br> FORD MOTOR COMPANY, <br><br> Defendant. | Case No.: 2:12-cv-08388 ABC (FFMx) <br><br> Hon. Judge Audrey B. Collins Courtroom 680 <br><br> **SECOND AMENDED CLASS ACTION COMPLAINT** <br><br> (1)  Violations of California Consumer Legal Remedies Act <br> (2)  Violations of Unfair Competition Law <br> (3)  Breach of Implied Warranty pursuant to Song-Beverly Consumer Warranty Act <br> (4)  Breach of Express Warranty under Cal. Com. Code § 2313 <br> (5)  Violation of Florida Deceptive and Unfair Trade Practices Act <br><br> **DEMAND FOR JURY TRIAL** |

**INTRODUCTION**

1. Plaintiffs, Omar Vargas, Robert Bertone, Michelle Harris and Sharon Heberling ("Plaintiffs") bring this action for themselves and on behalf all persons in the United States who purchased or leased any 2011 through 2013 Ford Fiesta and/or 2012 through 2013 Ford Focus vehicles equipped with Ford's dual clutch transmission ("Dual Clutch Transmission" or "PowerShift Transmission") (collectively, "Class Vehicles") designed manufactured, marketed, distributed, sold, warranted and serviced by Ford Motor Company ("Ford" or "Defendant").

2. Ford designed and marketed its "PowerShift Transmission" as a more advanced and fuel efficient alternative to a traditional manual or automatic transmission and offered it as the sole "Automatic" option in the Class Vehicles.

3. The PowerShift Transmission is a $1,095.00 option for the Class Vehicles.

4. Traditional manual transmissions use a driver-controlled clutch.  By pressing and releasing a foot pedal, the driver engages and disengages the engine from the transmission, allowing the vehicle to travel smoothly while the driver manually changes gears.

5. In contrast, typical automatic transmissions free the driver from operating the clutch through the use of a fluid-filled device called a torque converter.  The torque converter substitutes for the manual transmission's clutch, transmitting power from the engine to the transmission through a fluid medium.

6. While typical automatic transmissions offer increased convenience, they are generally less fuel efficient and slower-shifting than their manual counterparts.  This is because the torque converter transfers power less efficiently than a clutch.  As a result, Ford marketed and sold its PowerShift Transmission as a best of both worlds alternative offering a manual transmission's fuel economy with an automatic transmission's ease of operation

SECOND AMENDED CLASS ACTION COMPLAINT

1    and shift quality.

2         7.      Ford's PowerShift Transmission, while sometimes referred to as an

3    automatic, is actually a set of computerized manual transmissions.  It lacks a

4    torque converter, instead using two "dry" clutches to directly engage and

5    disengage the engine with and from the transmission.  Whereas similar

6    "automated manual" transmissions on the market use "wet" clutches bathed in

7    oil, Ford's PowerShift Transmission clutches lack the oil pumps and other

8    components of a wet clutch system, and instead operate "dry."

9         8.      Ford designed the Class Vehicles' computerized "automated

10   manual" transmissions in an effort to meet heightened governmental and

11   consumer expectations for fuel economy, performance and efficiency.

12   According to Ford's own press release dated March 10, 2010, "PowerShift with

13   dry-clutch facings and new energy-saving electromechanical actuation for

14   clutches and gear shifts saves weight, improves efficiency, increases smoothness,

15   adds durability and is sealed with low-friction gear lubricant for the life of the

16   vehicle.  This transmission requires no regular maintenance."

17        9.      Theoretically, an automated manual transmission should have the

18   convenience of an automatic transmission without sacrificing the fuel efficiency

19   and shift speed of a manually shifted vehicle.  In practice, however, Ford's

20   PowerShift Transmission is plagued by numerous problems and safety concerns.

21        10.     The PowerShift Transmission contains one or more design and/or

22   manufacturing defects that cause, among other problems, transmission slips,

23   bucking, kicking, jerking, harsh engagement, premature internal wear, sudden

24   acceleration, delay in downshifts, delayed acceleration, and difficulty stopping

25   the vehicle (the "Transmission Defect").

26        11.     The Transmission Defect causes unsafe conditions, including, but

27   not limited to, Class Vehicles suddenly lurching forward, delayed acceleration,

28   and sudden loss of forward propulsion.  These conditions present a safety hazard

SECOND AMENDED CLASS ACTION COMPLAINT

1  because they severely affect the driver's ability to control the car's speed,

2  acceleration, and deceleration.  For example, these conditions make it difficult to

3  safely merge into traffic.  Even more troubling, the Transmission Defect can

4  cause the vehicle to fail to downshift and decelerate when the brakes are

5  depressed.  As a result, Plaintiffs and Class Members have experienced their cars

6  lurching forward into intersections at red lights due to the failure of their braking

7  efforts to stop the car.[1]

8       12.    On information and belief, the Transmission Defect also causes

9  premature wear to the Dual Clutch Transmission's clutch plates and other

10  components, which results in premature transmission failure and requires

11  expensive repairs, including transmission replacement.

12       13.    Beginning as early as 2010, Defendant knew or should have known

13  that the Class Vehicles and the PowerShift Transmission contain one or more

14  design and/or manufacturing defects that negatively affect the drivability of the

15  Class Vehicles and cause safety hazards.

16       14.    Plaintiffs are informed and believes, and based thereon alleges, that

17  prior to sale of the Class Vehicles, Defendant knew, or should have known,

18  about the Transmission Defect through its exclusive knowledge of non-public,

19  internal data about the Transmission Defect, including, pre-release testing data;

20  early consumer complaints about the Transmission Defect to Defendant's dealers

21

22      [1] *See*, for example, this 2011 Fiesta owner's complaint to the National

23  Highway Traffic Safety Administration ("NHTSA"):  THE TRANSMISSION
SEEMS TO FAIL TO GO INTO NEUTRAL WHEN BRAKES ARE APPLIED.

24  CAR STARTED WITH TRANSMISSION ISSUES INITIALLY WITH THE
CAR TRYING TO FIGHT THE BRAKES A FEW TIMES JUST BEFORE

25  STOPPING.  AT TIMES THE CAR SIGNIFICANTLY OVERCOMES THE
BRAKES.  ON ONE INSTANCE THE CAR FAILED TO STOP AT RED

26  LIGHT AND MANAGED TO CREEP INTO THE INTERSECTION BEFORE
STOPPING.  (Safecar.gov, *Search for Complaints* (August 6, 2012), http://www-

27  odi.nhtsa.dot.gov/complaints/).

28

SECOND AMENDED CLASS ACTION COMPLAINT

1   who are their agents for vehicle repairs; dealership repair orders; testing
2   conducted in response to those complaints; technical service bulletins ("TSBs");
3   the existence of the defect in the substantially identical European and Australian
4   model vehicles; and other internal sources.  Nevertheless, Defendant has actively
5   concealed and failed to disclose this defect to Plaintiffs and Class Members at
6   the time of purchase or lease and thereafter.

7          15.    The Ford Fiesta and Ford Focus have the same or substantially
8   identical optional PowerShift Transmission, and the Transmission Defect is the
9   same for both vehicles.  In fact, the PowerShift Transmission in the Class
10  Vehicles is universally referred to by Ford as the DPS6 automatic transmission.

11         16.    Before offering the vehicle for sale in the United States, Ford
12  offered the same vehicles, equipped with a similar dual-clutch transmission, in
13  Europe and Australia. Although the United States version utilizes dry-clutches as
14  opposed to the European and Australian version's wet-clutches, Ford
15  acknowledged that the transmission offered for sale in the United States is
16  "derivative" of the design from the European and Australian models.  European
17  and Australian versions of the dual-clutch transmission suffered from similar
18  defects known to Ford as alleged herein.

19         17.    In addition to having years of feedback and testing from its
20  European and Australian dual-clutch transmission, according to Ford, its team:

21         "logged approximately three years or 6,000 man-hours
           of computer-aided mathematical modeling, simulation
22         and analysis of engine speeds, torque and clutch
           capacity in only 24 months real time to prove the THF
23         concept was production ready."

24         18.    Torque Hole Vectoring ("THF") is a program in the PowerShift
25  Transmission that uses a combination of computer algorithms and computer
26  aided tools to fill the torque hole, or what is more commonly perceived as a
27  hesitation, while shifting.  Ford claimed the THF technology would create a
28  smoother driving experience for the customer.

SECOND AMENDED CLASS ACTION COMPLAINT

19.     Despite these claims, consumers have not experienced a smoother ride from THF or any other technology incorporated in the PowerShift Transmission.  Multiple reviews in automotive journals and customer complaints documented and confirmed that the Class Vehicles' transmissions were exhibiting the defects, malfunctions, misadjustments, and nonconformities that the Plaintiffs and Class Members now complain of.

20.     In a 2011 *New York Times*' review of the Ford Focus, the reviewer stated that "Ford programmed the PowerShift dual-clutch transmission to change gears in odd and infuriating ways" and that "[t]he transmission is often in the wrong gear at the wrong time, resulting in jerks, pauses and lethargic acceleration."

21.     In response to these criticisms, Greg Burgess, an engineer at Ford, conceded in the same *New York Times* article that "[i]t is quite a challenge to deliver something that is very, very fuel-efficient and yet feels like a conventional automatic, and there are some balances and some trade-offs that we make."

22.     As a result of the Transmission Defect, in 2010 and 2011, Ford issued several Technical Service Bulletins ("TSBs") to its dealers in the United States acknowledging defects in the PowerShift Transmission.  Ford's TSB from September 2010, covering the 2011 Ford Fiesta, informed dealers of "concerns such as no engagement or intermittent no engagement in Drive or Reverse when shifting from Park to Drive or Reverse, grinding noise during engagement, and/or a check engine light with transmission control module (TCM) diagnostic trouble code…"

23.     Similarly, Ford's TSB released on January 1, 2011, covering the 2011 Ford Fiesta with the PowerShift Transmission, informs dealers of problems with the PowerShift Transmission causing "a loss of power, hesitation, surge, or lack of throttle response while driving."

24.     Ford's TSB from March 31, 2011, also covering the 2011 Ford Fiesta, informs dealers of problems where the PowerShift Transmission "exhibit[s] a rattle/grind noise in reverse only."

25.     Ford issued two separate TSBs in May of 2011, both covering the Ford Fiesta.  These TSBs addressed problems with the PowerShift Transmission including "concerns in Drive or Reverse when shifting from Park to Drive or reverse, no engagement, delayed engagement, intermittent engagement, noise during engagement. . ."

26.     Another Ford TSB released in September 2011 advised dealers to reprogram the transmission computer if 2011 Ford Fiesta owners complained about "hesitation when accelerating from a low speed after coast down, harsh or late 1-2 upshift, harsh shifting during low-speed tip-in or tip-out maneuvers and/or engine r.p.m. flare when coasting to a stop."

