UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION


OMAR VARGAS, et al.                    Case No. CV12-08388 AB (FFMx)

        Plaintiffs,                    The Hon. André Birotte Jr.

   vs.

FORD MOTOR COMPANY

        Defendant

-------------------------------------------------------------------------------------------------------

## NOTICE OF OBJECTION TO SETTLEMENT AND ATTORNEY'S FEES BY CLASS MEMBER JASON A. DEBOLT

The Law Office of George W. Cochran ("Counsel") has been retained by Jason A. DeBolt ("Objector") to pursue his objections to the proposed settlement and request for attorney's fees in the above-captioned case. In substantial compliance with the class notice, following is the information required to register his objection (documentary support provided in Exhibit A):

FULL NAME:     Jason A. DeBolt

ADDRESS:       4478 John Thomas Rd.
               Ravenna OH 44266-9274

TELEPHONE:      (330) 307-8564

MODEL:         Ford Focus Titanium
YEAR:          2014
VIN:           1FADP3J21EL252897

1

ATTORNEY:     George W. Cochran
                1385 Russell Drive
                Streetsboro, OH 44241
                (330) 607.2187
                lawchrist@gmail.com

To the best of Objector's recollection, this is his first objection to a class settlement. He is unaware of Counsel's prior involvement or representation in other class settlements. Neither does he believe it relevant to his own concerns about this settlement. Objector bases his objections primarily on Counsel's analysis of the settlement agreement, the class notice and applicable law. Neither he nor Counsel plans to attend the fairness hearing. Following are the legal and factual grounds for his objections.

**1. As Class Fiduciary, The Court Should Exercise Close Judicial Scrutiny Before Approving a Settlement That Has Not Undergone the Rigors of Class Certification.**

A district court must act as a "fiduciary for the class [] with a jealous regard" for the rights and interests of absent class members. *In re Mercury Interactive Corp. Secs. Litig.*, 618 F.3d 988, 994-95 (9th Cir. 2010) (internal quotation and citation omitted). The Court's fiduciary responsibilities are magnified when evaluating a settlement that has not been subjected to the rigorous analysis preceding class certification. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *In re Gen. Motors Prods. Liab. Litig.*, 55 F.3d at 805 ("We affirm the need for courts to be even more scrupulous than usual in approving settlements where no class has yet

been formally certified."); *Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust*, 834 F.2d 677, 681 (7th Cir. 1987) ("when class certification is deferred, a more careful scrutiny of the fairness of the settlement is required."); *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982) ("[D]istrict judges who decide to employ such a procedure are bound to scrutinize the fairness of the settlement agreement with even more than the usual care."); MANUAL FOR COMPLEX LITIGATION (THIRD) § 30.45 (1995) ("Approval under Rule 23(e) of settlements involving settlement classes [] requires closer judicial scrutiny than approval of settlements where class certification has been litigated.").

In the present case, this Court's Order Granting Preliminary Approval of Class Action Settlement preliminarily certified a defined class of consumers "for purposes of effectuating the settlement only". (Doc. 133 at 3). Accordingly, the following objections raised by Objector should be carefully considered to ensure the proposed settlement is fair, adequate and reasonable for ***all*** class members.

## 2.  There Should Be a Minimum Award Based Solely On Car Ownership.

Although Plaintiffs admit that numerous qualified vehicles were never serviced for transmission problems, no compensation is provided for class members who would have claimed by sworn affidavit that their vehicle exhibited transmission symptoms covered by the proposed settlement that were not examined, repaired and/or replaced with new parts. None of the traditional justifications for a

documented claims procedure applies to this unrepresented segment of class members. "Whenever there is an option available to distribute fairly a class recovery without requiring a proof of claim by class members as a precondition to sharing in that recovery, the automatic distribution of the class recovery to eligible class members is the preferable option and is more consistent with the objectives of the class action rule." (Alba Conte & Herbert Newberg, Newberg on Class Actions § 8:35, at 272, n.3 (4th ed. 2002).) For that very reason, the Seventh Circuit recently rejected a settlement that required unnecessary claim forms. *Pearson v. NBTY, Inc.*, 772 F.3d 778, 783 (7th. Cir. 2014):

> The requirement of needlessly elaborate documentation, the threats of criminal prosecution, and the fact that a claimant might feel obliged to wade through the five other documents accessible from the opening screen of the website, help to explain why so few recipients of the postcard notice bothered to submit a claim. It's hard to resist the inference that [defendant] was trying to minimize the number of claims that class members would file, in order to minimize the cost of the settlement to it.

