1  **DYKEMA GOSSETT LLC**
   TAMARA A. BUSH (197153)
2  tbush@dykema.com
   333 South Grand Avenue, Suite 2100
3  Los Angeles, California 90071
   Tele: (213) 457-1800 / Fax:  (213) 457-1850
4
   **DYKEMA GOSSETT PLLC**
5  JOHN M. THOMAS (266842)
   jthomas@dykema.com
6  KRISTA L. LENART (admitted *pro hac vice*)
   klenart@dykema.com
7  JANET L. CONIGLIARO (admitted *pro hac vice*)
   jconigliaro@dykema.com
8  FRED J. FRESARD (admitted p*ro hac vice*)
   Ffresard@Dykema.com
9  2723 South State Street, Suite 400
   Ann Arbor, MI  48104
10 Tele:  (734) 214-7613 / Fax: (734) 214-7696

11 Attorneys for Defendant
   FORD MOTOR COMPANY
12

13              UNITED STATES DISTRICT COURT

14    CENTRAL DISTRICT OF CALIFORNIA—WESTERN DIVISION

15

16 OMAR VARGAS, ROBERT            Case No. 2:12-cv-08388 AB (FFMx)
   BERTONE, MICHELLE HARRIS,      Hon. Judge André Birotte Jr.
17 and SHARON HEBERLING           Crt Rm No. 790
   individually, and on behalf of a class
18 of similarly situated individuals,
                                  **DEFENDANT'S BRIEF IN**
19                                **SUPPORT OF PLAINTIFFS'**
          Plaintiffs,             **MOTION FOR FINAL APPROVAL**
20                                **OF CLASS ACTION SETTLEMENT**

21      v.
                                  Date:   October 2, 2017
22                                Time:   10:00 a.m.
   FORD MOTOR COMPANY,            Place:  Courtroom 7B
23
                                  Complaint served: October 1, 2012
24        Defendant

25

26

27

28
                                     1
   DEFENDANT'S BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF
                          CLASS ACTION SETTLEMENT

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................ 1

I.   THE SETTLEMENT PROVIDES SIGNIFICANT VALUE
     OVER AND ABOVE EXTENDED WARRANTIES, WHICH
     ALONE HAVE BEEN DEEMED SUFFICIENT TO SUPPORT
     CLASS SETTLEMENTS ................................................................... 1

II.  THE SETTLEMENT PROVIDES BENEFITS TO VIRTUALLY
     ALL CLASS MEMBERS. ................................................................. 4

III. THE EXPEDITED ARBITRATION PROGRAM PROVIDES
     SIGNIFICANT BENEFITS. .............................................................. 6

IV.  CLASS MEMBERS ARE GETTING SUBSTANTIAL VALUE,
     EVEN IF TOTAL VALUE CANNOT RELIABLY BE
     ESTIMATED. ................................................................................. 9

V.   COURTS UNIFORMLY REJECT OBJECTIONS BASED ON
     THE ABSENCE OF RELIEF FOR DIMINUTION IN VALUE. ....... 13

VI.  CLASS MEMBERS WERE CLEARLY ADVISED THEY
     WERE RELEASING ALL CLAIMS "BASED ON PROBLEMS
     WITH THE POWERSHIFT TRANSMISSION." .............................. 15

CONCLUSION ................................................................................ 16

1

2 <u>**TABLE OF AUTHORITIES**</u>

3 **Page(s)**

4 **Cases**

5

6 *Aarons v. BMW of N. Am., LLC*,
   No. CV 11-7667 PSG, 2014 U.S. Dist. LEXIS 118442
7   (C.D. Cal. Apr. 29, 2014) ........................................................................5

8 *Adedje v. Westat, Inc.*,
   214 Md. App. 1, 75 A.3d 401 (Md. Ct. Spec. App. 2013)................................7
9

10 *American Pipe & Construction Co. v. Utah*,
    414 U.S. 538 (1974) .................................................................................7
11

12 *Asghari v. Volkswagen Grp. of Am., Inc.*,
    No. CV 13-02529 MMM, 2015 U.S. Dist. LEXIS 188824
13   (C.D. Cal. May 29, 2015) ...................................................3, 5, 13, 14

14 *Car Transp. Brokerage Co. v. Blue Bird Body Co.*,
    322 F. App'x 891 (11th Cir. 2009)...........................................................10
15

16 *Chrysler Motors Corp. v. Schachner*,
    561 N.Y.S.2d 595 (N.Y. App. Div. 2d Dep't 1990) ........................................11
17

18 *Clemens v. DaimlerChrysler Corp.*,
    534 F.3d 1017 (9th Cir. 2008)..................................................................7
19

20 *Crown, Cork & Seal Co. v Parker*,
    462 U.S. 345 (1983) ..................................................................................7
21

22 *Dewey v. Volkswagen of Am.*,
    728 F. Supp. 2d 546 (D.N.J. 2010)............................................................6
23

24 *Edwards v. Ford Motor Co.*,
    No. 11CV1058-MMA (BLM), 2016 U.S. Dist. LEXIS 59651
25   (S.D. Cal. Jan. 22, 2016) ......................................................................3

26 *Eisen v. Porsche Cars N. Am., Inc.*,
    No. 2:11-cv-09405-CAS-FFMx, 2014 U.S. Dist. LEXIS 14301
27   (C.D. Cal. Jan. 30, 2014) ..............................................................*passim*

28

ii

*Gray v. BMW of N. Am., LLC*,
    No. 13-cv-3417, 2017 U.S. Dist. LEXIS 135593
    (D.N.J. Aug. 24, 2017) ................................................................ 3, 12

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) .......................................................... 1

