1 **STERN LAW, PLLC**
KENNETH A. STERN (*pro hac vice* application filed/pending)
2 Ken@Sternlawonline.com
41850 W 11 Mile Rd, Suite 121
3 Novi, MI 48375
Telephone: (248) 347-7300
4
5 **THE LIBLANG LAW FIRM, P.C.**
DANI K. LIBLANG (*pro hac vice* application filed/pending)
6 danil@liblanglaw.com
346 Park Street, Suite 200
7 Birmingham, MI 48009-3436
Telephone: (248) 540-9270
8
9 **GIELEGHEM LAW OFFICE**
NEIL GIELEGHEM (CSBN 107389)
10 neil@ngattorney.com
1436 South Spaulding Avenue
Los Angeles, CA  90019
11 Telephone: (310) 6784563
12 Attorneys for Opt-Outs

13 **UNITED STATES DISTRICT COURT**

14 **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**
15

| | |
|---|---|
| OMAR VARGAS, ROBERT BERTONE, MICHELLE HARRIS, AND SHARON HEBERLING, individually and on behalf of a class of similarly situated individuals,<br><br>          Plaintiffs,<br><br>     vs.<br><br>FORD MOTOR COMPANY,<br><br>          Defendant. | Case No.: 2:2012-CV-08388 AB (FFMX)<br><br>[Assigned to Hon. Andre Birotte, Jr., Rm 7B<br>Magistrate Frederick F. Mumm, Rm. 580, Courtroom 790]<br>CLASS ACTION<br><br>**OPT-OUTS' OPPOSITION TO JOINT APPLICATION FOR EX PARTE ORDER LIFTING STAY** |

OPT-OUTS' OBJECTION TO JOINT APPLICATION FOR EX PARTE ORDER
LIFTING STAY

## TABLE OF CONTENTS

I.      INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     PROCEDURAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4

III.    ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        A.      Ford's Plan That This Court Somehow "Coordinate"

        All The DPS6/Powershift Cases Pending In State And

        Federal Court Has No Legal Basis, And Warrants A

        Continuation Of The Stay Until These Issues Can Be

        Addressed And Resolved . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

        B.      The Issues Raised By Opt-Outs' Right To

        Object To The Settlement, Based In Part On The Revelations

        Of Ford's $75,001.00 Settlement Offers, Warrants A

        Continuation Of The Stay. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        C.      The Anticipated Appeals By The Opt-Outs And

        The Objectors Warrant A Continuation Of The Stay (Even

        If This Court Retains Jurisdiction) . . . . . . . . . . . . . . . . . . . . . . . . . . .9

        D.      Ford's Recently Revealed $75,001.00 Offers,

        And The Possibility That Ford Committed A Fraud On The

        Court To Get The Settlement Approved, Also Warrant

        A Continuance Of The Stay . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

OPT-OUTS' OBJECTION TO JOINT APPLICATION FOR EX PARTE ORDER
LIFTING STAY

IV.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

## <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>

*Griggs v. Provident Consumer Discount Co.,*
    459 U.S. 56, 103 S.Ct. 400, 402 (per curiam) . . . . . . . . . . . . . . . . . . . . . . . 9

*Mayweathers v. Newland,*
    258 F.3d 930 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

*Pro Sales, Inc. v. Texaco USA,*
    792 F.3d 1394 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*McClatchy Newspapers v. Central Valley Typographical Union No. 46*
    686 F.2d 731 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Townley v. Miller,*
    693 F.3d 1041 (9th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

**TO THIS HONORABLE COURT, AND TO ALL PARTIES AND COUNSEL OF RECORD:**

The "Opt-Outs"[1] submit the following Opposition to the Joint Application For Ex Parte Order Lifting Stay ("Application") filed by Defendant FORD MOTOR COMPANY and Class Plaintiffs (collectively, "Ford") on November 13, 2017.

## I.   INTRODUCTION

The Opt-Outs oppose Ford's Application for a number of reasons. These include that the Opt-Outs do not share Ford's "assumption" (or perhaps more accurately, Ford's "presumption") that this Court made a "mistake" in issuing its stay Order on November 10, 2017 (Dkt. # 217).

