**STERN LAW, PLLC**
KENNETH A. STERN (*pro hac vice* application filed/pending)
Ken@Sternlawonline.com
41850 W 11 Mile Rd, Suite 121
Novi, MI 48375
Telephone: (248) 347-7300

**THE LIBLANG LAW FIRM, P.C.**
DANI K. LIBLANG (*pro hac vice* application filed/pending)
danil@liblanglaw.com
346 Park Street, Suite 200
Birmingham, MI 48009-3436
Telephone: (248) 540-9270

**GIELEGHEM LAW OFFICE**
NEIL GIELEGHEM (CSBN 107389)
neil@ngattorney.com
1436 South Spaulding Avenue
Los Angeles, CA 90019
Telephone: (310) 6784563

Attorneys for Opt-Outs

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| OMAR VARGAS, ROBERT BERTONE, MICHELLE HARRIS, AND SHARON HEBERLING, individually and on behalf of a class of similarly situated individuals,<br><br>Plaintiffs,<br><br>vs.<br><br>FORD MOTOR COMPANY,<br><br>Defendant. | Case No.: 2:2012-CV-08388 AB (FFMX)<br><br>[Assigned to Hon. Andre Birotte, Jr., Rm 7B<br>Magistrate Frederick F. Mumm, Rm. 580, Courtroom 790]<br>CLASS ACTION<br><br>**DECLARATION OF NEIL GIELEGHEM IN SUPPORT OF OUTS' OPPOSITION TO EX PARTE APPLICATION RE STAY** |

OPT-OUTS' OBJECTION TO EX PARTE APPLICATION TO LIFT STAY – GIELEGHEM DECLARATION

I, Neil Gieleghem, declare as follows:

1. I am an attorney admitted to the Bar of the State of California, and to the Bar of this Court.). I have personal knowledge of the matters stated herein, based on my personal participation in the matters described, save as to those matters stated on information and belief, which matters I am informed and believe, after reasonable inquiry, are true. If called as a witness I could and would testify competently as to the matters stated herein.

2. I make this Declaration in support of the Opt-Outs' Opposition to the Ex Parte Application of Defendant Ford Motor Company.

3. At the outset, I note that parts of this Declaration are taken from, and repeat, the factual representations in my Declaration (Dkt. # 205-1) in support of the Opt-Outs' Opposition (Dkt. ## 205, 206) to Ford's pending Motion To Invalidate Certain Opt-Outs, etc. (Dkt. # 188)("Motion"), which prior Declaration and Opposition are incorporated herein by reference.

PROFESSIONAL QUALIFICATIONS AND EXPERIENCE

4. My education and professional experience, as bearing on the issues presented, includes the following:

A. I graduated from Pacific McGeorge School of Law in 1982, and on graduation was awarded the Order of the Coif. While at McGeorge I was a member of the Pacific Law Journal, and had the privilege of serving as a Judicial

1

OPT-OUTS' OBJECTION TO EX PARTE APPLICATION TO LIFT STAY –
GIELEGHEM DECLARATION

Extern for Associate Justice Frank Newman of the California Supreme Court.

B.   I was admitted to the California Bar in 1982. After law school, I had the privilege of serving as the Law Clerk for Chief Justice E.M. Gunderson of the Nevada Supreme Court (1982-83). I also took the Nevada Bar Examination, and was admitted to the Nevada Bar in 1983.

C.   After my Nevada Supreme Court clerkship, I returned to the San Francisco Bay Area and practiced at a very large defense/corporate firm in San Francisco, and ultimately made partner at what was then the largest law firm (over 200 attorneys) in Oakland, California. I now have my own firm in Los Angeles.

D.   In the course of my career, I have been involved in virtually all aspects of civil litigation (on both the trial and appellate level) dealing with a wide variety of clients and issues, including employment law (sexual harassment and discrimination litigation); legal and professional malpractice, and attorney ethics issues; securities fraud/RICO actions; First Amendment/media defense; SLAPP Special Motions to Strike; personal injury/products liability class actions, including representing a major Japanese auto manufacturer and a U.S. nuclear weapons laboratory (see *In Re Consolidated United States Atmospheric Testing Litigation* (N.D. Cal. 1985) 616 F. Supp. 759); contract and business disputes (see, e.g., *Filet Menu, Inc. v. C.C.L. & G, Inc.* (2000) 79 Cal. App. 4th 852); and intellectual property enforcement actions. I also have been identified, and testified, as an expert witness

on attorney malpractice/ethical issues.

