**STERN LAW, PLLC**
KENNETH A. STERN (*pro hac vice*)
Ken@Sternlawonline.com
41850 W 11 Mile Rd, Suite 121
Novi, MI 48375
Telephone: (248) 347-7300

**THE LIBLANG LAW FIRM, P.C.**
DANI K. LIBLANG (*pro hac vice*)
danil@liblanglaw.com
346 Park Street, Suite 200
Birmingham, MI 48009-3436
Telephone: (248) 540-9270

**GIELEGHEM LAW OFFICE**
NEIL GIELEGHEM (CSBN 107389)
neil@ngattorney.com
1436 South Spaulding Avenue
Los Angeles, CA 90019
Telephone: (310) 6784563

Attorneys for Opt-Outs

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

OMAR VARGAS, ROBERT BERTONE, MICHELLE HARRIS, AND SHARON HEBERLING, individually and on behalf of a class of similarly situated individuals,

Plaintiffs,

vs.

FORD MOTOR COMPANY,

Defendant.

Case No.: 2:2012-CV-08388 AB (FFMX)

[Assigned to Hon. Andre Birotte, Jr., Rm 7B
Magistrate Frederick F. Mumm, Rm. 580, Courtroom 790]
CLASS ACTION

**OPT-OUTS' EX PARTE APPLICATION RE ENFORCEMENT OF APPELLATE STAY**

# TABLE OF AUTHORITIES

## CASES

*Georgine v. Amchem Prods.*, 160 F.R.D. 478 (E.D. Pa. 1995) . . . . . . . . . . 11

*Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 103 S.Ct. 400, 402 (per curiam) . . . . . . . . . . 7

*Mayweathers v. Newland*, 258 F.3d 930 (9th Cir. 2001) . . . . . . . . . . 7

*Pro Sales, Inc. v. Texaco USA*, 792 F.2d 1394 (9th Cir. 1986) . . . . . . . . . . 7

*McClatchy Newspapers v. Central Valley Typographical Union No. 46* 686 F.2d 731 (9th Cir. 1982) . . . . . . . . . . 7

*Townley v. Miller*, 693 F.3d 1041 (9th Cir. 2012) . . . . . . . . . . 7

## OTHER AUTHORITIES

FRCP 62.1 . . . . . . . . . . 10

TABLE OF CONTENTS

I. INTRODUCTION . . . . . . . . . . 2

II. ARGUMENT . . . . . . . . . . 6

A. The Matters At Issue In Ford's Motion to Invalidate Are Not "Collateral" To The Issues Raised By The Pending Appeals . . . . . . . . . . 6

A. This Court Does Not Retain Jurisdiction To "Deny" The Motion To Invalidate . . . . . . . . . . 10

IV. CONCLUSION . . . . . . . . . . 11

**TO THIS HONORABLE COURT, AND TO ALL PARTIES AND COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that the "Opt-Outs"[1] hereby apply, *ex parte*, for an Order enforcing the appellate stay arising from the recently filed, and still pending, appeals in this matter, said stay to encompass any further proceedings on Ford's pending *Motion to Invalidate Certain Opt-Outs, to Amend Class Definition, to Require Corrective Notice, and to Establish a Second Opt-Out Period* (Dkt. # 188) ("Motion to Invalidate") currently set for hearing on December 8, 2017.

As detailed below, the pending appeals necessarily encompass many of the issues presented by the Motion to Invalidate. These issues include the effect, if any, on the Opt-Outs of this Court's approval, on October 18, 2017, of the Settlement and the entry of the Judgment (Dkt. # 193) based on that Settlement. Accordingly, under well-established law, this Court no longer has jurisdiction to address the Motion to Invalidate.