27.     The 2012 Ford Focus was the subject of a September 2011 Ford TSB, which informed dealers of transmission problems including: "RPM flare on deceleration coming to a stop, rough idle on deceleration coming to a stop, intermittent engine idle fluctuations at a stop, intermittent vehicle speed control inoperative, intermittent harsh engagement/shift…"

28.     In May of 2012, Ford issued a "Customer Satisfaction Program: Program Number 12B37."  In a letter sent to 2012 Ford Focus drivers, Ford indicated that drivers "may experience rough or jerky automatic transmission shifts.  In addition, the vehicle may experience roll back when the driver is transitioning from the brake pedal to the accelerator pedal while on a slight incline."  Significantly, Ford did not issue a recall and did not warn drivers of the safety risks associated with these known problems.

29.     Because Ford will not notify Class Members that the transmission is defective, Plaintiffs and Class Members (as well as members of the general public) are subjected to dangerous driving conditions that often occur without

1   warning.

2        30.    Defendant knew about and concealed the Transmission Defect

3   present in every Class Vehicle, along with the attendant dangerous safety and

4   driveability problems, from Plaintiffs and Class Members, at the time of sale,

5   lease, and repair and thereafter.  In fact, instead of repairing the defects in the

6   PowerShift Transmission, Ford either refused to acknowledge their existence, or

7   performed ineffectual software upgrades that simply masked the defects.

8        31.    If Plaintiffs and the Class Members knew about these defects at the

9   time of sale or lease, Plaintiffs and Class Members would not have purchased or

10  leased the Class Vehicles or would have paid less for them.

11       32.    As a result of their reliance on Defendant's omissions and/or

12  misrepresentations, owners and/or lessees of the Class Vehicles suffered an

13  ascertainable loss of money, property, and/or value of their Class Vehicles,

14  including, but not limited to, out of pocket costs for the PowerShift

15  Transmission.  Additionally, as a result of the Transmission Defect, Plaintiffs

16  and the Class Members were harmed and suffered actual damages in that the

17  Class Vehicles' transmissions are substantially certain to fail before their

18  expected useful life has run.  Plaintiffs also seek injunctive relief in the form of

19  extended warranties for all Class Vehicles.

20                              **PARTIES**

21  **Plaintiff Vargas**

22       33.    Plaintiff Omar Vargas ("Vargas") is a California citizen who resides

23  in Los Angeles, California.  On or about August 1, 2011, Plaintiff leased a new

24  2011 Ford Fiesta from Sunrise Ford of North Hollywood, an authorized Ford

25  dealer in Los Angeles County.  His vehicle was equipped with an optional

26  PowerShift Transmission that cost him $1,095.00.

27       34.    Plaintiff leased his vehicle primarily for personal, family, or

28  household use.  Ford manufactured, sold, distributed, advertised, marketed, and

1    warranted the vehicle.

2         35.    Prior to purchasing his Class Vehicle, Plaintiff Vargas investigated

3    and researched the Ford Fiesta.  Ford's omissions were material to Plaintiff

4    Vargas.  Had Ford disclosed the Transmission Defect before Plaintiffs Vargas

5    purchased his  2011 Ford Fiesta, he would have been  aware of such disclosures,

6    and Plaintiff Vargas would not have purchased the vehicle or would have paid

7    less for it.

8         36.    During the first three (3) months of the lease, Mr. Vargas noticed

9    symptoms of the Transmission Defect, including lunging or jerking forward

10   when attempting to decelerate, hesitation, and jerking when attempting to

11   accelerate, akin to a slingshot effect.

12        37.    On or about November 2011, Plaintiff took his vehicle to Buerge

13   Ford, an authorized Ford dealer in Los Angeles, California, complaining that the

14   vehicle was jerking, lunging and unsafe to drive.  The service advisor told

15   Plaintiff that these symptoms were normal because the transmission acts like it

16   has a clutch.  The service advisor also said that the dealership would not attempt

17   to repair his vehicle because it was purchased from a different dealership.

18        38.    On or about February 2012, Plaintiff attempted to contact the

19   salesman from Sunrise Ford who leased him the vehicle.  The salesman did not

20   return Plaintiff's multiple calls.

21        39.    On or about February 2012, Plaintiff contacted the service

22   department at Sunrise Ford, once again complaining that the vehicle was jerking,

23   lunging and unsafe to drive.  The service advisor told Plaintiff that these

24   symptoms were normal for this vehicle and that there was nothing the service

25   department could do to repair the vehicle.

26        40.    On June 2, 2012 Plaintiff brought his vehicle to Sunrise Ford for a

27   scheduled service appointment.  While at the dealership, Plaintiff once again

28   explained to the service department that his vehicle was jerking, lunging and

unsafe to drive.  Plaintiff requested that a technician test drive the vehicle with him so they could observe the problems and fix the vehicle.  The dealership personnel refused to test drive Plaintiff's vehicle.  Furthermore, the transmission technician was unavailable at that time and the dealership would not inspect or attempt to repair Plaintiff's vehicle.

41.     On August 15, 2012 Plaintiff contacted the service department at Star Ford, an authorized Ford dealer in Glendale, California.  Plaintiff explained to the service advisor that his vehicle was jerking, lunging and unsafe to drive. The service advisor acknowledged that the dealership had received many complaints about the PowerShift dual-clutch transmission in the Ford Fiesta but said there was nothing that the dealership could do about it.

42.     On or about August 22, 2012, Plaintiff contacted Buerge Ford again and advised the dealer that he was still experiencing problems with his PowerShift dual-clutch transmission.  For the second time, the service advisor asked Plaintiff to bring the vehicle to the dealer that he purchased it from and claimed that Buerge Ford was too busy with other service appointments to inspect his vehicle.

43.     That same day Plaintiff also contacted 101 Vermont Ford, an authorized Ford dealer in Los Angeles, California.  Similar to the response from Buerge Ford, the service advisor at 101 Vermont Ford asked Plaintiff to bring his vehicle to the dealer from which he purchased the vehicle.

44.     On or about September 1, 2012, Plaintiff took his vehicle back to Sunrise Ford, complaining that the vehicle jerks back and forth at any speed. The dealer verified Plaintiff's concerns and reprogrammed the transmission control module.  However, the dealer noted that a shudder was still felt after the reprograming.  The dealer diagnosed a transmission fluid leak from the clutch housing and replaced the clutch assembly.

45.     Despite these repair attempts by Ford and its dealers, Plaintiff

continues to experience the Transmission Defect, including, but not limited to transmission slips, bucking, kicking, jerking, harsh engagement, premature internal wear, sudden acceleration, delay in downshifts, and delayed acceleration.

46.     At all times, Plaintiff, like all Class Members, has driven his vehicle in a foreseeable manner and in the manner in which it was intended to be used.

**Plaintiff Heberling**

47.     Plaintiff Sharon Heberling ("Heberling") is a California citizen who resides in Tulare, California.  In or around October 26, 2011, Plaintiff purchased a new 2011 Ford Fiesta from Will Tiesiera Ford of Tulare, an authorized Ford dealer in Tulare County.  Her vehicle was equipped with an optional PowerShift Transmission.

48.     Plaintiff purchased her vehicle primarily for personal, family, or household use.  Ford manufactured, sold, distributed, advertised, marketed, and warranted the vehicle.

49.     Prior to purchasing her Class Vehicle, Plaintiff Heberling investigated and researched the Ford Fiesta.  Ford's omissions were material to Plaintiff Heberling.  Had Ford disclosed the Transmission Defect before Plaintiff Heberling purchased her 2011 Ford Fiesta, she would have been aware of such disclosures, and Plaintiff Heberling would not have purchased the vehicle or would have paid less for it.

50.     Within the first six (6) months of the ownership, Mrs. Heberling noticed symptoms of the Transmission Defect, including rough shifting, harsh engagement of gears, hesitations on acceleration, delayed shifting of gears, bucking, lurching, jumping, and sudden shifts.

51.     In or around March 20, 2012, at approximately 3,149 miles, Plaintiff took her vehicle back to Will Tiesiera Ford, her original place of purchase. Plaintiff complained of lurches, grinding gears and jerks to the authorized Ford

mechanics.  Plaintiff's repair order for that visit specifically stated "THE VEHICLE HESITATES ON ACCELERATION AT IN-TOWN SPEEDS."  The Ford authorized mechanics at Will Tiesiera Ford were unable to diagnose her vehicle, with Plaintiff's repair order stating the mechanics "COULD NOT DUPLICATE CUSTOMERS CONCERN AT THIS TIME."

52.     Within four (4) months, in or around June 21, 2012, Plaintiff took her vehicle back to Will Tiesiera Ford complaining of the Transmission Defect again.  The authorized Ford Mechanics were unable to repair her defective PowerShift Transmission, but did inform her that a new transmission was being developed.

53.     In or around October 15, 2012, at approximately 10,915 miles, Plaintiff took her 2011 Ford Fiesta to Will Tiesiera Ford for the third time within a year, complaining of the Transmission Defect.  Plaintiff's repair order states "CUSTOMER STATES THE VEHICLE HAS A SHUDDER ON ACCELERATION. CHECXK (sic) FOR TSB FOR POSSIBLE UPDATE." Plaintiff also characterized the defect as a "shimmy" type feeling upon acceleration, generally feeling like overall instability within the transmission. Pursuant to Technical Service Bulletin 11-9-2, the mechanics at Will Tiesiera Ford reprogrammed the Powertrain Control Module and Transmission Control Module, computers within the vehicle that control how the vehicle shifts. Plaintiff's repair order for this visit also state that shudders on acceleration "ARE NORMAL CHARACTERISTICS OF AN AUTOMATICALLY SHIFTED MANUAL TRANSMISSION."

54.     In or around August 13, 2013, at approximately 19,847 miles, Ms. Heberling's vehicle was again delivered to the Will Tiesiera Ford dealership due to the Transmission Defect.  Plaintiff's repair order states "CUSTOMER STATES THAT TRANSMISSION SHUDDERS AND SLIPS WHEN DRIVING IN HOT AMBIENT WEATHER…CHECK PREVIOUS TRANSMISSION

CONCERNS IN SERVICE HISTORY." The mechanics determined that her transmission required new clutches; however, the required parts were on back order. The dealer stated that they would be unable to repair Ms. Heberling's vehicle until the parts arrived, and the vehicle was returned to her until such time as the parts arrive.

55.     Despite these repair attempts by Ford and its dealers, Plaintiff continues to experience the Transmission Defect, including, but not limited to transmission slips, bucking, kicking, jerking, harsh engagement, premature internal wear, sudden acceleration, delay in downshifts, and delayed acceleration.

56.     At all times, Plaintiff, like all Class Members, has driven her vehicle in a foreseeable manner and in the manner in which it was intended to be used.

**Plaintiff Harris**

57.     Plaintiff Michelle Harris ("Harris") is a California citizen who resides in Morro Bay, California. In or around February 2013, Mrs. Harris purchased a new 2013 Ford Fiesta from Santa Maria Ford, an authorized Ford Dealer in Santa Barbara County, California. Her vehicle was equipped with an optional PowerShift Transmission.