*Id*. In the present case, the nature of the transmission defects alleged by the named plaintiffs would have undoubtedly plagued ***every*** qualified vehicle by exhibiting similar symptoms. Nonetheless, the settlement provides no financial award for the inconvenience and safety risk to class members who (for whatever reason) did not have their vehicle examined by an authorized Ford dealer or any other automotive repair shop. Neither is any compensation provided for ***former***

owners who (like Objector) either sold or traded their qualified vehicle in at a **below-market** price due to untreated transmission problems.

According to Plaintiffs' First Amended Complaint, all of the named plaintiffs took their qualified vehicle to an authorized Ford dealer during the class period for examination, repair and/or replacement of defective parts. Moreover, no plaintiff alleges his or her vehicle was subsequently sold or traded-in at a below-market price due to transmission problems. In addition to jeopardizing the settlement's fundamental fairness, these oversights undermine a critical element of class certification under Rule 23. As a result, owners of qualified vehicles that were not examined by local dealers (as well as former owners of vehicles sold below their market value) have not received fair and adequate representation by Class Counsel or any named plaintiff. The obvious conflict of interest among these divergent interests demands structural protection in the form of establishing formal subclasses and/or appointing separate counsel. *Amchem Products, Inc. v. Windsor,* 521 U.S. 591 (1997).

### 3.  The Requirement That Repairs or Replacements Must Have Been Done At Ford Dealerships Is Also Unreasonable.

A similar oversight is limiting cash awards to repairs and/or replacement of parts conducted exclusively by Ford dealers. As a practical matter, it is likely that numerous class members experienced troubling symptoms relating to their transmission that (for whatever reason) were examined--and perhaps treated--by an

automotive repair shop or transmission specialist instead of their Ford dealership. A reasonable settlement would have established cash awards appropriate to this subclass. Therefore, Objector contends this segment of the class is equally deserving of separate representation by a named plaintiff.

## 4. It Is Also Unreasonable To Release Unknown Class Claims Without Justifying The Need For Such A Broad Waiver Or Complying With California's Statutory Requirements.

A third mistake resulted in a 'double whammy' from the representative plaintiffs—needlessly agreeing to waive unknown claims then failing to properly inform absent class members of the release's expansive scope. Settlement agreements often include broad general releases–-including both known and unknown claims. In many states, such releases are valid and enforceable. ***Not so in California.*** Civil Code § 1542 provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

The intent of section 1542 is to prevent a releasor from inadvertently waiving unknown claims merely by signing a general release. *Winet v. Price* (1992), 4 Cal. App. 4th 1162. To waive such claims, a settlement agreement must include evidence apart from the words of the release to indicate that ***the parties specifically intended to release unknown claims***. This can usually be achieved by including a provision quoting and waiving all rights under section 1542. For example:

The parties and each of them do hereby assume the above mentioned risks and agree that this agreement shall apply to all unknown or unanticipated results of the transactions and occurrences described above, as well as those known and anticipated, and upon advice of counsel, each party does hereby knowingly waive any and all rights and protections under California Civil Code Section 1542, which section has been duly explained and read as follows: "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor."

The unknown claims released in the present settlement expressly include those a "Class Member does not know to exist against any of the Released Parties and that, if known, might have affected his or her decision to enter into or to be bound by the terms of this Settlement." *See* Settlement Agreement, Section LL. The Agreement also purports to provide full and complete satisfaction to all class members for releasing these unknown claims. As set forth in Section H.2:

Any benefits offered or obtained pursuant to the Settlement Agreement are in full, complete, and total satisfaction of all of the Released Claims against the Released Parties, the Benefits are sufficient and adequate consideration for each and every term of this Release, and ***this Release shall be irrevocably binding upon*** Class Representatives and ***Class Members who do not opt out of the Class***. (emphasis added)

Finally, Article H.4. warns that: "The Release shall be effective with respect to all Class Members, regardless of whether those Class Members ultimately file a Claim or receive compensation under this Settlement."