*Israel-Curley v. Cal. Fair Plan*,
    126 Cal. App. 4th 123 (2005) ......................................................... 15

*MacDonald v. Ford Motor Co.*,
    142 F. Supp. 3d 884 (N.D. Cal. 2015) .............................................. 3

*Marchionna v. Ford Motor Co.*,
    1995 U.S. Dist. LEXIS 11408 (N.D. Ill. Aug. 9, 1995) ................... 11

*Milligan v. Toyota Motor Sales, U.S.A., Inc.*,
    No. C 09-05418 RS, 2012 U.S. Dist. LEXIS 189782
    (N.D. Cal. Jan. 6, 2012) .............................................................. 6, 14

*In re Navistar Diesel Engine Prods. Liab. Litig.*,
    No. 11 C 2496, 2013 U.S. Dist. LEXIS 189619
    (N.D. Ill. July 2, 2013) .................................................................... 3

*In re Nissan*,
    2013 U.S. Dist. LEXIS 116720 (S.D.N.Y. May 30, 2013) .............. 14

*Pearson v. NBTY, Inc.*,
    772 F.3d 778 (7th Cir. 2014) ......................................................... 13

*Pohutsky v. Pella Corp.*,
    No. 2:14-mn-00001, 2015 U.S. Dist. LEXIS 65033
    (D.S.C. May 19, 2015) ..................................................................... 7

*Ruffin v. Fleetwood Motor Homes*,
    1997 U.S. Dist. LEXIS 19374 (E.D. Pa. Dec. 3, 1997) ................... 11

*Saini v. BMW of N. Am., LLC*,
    No. 12-6105, 2015 U.S. Dist. LEXIS 66242
    (D.N.J. May 21, 2015) ..................................................................... 3

*Smith v. Volkswagen Grp. of Am., Inc.*,
    No. 13-CV-0370-MJR-PMF, 2014 U.S. Dist. LEXIS 192738
    (S.D. Ill. May 27, 2014) .................................................................. 3

iii

*Stunzi v. Medlin Motors, Inc.*,
   214 N.C. App. 332 (2011) ................................................................. 7

*Sugarman v. Ducati N. Am., Inc.*,
   No. 5:10-cv-05246-JF, 2012 U.S. Dist. LEXIS 135593
   (N.D. Cal. Jan. 12, 2012) .............................................................. 3

*In re TD Ameritrade Account Holder Litigation*,
   Nos. C 07-2852 SBA, C 07-4903 SBA, 2011 U.S. Dist. LEXIS
   103222, 2011 WL 4079226 (N.D. Cal. Sept. 13, 2011) ..................... 5

*Temple v. Fleetwood Enters.*,
   133 F. App'x 254 (6th Cir. 2005) ................................................ 11

*Traynor v. Winnebago Indus.*,
   2004 U.S. Dist. LEXIS 12056 (D. Ariz. May 14, 2004) ................... 11

*Trew v. Volvo Cars of N. Am., LLC*,
   No. S-05-1379, 2007 U.S. Dist. LEXIS 55305
   (E.D. Cal. July 30, 2007) .............................................................. 3

*Villacres v. ABM Industries Inc.*,
   189 Cal. App. 4th 562 (2010) ...................................................... 16

*Williams v. Countrywide Fin. Corp.*,
   No. 2:16-cv-04166-CAS, 2017 U.S. Dist. LEXIS 36495
   (C.D. Cal. Mar. 13, 2017) ............................................................. 7

*Yaeger v. Subaru of Am., Inc.*,
   No. 1:14-cv-4490, 2016 U.S. Dist. LEXIS 117193
   (D.N.J. Aug. 31, 2016) ............................................................ 3, 14

*Zakskorn v. Am. Honda Motor Co.*,
   No. 2:11-cv-02610-KJM-KJN, 2015 U.S. Dist. LEXIS 74550
   (E.D. Cal. June 8, 2015) .............................................................. 3

**Statutes**

815 Ill. C.S. 380/6 ......................................................................... 7

815 Ill. Comp. Stat. Ann. §§ 380/2, 380(3)(b)(1) .............................. 9

Cal Civ. Code §1542 ..................................................................... 15

Cal. Civ. Code § 1793.2(d)(1) ....................................................... 10

iv

Cal. Civ. Code § 1793.22(b)(2), (e).........................................................9

Colo. R.S. § 42-10-107.............................................................................7

Fla. Stat. Ann. § 681.106..........................................................................8

Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*..............10, 11

Md. Code Ann., Com. Law § 14-1502(b)(1)...........................................8

Md. Code Ann., Com. Law § 14-1502(d)(1)...........................................9

Md. Code Ann., Com. Law § 14-1502(k) ...............................................7

N.C. Gen. Stat. § 20-351.3.......................................................................9

N.C. Gen. Stat. § 20-351.8(3)(a) .............................................................8

N.C. Gen. Stat. § 20-351.8(3)(b) .............................................................8

Or. Rev. Stat. Ann. § 646A.412...............................................................8

Or. Rev. Stat. § 646A.416.........................................................................7

Tex. Occ. Code §§ 2301.604(a), 2301.605(a)(1) ....................................9

DEFENDANT'S BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT

**INTRODUCTION**

Plaintiffs' Motion for Final Approval of Class Action Settlement explains well, and in detail, why the Proposed Settlement is fair and reasonable and should be approved.  Ford files this brief to address the handful of objections made by Objectors Watson, Curtis, Saltz, Robison, Kellis, Castilon, Shiple, DeBolt (Doc. 167), and Lott *et al* (Doc. 157).[1]

## I. THE SETTLEMENT PROVIDES SIGNIFICANT VALUE OVER AND ABOVE EXTENDED WARRANTIES, WHICH ALONE HAVE BEEN DEEMED SUFFICIENT TO SUPPORT CLASS SETTLEMENTS.