Instead, the Opt-Outs hope that the stay Order reflects this Court's considered judgment that Ford's very recent initiation of the MDL No. 2814 Proceeding has made the already complicated (if not convoluted) procedural posture of this case even more problematic.

Significantly, these complications are the result of the manner in which Ford

---

[1] This Opposition is filed on behalf of the +/-12,500 former Members of the putative *Vargas* class represented by the undersigned attorneys, which Opt-Outs are pursuing claims against Ford via the Michigan Mass Actions referred to in pleadings previously filed with this Court, e.g., Dkt. ## 205, 206. Said Opt-Outs respectfully submit that it would be unnecessarily cumbersome to include a listing of all +/-12,500 of these Opt-Outs in this Opposition, but would be happy to provide such a listing should this Court request. See accompanying Declaration of Neil Gieleghem ("Gieleghem Decl."), ¶ 8.

OPT-OUTS' OBJECTION TO JOINT APPLICATION FOR EX PARTE ORDER
LIFTING STAY

has proceeded, e.g., by filing Ford's pending Motion to Invalidate Certain Opt-Outs, etc. (Dkt. # 188) before this Court approved and entered the initial Judgment on October 18, 2017 (Dkt. # 193); and then continuing to pursue that Motion to this date.  As detailed in the Opt-Outs' Opposition (Dkt. ## 206, 206) to the Motion to Invalidate, the relief sought by Ford's Motion would require that this Court "re-do" or "re-start" the entire settlement notice and approval, and opt-out, process.

The problematic procedural (and substantive) posture of this case also is the result of the need of both the Objectors who previously objected to the Settlement (via Dkt. # 157), and the Opt-Outs, to protect their positions by filing timely Notices of Appeal from the October 18, 2017 Judgment.  Based on the October 18, 2017 entry date, any appeal from this Judgment should be filed on or before November 17, 2017.

The Opt-Outs anticipate that these appeals will be filed on or before Wednesday, November 15, 2017.  But the filing of these appeals necessarily will raise issues as to this Court's jurisdiction to proceed further in this case, particularly as to any matter bearing on the Judgment.

*Finally, and perhaps most troubling,  the Opt-Outs' review of Ford's filings in the MDL 2814 Proceeding have raised very grave concerns as to whether Ford materially mislead this Court in connection with the Motion for Approval of the Settlement.*

OPT-OUTS' OBJECTION TO JOINT APPLICATION FOR EX PARTE ORDER LIFTING STAY

Specifically, the Notices of Removal that the Opt-Outs have been able to review in the time available reveal *that Ford has repeatedly offered, via these Notices, to settle the underlying California state court Lemon Law cases (which now make up the 111 "Related Cases" that are the subject of the MDL No. 2814 Proceeding) for $75,001.00 each!*[2]

These multiple $75,001.00 settlement offers are much larger than the representations as to the settlement value of such California cases that were made to this Court at the October 2, 2017 approval hearing that led to this Court's entry of the Judgment.

Further, these multiple $75,001.00 settlement offers stand in sharp contrast to the fact that, by Ford's own admission, fully 94% of the Class will get no benefit whatsoever from the Settlement.

Finally, and in addition to the possibility that Ford committed a fraud on this Court to get the Settlement approved – which Settlement is very favorable to Ford – the now-established difference between the settlement value of (1) claims of California Class Members vs. (2) claims of non-California Class Members who do

---

[2] As detailed below, where the Notice of Removal did not include an express offer to settle for $75,001.00 (which was made in about 70% of the Notices), Ford contended in the Notice of Removal that the amount in dispute was $75,000.00 or more. See Gieleghem Decl., EXH. 1 (Excel spreadsheet detailing settlement offers in Notices of Removal).

3

not have the benefit of California's more consumer-friendly Lemon Law is further support for the "intra-Class conflict" objections to the Settlement raised by the Objectors (via Dkt. # 157).

Given these considerations, Opt-Outs believe that this Court's stay Order was prudent – indeed, necessary.  Accordingly, Opt-Outs request that the stay not be lifted – or in the alternative, and at a minimum, these issues be addressed by way of full briefing and hearing.