E. In addition, I have considerable experience in California "Lemon Law" litigation, both against Ford Motor Company and other auto manufacturers, as detailed below. It is no exaggeration to say that I have been personally involved, either as counsel of record or as "consulting counsel," in literally thousands of such cases in the California courts.

F. In 1983-1986 I was a Bar Examination "Grader" for the State Bar of California. After I ceased grading (due to professional time constraints), I began tutoring/coaching, *pro bono*, applicants who had failed the California Bar on one or more attempts. My success as a pro bono tutor/coach ultimately resulted in my law school asking me, in 2006, to become an Adjunct Professor for a Bar Examination-focused course called "Practical and Persuasive Legal Writing." I taught this class from 2006 to 2008, and now serve as a consultant/guest lecturer. In connection with this course, I have authored a textbook of approximately 200 pages, which was published by Pacific McGeorge for use by students and Pacific McGeorge alumni. (I do not accept any royalty or other compensation for this textbook.) I estimate that, in total, I have either taught, via classroom courses or individual, one-on-one coaching, over a thousand Bar Applicants. A significant number of these Applicants were "Repeaters," i.e., Applicants who had failed the Bar Examination on one or more prior attempts, for which Repeaters "my" success rate is as good or better than

the highest paid professional tutors in California. Despite the success of "my" Applicants, because this tutoring/coaching is my *pro bono* activity, I never have taken compensation for the same (although Pacific McGeorge covered my travel expenses during the time I taught the classroom course).

G. Although I am not an automotive engineer, I have considerable personal *"Hands On"* experience with automotive technology and various subsystems dating back to the late 1960s, including experience with manual and automatic transmissions of various types and manufacture dating back to the mid-1970s, in both Sports Car Club of America ("SCCA") racing contexts and "street" (non-racing) usage. Coupled with my experience in litigating cases involving automotive technologies, in both the Lemon Law and product liabilities context, this experience gives me a greater ability to understand and address the legal and factual issues presented in these cases. In particular, my experienced gives me the ability to understand, and "counter," the sort of *"Techno-Babble"* that auto manufacturer defendants frequently employ to conceal and confuse the issues.

EXPERIENCE IN LITIGATION INVOLVING FORD DPS6/POWERSHIFT TRANSMISSIONS

5. I personally have been involved in litigation raising from the defective Ford DPS6/Powershift transmissions since 2012-2013, when I was retained by the plaintiff in a then-pending Los Angeles Superior Court lawsuit, *Khani v. Ford Motor*

4

OPT-OUTS' OBJECTION TO EX PARTE APPLICATION TO LIFT STAY –
GIELEGHEM DECLARATION

*Company*, Los Angeles Superior Court Case No. BC466626. (*Khani v. Ford* ultimately resulted, before it was settled after remittitur, in a published California Court of Appeal decision, *Khani v. Ford Motor Company,* 215 Cal. App. 4th 916 (2013), that has been widely cited by other courts, treatises and practice guides, and the legal press and commentators.)

6.  Subsequent to my initial involvement, and to this day, I personally have been involved, either as counsel of record or as "consulting" counsel, in thousands of California Lemon Law lawsuits pending in state and federal courts throughout California against Ford over the DPS6/Powershift transmissions. This involvement includes, but is not limited to, my involvement as counsel of record in coordinated proceedings in Los Angeles Superior Court (Judicial Counsel Coordinated Proceeding ("JCCP") 4856 which involves over one thousand DPS6/Powershift cases; and related proceedings in the Sacramento and Alameda County Superior Courts involving hundreds more DPS6/Powershift cases. Further, I routinely communicate with other plaintiff counsel involved in DPS6/Powershift cases.

7.  To my knowledge, and after reasonable investigation and inquiry to other California Lemon Law plaintiff counsel: Ford has never actually tried a DPS6/Powershift case in California. Instead, these cases typically are resolved before trial, by way of settlement agreements that contain confidentiality provisions.