---

[1] This Application is filed on behalf of the +/-12,000 former Members of the putative *Vargas* class represented by the undersigned attorneys, of which +/-4,500 are named appellants on one of the pending appeals (Dkt. # 221). Said Opt-Outs currently are pursuing claims against Ford via the Michigan Mass Actions referenced in pleadings previously filed with this Court, e.g., Dkt. ## 205, 206. Said Opt-Outs respectfully submit that it would be unnecessarily cumbersome to include a listing of all +/- 4,500/12,500 of these Opt-Outs in this Application, but would be happy to provide such a listing should this Court request. See accompanying Declaration of Neil Gieleghem ("Gieleghem Decl."), ¶ 8.

When the Opt-Outs raised this lack of jurisdiction with Ford, in the course of a Local Rule 7-3 attempt to resolve these issues without this Court's intervention, Ford raised two (2) alternative arguments as to why or how this Court somehow retained jurisdiction, despite the pending appeals, to rule on the Motion to Invalidate. These arguments were:

(1) The matters at issue in Ford's Motion to Invalidate somehow allegedly are "collateral" to the matters at issue in the pending appeals; *or*

(2) Even if this Court lacks the jurisdiction (due to the pending appeals) to grant the Motion to Invalidate, this Court nonetheless allegedly somehow retains jurisdiction to deny the Motion.

As shown below, however, neither of Ford's two alternative theories "works." Because the parties could not reach an agreement, the Opt-Outs were forced to bring this Application.

## MEMORANDUM OF POINTS AND AUTHORITIES[2]

## I. INTRODUCTION

This Application is in part the result of the complicated (if not convoluted) procedural posture of this case. This complication is the result of the manner in

[2] Certain of the arguments and evidence presented in this Application also were made in the Opt-Outs' Opposition (Dkt. # 220) to the Joint Ex Parte Application to Lift Stay (Dkt. # 218) filed by Ford and Class Plaintiffs, which Opposition and supporting evidence are incorporated herein by reference.

which Ford has proceeded, e.g., by filing the pending Motion to Invalidate (Dkt. # 188) only after the approval hearing on October 2, 2017, but before this Court approved and entered the initial Judgment on October 18, 2017 (Dkt. # 193), and then continuing to pursue that Motion to this date. As detailed in the Opt-Outs' Opposition (Dkt. ## 206, 206) to the Motion to Invalidate, the relief sought by Ford's Motion would require that this Court "re-do" or "re-start" the entire settlement notice and approval, and opt-out, process.

Further, Ford's recent filings in the MDL 2814 Proceeding raise very grave concerns as to whether Ford materially mislead this Court in connection with the approval of the Settlement. As detailed in the Opt-Outs' Opposition (Dkt. ## 205, 206) to Ford's pending Motion to Invalidate (Dkt. # 188): In the pleadings seeking approval of the Settlement, and at the October 2, 2017 hearing that led to approval of the Settlement, this Court was told that the proposed Settlement was a "good deal" for the Class Members because the value of their individual Lemon Law claims was relatively small, e.g., in the $5,000-$6,000 range for non-California cases; and not much more than $5,000-$6,000 for California cases given the alleged difficulty in getting the double civil penalties that are available under California's Lemon Law. *See* Dkt. ## 205, 206.

But the Notices of Removal for the 111 Related Cases reveal that, even before the October 2, 2017 hearing and continuing thereafter, Ford repeatedly offered to

settle the underlying California state court Lemon Law cases for $75,001 each!

Attached to the accompanying Gieleghem Declaration as Exhibit 1 is an Excel spreadsheet report on the 111 Related Cases. To summarize: Of the 103 Related Cases:

- In 69 of these Related Cases, Ford formally offered, via the Notice of Removal, to settle the case for $75,001.[3]
- In 34 of these Related Cases, no formal offer was included in the Notice of Removal; but Ford represented, in the Notice of Removal, that the amount in controversy exceeded $75,000.
- Three (3) cases did not involve a Notice for Removal to review/analyze.
- Four (4) cases did not appear in Pacer and could not be researched.
- One (1) case appears to be a 2016 Class Action matter that was presumably consolidated with *Vargas*.