58.     Prior to her purchase in 2013, Plaintiff Harris was exposed to Ford's advertising campaign, including television commercials regarding the Subject Ford Vehicles, as well as a brochure regarding the 2013 Ford Fiesta and the vehicle's Monroney Sticker. Ford's omissions were material to Plaintiff Harris. Had Ford disclosed the Transmission Defect before Plaintiff Harris purchased her 2013 Ford Fiesta, she would have been aware of such disclosures, and Plaintiff Harris would not have purchased the vehicle or would have paid less for it.

59.     Within the first three (3) months of the ownership, Mrs. Heberling noticed symptoms of the Transmission Defect, including rough shifting, harsh

1    engagement of gears, hesitations on acceleration, delayed shifting of gears,

2    bucking, lurching, jumping, and sudden shifts.

3        60.    On or about May 24, 201, and at 6,179 miles, Plaintiff Harris

4    delivered her vehicle to Perry Ford in San Luis Obispo, an authorized Ford repair

5    facility complaining of the Transmission Defect.  Plaintiff's repair order states

6    "CUSTOMER STATES THE VEHICLE HESTITATES (sic) UPON

7    ACCELERATION AND WANTS TO STALL FROM A STOP AND GO

8    SITUATION, WHEN WARM.  Plaintiff's vehicle was worked on my David K.

9    Steele (150), who confirmed Plaintiff's complaint.  The repair order states "RAN

10   EEC QUICK TEST FOR CODES AND FOUND NO CODES IN SYSTEM.

11   VERIFIED CUSTOMERS CONCERN AND FOUND TRANSMISSION FELT

12   UNSATABLE WHEN SHIFTING.  PER TSB 13-4-5 REFLASHED P.C.M.

13   AND T.C.M. MODULES.  PERFORM ED TR RELEARN, SHIFT DRUM

14   RELERN (sic), CLUTCH RELEARN, AND SPEED SENSOR TEST.

15   PREFORMED DRIVE CYCLE AND RETEST TRANSMISSIONS AND

16   FOUND SHIFTS FEEL MORE CRISP AND STEADY."  The vehicle was then

17   returned to Plaintiff.

18       61.    On or around June 21, 2013, and at 7,581 miles, Plaintiff Harris

19   again returned to Perry Ford complaining of the Transmission Defect.  The repair

20   order states "CUSTOMER STATES THE VEHICLE HESITATES UPON

21   ACCELERATION INTERMITTENTLY WHEN WARM.  ESPECIALLY

22   UNDER A BRISK ACCELERATION."  Plaintiff's vehicle was worked on by

23   Tom Ely (245), who confirmed Plaintiff's complaint and replaced the clutch

24   assembly.  The repair order states "CLUTCH SHUDDER FROM STOP NO

25   CODES PASS KOER KOEO KOEC RUN OASIS AND PERFORM TSB 13-4-

26   5. CLUTC (sic) SHUDDER TIME IS HIGHER THAN THE 250RPM

27   PERMITTED 520 RPM REPLACE CLUTCH ASSEMBLY AND PERFORM

28   ADAPTIVE LEARN AND DRIVE CYCLE NOW OK.  The vehicle was then

SECOND AMENDED CLASS ACTION COMPLAINT

1  again returned to Plaintiff.

2  62.  On or around July 19, 2013, Plaintiff Harris returned to Perry Ford
3  complaining of the Transmission Defect.  The repair order states
4  "TRANSMISSION DIAGNOSIS RECHECK TRANS WILL NO (sic) HOLD
5  ON HILL.  ROUGH SHIFT OR HARSH ENGAGEMENT ON REACELL.
6  FEELS LIKE IT WANTS TO CUT OUT, DELAY IN SHIFTING."  Plaintiff's
7  vehicle was worked on by Doug Owen (186), who claimed the vehicle was
8  operating normally.  The repair order states "PERFORM ROAD TEST WITH
9  CUSTOMER TO TRY TO DUPLICATE CUSTOMER CONCERNS FOR NOT
10  HOLDING ON HILLS AN DELAY SHIFTING FEEL ROAD TEST TO GET
11  TRANS OPERATING TEMP ALL UPSHIFTS AND FORCED DOWNSHIFTS
12  NORMAL AT THIS TIME SHOWED CUSTOMER ON ON RAMP (sic) HILL
13  SEHLL B EACH OFF RAMP SLIGHT GRADE TRANS WILL HOLD WENT
14  TO LARGER HILL WILL HOLD FOR SHORT TIME THEN RELEASE
15  BECAUSE OF STEEP GRADE TRIED MULTIPLE TIME NORMAL
16  OPERATION NO REPAIRS AT THIS TIME."

17  63.  Despite these repair attempts by Ford and its dealers, Plaintiff
18  continues to experience the Transmission Defect, including, but not limited to
19  transmission slips, bucking, kicking, jerking, harsh engagement, premature
20  internal wear, sudden acceleration, delay in downshifts, and delayed
21  acceleration.

22  64.  At all times, Plaintiff, like all Class Members, has driven her vehicle
23  in a foreseeable manner and in the manner in which it was intended to be used.

24  **Plaintiff Bertone**

25  65.  Plaintiff Robert Bertone ("Bertone") is a Florida citizen who resides
26  in St. Cloud, Florida.  In or around October 2011, Mr. Bertone purchased a new
27  2012 Ford Fiesta from Kisselback Ford of St. Cloud, an authorized Ford dealer
28  in Osceola County.  His vehicle was equipped with an optional PowerShift

1    Transmission.

2        66.    Plaintiff Bertone purchased his vehicle solely for personal, family,

3 or household use. Ford manufactured, sold, distributed, advertised, marketed,

4 and warranted the vehicle.

5        67.    Prior to purchasing his Class Vehicle, Plaintiff Bertone diligently

6 researched the vehicle, visiting consumer information websites including, but not

7 limited to, Cars.com and Edmunds.com. Plaintiff Bertone also spoke a Ford-

8 authorized dealership representative about the vehicle, and reviewed the

9 vehicle's Monroney informational sticker, prior to purchase. Ford's omissions

10 were material to Plaintiff Bertone. Had Ford disclosed the Transmission Defect

11 before Plaintiff Bertone purchased his 2012 Ford Fiesta, he would have been

12 aware of such disclosures, and Plaintiff Bertone would not have purchased the

13 vehicle or would have paid less for it.

14        68.    Within only the first 300 miles of ownership, Mr. Bertone noticed

15 symptoms of the Transmission Defect, including but not limited to the vehicle

16 hunting for gears and roughly shifting at lower speeds. As the symptoms

17 progressed, Mr. Bertone noticed harsh engagement of gears, hesitations on

18 acceleration, delayed shifting of gears, lurching, and sudden shifts.

19        69.    On or around September 13, 2012, with approximately 22,456 miles

20 on the odometer, Plaintiff Bertone took his vehicle to Kisselback Ford, his

21 original place of purchase. Plaintiff Bertone complained, as recorded in his

22 repair order, of "transmission not shifting properly[,] hesitates/spudders, not

23 shifting smoothly." The Ford-authorized mechanics at Kisselback Ford took no

24 remedial action.

25        70.    On or around September 17, 2012, with approximately 22,664 miles

26 on the odometer, Plaintiff Bertone returned to Kisselback Ford, again

27 complaining, as recorded in his repair order, of "transmission not shifting

28 properly[,] hesitates/spudders, not shifting smoothly." In response, the Ford-

authorized mechanics performed an EEC system diagnosis.   In response to their findings, the mechanics reprogramed Mr. Bertone's PCM (Powertrain Control Module) and TCM (Transmission Control Module).   However, this action did not eliminate the symptoms of the defect.

71.     For the third time that month, on or around September 26, 2012, with approximately 24,865 miles on the odometer, Plaintiff Bertone again returned to Kisselback Ford.  Plaintiff Bertone complained, as recorded in his repair order, that "transmission shudders on 2-3 shift – worse when hot…" The Ford-authorized mechanics determined that "fluid from front seal leaked onto clutch, causing slip."  The mechanics road tested the vehicle, and found that it "shudders at low speeds."  Upon inspection, they found "fluid leak at front area." As a result, the mechanics applied technical service bulletin 12-92-06, and removed and replaced the transmission's clutch assembly.  In addition, the mechanics again reprogramed the PCM and TCM.

72.     On or around June 13, 2013, with approximately 42,000 miles on the odometer, Mr. Bertone returned to Kisselback Ford, complaining, as recorded on his repair order, that "transmission hesitates in low gear when hot."  The Ford-authorized mechanics took no remedial action.

73.     All told, Mr. Bertone visited authorized Ford dealerships an estimated 10-15 times total to complain about the Transmission Defect.  Only a fraction of these complaints were recorded on repair orders.

74.     Despite the repair attempts by Ford and its dealers, Plaintiff Bertone continues to experience the Transmission Defect, including, but not limited to, transmission slips, bucking, kicking jerking, harsh engagement, premature internal wear, sudden acceleration, delay in downshifts, and delayed acceleration.

75.     At all times, Plaintiff Bertone, like all Class Members, has driven his vehicle in a foreseeable manner and in the manner in which it was intended to

1    be used.

2    **Defendant**

3         76.    Defendant Ford Motor Company is a corporation organized and in

4    existence under the laws of the State of Delaware and registered with the

5    California Department of Corporations to conduct business in California.  Ford

6    Motor Company's Corporate Headquarters is located in Dearborn, Michigan.

7    Ford Motor Company designs and manufactures motor vehicles, parts, and other

8    products for sale in the United States and throughout the world.  Ford Motor

9    Company is the warrantor and distributor of the Class Vehicles in the United

10   States.

11        77.    At all relevant times, Defendant was and is engaged in the business

12   of designing, manufacturing, constructing, assembling, marketing, distributing,

13   and selling automobiles and motor vehicle components in California and

14   throughout the United States of America.

15                              **JURISDICTION**

16        78.    This is a class action.

17        79.    Plaintiffs and other members of the Proposed Class are citizens of

18   states different from the home state of Defendants.

19        80.    On information and belief, aggregate claims of individual Class

20   Members exceed $5,000,000.00 in value, exclusive of interest and costs.

21        81.    Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(d).

22                                 **VENUE**

23        82.    Ford, through its business of distributing, selling, and leasing the

24   Class Vehicles, has established sufficient contacts in this district such that

25   personal jurisdiction is appropriate.  Defendant is deemed to reside in this district

26   pursuant to 28 U.S.C. § 1391(a).

27        83.    In addition, a substantial part of the events or omissions giving rise

28   to these claims and a substantial part of the property that is the subject of this

1    action are in this district.  In addition, Plaintiff's Declaration, as required under

2    California Civil Code section 1780(d) but not pursuant to *Erie* and federal

3    procedural rules, which reflects that a substantial part of the events or omissions

4    giving rise to the claims alleged herein occurred, or a substantial part of property

5    that is the subject of this action, is situated in Los Angeles County, California.

6    Plaintiff's Declaration regarding venue is attached as Exhibit 1.

7          84.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a).