At first blush, the ***settlement agreement*** appears to satisfy the technical disclosure requirements of California Civil Code § 1542 as to the ***named Plaintiffs***.

Nonetheless, California courts are rightly concerned about the potential for such a waiver to blindside consumers when their subsequent claims are barred. See, e.g. *Salehi v. Surfside III Condo. Owners' Assn.*, 200 Cal. App. 4th 1146, 1160 (2011) (barring subsequent claim of condo owner because it was covered by a prior release that included a section 1542 waiver). Extending the waiver to ***unnamed members*** of a class settlement is extremely rare. See, e.g., *Israel-Curley v. California Fair Plan*, 126 Cal. App. 4th 123, 129 (2005) (barring subsequent claim covered by release in prior class settlement only because class member knew about the waiver and was represented by counsel).

Accordingly, judges in the Los Angeles County Superior Court's Complex Litigation Program expect parties to ***brief*** whether a section 1542 waiver is necessary under the circumstances of a particular class settlement. The larger the class, the harder to waive unknown claims. In one action, a judge approved a section 1542 waiver in a 243-class member employee wage violation settlement of $650,000. However, two different judges found section 1542 waivers inappropriate in wage violation class action settlements of $3.5 million dollars each, with class sizes of 7,600 and 26,000 employees. A section 1542 waiver was also rejected by a judge in a $3.2 million class settlement of consumer wiretapping claims by a 15,000-member consumer class.

In the present case, Plaintiffs offer no explanation for bowing to Ford's desire to waive the unknown rights of *1.9 million* consumers they are duty-bound to represent. The reason is obvious—no legitimate reason exists for extending the class release beyond Plaintiffs' complaint. More likely is the temptation to accept up to $10,000 as an "incentive award" for brokering the settlement.

Even if the Court believes a section 1542 waiver is justified by the unique circumstances of this case, failing to include the full disclosure mandated by California's statute in the *class notice* violates class members' fundamental right to procedural due process. As a starting point, any notice sent to putative class members must be "reasonable". *Fowler v. Birmingham News Co.*, 608 F.2d 1055, 1059 (5th Cir. 1979); *Simer v. Rios*, 661 F.2d 655, 686 (7th Cir. 1981). To that end, the courts consider whether a notice is sufficiently detailed to help absent class members decide whether to *opt out* of the settlement. *Rubenstein v. Republic Nat'l Life Ins. Co.*, 74 F.R.D. 337, 348 (N.D. Tex. 1976). Actual notice is worthless if the contents do not relay all the information needed to make an intelligent decision about this critical choice.

The fatal error in the present case was placing absent members on par with named parties by confusing the latter's *actual* notice with the former's *constructive* notice of settlement terms. Given the representative nature of class actions, due process requires clearly informing unnamed members (who are neither involved in

the litigation nor knowledgeable of its implications) regarding the significant rights and responsibilities at stake ***before*** releasing their claims.

"Notice must be of such nature as to reasonably convey the required information." *Mullane v. Central Hanover Bank*, 339 U.S. 306, 314 (1950). Notice serves the purpose of allowing each class member to evaluate the settlement and reach an informed decision of their own. *In re Veritas Software Corp. Secs. Litig.*, 496 F.3d 962, 969 (9th Cir. 2007) ("It is clear that the purpose of the notice requirement is to allow class members to evaluate a proposed settlement."); 2 NEWBERG ON CLASS ACTIONS, § 8.04 at 8-17 ("[T]he purpose [of notice is] allowing the parties to make conscious choices that affect their rights in a litigation context.").