Many of the objections amount simply to a claim that the benefits of the settlement should be more generous.  For example, Objectors Castilon, Curtis and Saltz apparently believe Ford should have agreed to pay for transmission repairs beyond 100,000 miles (up to 150,000 miles according to Objector Saltz).  But the possibility that a different settlement might have been better for the class "does not mean the settlement presented was not fair, reasonable or adequate."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).  Indeed, many of the objectors disregard the substantial benefits that the settlement does provide, including (among others) the following:

- The Proposed Settlement preserves all of Class Members' rights to have their vehicles repurchased under the lemon laws of their states, but it expands the circumstances under which Ford is required to repurchase Class Vehicles beyond the requirements of state lemon laws, and it

---

[1] Objector Rumao objects only to the amount of fees, an issue on which Ford takes no position.  Objector Price objects because he believes that there is nothing wrong with the PowerShift transmission and that the settlement agreement itself will "diminish, if not eliminate, the resale value" his vehicle. But Ford has denied any liability in the settlement agreement, and Plaintiffs' counsel are satisfied that this settlement is in the best interests of the class.

significantly extends the time within which claims for vehicle repurchase can be brought.

- The Proposed Settlement provides for an award of reasonable attorney fees incurred in pursuing a successful claim for vehicle repurchase, even in those states where state lemon laws do not allow recovery of attorney fees.

- The Proposed Settlement provides a mechanism by which claims for vehicle repurchase (and claims for violation of Ford's express warranty) can be quickly and efficiently resolved within 60 days, rather than in the year or more typically required to litigate such claims.

- The Proposed Settlement provides for significant cash payments to Class Members who have experienced repeated problems with their transmissions, even Class Members who have never incurred any out-of-pocket expenses for repairs and even Class Members whose vehicles are now functioning properly and have been functioning properly for tens of thousands of miles—or more.

*All of these benefits are in addition to the extended warranties issued by Ford during the pendency of this litigation.* Ford's customer satisfaction program 14M01 applied to 2011-2014 model year vehicles and extended the warranty on the input shaft seals, clutch, and software calibration to 7 years or 100,000 miles, whichever comes first. Ford's customer satisfaction program 14M02 applied to 2012-2014 model year vehicles and extended the warranty on the Transmission Control Module to 10 years or 150,000 miles, whichever comes first. Both programs provided reimbursement for customers who paid for covered repairs before the program was announced. (Marrocco Declaration ¶¶ 3-4.)[2] Under

---

[2] The extended warranty provided by Program 14M01 does not apply to 2015 or 2016 model year vehicles, because Ford made changes in production that improved the performance of seals and clutches in later model vehicles. Nevertheless, the settlement specifically defines the circumstances under which owners not covered by Program 14M01 are entitled to be reimbursed for the cost

2

current California law as interpreted by federal district courts, Plaintiffs will argue that the mere fact that these programs were issued after Plaintiffs' complaint was filed provides Plaintiffs with a sufficient basis for claiming that this litigation was a catalyst for those programs. *See MacDonald v. Ford Motor Co.*, 142 F. Supp. 3d 884 (N.D. Cal. 2015); *Edwards v. Ford Motor Co.*, No. 11CV1058-MMA (BLM), 2016 U.S. Dist. LEXIS 59651 (S.D. Cal. Jan. 22, 2016) (on appeal).

Further, automotive class actions based on product defects are routinely settled where the principal benefit to the class is an extended warranty covering the alleged defect (and reimbursement for prior repairs)—and such settlements are almost uniformly approved. *Sugarman v. Ducati N. Am., Inc.*, No. 5:10-cv-05246-JF, 2012 U.S. Dist. LEXIS 135593, at *4-5, *7 (N.D. Cal. Jan. 12, 2012); *Asghari v. Volkswagen Grp. of Am., Inc.*, No. CV 13-02529 MMM, 2015 U.S. Dist. LEXIS 188824, at *14-17, *95 (C.D. Cal. May 29, 2015); *Zakskorn v. Am. Honda Motor Co.*, No. 2:11-cv-02610-KJM-KJN, 2015 U.S. Dist. LEXIS 74550, at *5-6, *26 (E.D. Cal. June 8, 2015); *Eisen v. Porsche Cars N. Am., Inc.*, No. 2:11-cv-09405-CAS-FFMx, 2014 U.S. Dist. LEXIS 14301, at *4-5, *32 (C.D. Cal. Jan. 30, 2014); *Trew v. Volvo Cars of N. Am., LLC*, No. S-05-1379, 2007 U.S. Dist. LEXIS 55305, at *3-4, *16 (E.D. Cal. July 30, 2007); *Saini v. BMW of N. Am., LLC*, No. 12-6105, 2015 U.S. Dist. LEXIS 66242, at *3, *28 (D.N.J. May 21, 2015); *Yaeger v. Subaru of Am., Inc.*, No. 1:14-cv-4490, 2016 U.S. Dist. LEXIS 117193, at *10-13, *72 (D.N.J. Aug. 31, 2016); *In re Navistar Diesel Engine Prods. Liab. Litig.*, No. 11 C 2496, 2013 U.S. Dist. LEXIS 189619, at *11-13 (N.D. Ill. July 2, 2013); *Smith v. Volkswagen Grp. of Am., Inc.*, No. 13-CV-0370-MJR-PMF, 2014 U.S. Dist. LEXIS 192738, at *10-11 (S.D. Ill. May 27, 2014); *Gray v. BMW of N. Am., LLC*, No. 13-cv-3417, 2017 U.S. Dist. LEXIS 135593, at *3, *17 (D.N.J. Aug. 24, 2017). Objections that the current settlement, which provides significant benefits

of a post-warranty clutch replacement. (Settlement Agreement ¶ II(g).)