## II.   PROCEDURAL BACKGROUND

By way of context: The MDL # 2814 Proceeding was initiated by Ford on October 30, 2017, i.e., after this Court approved the Settlement and entered the Judgment on October 18, 2017. See MDL No. 2814 Dkt. # 1 (Notice).  By way of MDL No. 2814, Ford seeks MDL handling (i.e., transfer and consolidation) of 111 state law "Lemon Law" cases – which Ford refers to as the "Related Cases" -- all of which involve DPS6/Powershift equipped Ford Focus or Ford Fiesta autos such as those involved in the *Vargas v. Ford* Class Action. See MDL No. 2814 Dkt. # 1-1 (Memorandum in support of Motion for Transfer and Consolation, etc.)

These 111 Related Cases initially were filed in California state courts during the opt-out period leading up to the approval of the *Vargas* settlement, reflecting the decisions of these plaintiffs to opt-out of the *Vargas* Class and pursue their claims for relief independently.

4

(That these plaintiffs should so chose to opt-out of the Class is not surprising, given Ford's admission that the *Vargas* Settlement gives no benefit whatsoever to 94% of the Class; and given the revelation that Ford now is making offers of $75,001.00 to settle these cases!)

As far as the Opt-Outs are aware, there has been no briefing or argument, by any party, as to the effect on *Vargas* of the recently filed MDL No. 2814 Proceeding.

In the November 10, 2017 minute Order imposing the stay, this Court did not articulate its rationale for imposing said stay. Instead, the Court simply made reference to the recently filed MDL No. 2814 Proceeding:

> (IN CHAMBERS) NOTICE by Judge Andre Birotte Jr. The Court hereby STAYS this action pending the decision of the Panel in In Re: Ford Motor Co. DPS6 PowerShift Transmission Products Liability Litigation, MDL No. 2814. THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (iv) TEXT ONLY ENTRY (Entered: 11/09/2017)

Dkt. # 217.

In its email notice for its Ex Parte Application, Ford took the position that this Court made a "mistake" in issuing the stay, because the *Vargas* case is not among the cases Ford is seeking to consolidate and transfer, and any proceedings in the MDL NO. 2814 will have "no impact on *Vagas* or on the settlement":

5

We believe this [the stay] may be a mistake; *Vargas* is not among the cases Ford is seeking to consolidate and transfer, and whatever the JPML decides it will have no impact on *Vargas* or on the settlement.

III.   ARGUMENT

The Opt-Outs do not agree with Ford's "belief" that this Court made a "mistake," and also do not agree with Ford's blanket statement that the MDL No. 2814 Proceeding will have "no impact on Vargas or on the Settlement."

A. <u>Ford's Plan That This Court Somehow "Coordinate" All The DPS6/Powershift Cases Pending In State And Federal Court Has No Legal Basis, And Warrants A Continuation Of The Stay Until These Issues Can Be Addressed And Resolved</u>

Ford's "motive" in initiating the MDL No. 2814 is clear.  Ford is happy (if not overjoyed) with the Settlement it was able to get this Court to approve in *Vargas* (albeit, apparently by the fraud referenced above and detailed below); and now wants to use this Court's offices, via the MDL No. 2814 Proceeding, to "leverage" (1) the pending 111 Related Cases that Ford removed from state court; (2) the California JCCP proceedings; and (3) any other opted-out cases, to achieve equivalent resolutions equally favorable to Ford.[3]

---

[3] At various points, Ford's initial MDL No. 2814 Proceeding filings seem to jumble together (1) the 111 Related Cases; (2) the California state court JCCP

6

Ford's initial MDL pleadings make clear that this "leverage" plan is based expressly on *Vargas*, and the idea that the pendency of *Vargas* before this Court, and the pendency of the 111 Related Cases that Ford removed from state court, somehow will allow this Court somehow to direct or coordinate the other cases that are not before it.