\\\

## MATTERS MORE SPECIFIC TO VARGAS V. FORD, AND/OR OPPOSITION TO FORD'S EX PARTE APPLICATION

8. The Opposition this Declaration supports is filed on behalf of the +/- 12,500 former Members ("Opt-Outs) of the putative *Vargas* class represented by me as "Local Counsel," with my two Michigan-based co-counsel, Kenneth A. Stern, Esq., of Stern Law, PLLC; and Dani K. Liblang, Esq., of The Liblang Law Firm, P.C., which Opt-Outs are pursuing claims against Ford via the Michigan Mass Actions referred to in pleadings previously filed with this Court, e.g., Dkt. ## 205, 206. Said Opt-Outs respectfully submit that it would be unnecessarily cumbersome to include a listing of all +/-12,000 of these Opt-Outs in this Opposition, but would be happy to provide such a listing should this Court request.

9. I personally attended (albeit as an observer rather than appearing counsel), the October 2, 2017 hearing on the Motion to Approve Settlement held in *Omar Vargas, et al. v. Ford Motor Company* Class Action, U.S. D.C. – Cent. Dist. Cal. Case No. 2:2012-CV-08388 AB (FFMX) ("Vargas Class Action"). (A true and correct copy of the Reporter's Transcript of Proceedings, October 2, 2017, already has been filed with the Court, and is incorporated herein by reference.)

10. As evidenced by said transcript: In the course of the October 2, 2017 hearing, certain representations were made by appearing counsel to this Court as to the monetary settlement value of individual DPS6/Powershift Lemon Law cases in

California that I know, based on my personal involvement in such cases, to be untrue (or at a minimum, misleading). For example, counsel for the Objectors, Michael T. Kirkpatrick, Esq. told this Court:

> MR. KIRKPATRICK: I have had consumer lawyers in California tell me that a Song-Beverly claim <u>will settle for 25-, $30,000.</u> I have had lemon lawyers in parts of the country with less generous consumer protection laws tell me that they routinely settle these cases for 8-, 10,000. So we're talking about significant money when these individuals bring these cases.

Transcript, p. 22, lns. 16-23 (underlining added).

Later on in the hearing, and following up on Mr. Kirkpatrick's assertion, this Court had the following exchange with Class Plaintiff's counsel, Ryan Wu, Esq.:

> THE COURT: What's your response to the argument that some of these -- that arbitration doesn't provide a remedy to certain claims, I think, like, my notes show the fraud, the misrepresentation, or the -- certain double or treble damages? What's your response?
>
> MR. WU: Triple damages is only available in a few states. They have very onerous requirements.
>
> Mr. Kirkpatrick talks about civil penalties and he, sort of, says that you can get it as a matter of course. <u>Actually, civil penalties under</u>

<u>California law</u>, you need to either go to arbitration first as a prerequisite of seeking civil penalties <u>or you need to prove willfulness. That's not easy.</u>

P. 45, lns. 7 – 19 (underlining added).

11. These statements are false (or at a minimum, misleading). As to Mr. Kirkpatrick's statement: For a DPS6/Powershift-equipped vehicle (particularly the Focus, the more expensive of the two vehicles involved) the $25,000 - $30,000 figure that Mr. Kirkpatrick gave this Court that amounts to little more than a "statutory buy back" under California's (depending on the mileage offset, etc.). But such a statutory buy back is the <u>minimum to which a California consumer would be entitled.</u>

12. Mr. Wu's statement about the purported difficulty in obtaining of civil penalties under California's Lemon Law is even more misleading. Under California's Lemon Law, the consumer need only prove that the manufacturer "willfully" denied repurchase of a qualifying "Lemon." See Cal. Civ. Code § 1794(c); *Lukather v. General Motors, LLC*, 181 Cal. App. 4th 1041, 1050 (2010) ("manufacturer has an affirmative duty to replace a vehicle or to make restitution to the buyer if the manufacturer is unable to repair the new vehicle after a reasonable number of repair attempts . . . ."). This civil penalty is akin to punitive damages in that it seeks to punish or deter the defendant. *Kwan v. Mercedes Benz of N. Am.,*

*Inc.*, 23 Cal. App. 4th 174, 184 (1994). As used in California's Lemon Law, "willfully" simply means that the manufacturer engaged in a volitional/intentional act in denying repurchase, e.g., that the manufacturer *"knew it was stamping "DENIED!" on the consumer's demand, rather than stamping a napkin or piece of scratch paper."* The burden then shifts to the manufacture to try to prove that it acted reasonably and in good faith. Accordingly, a manufacturer can avoid a finding of willfulness and § 1794(c) liability only by showing it had a "good faith and reasonable belief that the facts imposing the statutory obligations were not present." *Kwan v. Mercedes Benz of N. Am., Inc., supra*, at 185.