See Gieleghem Decl., ¶ 16.

Thus, in almost 93% of the Related Cases (103 ÷ 111 = 92.7), Ford took the position, *"On The Record,"* that the value of the each of the Related Cases was over $75,000.

Consistent with this, Ford also included in its Notices of Removal a

[3] This includes one case in which Ford made the $75,001.00 offer, and then rejected a $130,000 counteroffer.

declaration from an economist retained by the plaintiff in another, California Lemon Law case, Dr. Barbara C. Luna. In this declaration, Dr. Luna concludes that the compensatory and punitive damages recovery in that California DPS6/Powershift case totaled $214,838.00. See Gieleghem Decl., Exh. 2, pp. 2-47 – 2-73 (Luna Declaration). In relying on this Luna Declaration for the purposes of convincing the district courts involved that the amount in controversy in each case met or exceeded the jurisdictional minimum for removal, Ford effectively has adopted both the economist's reasoning and conclusion.

Further, Dr. Luna's declaration presents a very detailed analysis that Ford committed fraud on consumers in connection with the now-admitted problems with the DPS6/Powershift transmissions. See Exh. 2, pp. 2-47 – 2-73. This fraud also goes to the value of the California cases.

These multiple $75,001 settlement offers are much larger than the representations that were made to this Court at the October 2, 2017 approval hearing that led to this Court's entry of the Judgment. Further, the information that Ford clearly had available, prior to the October 2, 2017 fairness hearing, as to the value of California DPS6/Powershift cases belies Ford's claims that such values were impossible or difficult to calculate. Finally, these multiple $75,001 settlement offers stand in sharp contrast to the fact that, by Ford's own admission, fully 94% of the

Class will get no benefit whatsoever from the Settlement.[4]

The Opt-Outs could not present this evidence, or any argument based on this evidence, at the October 2, 2017 fairness hearing because the Opt-Outs had opted-out of the Settlement, and thus had no standing to object to the Settlement. Further, the Opt-Outs did not discover this evidence until after the Settlement was approved, and the Judgment entered, on October 18, 2017.

These procedural and substantive issues – including that the Opt-Outs had no opportunity to be heard on the fairness of the Settlement – made it imperative for the Opt-Outs to protect their positions by timely filing an appeal from the October 18, 2017 Judgment. Said appeal (Dkt. # 221) was timely filed on November 14, 2017, and is pending in the 9th Circuit Court of Appeals, together with two separate appeals (Dkt. ## 222, 226) filed by certain Objectors on November 14 and November 15, 2017.

## II. ARGUMENT

Broadly stated, the pending appeals divest this Court of jurisdiction to proceed

---

[4] At this juncture, the Opt-Outs do not accuse Ford of having committed a fraud on this Court in order to get the Settlement approved. The Opt-Outs note, however, that the pleadings in the MDL 2814 proceeding reveal that Ford was making these $75,001 offers as early as September 25, 2017, i.e., well before the October 2, 2017 fairness hearing. See Gieleghem Decl., ¶ 17, EXH. 2, pp. 2-44 – 2-46 (September 25, 2017 declaration from Ford's counsel, Spencer Hugret, Esq., of Gordon Rees, evidencing that Ford was making such offers before the October 2, 2017 fairness hearing).

further as to any matters bearing on the Settlement and resulting Judgment. *See, e.g., Griggs v. Provident Consumer Discount Co.*,459 U.S. 56, 58, 103 S.Ct. 400, 402 (per curiam); *Mayweathers v. Newland*, 258 F.3d 930, 935 (9th Cir. 2001); *Townley v. Miller*, 693 F.3d 1041, 1042 (9th Cir. 2012)(filing valid notice of appeal transfers jurisdiction over matters properly appealed to appellate court; during pendency of appeal, district court generally is divested of jurisdiction over those aspects of case involved in appeal); *see also Pro Sales, Inc. v. Texaco USA*, 792 F.2d 1394, 1396 fn. 1 (9th Cir. 1986); *McClatchy Newspapers v. Central Valley Typographical Union No. 46*, 686 F.2d 731, 734-735 (9th Cir. 1982) (district court has no jurisdiction to enter amended order that would change nature of issue on appeal).