8                            **FACTUAL ALLEGATIONS**

9          85.     Since 2010, Ford has designed, manufactured, distributed, sold, and

10   leased the Class Vehicles.  Ford has sold, directly or indirectly, through dealers

11   and other retail outlets, thousands of Class Vehicles equipped with the

12   PowerShift Transmission in California and Nationwide.

13         86.     Ford's PowerShift Transmission, while sometimes referred to as an

14   automatic, is actually a set of computerized manual transmissions.  It lacks a

15   torque converter, instead using two "dry" clutches to directly connect and

16   disconnect the engine to and from the transmission.  Whereas other automated

17   manual transmissions on the market use "wet" clutches bathed in oil, Ford's

18   PowerShift clutches lack the oil pumps and other components of a wet clutch

19   system, and instead operate dry.

20         87.     The PowerShift Transmission is offered as the sole "automatic"

21   option for both the Ford Fiesta and Ford Focus and is priced at $1,095.00.  The

22   PowerShift Transmissions for both vehicles have the same design and

23   components.

24         88.     On information and belief, Ford designed the Class Vehicles'

25   computerized "automated manual" transmissions in an effort to meet heightened

26   governmental and consumer expectations for fuel economy, performance and

27   efficiency.  Theoretically, such a transmission should have the convenience of an

28   automatic transmission without sacrificing fuel efficiency.  In practice, however,

1  Ford's PowerShift Transmission has been plagued by numerous problems and
2  safety hazards.

3       89.    Dating back to at least 2010, Ford was aware of the defects of the
4  PowerShift Transmission.  Ford, however, failed and refused to disclose these
5  known defects to consumers.  As a result of this failure, Plaintiffs and Class
6  Members have been damaged.

7       **The Transmission Defect Poses an Unreasonable Safety Hazard**

8       90.    The Transmission Defect causes unsafe conditions in the Class
9  Vehicles, including but not limited vehicles suddenly lurching forward, sudden
10 loss of forward propulsion, and significant delays in acceleration.  These
11 conditions present a safety hazard because they severely affect the driver's
12 ability to control the Class Vehicle's speed, acceleration, and deceleration of the
13 car.  Even more troubling, the Transmission Defect can cause the vehicle to fail
14 to downshift and decelerate when the brakes are depressed.  As a result,
15 Plaintiffs and Class Members have experienced their cars lurching forward into
16 intersections at red lights due to the failure of their braking efforts to stop the
17 car.

18      91.    Hundreds, if not thousands, of purchasers and lessees of the Class
19 Vehicles have experienced problems with the transmission.  Complaints filed by
20 consumers with the National Highway Traffic Safety Administration
21 ("NHTSA") demonstrate that the defect is widespread and dangerous and that it
22 manifests without warning.  The complaints also indicate Defendant's awareness
23 of the problems with the transmission and how potentially dangerous the
24 defective condition is for consumers.  The following are some safety complaints
25 relating to PowerShift Transmission Defects (spelling and grammar mistakes
26 remain as found in the original) (Safecar.gov, *Search for Complaints* (July 24,
27 2012), http://www-odi.nhtsa.dot.gov/complaints/):

28

**NHTSA Complaints:**

a.  [2011 Ford Fiesta] TRANSMISSION SHIFT ERRATICLY WHEN SLOWING DOWN OR WHILE DRIVING IN HEAVILY CONGESTED TRAFFIC. SOMETIMES IT WILL MAKE VEHICLE LUNGE FORWARD WITH VERY LIGHT FUEL PEDAL APPLICATION. TRANSMISSION IS ALSO MAKING AN AUDIBLE "CLUNK" WHEN THIS HAPPENS. MAYBE A PCM RE FLASH COULD CORRECT THE PROBLEM? THIS HAS BEEN AN ONGOING ISSUE SINCE DAY ONE STARTING IN DECEMBER 2010. *TR

b.  I RECENTLY PURCHASED A BRAND NEW 2011 FORD FIESTA. IN THE PAST 5 MONTHS I HAVE TAKEN IT TO THE DEALERSHIP I PURCHASED IT FROM 5 TIMES BECAUSE THE TRANSMISSION MAKES A LOUD GRINDING NOISE AND LURCHES FORWARD WHEN I AM ON A HILL OR IN STOP AND GO TRAFFIC. I HAVE CONTACTED FORD DIRECTLY AND GOT THE SAME RESPONSE AS WHEN I TOOK IT TO THE DEALER. THEY BOTH SAY IT IS "NORMAL". AFTER CONTACTING FORD DIRECTLY THE SERVICE MANAGER AT MY LOCAL FORD CONTACTED ME AND WENT ON A TEST DRIVE WITH ME WHERE HE SAID HE BOTH HEARD AND FELT WHAT I WAS TALKING ABOUT. HE THEN TOOK A CAR RIGHT OFF THE LOT FOR A TEST DRIVE AND TOLD ME THAT ONE DID NOT DO ANY OF THE THINGS MINE IS DOING. A COUPLE HOURS LATER I GET A CALL FROM HIM STATING FORD HAS TOLD HIM THIS IS NORMAL FOR THE CAR TO MAKE THESE NOISES AND LURCH FORWARD AND THAT THERE IS NOTHING ELSE THEY CAN DO FOR ME. ASSURING ME THAT THE CAR IS UNDER WARRANTY AND THAT IF THE TRANSMISSION FAILS IT WILL BE COVERED. I DRIVE 70 MILES A DAY IN RUSH HOUR TRAFFIC ON HILLS AND TO ME THIS IS A HUGE SAFETY CONCERN. THERE ARE MANY PEOPLE THAT HAVE COMPLAINED TO FORD ABOUT THE SAME PROBLEM SO THEY DID THE TSB FOR THIS ISSUE AND IT MADE THE PROBLEM WORSE NOW WHEN I AM ON A HILL THE CAR ROLLS BACK AND THE GRINDING NOISE IS WORSE. I TOOK THE CAR BACK RIGHT AFTER THEY PERFORMED THE TSB AND TOLD THEM AND THEY ARE STILL SAYING THIS IS NORMAL. *TR

c.  TL* THE CONTACT OWNS A 2011 FORD FIESTA. WHILE DRIVING APPROXIMATELY 5 MPH, THE ACCELERATOR PEDAL WAS ENGAGED FOLLOWED BY A THREE SECOND DELAY RESPONSE. THE FAILURE WOULD OCCUR AT ANY GIVEN TIME. THE VEHICLE WAS TAKEN TO AN AUTHORIZED DEALER WHERE THEY INFORMED THE CONTACTS THAT THE VEHICLE WAS OPERATING PROPERLY. THE FAILURE MILEAGE WAS APPROXIMATELY 3,700. UPDATED 05/25/11 *BF THE CONSUMER STATED O SEVERAL OCCASIONS THE VEHICLE COULD NOT DECIDE WHICH GEAR TO GO

SECOND AMENDED CLASS ACTION COMPLAINT

INTO. THERE WAS DELAY IN ACCELERATION. UPDATED 07/08/11

d.  [2011 Ford Fiesta] THE TRANSMISSION SEEMS TO FAIL TO GO INTO NEUTRAL WHEN BRAKES ARE APPLIED. CAR STARTED WITH TRANSMISSION ISSUES INITIALLY WITH THE CAR TRYING TO FIGHT THE BRAKES A FEW TIMES JUST BEFORE STOPPING. AT TIMES THE CAR SIGNIFICANTLY OVERCOMES THE BRAKES. ON ONE INSTANCE THE CAR FAILED TO STOP AT RED LIGHT AND MANAGED TO CREEP INTO THE INTERSECTION BEFORE STOPPING. THE TRANSMISSION DOES SEEM TO HAVE SAFETY PROBLEMS PARTICULARLY IT MAKES IT HARD TO PREDICT HOW THE CAR WILL COME TO A STOP FROM A HIGH RATE OF SPEED. THE STOPPING IS JERKY AND THE STOPPING DISTANCE IS VARIABLE AND INCONSISTENT DUE TO THE "JERKY" BEHAVIOR OF TRANSMISSION. *TR

e.  [2011 Ford Fiesta] VEHICLE HESITATES GREATLY UPON ACCELERATION AND STUTTERS LIKE IT IS JUMPING IN AND OUT OF GEAR. IT IS AN AUTOMATIC. *TR

f.  THIS IS IN REGARDS TO A NEW 2011 FORD FIESTA WITH THE POWERSHIFT 6-SPEED DUAL-CLUTCH TRANSMISSION. 3 TIMES NOW I HAVE EXPERIENCED THE TRANSMISSION HESITATE FOR AN EXTENDED PERIOD OF TIME BEFORE ENGAGING. EACH TIME IT HAS HAPPENED I HAVE BEEN COASTING IN TRAFFIC AT SPEEDS BETWEEN 15-25 MPH OR SO, WAITING FOR ONCOMING TRAFFIC TO PASS AND THEN ATTEMPTING TO ACCELERATE ACROSS LANES OF TRAFFIC WITHOUT GETTING HIT. WHEN DOING THIS, INSTEAD OF ACCELERATING QUICKLY TO AVOID GETTING HIT BY TRAFFIC THE CAR WOULD ACT LIKE IT WAS REVVING BUT NOT ENGAGING THE CLUTCH SO I WOULD END UP JUST COASTING ACROSS LANES OF INCOMING TRAFFIC. TO AVOID HAVING THIS HAPPEN I HAVE LEARNED THAT I HAVE TO QUICKLY AND FULLY STOMP ON THE GAS PEDAL IN ORDER FOR THE TRANSMISSION TO REALIZE I'M IN NEED OF QUICK ACCELERATION. USING ONLY MODERATE PRESSURE ON THE GAS PEDAL YIELDS THE SCARY HESITATION THAT HAS LEAD TO NEAR IMMINENT COLLISIONS. LIGHT PRESSURE TO THE GAS PEDAL TENDS TO MAKE THE CAR BARELY ACCELERATE AT ALL AND SOMETIMES FEEL LIKE IT'S ABOUT TO STALL. IT SEEMS TO ME THE COMPUTER GETS CONFUSED IN THIS SCENARIO SINCE YOU ARE FIRST DECELERATING, THEN COASTING, THEN TRYING TO ACCELERATE AGAIN ALL WITHIN A SHORT TIME-FRAME. *TR

g.  TL* THE CONTACT OWNS A 2011 FORD FIESTA. WHILE DRIVING DRIVING APPROXIMATELY 10 MPH, THE TRANSMISSION EMITTED A LOUD GRINDING NOISE

WITH EXCESSIVE HESITATION. ON A SEPARATE OCCASION THE TRANSMISSION FAILED TO RESPOND DURING ACCELERATION. THE VEHICLE WAS TAKEN TO AN AUTHORIZED DEALER FOUR DIFFERENT TIMES FOR THE IDENTICAL FAILURE. MOST RECENT THE VEHICLE WAS TAKEN TO THE DEALER AND AN ENGINEER INSPECTED THE VEHICLE AND STATED THE TRANSMISSION RESPONSE WAS A COMMON CHARACTERISTIC. THE VEHICLE HAD NOT BEEN REPAIRED. THE MANUFACTURER WAS NOT MADE AWARE OF THE DEFECT. THE APPROXIMATE FAILURE MILEAGE WAS 500.