The crucial determination here is whether the notice would have misled a reasonable individual, thereby causing him to surrender his opt-out or objection rights and submit to the class settlement on false pretenses. Notice allows class members a sound platform for assessing the strengths and weaknesses of the case, the merits and demerits of the settlement. Accordingly, when a settlement notice to absent class members includes material inaccuracies or omits salient information about the settlement, such notice does not comport with the *Mullane* standard. See also, *In re Katrina Canal Breaches Litig.*, 628 F.3d 185, 198 (5th Cir. 2010) (notice failed to clearly inform class members of the possibility of a cy pres distribution).

The notice provided in the present case is deficient under *Mullane* because it fails to provide the "required information" material to a reasonable class member's evaluation of the settlement. By its own terms, the Notice "summarizes the Settlement's key terms, including benefits to Class Members, Arbitration procedures, and the rights and obligations of all parties." However, it also warns that the Settlement Agreement will prevail over any conflict with the Notice.

Unfortunately, the discrepancy regarding the class release is irreconcilable. In contrast to the settlement agreement's technical compliance with section 1542, the Notice makes the following terse disclosure:

> In exchange for having those benefits available to you, you will give up your right to sue Ford and related parties for claims based on problems with the PowerShift Transmission.

This is a far cry from warning that an unnamed class member is waiving a claim he or she "does not know to exist against any of the Released Parties and that, if known, might have affected his or her decision to enter into or to be bound by the terms of this Settlement." To properly exercise this Court's discretion as class fiduciary, it should order the parties to serve an amended class notice containing a full section 1542 disclaimer in order to correct this serious deficiency.

## 5.  For Several Reasons, The Reasonableness of Class Counsel's Fee Request Is Also Suspect.

The Court's fiduciary role applies with equal force to a fee award because "[i]n class-action settlements, the adversarial process—or [] 'hard fought'

negotiations—extends only to the amount the defendant will pay, not the manner in which that amount is allocated between the class representatives, class counsel, and unnamed class members.*" Pampers*, 724 F.3d at 718; accord, *Rawlings v. Prudential-Bache Properties, Inc*., 9 F.3d 513, 516 (6th Cir. 1993). Encompassed within this fiduciary duty is "the Court's responsibility to avoid awarding plaintiffs' counsel a 'windfall' at the expense of the class—a special concern where 'the recovered fund runs into the multi-millions.'" *In re Citigroup Inc. Bond Litig.,* 988 F. Supp. 2d 371, 374 (S.D.N.Y. Dec. 19, 2013) (quoting *Goldberger v. Integrated Resources, Inc*., 209 F.3d 43, 52 (2d Cir. 2000)). Objector respectfully submits there are several obstacles to granting class counsel's fee petition in the present case.

### A. The Accuracy and Reasonableness of Class Counsel's Purported Lodestar Cannot Be Tested.

Because the relief obtained "is not easily monetized," Plaintiffs rely primarily on the lodestar method to justify their request for $8.8 million in fees. See, Fee Motion at 11. However, class counsel has not submitted detailed time records that would enable class members to verify the accuracy and reasonableness of a fee bill claiming 13,500 hours of attorney time. Instead, they rely on summary reports grouped by type of activity.

Such cursory reporting gives rise to a number of questions from those who have not been involved in the litigation. For example, among the traditional categories that are normally reported (e.g. discovery and motions), class counsel

represent that they spent 5,380 hours (fully *40%* of the lodestar) handling 18,000 inquiries from purported class members. See, Fee Motion at 5. Apart from the highly unusual nature of such activity in the context of class litigation, Objector would like to know: (1) the nature of these inquiries; (2) the personnel assigned to handle them; (3) the average time dedicated to each; and (4) the hourly rate charged. In addition, Objector notes that nearly 2,500 hours (*19%* of the lodestar) were dedicated to settlement negotiations.  Without further support, Objector contends both of the foregoing activities should be discounted from full consideration of class counsel's reasonable lodestar.

### B. Neither Can The Reasonableness of Class Counsel's Fee Request Be Determined Until Total Allowable Claims Have Been Tallied.