1   above and beyond the extended warranties, does not provide sufficient value to the

2   class are thus fundamentally misguided.

3   **II.    THE SETTLEMENT PROVIDES BENEFITS TO VIRTUALLY ALL**

4         **CLASS MEMBERS.**

5        According to Objectors Lott, the "[t]he cash payment provisions of the

6   settlement agreement provide no relief to any class member who had fewer than

7   three of any single qualifying repair," and that to "require class members to

8   release their right to "assert damages claims against Ford in exchange for nothing

9   of value would be fundamentally unfair." (Lott Objection at 5-6.)  But it is not

10  true that class members with fewer than three qualifying repairs receive nothing of

11  value under the settlement.  First, every current owner of a class vehicle will have

12  the potential to receive a cash payment for as long as they own their vehicle, or for

13  7 years or 100,000 miles, whichever comes first.  Not all of these class members

14  will ultimately be entitled to collect a cash payment, but this does not mean that

15  they have received nothing of value.  An insurance policy has value even if the

16  insured never collects on the policy; a lottery ticket has value even if the purchaser

17  does not win—and warranties have value even if the owner never needs a

18  warranty repair.  Indeed, as discussed above, settlements where the principal

19  benefit is an extended warranty are routinely approved, even if most class

20  members will never require a warranty repair.

21        Here, for exactly the same reasons, the right to cash payments if the criteria

22  are met in the future is something of value that all current owners of class vehicles

23  receive.  Moreover, this is not the only benefit these class members receive.  They

24  also receive the benefits of the expedited arbitration procedure under which they

25  can assert whatever right they may have to have their vehicles repurchased under

26  state lemon law, an extended statute of limitations, a right to recover attorney fees

27  even if not allowed by their state's laws—and an *additional* right to repurchase if

28  four qualifying repairs fail to address their problems.

4

There may be some former owners (such as Objector Watson) who are not currently eligible for a cash payment because they had fewer than three qualifying repairs while they owned their vehicles, and who will never be eligible for a cash payment because they no longer own their vehicles.  But even these class members are still entitled to take advantage of the expedited arbitration procedure to assert whatever rights they may have under their states' lemon laws to have their vehicle repurchased.  Many of them also had the benefit of the extended warranties while they owned their vehicles.  Besides, "[t]he possibility that the [s]ettlement does not provide for a payout to every conceivable [class member] who in some way may have been affected by the [purported defect] does not establish that the [s]ettlement is unfair or unreasonable."  *In re TD Ameritrade Account Holder Litigation*, Nos. C 07-2852 SBA, C 07-4903 SBA, 2011 U.S. Dist. LEXIS 103222, 2011 WL 4079226, at *9 (N.D. Cal. Sept. 13, 2011); *accord, e.g., Asghari v. Volkswagen Grp. of Am., Inc.*, No. CV 13-02529 MMM (VBKx), 2015 U.S. Dist. LEXIS 188824, at *63-64 (C.D. Cal. May 29, 2015) ("While it thus appears that Cirillo will receive no benefit from the settlement agreement, the fact that some class members will not obtain relief does not compel the conclusion that the settlement is unreasonable or unfair.").

In any event, "[f]ederal courts routinely hold that the opt-out remedy is sufficient to protect class members who are unhappy with the negotiated class action settlement terms."  *Eisen v. Porsche Cars N. Am., Inc*., No. 2:11-cv-09405-CAS-FFMx, 2014 U.S. Dist. LEXIS 14301, at *19-20 (C.D. Cal. Jan. 30, 2014). If there are any former owners who believe they have significant claims even though they only had two or fewer qualifying transmission repairs, those former owners had ample opportunity to opt out and pursue those claims.  *Aarons v. BMW of N. Am., LLC*, No. CV 11-7667 PSG (CWx), 2014 U.S. Dist. LEXIS 118442, at *32 (C.D. Cal. Apr. 29, 2014) ("To the extent those individuals [who would receive no benefits] believe the settlement is unfair, they could have opted

5

out of the Class."); *Milligan v. Toyota Motor Sales, U.S.A., Inc.*, No. C 09-05418 RS, 2012 U.S. Dist. LEXIS 189782, at *27 (N.D. Cal. Jan. 6, 2012) ("Admittedly, the settlement provides no benefit to those who lost or sold their vehicle …. Objectors who raised these concerns could have simply opted out of the settlement."); *Dewey v. Volkswagen of Am.*, 728 F. Supp. 2d 546, 579 (D.N.J. 2010) ("Thus, since these objectors retain this right to opt out, the settlement is fair to them too.").

## III.   THE EXPEDITED ARBITRATION PROGRAM PROVIDES SIGNIFICANT BENEFITS.

Objectors Lott complain that the arbitration program established by the settlement agreement "would impose additional requirements, offers narrower relief than if the claim were litigated, and requires class members to waive all other potential causes of action." (Lott at 12.)  But these are characteristics of any settlement.  By definition, any settlement is a compromise and offers narrower relief than that available in litigation, and it requires plaintiffs to release related causes of action.  And class action settlements, particularly settlements that establish extended warranties with a reimbursement component, by necessity impose requirements different than those in litigation (including, for example, documentation requirements and eligibility criteria that differ from the requirements in litigation).  To the extent any settlement limits the recovery to which class members might be entitled if they prevailed in the litigation, it by definition "benefits [defendant] and not the class." (Lott at 16.)