Consistent with this, Ford's initial MDL pleading makes repeated references to *Vargas*. From all appearances, Ford is seeking to somehow "relate" or "coordinate" not just the now-removed 111 Related Cases but <u>all</u> the DPS6/Powershift cases now pending in the various district <u>and</u> various state courts in this Court; and to place all these cases under Court's supervision, either directly

_____

Coordinated Proceedings; and (3) and other pending or to be filed cases in other states (including, potentially, the Michigan Mass Action DPS6/Powershift cases pending in that jurisdiction). In so "jumbling together" these various cases and proceedings, Ford tries to create the impression that the MDL court to which the 111 Related Cases may be assigned (e.g., this Court) somehow would have authority over, or otherwise exert any influence on, these other cases. <u>See</u>, <u>e.g.</u>, MDL # 2814, Dkt. # 101 (Ford's MPA), p. 11 et seq. (argument that because Hon. Andre Birotte, Jr. is "familiar" with the *Vargas* case, this Court is in the best position to "coordinate" with the judges handling the various state court proceedings).

This argument is fallacious. The MDL court, once assigned, would have authority only over the 111 Related Cases, and would have no authority to "coordinate" any state court proceedings. Further, the California courts involved have given no indication that they need any assistance from the federal courts to manage their California cases, which are governed by California procedural and substantive law. In fact, just the opposite: These California courts repeatedly have rejected arguments by Ford that they should look to, or be governed by, this Court's rulings in *Vargas*, e.g., in regards to protective orders.

7

_____

OPT-OUTS' OBJECTION TO JOINT APPLICATION FOR EX PARTE ORDER<br>LIFTING STAY

or via "coordination" with state court judges involved (e.g., those in the two pending California JCCP Proceedings). Thus, Ford's implication that the MDL No. 2814 Proceeding will have no effect whatsoever on *Vargas* contradicts, either wholly or in part, what Ford is telling the MDL Court.

        B. <u>The Issues Raised By Opt-Outs' Right To Object To The Settlement, Based In Part On The Revelations Of Ford's $75,001.00 Settlement Offers, Warrants A Continuation Of The Stay</u>

Further, the procedural posture of *Vargas* has become increasing complicated – if not convoluted – since this Court approved the Settlement on October 18, 2017. This is because, on October 13, 2017, Ford filed, and still has pending, its *Motion to Invalidate Certain Opt-Outs, to Amend Class Definition, to Require Corrective Notice, and to Establish A Second Opt-Out Period,* Dkt. # 188 ("Motion to Invalidate").

As detailed in the Opt-Outs' Opposition (Dkt. ## 205, 206) to this Motion to Invalidate, the relief that Ford requests as to the Opt-Outs cannot be granted as to the Opt-Outs alone. Instead, the only way such relief fairly could be imposed would be for this Court to "re-start" or "re-do" the Settlement notice and Opt-Out/Objection process as to, at a minimum, the Opt-Outs – and more likely, as to the <u>entire</u> Class (as composed as of July 7, 2017, the start date for the Notice Period).

Significantly, the Opt-Outs never had an opportunity to object to the

8

Settlement, precisely because they had exercised their legal right to opt out of that Settlement. If the Opt-Outs are dragged back into the Settlement Class, they necessarily must be given a right to object to the fairness of Settlement to which Ford belatedly seeks to bind them. And those objections would include the recent revelation that Ford is offering to pay $75,001.00 to settle California Lemon Law cases that Ford claimed to this Court had little value.

C. The Anticipated Appeals By The Opt-Outs And The Objectors Warrant A Continuation Of The Stay (Even If This Court Retains Jurisdiction)

To complicated matters even further, the Opt-Outs (and the Objectors) will be forced to file, on or before November 17, 2017, an appeal from this Court's October 18, 2017 Order Granting Final Approval and Entering Judgment (Dkt. # 193) ("Judgment"). See Gieleghem Decl., ¶ 18. The filing of this appeal, together with an equivalent appeal that the Opt-Outs are informed and believe will be filed by the Objectors who previously objected to the Settlement (e.g., via Dkt. # 151), will, broadly stated, divest this Court of jurisdiction to proceed further with *Vargas* as to any matters bearing on the Settlement, whether in the context of the MDL No. 2814 Proceeding or otherwise. See, e.g., *Griggs v. Provident Consumer Discount Co.,* 459 U.S. 56, 58, 103 S.Ct. 400, 402 (per curiam); *Mayweathers v. Newland,* 258 F.3d 930, 935 (9th Cir. 2001); *Townley v. Miller,* 693 F.3d 1041, 1042 (9th Cir. 2012((filing valid notice of appeal transfers jurisdiction over matters properly appealed to