13. In my experience, California juries routinely award full civil penalties against auto manufacturers who refuse to repurchase Lemons, and who take a case trial. In my experience, such penalty awards by juries are not uncommon – which may explain why Ford apparently has never taken a California DPS6/Powershift case to trial.

14. At this juncture, and because of the possible effect of confidentiality provisions in the settlements of the DPS6/Powershift cases in which I previously have been involved, I am reluctant to provide this Court with more detailed and specific information to support my assertion that the representations of counsel at

OPT-OUTS' OBJECTION TO EX PARTE APPLICATION TO LIFT STAY – GIELEGHEM DECLARATION

the October 2, 2017 hearing are problematic (to put it "charitably").[4]

15. I personally reviewed, via the PACER website, no less than ten (10) of the Notices of Removal filed by Ford in that many of those Related Cases that are the subject of the MBL No. 2814. In each of these Notices, Ford made an offer to repurchase, for $75,001.00, the defective DPS6/Powershift-equipped Ford Focus or Fiesta auto that was the subject of said lawsuit.

16. At my request, and under my direction, the staff of the Stern Law Office reviewed, via the PACER website and over the November 10 – November 12, 2017 Veterans Day weekend, the Notices of Removal filed in the 111 "Related Cases" that are the subject of the MDL No. 2814 Proceeding. The results of this review were incorporated into an "Excel" spreadsheet, and true and correct copy of which is attached hereto as **EXHIBIT 1**, and is incorporated herein by reference. To summarize: Of the 103 Related Cases could be researched in the time available (and over the Veterans' Day holiday):

- In 69 of these Related Cases, Ford formally offered, via the

---

[4] The DPS6/Powershift transmission cases in which I was involved may contain confidentiality provisions that may be binding on me, such that I am precluded from providing further information about these settlements – e.g., the dollar amounts – at this time. If the Court directs, however, I would be happy to provide this information pursuant to Court order and under seal.

Notice of Removal, to settle the case for $75,001.00.[1]

- In 34 of the Related Cases, no formal offer was included in the Notice of Removal; but Ford represented, in the Notice of Removal, that the amount in controversy exceeded $75,000.

- Three (3) cases did not involve a Notice for Removal to review/analyze.

- Four (4) cases did not appear in Pacer and could not be researched

- One (1) case appears to be a 2016 Class Action matter that was presumably consolidated with Vargas.

17. Attached hereto as **EXHIBIT 2** are true and correct copies of pleadings that were filed by Ford in its Notice of Removal in one of the 111 Related Cases – *Altikriti v. Ford Motor Company,* Case No. 2:17-cv-07369 (Case No. 29 on the "Amended Schedule of Related Cases" attached as Exhibit 3 to Ford's Ex Parte Application). These pleadings evidence that Ford and its counsel knew, as early as September 25, 2017, that Ford was going to be making such $75,001.00 offers as to the California cases. See Exhibit 2, p. 2-44 – 2-46 (Exhibit C to Notice of Removal, Declaration of Spencer Hugret, Esq., dated September 25, 2017). This was a week

---

[1] This includes one case in which Ford made the $75,001.00 offer, and then rejected a $130,000 counteroffer.

before the October 2, 2017 fairness hearing referenced above. This Notice of Removal is similarly, if not virtually identical to, the equivalent Notices of Removal that Ford filed in the other Related Cases.

18. The Opt-Outs will be filing, on or before November 17, 2017, an appeal from this Court's October 18, 2017 Order Granting Final Approval and Entering Judgment (Dkt. # 193) ("Judgment"). Ideally, this appeal will be filed on Wednesday, November 15, 2017. I am informed and believe, after reasonable inquiry, that the Objectors will be filing a separate appeal from the Judgment in the same time frame.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the forgoing is true and correct.

Executed this 13th day of November, 2017, in Los Angeles, California.

By: /s/ Neil Gieleghem

NEIL GIELEGHEM

**Certification of Compliance with C.D. Cal. L.R. 5-4.3.4(a)(2)(I)**

I hereby certify that pursuant to C.D. Cal. L.R. 5-4.3.4(a)(2)(i), I have obtained the authorization from the above signatories to file the above-referenced document, and that the above signatories concur in the filing's content.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 13, 2017.

By: /s/ Neil Gieleghem

Neil Gieleghem