In the Local Rule 7-3 resolution process, Ford made the two arguments detailed in the Introduction, *supra*. As shown below, neither of these arguments "works" given the circumstances presented.

**A. The Matters At Issue In Ford's Motion to Invalidate Are Not "Collateral" To The Issues Raised By The Pending Appeals**

Ford's first argument is that the issues raised by the Motion to Invalidate are "collateral" to the issues raised by the pending appeals.[5] This argument, however, is nonsensical given the circumstances.

[5] *See* Gieleghem Decl., Exh. 3 (emails re Local Rule 7-3 efforts, pp. 3-6 – 3-7 (Ford's Nov. 16, 2017 email); pp. 3-1 – 3-4 (Opt-Outs' Nov. 20, 2017 response).

Reduced to its essentials, Ford's Motion to Invalidate undeniably is an attempt ultimately to hold the Opt-Outs to the terms of the Settlement and Judgment that is the subject of the Objectors' appeals, and the subject of the Opt-Outs' appeal. As a result, the issues raised by the Motion to Invalidate could not be any <u>less</u> "collateral" to the issues raised by the pending appeals.

Significantly, during the Local Rule 7-3 process, the Opt-Outs asked whether Ford would stipulate, in writing, that:

> (1) The Settlement and the other contemporaneously entered, related Orders entered by the Court (e.g., that approving the attorney fees and costs award) are not binding, in any form or fashion, on the Opt-Outs; *and*
>
> (2) If Ford's Motion to Invalidate is granted by the Court (despite the lack of jurisdiction), the entire settlement, notice, opt-out, and objection process will have to be "*Re-Done*" (or more accurately, "*Done for the First Time*") as to any and all Opt-Outs that elect to participate in the Class (despite the fact that 94% of them would get no benefit whatsoever; and despite the revelations of Ford's misrepresentations to the Court, during the previous settlement approval process, as to the purported settlement values of the DPS6/Powershift cases).

*See* Gieleghem Decl., Exh. 3, pp. 3-2 – 3-3 (Nov. 20, 2017 email)(italics in original).

Ford's "response" to this inquiry was evasive, but nonetheless is damning on the very jurisdictional point at issue:

> *If* Ford's motion is granted, *if* some of your clients elect not to opt out, *if* those clients want to object to the Settlement, and *if* they are not given an opportunity to object, at that point the issue you raise regarding opportunity to object might become ripe for appeal (assuming that the

> Objector's appeal proves unsuccessful). But that issue has nothing to do with the issues currently on appeal.

Gieleghem Decl., Exh. 3, p. 3-1 (Nov. 20, 2017 email)(italics in original). In so responding, Ford apparently believed that its italicized "*Ifs*" meant that the issues it listed were not part of the pending appeals. In fact, precisely the opposite is true: The analysis as to what is at issue in the pending appeals requires that each of Ford's italicized "*Ifs*" be taken as established for the purposes of determining whether those contingent matters are encompassed in the pending appeals. Thus, Ford has rebutted its own argument.

Further, and as detailed in the Opt-Outs' Opposition (Dkt. ## 205, 206) to the Motion to Invalidate, the relief that Ford requests as to the Opt-Outs cannot be granted as to the Opt-Outs alone. Instead, the only way such relief fairly could be imposed would be for this Court to "re-start" or "re-do" the Settlement notice and Opt-Out/Objection process as to the entire Class (as composed as of July 7, 2017, the start date for the Notice Period).