h.   MY 2011 FORD FIESTA HAS ISSUES WITH THE TRANSMISSION. IT SHIFTS HARD AND IRRATICALLY SHIFTS AT LOWER SPEEDS. I HAVE TAKEN IT BACK INTO THE DEALERSHIP 2 TIMES IN THE FIRST 5 MONTHS OF OWNING IT AND ALL THEY DID WAS A SOFTWARE UPDATE ON THE SECOND VISIT. THE FIRST VISIT, THEY SAID THEY COULD NOT FIND ANYTHING WRONG WITH IT. I NOW HAVE ANOTHER APPOINTMENT FOR TOMORROW AND I HAVE ONLY HAD THIS CAR SINCE FEBRUARY. I HAVE DRIVEN IT HOPING THAT IT WOULD JUST WORK ITSELF OUT SINCE IT WAS NEW BUT IT HAS GOTTEN WORSE OVER TIME. *KB

i.   [2011 Ford Fiesta] TRANSMISSION UP SHIFTS/DOWN SHIFTS VERY HARD AT SPEEDS BETWEEN 10-30MPH. WORSE WHEN IN TRAFFIC. *TR

j.   [2012 Ford Fiesta] WHILE DRIVING THE VEHICLE, DRIVER WAS ENTERING THE FREEWAY, THE VEHICLE SHIFTED THROUGH ALL THE GEARS RAPIDLY LEAVING THE VEHICLE MOVING AT ~40 - 45MPH AND NOT SPEEDING UP. THE ACCELERATION PEDAL WAS TO THE FLOOR AND THE CARE DIDN'T INCREASE IN SPEED AND WAS ALMOST REAR ENDED BECAUSE ALL OTHER DRIVERS ON THE ROAD WAY WERE MOVING AT ~60MPH. THE DRIVER THEN LET OFF THE ACCELERATOR AND PRESSED DOWN AGAIN THE VEHICLE THEN REVVED REAL HIGH THEN SHIFTED VERY HARD AND SHOOK THROWING THE PASSENGERS FORWARD AND BACK CAUSING A WHIP-LASH TYPE OF MOVEMENT AMONG PASSENGERS. THE VEHICLE OFTEN GRINDS WHILE SHIFTING AND DECELERATING. OWNER TOOK THE VEHICLE TO DEALERSHIP AND THE SERVICE DEPARTMENT HOURS LATER CALLED TO REPORT THE VEHICLE IS DRIVING AS EXPECTED AND NO ISSUES WITH THE VEHICLE AND THAT THE GRINDING GEARS WAS EXPECTED. *TR

k.   [2012 Ford Focus] AUTOMATIC TRANSMISSION DOES NOT SHIFT SMOOTHLY. INTERMITTENT VIBRATES, BUCKS, HESITATES, SLIPS & JERKS. CAN'T RELY ON TAKE-OFF ACCELERATION WHETHER IT WILL ENGAGE

PROPERLY, PULLING INTO TRAFFIC IS VERY DANGEROUS. STOP AND GO TRAFFIC IS VERY DANGEROUS. IT'S LIKE SOMEONE DRIVING A STICK SHIFT AND NOT HAVING THE CLUTCH & GAS IN SYNC, ONLY IT'S AN AUTOMATIC SO YOU CAN'T DO ANYTHING ABOUT IT. I HAVE HAD THE CAR IN TO THE SERVICE DEPARTMENT ON 3 OCCASIONS. THE FIRST TIME THE TECH LAUGHED AT ME AND TOLD ME IT WAS JUST THE "NEW" 6-SPEED TRANSMISSION. 2ND TIME, THEY REPLACED SOME PARTS IN THE TRANSMISSION. 3RD TIME, THEY HAD THE CAR 4 DAYS & SAID THERE WAS NOTHING OUT OF THE ORDINARY HAPPENING. THERE IS DEFINITELY SOMETHING WRONG WITH THIS TRANSMISSION, AND FORD NEEDS TO DO SOMETHING TO FIX THEM BEFORE AN ACCIDENT HAPPENS.

l    TL* THE CONTACT OWNS A 2012 FORD FOCUS. THE CONTACT STATED THAT WHILE DRIVING APPROXIMATELY 5 MPH, THE TRANSMISSION BEGAN TO HESITATE IN A JERKING MOTION AND THE VEHICLE STALLED. THE ENGINE RESTARTED AND THE VEHICLE WAS ABLE TO RESUME. IN ADDITION, ON A SEPARATE OCCASSION THE TRANSMISSION WARNING INDICATOR ILLUMINATED ON THE INSTRUMENT PANEL FOR A FEW SECONDS. THE FAILURES OCCURRED NUMEROUS TIMES. THE VEHICLE WAS TAKEN TO AN AUTHORIZED DEALER EIGHT TIMES FOR THE SAME MALFUNCTION. A DIAGNOSIS WAS PERFORMED IN WHICH A TROUBLE CODE WAS NOT DETECTED. THE COMPUTER SYSTEM, ABS, AND DRIVE TRAIN WERE REPROGRAMMED MORE THAN ONE TIME. THE FAILURE PERSISTED AND THE DEALER WAS UNABLE TO RESOLVE THE PROBLEM. THE MANUFACTURER AND DEALER STATED THAT THE VEHICLE FUNCTIONED AS DESIGNED. THE APPROXIMATE FAILURE MILEAGE WAS 350.

m.    PURCHASED A NEW 2012 FORD FOCUS WITH AUTOMATIC TRANSMISSION IN APRIL, 2012. IMMEDIATELY EXPERIENCED LOW SPEED TRANSMISSION SHIFTING PROBLEMS AND ALSO DISCOVERED COMPLETE FREE ROLL BACKWARD, UNENDING, UNTIL HITTING LEVEL GROUND AND/OR HITTING AN OBJECT WHILE ROLLING BACKWARDS ON AN INCLINE, EVEN WHILE IN GEAR. THIS IS A SERIOUS SAFETY AND DRIVER LIABILITY ISSUE . DEALERSHIP HAS RE-PROGRAMMED TRANSMISSION ON A TECHNICAL SERVICE BULLETIN WITHOUT SUCCESS. DEALERSHIP HAD ME TEST DRIVE ANOTHER 2012 FOCUS THINKING IT WOULD NOT DEMONSTRATE THE SAME SAFETY PROBLEM...AND TO THEIR SURPRISE..THE TEST DRIVE VEHICLE THEY GAVE ME ALSO PERFORMED THE SAME WAY ON THE FREE ROLLBACK WHILE IN GEAR. I BELIEVE THE FUNDAMENTAL PROBLEM HERE IS THAT FORD HAS DESIGNED AND MANUFACTURED IN THE 2012 FOCUS

LINE A STANDARD/MANUAL TRANSMISSION (POORLY SHIFTED BY SOFTWARE AND DYSFUNCTIONAL ON THE FREE ROLL BACK ISSUE) AND IS MARKETING IT TO ALL CONSUMERS AS AN AUTOMATIC TRANSMISSION. SERVICE DEPARTMENT ACKNOWLEDGES THAT IT TRULY IS A STANDARD/MANUAL DESIGN. THE WINDOW STICKER AND SALES PROCESS MISREPRESENTS TO THE CONSUMER THAT IT IS AN AUTOMATIC TRANSMISSION. THIS MAY CONSTITUTE CONSUMER FRAUD ON A NATIONAL LEVEL LEADING TO EITHER CLASS ACTION LITIGATION, TOTAL RECALL AND/OR INDIVIDUAL CASES OF LITIGATION. I AM CONSIDERING ALL OF THE ABOVE AS THE PROBLEM REMAINS AND HAS NOT BEEN RECTIFIED. *TR

n   WHEN ACCELERATING CAR JUMPS OR HOPS VIOLENTLY. ENGINE MAKES GRINDING/CHATTERING NOISE WHEN CHANGING GEARS. EXPERIENCE ROLL BACK WHEN ON A SLIGHT INCLINE. POWER SHIFT 6 SPEED IS NOT SAFE. HAVE TROUBLE CROSSING LANES OF TRAFFIC FOR THE JUMPING/LAUNCH JUDDER PROBLEM. *TR

92.   The Transmission Defect poses an unreasonable safety risk for Class Members, as well as the drivers, passengers, and pedestrians sharing the road with Class Vehicles.  A vehicle's ability to have forward propulsion, not to stall, not to surge or jerk unexpectedly, and the ability of a vehicle's transmission to perform properly are each critical to a vehicle's safe operation.  A defect that causes one or more of these negative characteristics poses a safety hazard to the general public, and increases the risk of automobile accidents.

**Ford Has Exclusive Knowledge of the Transmission Defect**

93.   Ford had superior and exclusive knowledge of the transmission defect, and knew or should have known that the defect was not known or reasonably discoverable by Plaintiffs and Class Members before they purchased or leased the Class Vehicles.

94.   Plaintiffs is informed and believes and based thereon alleges that before Plaintiffs purchased or leased their Class Vehicles, and since at least 2010, Ford knew about the Transmission Defect through sources not available to consumers, including pre-release testing data, early consumer complaints about

the transmission defects to Ford and its dealers, testing conducted in response to those complaints, high failure rates and replacement part sales data, aggregate data from Ford dealers, among other internal sources of aggregate information about the problem including, but not limited to, similar defects in the substantially identical European and Australian models.

95.     Before the Class Vehicles were available for sale in the United States, Ford offered the same vehicles, equipped with a similar dual-clutch transmission, in Europe and Australia.  Although the United States version utilizes dry-clutches as opposed to the European and Australian version's wet-clutches, Ford acknowledged in its own press release that the transmission offered for sale in the United States is a "derivative" of the design from the European and Australian models.  European and Australian versions of the dual-clutch transmission suffered from similar defects as alleged herein.

96.     In addition to having years of analysis and feedback with the prior dual-clutch design, Ford also acknowledged in its own press releases the extensive pre-release testing and computer-aided modeling, simulation, and analysis it conducted before bringing the PowerShift Transmission to the United States market.

97.     Ford was also aware of the Transmission Defect through the numerous complaints it received, both from consumers and from automotive journalists, who roundly criticised the performance of the PowerShift Transmission.  Indeed, a July 15, 2011 *New York Times* review of the Ford Focus criticized the PowerShift transmission's "jerks, pauses and lethargic acceleration."  In that same article, Greg Burgess, a Ford engineer, admitted that Ford made "tradeoffs" in terms of drivability in order to "deliver something that is very, very fuel-efficient."

98.     The review went on to state:  "the logical explanation is that they [the Ford Engineers] were given a fuel economy target and no option but to meet

1  it.  One might wonder why a top executive didn't step in to keep the transmission
2  from reaching market."

3       99.    The existence of the Transmission Defect is a material fact that a
4  reasonable consumer would consider when deciding whether to purchase or lease
5  a vehicle that was equipped with an automatic transmission.  Had Plaintiffs and
6  other Class Members known that the Class Vehicles were equipped with
7  defective transmissions, they would not have purchased or leased the Class
8  Vehicles equipped with the PowerShift Transmissions or would have paid less
9  for them.