Given Rule 23's "fundamental focus" on "the result actually achieved for class members," the fees awarded should be a percentage of the amounts actually paid by the defendants to the fund for the benefit of the class. See *Notes of Advisory Committee on 2003 Amendments to Rule 23(h)* ("[I]t may be appropriate to defer some portion of the fee award until actual payouts to class members are known."). See also *Stewart v. USA Tank Sales & Erection Co.*, No. 12-05136, 2014 WL 836212, at *8 (W.D. Mo. Mar. 4, 2014) ("The Court is [] reluctant to approve any settlement which allows counsel to receive 100% of their fees before the settlement process is completed.

13

Holding back a percentage of the attorney fee award until all class members have received their settlement checks gives class counsel a financial incentive to monitor the settlement process and quickly respond to any client concerns."). Accordingly, a district court "evaluating a fee award ... should begin by determining with reasonable accuracy the distribution of funds that will result from the claims process," which "may require it to 'delay a final assessment of the fee award to withhold all or a substantial part of the fee until the distribution process is complete.'" *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 179 (3d Cir. 2013) (quoting MANUAL FOR COMPLEX LITIG., FOURTH, § 21.71).

In the present case, it is currently impossible to determine whether the requested fees will be proportional to the actual class recovery. Plaintiffs freely admit that actual benefits are presently unknown because future claims could extend for years and several components "are difficult to quantify with precision." Fee Motion at 12. Jumping the gun on this critical measure of fairness would be a clear abuse of the court's discretion. *See In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 174 (3rd Cir. 2014) (court should "withhold final approval of a settlement until the actual distribution of funds can be estimated with reasonable accuracy"). The valuation of a claims-made settlement must be based upon actual usage of settlement benefits. *See Fitzgerald v. Gann Law Books*, 2014 U.S. Dist LEXIS 174567 (D.N.J. Dec. 17, 2014) (in-kind benefits may not be included in settlement value if not used).

*See also Redman v. RadioShack Corp.*, 768 F.3d 622, 630 (7th Cir. 2014) (only claimed coupons may be included in settlement value); *Pearson v. NBTY, Inc.*, 772 F.3d 778, 781 (7th Cir. 2014) (reversible error to include unclaimed funds in settlement value); *Eubank v. Pella*, 753 F.3d 718, 726 (7th Cir. 2014) (same).

One approach is to defer calculation of the fee award until the claims process is completed. In *Yeagley v. Wells Fargo & C*o., No. 05-03403-CEB, (N.D.Cal. Jan.18, 2008), a California district court (echoing Justice O'Connor's concerns) recognized "[c]ommon sense dictates that a reasonable fee in a class action settlement is a fee that takes into account the actual results obtained." Terming class counsel's total potential value of the settlement "pure fantasy," the district court awarded a fee equal to 25 percent of the "common fund," which the court defined as the value conferred on the class members who had actually made claims. *Id*. at *7-8

## C. The Fee Petition Also Precludes Judicial Review of the Allocation Among Class Counsel.

A final problem is secretly allocating the fee award among various class counsel. "Because members of the class have an interest in the arrangements for payment of class counsel whether that payment comes from the class fund or is made directly by another party, notice is required in all instances." Notes of Advisory Committee on 2003 Amendments to Rule 23. Rule 23(e)(3) requires that "[t]he parties seeking approval must file a statement identifying any agreement made in connection with that proposal." It is not sufficient that class members are able to

make "generalized arguments about the size of the total fee"; the notice must enable them to determine which attorneys seek what fees for what work. *Mercury Interactive*, 618 F.3d at 994.

The fee request in this case lacks basic information, failing to provide even the bare bones of how any fee will be distributed—leaving such distribution to be made secretly among class counsel. Such an extra-judicial division of the award would undermine Rule 23(h)'s policy of "ensur[ing] that the district court, acting as a fiduciary for the class, is presented with adequate, and adequately-tested information to evaluate the reasonableness of a proposed fee." Id. Rule 23(h) requires the district court to set and allocate the fee award. It is legal error for the court to delegate the allocation of that fee award to a non-judicial third party or to defer to the allocation proposed by the attorneys themselves. *In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 517 F.3d 220, 229 (5th Cir. 2008).