But settlements, including this one, provide other benefits to plaintiffs.  For example, Objectors Lott note that the lemon laws of Oregon, Maryland, and North Carolina allow recovery of civil penalties, which the arbitrator is not authorized to award under the settlement. (Lott at 13.)  But the laws of these states impose other limitations that are relaxed by the settlement.  For example, the statute of limitations for lemon-law claims in these states is only three years from the time

6

1  of sale.  Or. Rev. Stat. § 646A.416; Md. Code Ann., Com. Law § 14-1502(k);

2  *Stunzi v. Medlin Motors, Inc.*, 214 N.C. App. 332 (2011).  In other states, the

3  applicable statute of limitations is even shorter.  *See, e.g.,* Colo. R.S. § 42-10-107

4  (within one year of delivery); 815 Ill. C.S. 380/6 (within 18 months of delivery).

5  Under the settlement agreement, however, class members who still own their

6  vehicles have *six years* after sale to bring their repurchase claims.

7        In the face of this provision, Objectors Lott assert that the settlement

8  actually shortens the statute of limitations for these class members because under

9  *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974) and *Crown,*

10  *Cork & Seal Co. v Parker*, 462 U.S. 345 (1983) the statute of limitations has been

11  tolled for these class members since this class action was filed in 2012.  (Lott at

12  16.)  In fact, however, neither *American Pipe* nor *Crown, Cork* involved cross-

13  jurisdictional tolling, i.e., they did not decide whether the pendency of a class

14  action in one jurisdiction (e.g., federal court) tolled the statute of limitations in

15  another jurisdiction (e.g., state courts).  A majority of courts, including courts in

16  Maryland and California, reject cross-jurisdictional tolling.  *See, e.g., Clemens v.*

17  *DaimlerChrysler Corp.*, 534 F.3d 1017, 1025 (9th Cir. 2008) ("[T]he weight of

18  authority and California's interest in managing its own judicial system counsel us

19  not to import the doctrine of cross-jurisdictional tolling into California law.");

20  *Williams v. Countrywide Fin. Corp.,* No. 2:16-cv-04166-CAS (AGRx), 2017 U.S.

21  Dist. LEXIS 36495, at *26 (C.D. Cal. Mar. 13, 2017) ("California courts would

22  not apply American Pipe tolling in circumstances such as these '[b]ecause

23  California does not recognize cross jurisdictional tolling.'"); *Pohutsky v. Pella*

24  *Corp.*, No. 2:14-mn-00001, 2015 U.S. Dist. LEXIS 65033, at *14 (D.S.C. May 19,

25  2015) (applying Maryland law); *Adedje v. Westat, Inc.*, 214 Md. App. 1, 75 A.3d

26  401, 418 (Md. Ct. Spec. App. 2013) (collecting cases and agreeing with the

27  majority of courts to have rejected cross-jurisdictional tolling).  Thus, in a

28  majority of states that have decided the issue, the statute of limitations has *not*

7

1   been tolled.  The issue remains undecided in some states, including Oregon and

2   North Carolina, but by virtue of the settlement class members from those states

3   can be confident that they have a full six years from the time of sale to assert their

4   repurchase claims.

5        The extension of the statute of limitations is not the only improvement

6   made by the settlement.  For example, the Oregon and North Carolina lemon laws

7   allow a court to award attorney fees to a prevailing defendant.  Or. Rev. Stat. Ann.

8   § 646A.412; N.C. Gen. Stat. § 20-351.8(3)(b); *accord, e.g.,* Fla. Stat. Ann. §

9   681.106.  Under the settlement agreement, no fees can be awarded to Ford.  Under

10  the North Carolina lemon law, attorney fees can be awarded to a prevailing

11  plaintiff only if the manufacturer acted unreasonably in failing to resolve the

12  matter.  N.C. Gen. Stat. § 20-351.8(3)(a).  Under the settlement agreement, a class

13  member prevailing at arbitration may be able to recover reasonable attorney fees

14  up to $6,000.[3]  The Maryland lemon law requires that a consumer give written

15  notice directly to the manufacturer by certified mail, return receipt requested.  Md.

16  Code Ann., Com. Law § 14-1502(b)(1); in contrast, the settlement agreement

17  merely requires a phone call or submission of a form through the settlement

18  website.  (Settlement Agreement ¶ II(N)(1)(e).)

19       The settlement also provides an additional right to have a vehicle

20  repurchased for consumers who have had four Transmission Hardware Repairs in

21  four separate Service Visits within 5 years or 60,000 miles, whichever comes first,

22  and who continue to have transmission problems.  This benefit is available even if

23  the class member is not entitled to relief under state lemon law.  The multiple

24  repairs need not be for the same condition, and there need be no showing that the

---

25  [3] Objectors Lott baldly assert, with no legal or factual support, that
26  capping fees at $6,000 "will force class members to arbitrate their claims *pro se*."  (Lott at 1-2.)  But lemon law lawyers are already "actively looking to help
27  owners [who have not opted out] navigate the class action settlement."
    http://www.fordtransmissionproblems.com/ford-class-action-settlement/ (visited
28  September 22, 2017).

continuing problems significantly affect the use, value or safety of the vehicle. This is another improvement over state lemon laws, which typically require multiple repairs *for the same condition*, or which require proof that the condition *substantially impairs the use, value or safety* of the vehicle.  *See, e.g,* Cal. Civ. Code § 1793.22(b)(2), (e); . Md. Code Ann., Com. Law § 14-1502(d)(1); N.C. Gen. Stat. § 20-351.3; 815 Ill. Comp. Stat. Ann. §§  380/2, 380(3)(b)(1); Tex. Occ. Code §§  2301.604(a), 2301.605(a)(1).[4]

Finally, the arbitration process should resolve class members' claims within about 30-60 days, compared with the year or more typically required for litigation.