9

appellate court; during pendency of appeal, district court generally is divested of jurisdiction over those aspects of case involved in appeal); *see also Pro Sales, Inc. v. Texaco USA,* 792 F.2d 1394, 1396 fn. 1 (9th Cir. 1986); *McClatchy Newspapers v. Central Valley Typographical Union No. 46*, 686 F.2d 731, 734-735 (9th Cir. 1982) (district court has no jurisdiction to enter amended order that would change nature of issue on appeal).

    D. <u>Ford's Recently Revealed $75,001.00 Offers, And The Possibility That Ford Committed A Fraud On The Court To Get The Settlement Approved, Also Warrant A Continuance Of The Stay</u>

Finally, and detailed above, Ford's filings in the MDL 2814 Proceeding raise very grave concerns as to whether Ford materially mislead this Court in connection with the approval of the Settlement.

As detailed in the Opt-Outs' Opposition (Dkt. ## 205, 206) to Ford's pending Motion to Invalidate (Dkt. # 188), in the pleadings seeking approval of the Settlement, and at the October 2, 2017 hearing that lead to approval of the Settlement, this Court was told, in essence, that the proposed Settlement was a "good deal" for the Class Members because the value of their individual Lemon Law claims was relatively small, e.g., in the $5,000-$6,000 range for non-California cases; and not much more than $5,000-$6,000 for California cases given the alleged difficulty in getting the double civil penalties that are available under California's Lemon Law.

OPT-OUTS' OBJECTION TO JOINT APPLICATION FOR EX PARTE ORDER LIFTING STAY

*See* Dkt. ## 205, 206.

But the Notices of Removal for the 111 Related Cases that the Opt-Outs have been able to review in the time available reveal that, even before the October 2, 2017 hearing and continuing thereafter, Ford repeatedly offered to settle the underlying California state court Lemon Law cases for $75,001.00 each!

Attached to the accompanying Gieleghem Declaration as Exhibit 1 is an Excel spreadsheet report on the 111 Related Cases. To summarize:  Of the 103 Related Cases could be researched in the time available (over the Veterans' Day holiday):

- ■ In 69 of these Related Cases, Ford formally offered, via the Notice of Removal, to settle the case for $75,001.00.[4]

- ■ In 34 of these Related Cases, no formal offer was included in the Notice of Removal; but Ford represented, in the Notice of Removal, that the amount in controversy exceeded $75,000.

- ■ Three (3) cases did not involve a Notice for Removal to review/analyze.

- ■ Four (4) cases did not appear in Pacer and could not be researched

- ■ One (1) case appears to be a 2016 Class Action matter that was presumably consolidated with Vargas.

<u>See</u> Gieleghem Decl., ¶ 16.

---

[4] This includes one case in which Ford made the $75,001.00 offer, and then rejected a $130,000 counteroffer.

OPT-OUTS' OBJECTION TO JOINT APPLICATION FOR EX PARTE ORDER
LIFTING STAY

Thus, in almost 93% of the Related Cases (103 ÷ 111 = 92.7) Ford took the position, *"On The Record,"* that the value of the each of the Related Cases was over $75,000.00.

Consistent with this, Ford also included in its Notices of Removal a declaration from an economist retained by the plaintiff in another, California Lemon Law case, Dr. Barbara C. Luna.  In this declaration, Dr. Luna concludes that the compensatory and punitive damages recovery in that California DPS6/Powershift case <u>totaled $214,838.00</u>.  <u>See</u> Gieleghem Decl., Exh. 2, pp. 2-47 – 2-73 (Luna Declaration).   In relying on this Luna Declaration for the purposes of convincing the district courts involved that the amount in controversy in each case met or exceeded the jurisdictional minimum for removal, Ford effectively has adopted both the economist's reasoning and conclusion.

Further, Dr. Luna's declaration presents a very detailed analysis that Ford committed fraud on consumers in connection with the now-admitted problems with the DPS6/Powershift transmissions. See Exh. 2, pp. 2-47 – 2-73.  This fraud also goes to the value of the California cases.