This in part is because Ford's Motion to Invalidate is based on the theory that the Website and Video published by the Opt-Outs' counsel were so "misleading" that these publications somehow "tainted" each of the individual Opt-Outs' decision to opt out of the putative Class and the Settlement. But if the Website and Video were as "misleading" as Ford claims, the decision-making process of the putative

Class Members who elected not to opt out may have been adversely affected. This is particularly true given (1) the misrepresentations by Ford as to the value of the individual DPS6/Powershift cases, as detailed above; and (2) other publications about the proposed Settlement that were made by third parties, e.g., attorneys and commentators over whom counsel for the Opt-Outs had no control.

**B. This Court Does Not Retain Jurisdiction To "Deny" The Motion To Invalidate**

Ford's second argument was to the effect that, even if the pending appeals divested this Court of jurisdiction to grant the Motion to Invalidate, this Court nonetheless somehow retained jurisdiction, under FRCP 62.1, to deny the Motion.[6]

As far as the Opt-Outs have been able to determine, however, FRCP 62.1 has never been applied under the circumstances presented here, e.g., when there are multiple pending appeals by different parties, but which raise interrelated issues. Further, the single case that Ford cited during the Local Rule 7-3 process (significantly, only with a "*See generally*" signal), *Trujillo v. Gonzalez-Moran*, 1:16-cv-01938-BAM, 2017 U.S. Dist. LEXIS 16529, on inspection turns out to be a prisoner's rights appeal that bears no resemblance to the procedural posture and substantive issues presented in this case. Accordingly, the part of *Trujillo* that Ford

[6] *See* Gieleghem Decl., Exh. 3 pp. 3-6 – 3-7 (Ford's Nov. 16, 2017 email); pp. 3-1 – 3-4 (Opt-Outs' Nov. 20, 2017 response).

quoted amounted to a very general, abstract statement of law that contributes nothing to Ford's second argument.[7]

## III. CONCLUSION

Given the above, the Opt-Outs respectfully submit that this Court should proceed no further with the Motion to Invalidate, including the currently scheduled

\\\

\\\

\\\

\\\

\\\

\\\

\\\

\\\

[7] In its Reply (Dkt. # 231) in support of the Motion to Invalidate, Ford cites *Georgine v. Amchem Prods.*, 160 F.R.D. 478 (E.D. Pa. 1995) for the proposition that "the fact that this Court has already approved the settlement does not preclude granting the relief that Ford has requested." Reply, p. 13, lns. 12-16. In *Georgine*, however, there was no appeal pending from any settlement or judgment entered based on that settlement, and thus no jurisdictional issues equivalent those presented here. Indeed, in its decision, the district court was careful to note that the pendency of an appeal from an order granting a preliminary injunction did not deprive the court of jurisdiction. *See* 160 F.R.D. at 488. This is not the situation presented here.

December 8, 2017 hearing, until the pending appeals are resolved.

Respectfully submitted,

Dated: November 27, 2017          STERN LAW, PLLC
                                  By: /s/ *Kenneth A. Stern*
                                      KENNETH A. STERN
                                      Attorneys for Opt-Outs

Dated: November 27, 2017          THE LIBLANG LAW FIRM, P.C.
                                  By: /s/ *Dani K. Liblang*
                                      DANI K. LIBLANG
                                      Attorneys for Opt-Outs

Dated: November 27, 2017          GIELEGHEM LAW OFFICE
                                  By: /s/ *Neil Gieleghem*
                                      NEIL GIELEGHEM
                                      Attorneys for Opt-Outs

**Certification of Compliance with C.D. Cal. L.R. 5-4.3.4(a)(2)(I)**

I hereby certify that pursuant to C.D. Cal. L.R. 5-4.3.4(a)(2)(i), I have obtained the authorization from the above signatories to file the above-referenced document, and that the above signatories concur in the filing's content.

I certify under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed on November 27, 2017.

By: /s/ Neil Gieleghem

Neil Gieleghem