10      100.   Reasonable consumers, like Plaintiffs, reasonably expect that a
11 vehicle's transmission is safe, will function in a manner that will not pose a
12 safety hazard, and is free from defects.  Plaintiffs and Class Members further
13 reasonably expect that Ford will not sell or lease vehicles with known safety
14 defects, such as the Transmission Defect, and will disclose any such defects to its
15 consumers when it learns of them.  They did not expect Ford to fail to disclose
16 the Transmission Defect to them and to continually deny the defect.

**Ford Has Actively Concealed the Transmission Defect**

18      101.   While Ford has been fully aware of the Transmission Defect in the
19 Class Vehicles, it actively concealed the existence and nature of the defect from
20 Plaintiffs and Class Members at the time of purchase, lease or repair and
21 thereafter.  Specifically, Ford failed to disclose or actively concealed at and after
22 the time of purchase, lease, or repair:

23           (a)    any and all known material defects or material nonconformity
24                  of the Class Vehicles, including the defects relating to the
25                  PowerShift Transmission;

26           (b)    that the Class Vehicles, including their PowerShift
27                  Transmission, were not in good in working order, were
28                  defective, and were not fit for their intended purposes; and

(c)     that the Class Vehicles and their PowerShift Transmission
were defective, despite the fact that Ford learned of such
defects through alarming failure rates, customer complaints,
as well as through other internal sources, as early as 2010.

102.   As a result of the Transmission Defect, Ford was inundated with complaints regarding the PowerShift Transmission.  In July 2011, Ford implemented a communications strategy to enlighten consumers about some of the behavior characteristics of the transmission in order to "improve customer expectations."  In a memo with instructions sent to Ford dealers and service personnel, Ford noted that some of the common characteristics of the PowerShift Transmission include double clicking metal sounds, coast down whine, low speed grinding, and reverse gear whine.

103.   However, despite Ford's public insistence that these behavioral characteristics of the PowerShift Transmission were normal, in 2010 and 2011, Ford issued several Technical Service Bulletins ("TSBs") to its dealers in the United States acknowledging defects in the PowerShift Transmission.  Ford's TSB from September 2010, covering the 2011 Ford Fiesta, informs dealers of "concerns such as no engagement or intermittent no engagement in Drive or Reverse when shifting from Park to Drive or Reverse, grinding noise during engagement, and/or a check engine light with transmission control module (TCM) diagnostic trouble code…"

104.   Ford's TSB released on January 1, 2011, covering the 2011 Fiesta with the PowerShift Transmission, informs dealers of problems with the PowerShift Transmission causing "a loss of power, hesitation, surge, or lack of throttle response while driving."

105.   Ford's TSB from March 31, 2011, also covering the 2011 Ford Fiesta, informs dealers of problems where the PowerShift Transmission "exhibit[s] a rattle/grind noise in reverse only."

106.   Ford issued two separate TSBs in May of 2011, both covering the Ford Fiesta.  These TSBs addressed problems with the PowerShift Transmission including "concerns in Drive or Reverse when shifting from Park to Drive or reverse, no engagement, delayed engagement, intermittent engagement, noise during engagement. . ."

107.   On information and belief, another Ford TSB released in September 2011 advised dealers to reprogram the transmission computer if 2011 Fiesta owners complained about "hesitation when accelerating from a low speed after coast down, harsh or late 1-2 upshift, harsh shifting during low-speed tip-in or tip-out maneuvers and/or engine r.p.m. flare when coasting to a stop."

108.   The 2012 Ford Focus was the subject of a Ford TSB in September 2011, which informed dealers of transmission problems including:  "RPM flare on deceleration coming to a stop, rough idle on deceleration coming to a stop, intermittent engine idle fluctuations at a stop, intermittent vehicle speed control inoperative, intermittent harsh engagement/shift…."

109.   In December of 2011, *Motor Trend* magazine called these efforts by Ford a "stealth upgrade" and that while [t]here's no official recall or service campaign . . . anybody who complains or requests an upgrade at the dealership can have their powertrain control computer re-flashed."

110.   On information and belief, the software upgrades outlined by the various TSBs issued by Ford were ineffective at addressing the Transmission Defect.

111.   When consumers present the Class Vehicles to an authorized Ford dealer for repair of the transmission, rather than repair the problem under warranty, Ford dealers either inform consumers that their vehicles are functioning properly, or conduct software updates that delay the manifestation of defect in an attempt not to pay for it under warranty.

112.   To this day, Ford still has not notified Plaintiffs and the Class

SECOND AMENDED CLASS ACTION COMPLAINT

1  Members that the Class Vehicles suffer from a systemic defect that causes the

2  transmission to malfunction.

3       113.  Ford has caused Plaintiffs and Class Members to expend money at

4  its dealerships to diagnose, repair or replace the Class Vehicles' transmissions,

5  despite Ford's knowledge of the Transmission Defect.

6  **CLASS ACTION ALLEGATIONS**

7       114.  Plaintiffs bring this lawsuit as a class action on behalf of themselves

8  and all others similarly situated as members of the proposed Class pursuant to

9  Federal Rules of Civil Procedure 23(a), 23(b)(2) and 23(b)(3). This action

10 satisfies the numerosity, commonality, typicality, adequacy, predominance, and

11 superiority requirements of those provisions.

12      115.  The Class and Sub-Class are defined as:

13
14        **Class**: All individuals in the United States who purchased or leased any 2011 through 2014 Ford Fiesta or 2012 through 2013 Ford Focus vehicles equipped with a PowerShift Transmission.

15
16        **California Sub-Class**: All individuals in the State of
17 California who purchased or leased any 2011 through 2013 Ford Fiesta or 2012 through 2013 Ford Focus vehicles equipped with a PowerShift Transmission.

18        **CLRA Sub-Class**: All California Class Members who
19 are "consumers" within the meaning of California Civil Code § 1761(d) ("the CLRA Sub-Class").

20
21        **Florida Sub-Class**: All individuals in the State of
22 California who purchased or leased any 2011 through 2014 Ford Fiesta or 2012 through 2013 Ford Focus equipped with a Powershift Transmission.

23
24      116.  Excluded from the Class and Sub-Class are: (1) Defendant, any

25 entity or division in which Defendant has a controlling interest, and their legal

26 representatives, officers, directors, assigns, and successors; (2) the Judge to

27 whom this case is assigned and the Judge's staff; and (3) those persons who have

28 suffered personal injuries as a result of the facts alleged herein. Plaintiffs reserve

1  the right to amend the Class and Sub-Class definitions if discovery and further
2  investigation reveal that the Class and Sub-Class should be expanded or
3  otherwise modified.

4       117.   Numerosity:  Although the exact number of Class Members is
5  uncertain and can only be ascertained through appropriate discovery, the number
6  is great enough such that joinder is impracticable.  The disposition of the claims
7  of these Class Members in a single action will provide substantial benefits to all
8  parties and to the Court.  The Class Members are readily identifiable from
9  information and records in Defendant's possession, custody, or control, as well
10  as from records kept by the Department of Motor Vehicles.

11       118.   Typicality:  Plaintiffs' claims are typical of the claims of the Class
12  in that Plaintiffs, like all Class Members, purchased or leased a Class Vehicle
13  designed, manufactured, and distributed by Ford, and equipped with a
14  PowerShift Transmission.  The representative Plaintiffs, like all Class Members,
15  has been damaged by Defendant's misconduct in that he has incurred or will
16  incur the cost of repairing or replacing the defective transmission.  Furthermore,
17  the factual bases of Ford's misconduct are common to all Class Members and
18  represent a common thread resulting in injury to all Class Members.

19       119.   Commonality:  There are numerous questions of law and fact
20  common to Plaintiffs and the Class that predominate over any question affecting
21  only individual Class Members.  These common legal and factual issues include
22  the following:

23             (a)   Whether Class Vehicles suffer from defects relating to the
24                  PowerShift Transmission;
25             (b)   Whether the defects relating to the PowerShift Transmission
26                  constitute an unreasonable safety risk;
27             (c)   Whether Defendant knows about the defects relating to the
28                  PowerShift Transmission and, if so, how long Defendant has

1          known of the defect;

2          (d)     Whether the defective nature of the PowerShift Transmission

3                  constitutes a material fact;

4          (e)     Whether Defendant has a duty to disclose the defective nature

5                  of the PowerShift Transmission to Plaintiffs and Class

6                  Members;

7          (f)     Whether Plaintiffs and the other Class Members are entitled

8                  to equitable relief, including but not limited to a preliminary

9                  and/or permanent injunction;

10         (g)     Whether Defendant knew or reasonably should have known of

11                 the defects relating to the PowerShift Transmission before it

12                 sold and leased Class Vehicles to Class Members;

13         (h)     Whether Defendant should be declared financially responsible

14                 for notifying all Class Members of the problems with the

15                 Class Vehicles and for the costs and expenses of repairing and

16                 replacing the defective PowerShift Transmission;

17         (i)     Whether Defendant is obligated to inform California Class

18                 Members of their right to seek reimbursement for having paid

19                 to diagnose, repair, or replace their defective PowerShift

20                 Transmission; and

21         (j)     Whether Defendant breached the implied warranty of

22                 merchantability pursuant to the Song-Beverly Act.

23     120.    Adequate Representation:  Plaintiffs will fairly and adequately

24 protect the interests of the Class Members.  Plaintiffs have retained attorneys

25 experienced in the prosecution of class actions, including consumer and product

26 defect class actions, and Plaintiffs intend to prosecute this action vigorously.

27     121.    Predominance and Superiority:  Plaintiffs and the Class Members

28 have all suffered and will continue to suffer harm and damages as a result of

SECOND AMENDED CLASS ACTION COMPLAINT

Defendant's unlawful and wrongful conduct.  A class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law.  Because of the relatively small size of the individual Class Members' claims, it is likely that only a few Class Members could afford to seek legal redress for Defendant's misconduct.  Absent a class action, Class Members will continue to incur damages, and Defendant's misconduct will continue without remedy.  Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants, and will promote consistency and efficiency of adjudication.

122.   23(b) (2) as to the Class and Sub Class:  Final injunctive relief or corresponding declaratory relief, as expressly provided, for example, in California under the CLRA, the UCL and the Song Beverly Consumer Warranty Act, is particularly appropriate respecting the Class as a whole because Defendant has acted or refused to act on grounds that apply generally to the Class and Sub-Classes.  A single injunction, for example, in the form of extended warranties, would provide relief to each member of the Class.  Defendant's misrepresentations and wrongful conduct was identical to each class member.  As the wrongs alleged apply equally and identically to all Class members and flow directly from liability to the Class as a whole on the claims forming the injunctive relief, no individualized facts or additional hearings would be required.  Proof of purchase of the vehicle (i.e., proof of harm) entitles each Class member to the same relief for the wrongs alleged.  Moreover, to the extent that restitution or monetary relief is sought, such a remedy, particularly with respect to the uniform amount that each Class member paid for the optional PowerShift Transmission, would be formulaic and objectively calculable and not

1   dependent in any significant way on subjective differences between Class

2   members. A determination as to the common issues under Rule 23(a) will, in one

3   stroke, permit the fact finder to grant the injunctive relief sought.  Such

4   requested relief does not preclude resolving this matter under Rule 23(b) and the

5   notice and opt-out provisions thereunder.