Plaintiffs may counter that lead counsel is in a better position to evaluate the contributions of all counsel seeking recovery of fees. However, because "counsel have inherent conflicts," courts may not defer to a fee allocation proposed by a select committee of attorneys. As Judge Ambro noted: "They make recommendations on their own fees and thus have a financial interest in the outcome. How much deference is due the fox who recommends how to divvy up the chickens?" Id. at 234-35

(quoting *In re Diet Drugs Prods. Liab. Litig.*, 401 F.3d 143, 173 (3d Cir. 2005) (Ambro, J., concurring)).

There are also good policy reasons for requiring the Court to allocate fees. If one of the law firms has secretly agreed to accept a lower amount or percentage of its lodestar, it is the class that is entitled to that giveback, not a law firm that (unbeknown to the class and the court) extracted a return greater than that believed by the Court. Cf. *Pearson*, 772 F.3d at 786; *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 949 (9th Cir. 2011) (givebacks to parties instead of class is a sign of impermissible self-dealing because "there is no apparent reason the class should not benefit from the excess allotted for fees"). Even if one firm is entitled to a larger percentage of the lodestar or settlement fund, the reasons should still be tested in court. MANUAL FOR COMPLEX LITIG., FOURTH, § 14.11 at 186; see also, Elizabeth Chamblee Burch, *Judging Multidistrict Litigation*, 90 N.Y.U. L. Rev. 71 (2015) (concluding that fees should be allocated "through a transparent process, not through the backdoor of settlement").

Finally, Objector joins in all other objections to the proposed class settlement and fee request filed in this matter (including the factual and legal grounds therefor) as if fully rewritten herein.

## CONCLUSION

For the foregoing reasons, Objector respectfully asks the Court:

1. ***To reject the proposed settlement as presented***, with instructions to consider modifying the Settlement Agreement by:

    a.    Establishing separate subclasses (and appointing eligible representatives)[1] on behalf of: (i) owners of qualified vehicles exhibiting transmission problems during the class period that were not examined or treated by any Ford dealership or other automotive repair shop ("Undocumented Subclass"); (ii) owners of qualified vehicles exhibiting transmission problems during the class period that were examined, repaired and/or serviced with replacement parts by an automotive repair shop that is not an authorized Ford dealer ("Non-Dealer Subclass"); and (iii) former owners of qualified vehicles that were sold or traded in at below-market value due to transmission symptoms similar to those examined by Ford dealers in the primary Class ("Former Owner Subclass").

    b.    Adding appropriate class benefits for the foregoing subclasses.

---

[1] Objector is willing to consider serving as representative of any Subclass identified herein.

c.      Revising the class release by either: (i) eliminating the release of unknown claims altogether; or (ii) fully complying with section 1542's disclosure requirement in a revised notice of class settlement.

d.      Serving a revised class notice that contains all of the foregoing modifications and new deadlines to object or opt out of the proposed settlement.

2.  **_To reject Class Counsel's fee request as presented_**, with instructions to:

a.      Hold class counsel's fee petition in abeyance pending submission of: (i) an itemized fee bill on the Court's docket and settlement website; (ii) reduced lodestar (as adjusted for handling class member inquiries and conducting settlement negotiations); (iii) proposed allocation of fee award among Class Counsel (with justification therefor); and (iv) administrator's final report on total allowable claims.

b.      Alternatively, make progressive fee awards (after submission of items (i)–(iii) in the foregoing paragraph) in the following stages: (i) _partial award_ (equal to the adjusted lodestar after discounting hours spent interacting with class members and conducting settlement negotiations) without any multiplier; (ii) _future award_ (if justified) based on class members' actual participation in the settlement fund (as reported in the administrator's final report on total allowable claims).