## IV.    CLASS MEMBERS ARE GETTING SUBSTANTIAL VALUE, EVEN IF TOTAL VALUE CANNOT RELIABLY BE ESTIMATED.

Objectors Lott argue that the settlement should be rejected because the "the value of the settlement is unknown."  (Lott at 10.)  Ford agrees that the total value of the benefits received by the class cannot be reliably estimated, because there are too many unknowns and because the benefits will be paid out over the course of many years.  But there can be no question that Ford is providing substantial value.

First, the cost to date of the extended warranties provided by Ford during the pendency of this litigation is over $180 million, and Ford expects these costs to continue to rise for several years.  (Marrocco Declaration ¶ 4.)  According to Plaintiffs, many Ford dealers were routinely refusing to make repairs pursuant to the extended warranty on clutches, because they erroneously believed it did not apply unless seals within the transmission were leaking.  The settlement requires Ford to inform dealers that the clutches are covered even if seals are not leaking. If Plaintiffs are correct, this clarification—required by the settlement—will

---

[4] Objector Shiple seems to think that owners with fewer than four repairs have no right to have their vehicle repurchased.  This is a misunderstanding of the additional buyback right established by the settlement agreement.  Owners with fewer than four repairs are not entitled to a buyback under the additional buyback provision, but they can still bring a claim for a repurchase pursuant to their state's lemon laws.

1    increase the cost to Ford of the extended warranty and increase the value of the

2    settlement.  For most class members, everything else provided by the settlement is

3    in addition to this benefit.

4          Second, class members who qualify based on three or more Transmission

5    Hardware Repairs within 7 years or 100,000 miles, whichever comes first, will

6    receive at least $200 (or a $400 vehicle discount certificate), and in some cases as

7    much as $2,325 (or a $4,650 vehicle discount certificate).  Class members who

8    qualify will get hundreds of dollars—in some cases thousands of dollars—*even*

9    *though they never incurred any repair or other out-of-pocket costs.*[5]

10         Objectors Lott argue that there is an "intra class conflict" because "the

11   distinction between the subclass eligible for relief (those with three or more of a

12   single type of repair) and the rest of the class is arbitrary because there is no

13   evidence to suggest that one group has a different legal claims, or greater

14   damages, that the other." (Lott at 11.)  This is simply incorrect.  First, the three

15   repairs do not have to be of a "single type" (except in the sense they must all relate

16   to the transmission).  Moreover, class members with three or more repairs have

17   significantly stronger claims than other class members.  Under state lemon laws,

18   the Magnuson-Moss Warranty Act, and Ford's New Vehicle Limited Warranty,

19   Ford is entitled to a reasonable number of attempts to repair defects or

20   nonconformities.  *See, e.g.,* Cal. Civ. Code § 1793.2(d)(1); 15 U.S.C. § 2304(a)(4).

21   Most courts considering the meaning of "reasonable number of attempts" and

22   similar language have concluded that more than one attempt is allowed.  *See, e.g.,*

23   *Car Transp. Brokerage Co. v. Blue Bird Body Co.*, 322 F. App'x 891, 898 (11th

24   Cir. 2009) ("Providing only one opportunity to repair … is not reasonable,

25   especially where the product in question is as complicated as a motor coach.");

26

27   [5] Objector Watson mistakenly believes that class members with eight
     Transmission Hardware Repairs within 7 years/100,000 miles will get "only"
28   $575.  In fact, such a class member would be entitled to $2,325 (or a $4,650
     vehicle discount certificate).

1 *Temple v. Fleetwood Enters.*, 133 F. App'x 254, 269 (6th Cir. 2005) ("As a matter

2 of law, two repairs of the same item is not unreasonable pursuant to either a

3 breach of warranty claim or the Magnuson-Moss Act."); *Traynor v. Winnebago*

4 *Indus.*, 2004 U.S. Dist. LEXIS 12056, at *8 (D. Ariz. May 14, 2004) ("Courts

5 have held, and the parties do not dispute, that the term 'reasonable number of

6 attempts' in [the Magnuson-Moss Act] indicates that the warrantor is entitled to at

7 least two attempts to correct the defect."); *Ruffin v. Fleetwood Motor Homes*, 1997

8 U.S. Dist. LEXIS 19374, at *14 (E.D. Pa. Dec. 3, 1997) ("The statutory language

9 [of the Magnuson-Moss Act] refers to 'reasonable attempts'; a plain reading of the

10 Act requires a consumer to give the warrantors more than one opportunity to

11 correct a defect in the warranted product."); *Marchionna v. Ford Motor Co.*, 1995

12 U.S. Dist. LEXIS 11408, at *38 (N.D. Ill. Aug. 9, 1995) ("The plurality of the

13 word 'attempts' [in the Magnuson-Moss Act] indicates that Ford Motor was

14 entitled to at least two, and possibly three, attempts to correct the defect.");

15 *Chrysler Motors Corp. v. Schachner*, 561 N.Y.S.2d 595, 596-597 (N.Y. App. Div.

16 2d Dep't 1990) ("[T]he single attempt to correct the defect which was made by

17 Chrysler's agent fails as a matter of law to amount to a 'reasonable number' of

18 'attempts' within the meaning of the [New York lemon law].").  Thus, class

19 members whose vehicles were repaired after only two attempts may have no valid

20 warranty claims, and it is appropriate that they be treated differently.  *See, e.g.,*

21 *Eisen v. Porsche Cars N. Am., Inc.*, No. 2:11-cv-09405-CAS-FFMx, 2014 U.S.