Simply point, Ford cannot have it both ways: It cannot tell the other district courts that the removed California cases are worth $75,000 or more; while at the same time tell this Court that, for the purposes of evaluating the fairness of the Settlement, the same California cases are worth the *de minimus* amounts Ford

12

OPT-OUTS' OBJECTION TO JOINT APPLICATION FOR EX PARTE ORDER
LIFTING STAY

claimed in the context of the fairness hearing.

These multiple $75,001.00 settlement offers are <u>much</u> larger than the representations that were made to this Court, at the October 2, 2017 approval hearing that led to this Court's entry to the Judgment. Further, the information that Ford clearly had available, prior to the October 2, 2017 fairness hearing, as to the value of California DPS6/Powershift cases belies Ford's claims that such values were impossible or difficult to calculate.

Finally, these multiple $75,001.00 settlement offers stand in sharp contrast to the fact that, by Ford's own admission, fully 94% of the Class will get no benefit whatsoever from the Settlement.

At this juncture, Opt-Outs do not accuse Ford of having committed a fraud on this Court in order to get the Settlement approved. That said, the Opt-Outs note that the pleadings they have been able to review in the limited time available reveal that Ford was making these $75,001.00 offers as early as September 25, 2017, i.e., well before the October 2, 2017 fairness hearing. <u>See</u> Gieleghem Decl., ¶ 17, EXH. 2, pp. 2-44 – 2-46 (September 25, 2017 declaration from Ford's counsel, Spencer Hugret, Esq., of Gordon Rees, evidencing that Ford was making such offers before the October 2, 2017 fairness hearing).

But even without outright fraud on the court, the enormous difference between what Ford told this Court the individual DPS6/Powershift cases were worth in order

13

OPT-OUTS' OBJECTION TO JOINT APPLICATION FOR EX PARTE ORDER
LIFTING STAY

to get the Settlement approved, and what Ford subsequently offered to the each of the 111 Related Cases that are part of the MDL No. 2814 Proceeding, is another reason why this Court should stay further proceedings in this case. Such a stay will allow for, among other things, a further inquiry as to what Ford told this Court to get the Settlement approved; and what the MDL No. 2814 Proceedings reveal to be the truth.

III.   CONCLUSION

Given the above, the Opt-Outs respectfully submit that Ford's Application should be denied; or in the alternative, that these issues be addressed only after full

\ \ \

\ \ \

\ \ \

\ \ \

\ \ \

\ \ \

\ \ \

\ \ \

\ \ \

\ \ \

---

14

OPT-OUTS' OBJECTION TO JOINT APPLICATION FOR EX PARTE ORDER
LIFTING STAY

briefing.  Simply put, the issues presented are too complex (or again, convoluted) to be addressed *"On The Fly"* in the manner that Ford demands.

Respectfully submitted,

Dated:  November 13, 2017       STERN LAW, PLLC
                                By: /s/ *Kenneth A. Stern*
                                    KENNETH A. STERN
                                    Attorneys for Opt-Outs

Dated:  November 13, 2017       THE LIBLANG LAW FIRM, P.C.
                                By: /s/ *Dani K. Liblang*
                                    DANI K. LIBLANG
                                    Attorneys for Opt-Outs

Dated:  November 13, 2017       GIELEGHEM LAW OFFICE
                                By: /s/ *Neil Gieleghem*
                                    NEIL GIELEGHEM
                                    Attorneys for Opt-Outs

15

OPT-OUTS' OBJECTION TO JOINT APPLICATION FOR EX PARTE ORDER
LIFTING STAY

**Certification of Compliance with C.D. Cal. L.R. 5-4.3.4(a)(2)(I)**

I hereby certify that pursuant to C.D. Cal. L.R. 5-4.3.4(a)(2)(i), I have obtained the authorization from the above signatories to file the above-referenced document, and that the above signatories concur in the filing's content.

I certify under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed on November 13, 2017.

By: /s/ Neil Gieleghem

Neil Gieleghem

OPT-OUTS' OBJECTION TO JOINT APPLICATION FOR EX PARTE ORDER
LIFTING STAY