## TOLLING OF THE STATUTE OF LIMITATIONS

7   123.   Because the defect is undetectable until it manifests and Ford failed

8   to disclose or intentionally concealed the Transmission Defect, Plaintiffs and

9   Class Members were not reasonably able to discover the problem until after

10   purchasing the Class Vehicles, despite exercise of due diligence.

11   124.   Additionally, on information and belief, Ford instructed its

12   authorized dealership employees and technicians to inform Class Members that

13   the manifestations of the Transmission Defect in their PowerShift Transmission

14   was normal, and therefore not a defect as alleged herein.

15   125.   Plaintiffs and the Class Members had no realistic ability to discern

16   that the PowerShift Transmissions in Class Vehicles were defective.  Therefore,

17   the discovery rule is applicable to the claims asserted by Plaintiffs and the Class

18   Members.

19   126.   Plaintiffs are informed and believe and based thereon allege that

20   Ford has known of the Transmission Defect since at least 2010 and has

21   concealed from or failed to alert owners of the Class Vehicles of the defective

22   nature of the PowerShift Transmission.  It was not until shortly prior to the filing

23   of the original complaint in the present action did Plaintiff Vargas discover the

24   Transmission Defect.  Further, it was not until early to mid 2013 that the other

25   named plaintiffs herein discovered the Transmission Defect.

26   127.   Any applicable statute of limitation has therefore been tolled by

27   Defendants' knowledge, active concealment, and denial of the facts alleged

28   herein.  Defendants are further estopped from relying on any statute of limitation

1   because of its concealment of the Transmission Defect.

2   **FIRST CAUSE OF ACTION**

3   **(Violation of California's Consumer Legal Remedies Act,**

4   **California Civil Code § 1750, *et seq*.)**

5   **(Brought by Plaintiffs Vargas, Harris, and Heberling)**

6   128.   Plaintiffs incorporate by reference the allegations contained in the

7   preceding paragraphs of this Complaint.

8   129.   Plaintiffs bring this cause of action on behalf of themselves and on

9   behalf of the members of the CLRA Sub-Class.

10   130.   Defendant is a "person" as defined by California Civil Code

11   § 1761(c).

12   131.   Plaintiffs and CLRA Sub-class Members are "consumers" within the

13   meaning of California Civil Code § 1761(d) because they purchased their Class

14   Vehicles primarily for personal, family or household use.

15   132.   By failing to disclose and concealing the defective nature of the

16   transmissions from Plaintiffs and prospective Class Members, Defendant

17   violated California Civil Code § 1770(a), as it represented that the Class

18   Vehicles and their transmissions had characteristics and benefits that they do not

19   have, and represented that the Class Vehicles and their transmissions were of a

20   particular standard, quality, or grade when they were of another.  *See* Cal. Civ.

21   Code §§ 1770(a)(5) & (7).

22   133.   Defendant's unfair and deceptive acts or practices occurred

23   repeatedly in Defendant's trade or business, were capable of deceiving a

24   substantial portion of the purchasing public, and imposed a serious safety risk on

25   the public.

26   134.   Defendant knew that the Class Vehicles and their transmissions

27   suffered from an inherent defect, were defectively designed or manufactured, and

28   were not suitable for their intended use.

135.   As a result of their reliance on Defendant's omissions and/or misrepresentations, owners and/or lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the Transmission Defect, Plaintiffs and the Class Members were harmed and suffered actual damages in that the Class Vehicles' transmissions are substantially certain to fail before their expected useful life has run.

136.   Defendant was under a duty to Plaintiffs and the Class Members to disclose the defective nature of the transmissions and/or the associated repair costs because:

(a)   Defendant was in a superior position to know the true state of facts about the safety defect in the Class Vehicles' transmissions;

(b)   Plaintiffs and the Class Members could not reasonably have been expected to learn or discover that their transmissions had a dangerous safety defect until it manifested; and

(c)   Defendant knew that Plaintiffs and the Class Members could not reasonably have been expected to learn of or discover the safety defect.

137.   In failing to disclose the defective nature of the transmissions, Defendant knowingly and intentionally concealed material facts and breached its duty not to do so.

138.   The facts Defendant concealed from or did not disclose to Plaintiffs and the Class Members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Class Vehicles or pay less.  Had Plaintiffs and other Class Members known that the Class Vehicles' transmissions were defective, they would not have purchased or leased the Class Vehicles or would have paid less for them.

139.   Plaintiffs and the Class Members are reasonable consumers who do not expect the transmissions installed in their vehicles to exhibit transmission slips, kicking forward, jerking, premature internal wear, delayed acceleration, and/or difficulty in stopping the vehicle.  This is the reasonable and objective consumer expectation relating to vehicle transmissions.

140.   As a result of Defendant's conduct, Plaintiffs and Class Members were harmed and suffered actual damages in that the Class Vehicles experienced and will continue to experience transmission slips, kicking forward, jerking, increased stopping times, premature internal wear, and delayed acceleration.

141.   As a direct and proximate result of Defendant's unfair or deceptive acts or practices, Plaintiffs and Class Members suffered and will continue to suffer actual damages.

142.   Plaintiffs and the Class are entitled to equitable relief.

143.   On September 28, 2012, Defendant was sent a notice of its alleged violations of the CLRA pursuant to California Civil Code § 1782(a) via certified mail, return receipt requested.  Defendant failed to provide appropriate relief for its violations of the CLRA.  As a result, Plaintiffs now seeks monetary and compensatory damages, including the additional cost of the PowerShift Transmission option, in addition to injunctive and equitable relief.

**SECOND CAUSE OF ACTION**

**(Violation of California Business & Professions Code § 17200, *et seq.*)**

**(Brought by Plaintiffs Vargas, Harris and Heberling)**

144.   Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

145.   Plaintiffs bring this cause of action on behalf of themselves and on behalf of all Class Members.

146.   As a result of their reliance on Defendant's omissions and/or misrepresentations, owners and/or lessees of the Class Vehicles suffered an

ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the Transmission Defect, Plaintiffs and the Class Members were harmed and suffered actual damages in that the Class Vehicles' transmissions are substantially certain to fail before their expected useful life has run.

147.   California Business & Professions Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

148.   Plaintiffs and the Class Members are reasonable consumers who do not expect their transmissions to exhibit transmission slips, kicking forward, jerking, increased stopping times, premature internal wear, and/or delayed acceleration.

149.   Defendant knew the Class Vehicles and their transmissions suffered from inherent defects, were defectively designed or manufactured, would fail prematurely, and were not suitable for their intended use.

150.   In failing to disclose the defects with the transmission, Defendant has knowingly and intentionally concealed material facts and breached its duty not to do so.

151.   Defendant was under a duty to Plaintiffs and the Class Members to disclose the defective nature of the Class Vehicles and their transmissions:

(a)   Defendant was in a superior position to know the true state of facts about the safety defect in the Class Vehicles' transmissions;

(b)   Defendant made partial disclosures about the quality of the Class Vehicles without revealing the defective nature of the Class Vehicles and their transmissions; and

(c)   Defendant actively concealed the defective nature of the Class Vehicles and their transmissions from Plaintiffs and the Class.

152.   The facts Defendant concealed from or not disclosed to Plaintiffs and the Class Members are material in that a reasonable person would have considered them to be important in deciding whether to purchase or lease Class Vehicles.  Had Plaintiffs and other Class Members known that the Class Vehicles' transmissions were defective and posed a safety hazard, then Plaintiffs and the other Class Members would not have purchased or leased Class Vehicles equipped with transmissions, or would have paid less for them.

153.   Defendant continued to conceal the defective nature of the Class Vehicles and their transmissions even after Class Members began to report problems.  Indeed, Defendant continues to cover up and conceal the true nature of the problem.

154.   Defendant's conduct was and is likely to deceive consumers.

155.   Defendant's acts, conduct and practices were unlawful, in that they constituted:

      (a)      Violations of the California Consumer Legal Remedies Act;

      (b)      Violations of the Song-Beverly Consumer Warranty Act; and

      (c)      Violations of the express warranty provisions of California Commercial Code section 2313.

156.   By its conduct, Defendant has engaged in unfair competition and unlawful, unfair, and fraudulent business practices.

157.   Defendant's unfair or deceptive acts or practices occurred repeatedly in Defendant's trade or business, and were capable of deceiving a substantial portion of the purchasing public.

158.   As a direct and proximate result of Defendant's unfair and deceptive practices, Plaintiffs and the Class have suffered and will continue to suffer actual damages.

159.   Defendant has been unjustly enriched and should be required to make restitution to Plaintiffs and the Class pursuant to §§ 17203 and 17204 of

1   the Business & Professions Code.

2   **THIRD CAUSE OF ACTION**

3   **(Breach of Implied Warranty Pursuant to  Song-Beverly**

4   **Consumer Warranty Act, California Civil Code §§ 1792 and 1791.1,** *et seq.***)**

5   **(Brought by Plaintiffs Vargas, Harris and Heberling)**

6   160.   Plaintiffs incorporate by reference the allegations contained in the

7   preceding paragraphs of this Complaint.

8   161.   Plaintiffs bring this cause of action against Defendant on behalf of

9   themselves and on behalf of the members of the California Sub-Class.

10   162.   Defendant was at all relevant times the manufacturer, distributor,

11   warrantor, and/or seller of the Class Vehicles.  Defendant knew or had reason to

12   know of the specific use for which the Class Vehicles were purchased or leased.

13   163.   Defendant provided Plaintiffs and Class Members with an implied

14   warranty that the Class Vehicles and their components and parts are

15   merchantable and fit for the ordinary purposes for which they were sold.

16   However, the Class Vehicles are not fit for their ordinary purpose of providing

17   reasonably reliable and safe transportation because, *inter alia*, the Class Vehicles

18   and their transmissions suffered from an inherent defect at the time of sale and

19   thereafter are not fit for their particular purpose of providing safe and reliable

20   transportation.

21   164.   Defendant impliedly warranted that the Class Vehicles were of

22   merchantable quality and fit for such use.  This implied warranty included,

23   among other things:  (i) a warranty that the Class Vehicles and their

24   transmissions were manufactured, supplied, distributed, and/or sold by Ford

25   were safe and reliable for providing transportation; and (ii) a warranty that the

26   Class Vehicles and their transmissions would be fit for their intended use while

27   the Class Vehicles were being operated.

28   165.   Contrary to the applicable implied warranties, the Class Vehicles

1   and their transmissions at the time of sale and thereafter were not fit for their
2   ordinary and intended purpose of providing Plaintiffs and the Class Members
3   with reliable, durable, and safe transportation.  Instead, the Class Vehicles are
4   defective, including but not limited to the defective design and manufacture of
5   their transmissions.

6       166.   As a result of Defendant's breach of the applicable implied
7   warranties, owners and/or lessees of the Class Vehicles suffered an ascertainable
8   loss of money, property, and/or value of their Class Vehicles. Additionally, as a
9   result of the Transmission Defect, Plaintiffs and the Class Members were harmed
10  and suffered actual damages in that the Class Vehicles' transmissions are
11  substantially certain to fail before their expected useful life has run.