DATE:  September 5, 2017     Respectfully Submitted,

*/s Jason A. DeBolt*     */s George W. Cochran*
(by email consent on     LAW OFFICE OF GEORGE W. COCHRAN
 09/05/2017)     1385 Russell Drive
     Streetsboro, Ohio  44241
     Tel:  (330) 607-2187
     Fax:  (330) 230-6316
     Email: lawchrist@gmail.com
     *Counsel for Class Member Jason A. DeBolt*

cc:   Clerk of the Court
     Judge Andre Birotte, Jr.
     United States Courthouse for
     the Central District of California
     350 West First Street
     Los Angeles, CA 90012

     Jordan L. Lurie
     Tarek H. Zohdy
     Cody R. Padgett
     Karen L. Wallace
     Capstone Law APC
     1875 Century Park East, Suite 1000
     Los Angeles, CA 90067

     John M. Thomas
     Krista Lenart
     Dykema Gossett PLLC
     2723 South State Street, Suite 400
     Ann Arbor, Michigan 48104

# JASON DEBOLT OBJECTION

# EXHIBIT A

## TRADE IN RECORD

# RETAIL BUYER'S ORDER

3423 Darrow Rd.
Stow, Ohio 44444
(330) 688-6644 • 1-800-383-USA-1

STOCK NO. C151432

DEAL NO. 66744

CUSTOMER# 442547

EDEBOLT@CENTURYLINK.NET

PURCHASER'S NAME **ELLEN DEBOLT   DARLENE E DEBOLT**     DATE 07/21/2015

STREET ADDRESS 10609 OAK ST     PHONE (330)872-0627

CITY NEWTON FALLS   COUNTY PORTAGE   STATE OH   ZIP 44444   SALESPERSON BERNHOLTZ,BROCK A

ENTER MY ORDER FOR ONE ☒NEW ☐ USED ☐ CAR ☐ TRUCK ☐ DEMONSTRATOR ☐ FACTORY OFFICIAL ☐ RENTAL VEHICLE AS FOLLOWS:

| YEAR | MAKE | MODEL | BODY TYPE | COLOR | TRIM |
|------|------|-------|-----------|-------|------|
| 2015 | CHEVROLET | TRAVERSE | | | |

VIN 1 G N K V H K D 1 F J 2 1 6 3 4 5   TO BE DELIVERED ON OR ABOUT 07/21/2015   STOCK NO. C151432

| | | |
|---|---|---|
| PRICE OF VEHICLE | $ 39330 32 | |
| OTHER GOODS & SERVICES | | |

**ODOMETER MILEAGE STATEMENT**
THE ODOMETER OF THE PURCHASED VEHICLE NOW READS 146 MILES/KILOMETERS AND IS ACCURATE UNLESS CHECKED BELOW.
☐ ODOMETER MILEAGE IS NOT ACCURATE. REFER TO THE FEDERAL MILEAGE STATEMENT FOR FULL DISCLOSURE.

**TRADE-IN RECORD 1**   JMC151432A

| YEAR | MAKE | MODEL | TYPE |
|------|------|-------|------|
| 2014 | FORD | FOCUS | SD |

VIN # 1FADP3J21EL252897   MILEAGE 19285

PAYOFF $ 17920.44   Trade In Allowance 15500.00

| | | |
|---|---|---|
| DOCUMENTARY FEE | 250 00 | |
| TAXABLE PRICE | 39580 32 | |
| LESS: TRADE IN ALLOWANCE(S) | 15500 00 | |

**TRADE-IN RECORD 2**

| YEAR | MAKE | MODEL | TYPE |
|------|------|-------|------|
| N/A | N/A | N/A | N/A |

VIN # N/A   MILEAGE N/A

PAYOFF $ N/A   Trade In Allowance N/A

| | | |
|---|---|---|
| TAX BASE $ 24689.32 | | |
| SALES TAX .000 % | 1728 25 | |
| | N/A | |
| GAP INSURANCE | 609 00 | |
| | N/A | |
| TITLE FEE | 33 50 | |
| REGISTRATION FEE | N/A | |
| CREDIT LIFE AND DISABILITY | N/A | |
| PLUS: PAYOFF ON TRADE VEHICLE(S) | 17920 44 | |
| TOTAL DUE | $ 44371 51 | |
| LESS INITIAL PAYMENT/CASH DOWN | N/A | |
| LESS REBATE/FACTORY INCENTIVE | 3000 00 | |
| OTHER | N/A | |
| BALANCE DUE | $ 41371 51 | |