22 Dist. LEXIS 14301, at *16-18 (C.D. Cal. Jan. 30, 2014) ("The Settlement

23 Agreement reflects the fact that PCNA faces more litigation risk from new and

24 ACPO purchasers than used vehicle purchasers.")  And it bears repeating that

25 class members who currently have had two or fewer hardware repairs will be

26 entitled to recover if they have additional hardware repairs in the future, as long as

27 they occur within seven years or 100,000 miles—a potential benefit which itself

28

DEFENDANT'S BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT

has current value.[6]

Although the settlement provides for substantial cash payments, Objectors Lott argue that "the claims rate is likely to be low" because the "documentation requirements associated with making a claim are onerous." (Lott at 10.) Objector DeBolt makes a similar argument. (DeBolt at 4.) The allegedly "onerous" requirements are submitting a claim form, providing records regarding the qualifying repairs, proving ownership at the time of the repairs, and signing a statement attesting to the authenticity requirements. It is true that a claim form requiring a signature under penalty of perjury will be required, but the claim form can be completed online and signed electronically. The only documents required are the service records for each qualifying repair; if all of the service records show the class member as the person requesting the repair, no further documentation is required. Only if the repair records are in someone else's name is the class member required to provide additional proof of ownership at the time of the repair.

Objectors Lott complain that class members who no longer own their vehicles, or whose qualifying service visits were many years ago, are "unlikely to have retained all the paperwork to support a claim." (Lott at 10.) But "those who have not retained their own repair records may simply contact the dealership that performed the repairs to obtain documentation." *Gray v. BMW of N. Am., LLC*, No. 13-cv-3417 (WJM), 2017 U.S. Dist. LEXIS 135593, at *11 (D.N.J. Aug. 24,

---

[6] Objectors Lott argue that some class members will be unable to show that they experienced more than two repairs because they were sent away without repairs and told that they were experiencing "normal driving characteristics." (Lott at 10.) Objector Watson makes a similar point. But such claims are inherently different than claims based on documented service visits, because it could well be true that the class members were complaining about the normal driving characteristics of their vehicles. In any event, class members who claim that Ford was unable to repair their problems after a reasonable number of attempts, and who claim that some of the repair attempts were not documented. are free to assert those claims in arbitration based on their states' lemon laws; they simply are not eligible for the cash payment option. Further, of course, such class members were free to opt out.

DEFENDANT'S BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

2017); *see also, e.g., Asghari v. Volkswagen Grp. of Am., Inc.*, No. CV 13-02529 MMM (VBKx), 2015 U.S. Dist. LEXIS 188824, at *82 (C.D. Cal. May 29, 2015) ("[D]ealerships and service centers routinely maintain such records; thus, to the extent that class members do not have an invoice in their possession, it is likely that they would be able to secure such documentation.")  Ford has encouraged its dealers to cooperate with their customers in securing the necessary records.  (Fyie Declaration, Ex. A.)  Besides, "courts frequently approve settlements that require class members to submit receipts or other documentation; they conclude such a requirement is reasonable and fair given the defendant's need to avoid fraudulent claims." *Asghari* at *82.[7]

## V. COURTS UNIFORMLY REJECT OBJECTIONS BASED ON THE ABSENCE OF RELIEF FOR DIMINUTION IN VALUE.

Objectors Watson, Robinson, Kellis, Lott and DeBolt argue that the settlement should have provided compensation for diminution in value, or loss of resale value to all class members, including class members who never experienced an unusual number of repairs—or who never experienced any problems at all. (DeBolt at 4-5, Lott at 8.)  "These objectors have not taken into account the difficulties of establishing class-wide diminution in value damages in light of the [six]-year vehicle in-service period (as exists here), with owners buying and selling different at different times and in different circumstances." *Eisen v. Porsche Cars N. Am., Inc.*, No. 2:11-cv-09405-CAS-FFMx, 2014 U.S. Dist. LEXIS 14301, at *22-24 (C.D. Cal. Jan. 30, 2014).  As the *Eisen* court explained:

---

[7] *Pearson v. NBTY, Inc.*, 772 F.3d 778 (7th Cir. 2014), cited by Objector DeBolt (DeBolt at 4), bears no similarity to this case.  There, purchasers of glucosamine pills were required to "list cash register receipts or other documentation indicating the date and place at which he or she had bought" each bottle, even though any documentation was likely discarded, all for a mere $5 per bottle up to a maximum of 10 bottles.  Cars, unlike bottles of glucosamine pills, are each unique; class members will know where they had their cars repaired under warranty—at Ford dealers—and if they do not have their service records, dealers will.

13

1       [C]ourts have rejected the notion that class action settlements
2       must provide compensation for diminished value. *See, e.g.,*
3       *Vaughn v. Am. Honda Motor Co.*, 627 F. Supp. 2d 738, 749
4       (E.D. Tex. 2007) (rejecting objections concerning failure of
5       settlement to compensate for diminution in value to vehicles with
6       allegedly defective odometer, holding that "[i]t does not make
7       the settlement unfair or unreasonable that the class has to release
8       speculative claims for diminution in value"); *In re Nissan*, 2013
9       U.S. Dist. LEXIS 116720, at *41-42 [(S.D.N.Y. May 30, 2013)]
10      (rejecting diminished value objections, noting that such claims
11      "present additional challenges because proving them requires
12      individualized inquiry"); *Milligan [v. Toyota Motor Sales,*
13      *U.S.A., Inc.]*, No. 3:09-cv-05418-RS, 2012 U.S. Dist. LEXIS
14      189782, *27 [(N.D. Cal. Jan. 6, 2012)] (observing that
15      "diminution in value cases face significant obstacles regarding
16      proof").
17              Here, there is no expert testimony or other evidence
18      showing that publicity about the alleged defect resulted in any
19      diminished resale value. Class-wide evidence of diminished
20      value cannot be shown based on anecdotal claims of the
21      experiences of individual class members. It is therefore
22      reasonable to decline to provide compensation for diminished
23      value. *See Vaughn*, 627 F. Supp. 2d at 749.