12      167.   Defendant's actions, as complained of herein, breached the implied
13  warranty that the Class Vehicles were of merchantable quality and fit for such
14  use in violation of California Civil Code §§ 1792 and 1791.1.

15              **FOURTH CAUSE OF ACTION**
16  **(For Breach of Express Warranty Under Cal. Comm. Code § 2313)**
17        **(Brought by Plaintiffs Vargas, Harris and Heberling)**

18      168.   Plaintiffs incorporate by reference the allegations contained in the
19  preceding paragraphs of this Complaint.

20      169.   Plaintiffs bring this cause of action on behalf of themselves and on
21  behalf of the California Sub-Class Members against Defendant.

22      170.    As a result of Defendant's breach of the applicable express
23  warranties, owners and/or lessees of the Class Vehicles suffered an ascertainable
24  loss of money, property, and/or value of their Class Vehicles. Additionally, as a
25  result of the Transmission Defect, Plaintiffs and the Class Members were harmed
26  and suffered actual damages in that the Class Vehicles' transmissions are
27  substantially certain to fail before their expected useful life has run.

28      171.   Defendant provided all purchasers and lessees of the Class Vehicles

1  with the express warranty described herein, which became a material part of the
2  bargain.  Accordingly, Defendant's express warranty is an express warranty
3  under California law.

4       172.  Defendant manufactured and/or installed the transmission and its
5  component parts in the Class Vehicles and the transmission and its component
6  parts are covered by the express warranty.

7       173.  Defendant breached the express warranty by:

8       (a)   Extending a 5 year/60,000 miles powertrain warranty with the
9             purchase or lease of the Class Vehicles, thereby warranting to
10            repair or replace any part defective in material or
11            workmanship, including the subject transmission, at no cost to
12            the owner or lessee;

13      (b)   Selling and leasing Class Vehicles with a transmission that
14            was defective in material and workmanship, requiring repair
15            or replacement within the warranty period; and

16      (c)   Refusing to honor the express warranty by repairing or
17            replacing, free of charge, the transmission or any of its
18            component parts.

19      174.  Plaintiffs were not required to notify Ford of the breach and/or was
20  not required to do so because affording Ford a reasonable opportunity to cure its
21  breach of written warranty would have been futile.  Defendant was also on notice
22  of the defect from the complaints and service requests it received from Class
23  Members, from repairs and/or replacements of the transmission or a component
24  thereof, and through other internal sources.

25      175.  As a direct and proximate cause of Defendant's breach, Plaintiffs
26  and the other Class Members suffered damages and continue to suffer damages,
27  including economic damages at the point of sale or lease.  Additionally,
28  Plaintiffs and the other Class Members either have incurred or will incur

1    economic damages at the point of repair in the form of the cost of repair.

2        176.   Plaintiffs and the other Class Members are entitled to legal and

3    equitable relief against Defendant, including actual damages, consequential

4    damages, specific performance, attorneys' fees, costs of suit, and other relief as

5    appropriate.

6                           **FIFTH CAUSE OF ACTION**

7        **(Violation of Florida's Deceptive and Unfair Trade Practices Act**

8                                **(FDUTPA))**

9                        **(Brought by Plaintiff Bertone)**

10       177.   Plaintiff Bertone incorporates by reference the allegations contained

11   in the preceding paragraphs of this Complaint.

12       178.   Plaintiff Bertone brings this cause of action on behalf of himself and

13   on behalf of all Class Members, or in the alternative on behalf of the Florida

14   Class.

15       179.   This is a claim for violation of Florida's Deceptive and Unfair

16   Trade Practices Act, §§ 501.201-501.2101, Fla. Stat. ("FDUTPA").

17       180.   FDUTPA provides that unfair methods of competition,

18   unconscionable acts and practices, and unfair or deceptive acts or practices in

19   the conduct "of any trade or commerce" are unlawful. § 501.204, Fla. Stat.

20   Under FDUTPA, "trade or commerce" is defined to include any advertisement or

21   solicitation relating to any "thing of value."  § 501.203(8), Fla. Stat.

22       181.   Defendant has violated the FDUTPA by engaging in the

23   unfair  and  deceptive practices as described herein, which offend public policies

24   and are immoral, unethical, unscrupulous and substantially injurious to

25   consumers.

26       182.   Specifically, Defendant purposefully and knowingly failed to

27   disclose the defects in the Vehicles in order to secure their sale at a premium

28   price and to mislead consumers during the limited warranty period to avoid

1    having to perform its contractual duties under the warranty.

2        183.   Plaintiff Bertone and the consumers in the Class have been

3    damaged as a result of Defendant's unfair and deceptive practices and acts in

4    that they paid a premium price for the Vehicle, i.e., Plaintiff and class members

5    paid more for the Vehicles than they were actually worth in light of the defects.

6    Many class members, including Plaintiff, also have been damaged as a result of

7    paying for repairs and/or the cost to entirely replace the transmissions of their

8    Vehicles.   The harm suffered by Plaintiff and the consumers in the Class was

9    directly and proximately caused by the deceptive, misleading and unfair practices

10   of Defendant.

11       184.   Pursuant to section 501.211(1), Florida Statues, Plaintiff also seeks

12   a declaratory judgment and court order enjoining the above-described wrongful

13   acts and practices of Defendant, as well as restitution and disgorgement.

14       185.   Plaintiff and the Class Members demand an award against

15   Defendant for actual and/or compensatory damages, in addition to the costs of

16   this proceeding and attorney's fees, as provided by section 501.2105, Florida

17   Statues, injunctive relief, and such other relief as this Court deems just and

18   proper.

19                         **RELIEF REQUESTED**

20       186.   Plaintiffs, on behalf of themselves, and all others similarly situated,

21   requests the Court to enter judgment against Defendant, as follows:

22           (a)    An order certifying the proposed Class and Sub-Classes,

23                  designating Plaintiffs as named representatives of the Class,

24                  and designating the undersigned as Class Counsel;

25           (b)    A declaration that Defendant is financially responsible for

26                  notifying all Class Members about the defective nature of the

27                  transmission, including the need for period maintenance;

28           (c)    An order enjoining Defendant from further deceptive

distribution, sales, and lease practices with respect to Class

Vehicles, and to remove and replace Plaintiffs and Class

Members' transmissions with a suitable alternative product;

enjoining Defendant from selling the Class Vehicles with the

misleading information;  compelling Defendant to provide

Class members with a replacement transmission that does not

contain the defects alleged herein; and/or compelling

Defendant to reform its warranty, in a manner deemed to be

appropriate by the Court, to cover the injury alleged and to

notify all Class members that such warranty has been

reformed;

(d)   A declaration requiring Defendant to comply with the various

provisions of the Song-Beverly Act alleged herein and similar

statutes and to make all the required disclosures;

(e)   An award to Plaintiffs and the Class for compensatory,

exemplary, and statutory damages, including interest, and

including the additional purchase cost of the PowerShift

Transmission option, in an amount to be proven at trial;

(f)   Any and all remedies provided pursuant to the Song-Beverly

Act, including California Civil Code section 1794;

(g)   Any and all remedies provided pursuant to the Florida

Deceptive and Unfair Practices Act;

(h)   A declaration that Defendant must disgorge, for the benefit of

the Class, all or part of the ill-gotten profits it received from

the sale or lease of its Class Vehicles, or make full restitution

to Plaintiffs and Class Members;

(i)   An award of attorneys' fees and costs, as allowed by law;

(j)   An award of attorneys' fees and costs pursuant to California

SECOND AMENDED CLASS ACTION COMPLAINT

Code of Civil Procedure § 1021.5;

(k)   An award of pre-judgment and post-judgment interest, as provided by law;

(l)   Leave to amend the Complaint to conform to the evidence produced at trial; and

(m)   Such other relief as may be appropriate under the circumstances.

## DEMAND FOR JURY TRIAL

187.  Pursuant to Federal Rule of Civil Procedure 38(b) and Central District of California Local Rule 38-1, Plaintiffs demands a trial by jury of any and all issues in this action so triable.

Dated:  August 30, 2013

Respectfully submitted,

Capstone Law Group, APC

By:_____
Jordan L. Lurie
Tarek H. Zohdy
Cody R. Padgett

Attorneys for Plaintiffs Omar Vargas, Michelle Harris, Robert Bertone, and Sharon Heberling

SECOND AMENDED CLASS ACTION COMPLAINT

# CERTIFICATE OF SERVICE

UNITED STATES DISTRICT COURT        )
                                    )        SS
CENTRAL DISTRICT OF CALIFORNIA      )

     I am employed in the State of California, County of Los Angeles.  I am over the age of 18 and not a party to the within suit; my business address is 1840 Century Park East, Suite 450, Los Angeles, California 90067.

On **August 30, 2013,** I served the documents described as:
**SECOND AMENDED COMPLAINT** on the interested parties in this action by sending on the interested parties in this action by sending [   ] the original [or] [✓] a true copy thereof [✓] to interested parties as follows [or] [✓]] as stated on the attached service list:

[✓]    **BY MAIL (ENCLOSED IN A SEALED ENVELOPE):** I deposited the envelope(s) for mailing in the ordinary course of business at Los Angeles, California.  I am "readily familiar" with this firm's practice of collection and processing correspondence for mailing.  Under that practice, sealed envelopes are deposited with the U.S. Postal Service that same day in the ordinary course of business with postage thereon fully prepaid at Los Angeles. California.

[   ]    **BY E-MAIL:** I hereby certify that this document was served from Los Angeles, California, by e-mail delivery on the parties listed herein at their most recent known e-mail address or e-mail of record in this action.

[   ]    **BY FAX:** I hereby certify that this document was served from Los Angeles, California, by facsimile delivery on the parties listed herein at their most recent fax number of record in this action.

[   ]    **BY PERSONAL SERVICE:** I caused to be delivered by messenger such envelope(s) by hand to the office of the addressee(s).

[   ]    **BY OVERNIGHT DELIVERY:** I am "readily familiar" with this firm's practice of collection and processing correspondence for overnight delivery.  Under that practice, overnight packages are enclosed in a sealed envelope with a packing slip attached thereto fully prepaid.  The packages are picked up by the carrier at our offices or delivered by our office to a designated collection site.

[✓]    **(FEDERAL)** I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

     I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this August 30, 2013 at Los Angeles, California.

Matthew Krout
Type or Print Name                         Signature

1

## SERVICE LIST

2

3  John Mark Thomas
   Krista L. Lenart
4  Dykema Gossett PLLC
   2723 South State Street Suite 400
5  Ann Arbor, MI 48104
   734-214-7613
6  Fax: 734-214-7696
   Email: jthomas@dykema.com
7
   Tamara A Bush
8  Dykema Gossett LLP
   333 South Grand Avenue Suite 2100
9  Los Angeles, CA 90071
   213-457-1815
10 Fax: 213-457-1850
   Email: tbush@dykema.com

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28