**NEGATIVE EQUITY DISCLOSURE & CONSENT:**
I am aware that the balance owed on my trade-in vehicle(s) or the amount owed on my lease turn in vehicle(s) exceeds the trade in allowance(s) from the dealer. As a result, I have requested that the "Total Due" be increased by the difference, $ 2420.44 (known as negative equity).
INITIALS: _____

☒ SEE VEHICLE DELIVERY REPORT ATTACHED
☐ SEE USED VEHICLE LIMITED WARRANTY ATTACHED
☐ LIMITED RIGHT TO CANCEL APPLIES: If you have entered into a Spot Delivery Agreement-Limited Right to Cancel, the sale of the Vehicle is conditioned upon final approval of financing by, or assignment of the Retail Installment Sale Contract to a lender. If final financing approval is not obtained and/or the Contract cannot be assigned, you or the Dealership may cancel the Contract in accordance with this Agreement, the Spot Delivery Agreement-Limited Right to Cancel, and the Retail Installment Sale Contract. **SEE ATTACHED DOCUMENT FOR IMPORTANT DETAILS**

☐ DEPOSIT RECEIPT: Dealer hereby acknowledges receipt of the sum of $ N/A as a deposit or partial payment for the vehicle described above. If this receipt is refundable, Dealer will refrain from selling the described vehicle for _____ days. This Deposit:
☐ IS ☐ IS NOT REFUNDABLE, subject to the conditions on the reverse side and the following:

REMARKS

ALL WARRANTIES, IF ANY, BY A MANUFACTURER OR SUPPLIER OTHER THAN DEALER ARE THEIRS, NOT DEALERS, AND ONLY SUCH MANUFACTURER OR OTHER SUPPLIER SHALL BE LIABLE FOR PERFORMANCE UNDER SUCH WARRANTIES. UNLESS DEALER FURNISHES PURCHASER WITH A SEPARATE WRITTEN WARRANTY OR SERVICE CONTRACT MADE BY DEALER ON ITS OWN BEHALF, DEALER HEREBY DISCLAIMS ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE IN CONNECTION WITH THE VEHICLE AND ANY RELATED PRODUCTS AND SERVICES SOLD BY DEALER. DEALER NEITHER ASSUMES NOR AUTHORIZES ANY OTHER PERSON TO ASSUME FOR IT ANY LIABILITY IN CONNECTION WITH THE SALE OF THE VEHICLE AND THE RELATED PRODUCTS AND SERVICES. IN THE EVENT THAT A WRITTEN WARRANTY IS PROVIDED BY DEALER OR A SERVICE CONTRACT IS SOLD BY DEALER ON ITS OWN BEHALF, ANY IMPLIED WARRANTIES ARE LIMITED IN DURATION TO THE TERM OF THE WRITTEN WARRANTY/SERVICE CONTRACT.

**JURY WAIVER:** THE PURCHASER AND DEALER WAIVE AND RENOUNCE THE RIGHT UNDER FEDERAL AND STATE LAW TO A TRIAL BY JURY FOR ANY CLAIM.

**GOVERNING LAW:** THE TERMS AND CONDITIONS OF THIS AGREEMENT (INCLUDING ANY DOCUMENTS WHICH ARE A PART OF THIS TRANSACTION OR INCORPORATED HEREIN BY REFERENCE) AND ANY SALE HEREUNDER WILL BE GOVERNED BY THE LAWS OF THE STATE OF OHIO.

CONTRACTUAL DISCLOSURE STATEMENT (USED VEHICLES ONLY) THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE. GUÍA PARA COMPRADORES DE VEHÍCULOS USADOS. LA INFORMACIÓN QUE VE EN EL FORMULARIO DE LA VENTANILLA PARA ESTE VEHÍCULO FORMA PARTE DEL PRESENTE CONTRACTO. LA INFORMACIÓN DEL FORMULARIO DE LA VENTANILLA DEJA SIN EFECTO TODA DISPOSICIÓN EN CONTRARIO CONTENIDA EN EL CONTRATO DE VENTA.