24  *Eisen,* at *22-24; *accord, e.g., Yaeger v. Subaru of Am., Inc.*, 2016 U.S. Dist.
25  LEXIS 117193, at *45-49 (D.N.J. Aug. 31, 2016) ("Overall, the Court finds that
26  the proposed settlement's silence as to diminished value does not impair the
27  fairness and adequacy of the proposed settlement."); *Asghari v. Volkswagen Grp.*
28  *of Am., Inc.*, No. CV 13-02529, 2015 U.S. Dist. LEXIS 188824, at *74-76 (C.D.

14

Cal. May 29, 2015) ("Considering the attendant difficulty of proving and recovering such [diminution in value] damages on a classwide basis, the court believes plaintiffs' decision not to pursue such damages as part of the settlement was neither unfair nor unreasonable.").

## VI.   CLASS MEMBERS WERE CLEARLY ADVISED THEY WERE RELEASING ALL CLAIMS "BASED ON PROBLEMS WITH THE POWERSHIFT TRANSMISSION."

Objector DeBolt spends six pages arguing that the settlement should be rejected based on Cal Civ. Code §1542, which provides that a general release does not release unknown claims. (DeBolt at 6-11.)  He recognizes that the settlement agreement properly waives § 1542 as to the Named Plaintiffs (DeBolt at 7), but he argues that there is "no legitimate reason" to extend this waiver to the entire class, and he complains that the waiver was included in the settlement agreement itself but not in the class notice. (DeBolt at 9.)  Objector DeBolt cites no authority at all rejecting a class action settlement for either reason.[8]  As he recognizes, the class notice expressly and unambiguously informs class members that "you will give up your right to sue for claims based on problems with the PowerShift Transmission." (DeBolt at 11.)  This is comparable to the language in one of the cases he does cite, where a release was enforced because the "plain language of the agreement makes it clear that the release applied to all claims against Fair Plan arising out of the Northridge earthquake." *Israel-Curley v. Cal. Fair Plan*, 126 Cal. App. 4th 123, 129 (2005).

And there is an obviously legitimate reason to extend the release of all claims arising out of problems with the PowerShift Transmission to all class members—Ford would be unwilling to provide the benefits of the settlement if

---

[8] Objector DeBolt refers to some unidentified state trial court decisions that he claims support his position, but without any identifying information the relevance of those decisions cannot be evaluated. (DeBolt at 8.)

1   class members were free to accept those benefits and still bring suit based on the

2   same facts underlying this litigation.  Case law is clear in California and elsewhere

3   that judgment pursuant to a class settlement can bar claims "based on the

4   allegations underlying the claims in the settled class action," and that this is "true

5   even though the precluded claim *was not presented*, and *could not have been*

6   *presented*, in the class action itself." *Villacres v. ABM Industries Inc.*, 189 Cal.

7   App. 4th 562, 586-587 (2010), quoting *In re Prudential Ins. Co. of America*, 261

8   F.3d 355, 366 (3d Cir. 2001) (italics added in *Villacres*).

## CONCLUSION

10      The objections have no merit and the settlement should be approved.

11   Respectfully submitted,

DYKEMA GOSSETT PLLC

/s/John M. Thomas
John M. Thomas
Tamara A. Bush
Attorneys for Defendant
FORD MOTOR COMPANY

**PROOF OF SERVICE**
*Omar Vargas v. Ford Motor Company*
*USDC, Central District, Case No.:  2:12-cv-08388-AB-FFM*
*USDC, 350 West 1ˢᵗ Street, Courtroom 7B, Los Angeles, CA 90012*

I am over the age of 18 and not a party to the within action.  I am employed in the County of Los Angeles, State of California by Dykema Gossett LLP.  My business address is 333 South Grand Avenue, Suite 2100, Los Angeles, California 90071.

On the below date, I served the foregoing document described as **DEFENDANT'S BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**on all interested parties in this action by placing a true copy thereof enclosed in a sealed envelope addressed as follows:

April M. Castilon                                    *Objector*
268 Plasters Road
Swords Creek VA  24649

Devin Moore Shiple                              *Objector*
2700 16th Street S, Apt 667
Arlington VA 22204

Thomas M. Curtis                                  *Objector*
N28W6354 Alyce St.
Cedarburg WI 53012

Sherri W. Saltz                                       *Objector*
5931 Deerfield Lane
Hickory, NC 28602

Bradford Allen Robinson                      *Objector*
7600 Callaghan Road Apt 902
San Antonio, TX 78229-2778

Louis Rumao                                          *Objector*
621 Lockmoore Court
Rochester Hills, MI 48307

John Christian Kellis                             *Objector*
1400 Ashbourne Way
Deltona, FL 32725
Brian Harold Price                                 *Objector*
1620 South Quebec Way, Apt 5
Denver, CO 80231

Richard N. Watson                                *Objector*
6929 Kawaihau Road
Kapa'a, HI 96746-9013

☒     (**BY MAIL**) I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with U.S. Postal Service on the same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if

17

postal cancellation date or postage meter date is more than one day after date of deposit for mailing on affidavit.

☒   **(FEDERAL)**   I declare that I employed in the office of a member of the bar of this court at whose direction the service was made.I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on **September  25,  2017,** at Los Angeles, California.

/s/ Tamara A. Bush
Tamara A. Bush

DEFENDANT'S BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT