1

Jordan L. Lurie (SBN 130013)
Jordan.Lurie@capstonelawyers.com
Tarek H. Zohdy (SBN 247775)
Tarek.Zohdy@capstonelawyers.com
Cody R. Padgett (SBN 275553)
Cody.Padgett@capstonelawyers.com
Karen L. Wallace (SBN 272309)
Karen.Wallace@capstonelawyers.com
**CAPSTONE LAW APC**
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Telephone:    (310) 556-4811
Facsimile:    (310) 943-0396

2

3

4

5

6

7

8   Attorneys for Plaintiffs and the Class

9   *[Additional Counsel Listed on Signature Pages]*

10

11              UNITED STATES DISTRICT COURT

12     CENTRAL DISTRICT OF CALIFORNIA—WESTERN DIVISION

13

14  OMAR VARGAS, ROBERT
BERTONE, MICHELLE HARRIS, and
15  SHARON HEBERLING individually,
and on behalf of a class of similarly
16  situated individuals,

17          Plaintiffs,

18          v.

19  FORD MOTOR COMPANY,

20          Defendant.

21

Case No. CV12-08388 AB (FFMx)

The Hon. André Birotte Jr.

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR APPELLATE BOND**

Date:          April 20, 2018
Time:          10:00 a.m.
Place:         Courtroom 7B

22

23

24

25

26

27

28

CV12-08388 AB (FFMx)

1 | **TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

2 | **PLEASE TAKE NOTICE** that on April 20, 2018, at 10:00 a.m., in Courtroom

3 | 7B of the above-captioned Court, located at 350 West First Street, Los Angeles, CA

4 | 90012, the Honorable André Birotte Jr. presiding, Plaintiffs, on behalf of themselves and

5 | all others similarly situated, will, and hereby do, move this Court to order an appellate

6 | bond of no less than $460,274.40 to be posted by Brenda Lott, Suzanne Lutz, Carlie

7 | Olivant, Gail Slomine, and Philip Woloszyn ("Objectors"), jointly or severally, objectors

8 | to the class action settlement and appellants in the pending appeal in the Ninth Circuit

9 | (No. 17-56745). The basis for the bond is that Objectors are financially able to post

10 | bonds, that their out-of-Circuit residency presents greater risks to Plaintiffs, and their

11 | appeal is meritless. The amount of the bond, $460,274.40, includes the cost of appeal,

12 | the additional administrative costs incurred by the appeal, and interest on the delay in

13 | disbursing settlement benefits. This amount is also appropriate considering the delay

14 | caused by Objectors' frivolous, attorney-driven appeal.

15 | Pursuant to Local Rule 7-3, counsel for Plaintiffs and counsel for Objectors met

16 | and conferred on this motion by telephone on or about February 19, 2018, to discuss this

17 | motion. (Declaration of Jordan L. Lurie, ¶ 1.) The parties were unable to reach an

18 | agreement on the matter. (*Id.*)

19 | Dated: March 23, 2018                    Respectfully submitted,

20 |

21 |                                          By:   /s/ Jordan L. Lurie

22 |                                          Jordan L. Lurie
                                             **CAPSTONE LAW APC**
23 |                                          1875 Century Park East, Suite 1000
                                             Los Angeles, CA 90067

24 |

25 |                                          Russell D. Paul
                                             **BERGER & MONTAGUE P.C.**
26 |                                          1622 Locust Street
                                             Philadelphia, PA 19103

27 |

28 |                                          *Attorneys for Plaintiffs and the Class*

CV12-08388 AB (FFMx)

1

**TABLE OF CONTENTS**

2

3   I.     INTRODUCTION ...................................................................................................1

4   II.    RELEVANT FACTS ............................................................................................2

5   III.   ARGUMENT .......................................................................................................3

6          A.    Objectors are Obligated to Post an Appellate Bond.................................3

7                1.    Objectors Are Financially Able to Post a Bond..............................4

8                2.    The Appellants' Out-of-State Residence Increases the

9                      Risk that They Will Not Pay Appellees' Costs if

10                     Approval is Affirmed ........................................................................5

11               3.    The Appeal Lacks Merit ...................................................................5

12         B.    A Bond in an Amount No Less Than $474,574.40 from each

13               Objector is Appropriate....................................................................6

14  IV.    CONCLUSION....................................................................................................9

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2

3 **FEDERAL CASES**

4 *Azizian v. Federated Dep't Stores, Inc.*, 499 F.3d 950 (9th Cir. 2007) ...............................3

5 *Dennings v. Clearwire Corp.*, No. 10-1859-JLR, 2013 WL 945267 (W.D.

6    Wash. Mar. 11, 2013) .................................................................................7

7 *Embry v. ACER Am. Corp.*, 09-01808-JW, 2012 WL 2055030 (N.D. Cal.

8    June 5, 2012) .........................................................................................4, 5

9 *Fleury v. Richemont N. Am., Inc.*, No. 05-4525-EMC, 2008 WL 4680033

10    (N.D. Cal. Oct. 21, 2008) ...........................................................................4

11 *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998).......................................6

12 *In re Cardizem CD Antitrust Litig.*, 391 F.3d 812 (6th Cir. 2004)....................................4, 7

13 *In re Checking Account Overdraft Litig.*, No. 090-02036-JLK, 2012 WL

14    456691 (S.D. Fla. Feb. 14, 2012) .................................................................8

15 *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 124 (S.D.N.Y.

16    1999)...............................................................................................7

17 *In re Netflix Privacy Litig.*, No. 11-00279-EJD, 2013 WL 6173772 (N.D.

18    Cal. Nov. 25, 2013)............................................................................4, 5, 6

19 *Low v. Trump University*, 881 F.3d 1111 (9th Cir. 2018).......................................6

20 *Miletak v. Allstate Ins. Co.*, No. 06-03778-JW, 2012 WL 3686785 (N.D.

21    Cal. Aug. 27, 2012) .................................................................................4

22 *Pedraza v. United Guaranty Corp.*, 313 F.3d 1323, (11th Cir.2002)................................9

23 *Schulken v. Washington Mut. Bank*, 09-02708-LHK, 2013 WL 1245716

24    (N.D. Cal. Apr. 2, 2013)............................................................................5

25

26 **FEDERAL STATUTES**

27 Fed. R. App. P. 39(c) ...........................................................................................6

28 Fed. R. App. P. 39(e) ...........................................................................................6

PLAINTIFFS' MOTION FOR APPELLATE BOND

## I.     INTRODUCTION

On October 18, 2017, after five years of litigation, this Court granted final approval of the proposed class action settlement ("Settlement") and the motion for attorneys' fees, costs, and service awards and overruled all objections.[1] (Dkt. 192, 193, 196.) The Settlement approved by the Court provides to Class Members cash payments for multiple transmission-related service visits to an authorized Ford dealer ("Service Visit") and a pro-consumer arbitration program ("Program") to resolve Class Members' repurchase and breach of warranty claims. After reviewing voluminous filings, the Court found that the Settlement delivered real benefits to the Class and was fair, adequate, and reasonable considering risks of further litigation. The Court was not persuaded by the objections of Brenda Lott, Suzanne Lutz, Carlie Olivant, Gail Slomine, and Philip Woloszyn ("Objectors"), finding them to be premised on a misunderstanding of the Settlement and its benefits.

Unhappy with that result, Objectors, most of whom have not experienced any transmission-related problems or documented any damages at all, appealed the Court's orders. Like their objections before this Court, Objectors' appeal, which appears to be an entirely attorney-driven enterprise, relies on a misapprehension of the Settlement terms and arguments that flout controlling precedent. Objectors' lead counsel, David Gorberg, has recently objected to another class action settlement based largely on his concern for that settlement's effect on the profits of his lemon law practice. *See* Exhibit 1 to the Request for Judicial Notice ["RJN"], *Batista v. Nissan N.A.*, No. 14-cv-24728-RSN (Oct. 23, 2017), Dkt. No. 212, [Order on Motion to Require Posting of Appeal Bond]. The federal district court in *Batista* imposed an appellate bond of $500,353.42 on Mr. Gorberg's clients while observing that Mr. Gorberg and his co-counsel in that case had "a primarily attorney based motive for the appeal." *Id*. at *2. That same improper motive drives this baseless appeal.

---

[1] For the sake of consistency and brevity, the capitalized terms herein are the same as those used in the Settlement Agreement.

1         Plaintiffs now seek an appellate bond from Objectors for the costs of their appeal.

2    Objectors collectively should post a bond in the amount of $474,574.40, which includes

3    the costs of the appeal, the additional cost of settlement administration caused by the

4    delay, and interest on the delay in disbursing cash benefits to Class Members. Imposition

5    of this appellate bond is well within the scope of the Court's discretion, and is warranted

6    for the same reasons that animated the *Batista* court recently to impose a bond of similar

7    size against Mr. *Gorberg*.

8    **II.    RELEVANT FACTS**

9         Following the Court's granting preliminary approval, the Claims Administrator

10   sent class notices to Class Members. The class notice advised Class Members of their

11   rights under the Settlement and the Settlement's benefits, including the September 5,

12   2017, deadline to object, opt-out, or opt-in (for those with pending suits). Of nearly

13   2,000,000 Class Members, approximately 10,350 recipients of the class notice opted out,

14   and fifteen Class Members, including Objectors, objected. (Dkt. No. 151.) Objectors

15   complained, among other objections, that 1) Plaintiffs did not provide a valuation

16   analysis of the Settlement, 2) the benefits offered by the Settlement were inadequate, 3)

17   the requirement to qualify for benefits were onerous, and 4) the Program would provide

18   fewer benefits to Ford consumers than individual litigation.

19        In response, Plaintiffs submitted a 40-page supplemental brief, attaching

20   painstakingly assembled summaries of the lemon law requirements of the 50 states and

21   the features of comparable automotive settlements. (Dkt. No. 170.) Plaintiffs'

22   extraordinarily detailed submission demonstrated the following, among other of the

23   Settlement's attributes: the Settlement delivers greater benefits to Class Members than

24   many other automotive defect settlements approved in California; the objective criteria

25   to qualify for the Settlement's benefits, and the benefits themselves, are fair and

26   reasonable; and the Program is superior to litigation in numerous ways due to the

27   onerous requirements of most states' lemon laws, which claims are typically released in

28   settlements in any event. Plaintiffs also provided an expert report that concluded, based

1 on an extensive analysis of incomplete warranty data, that Class Members have already

2 qualified to receive over $35 million in cash payments and over 100,000 Class Vehicles

3 will qualify for cash payments after just one additional Service Visit.

4 Counsel for both Objectors and for the settling parties appeared at the Fairness

5 Hearing on October 2, 2017. On October 18, 2017, this Court issued a Final Order and

6 Judgment that found the Settlement not only to be fair, reasonable, and adequate

7 considering the risks of further litigation, but also to be non-collusive and reached after

8 sufficient investigation. (Dkt. No. 193.) The Court also awarded attorneys' fees, costs,

9 and incentive awards under the lodestar method, finding that Plaintiffs' submissions

10 demonstrated reasonable hours and reasonable rates, and applied a modest 1.22

11 multiplier. (Dkt. No. 196.) The Court also found the fees reasonable by cross-checking

12 them as a percentage of a settlement that "exceeds $34.12 million," based on Plaintiffs'

13 submissions. (*Id.*)

14 Finding that the Settlement's benefits, including the cash payments and the

15 Program, provide fair and adequate relief to the Class, this Court overruled Objectors'

16 valuation-based objections. (Dkt. Nos. 192, 193.) Objectors filed a notice of appeal on

17 November 14, 2017. (Dkt. No. 222.)

18 Class Members' interest in the action—and the Settlement—has been unusually

19 high, and Class Counsel have responded to over twenty thousand (20,000) individual

20 inquiries. Lead Class Counsel continue to receive several hundred inquiries each week

21 from Class Members, responses to which require two full-time attorneys. Class Counsel

22 is aware that over five thousand Class Members have already submitted notices of intent

23 to submit a repurchase claim. However, no Settlement claim will be processed, and no

24 payment distributed, until after the Effective Date (which is when the case is finally

25 resolved, following any appeal).

26 **III.  ARGUMENT**

27 **A.  Objectors are Obligated to Post an Appellate Bond**

28 Under Federal Rules of Appellate Procedure 7, "the district court may require an

PLAINTIFFS' MOTION FOR APPELLATE BOND

1    appellant to file a bond or provide other security in any form and amount necessary to

2    ensure payment of costs on appeal." *Azizian v. Federated Dep't Stores, Inc*., 499 F.3d

3    950, 954 (9th Cir. 2007). Federal courts have long recognized that appeal bonds should

4    be posted where objectors can use the time and expense of an appeal to hold the

5    settlement hostage, and "[t]he question of the need for a bond, as well as its amount, are

6    left to the discretion of the trial court." *Fleury v. Richemont N. Am., Inc.*, No. 05-4525-

7    EMC, 2008 WL 4680033, at \*6 (N.D. Cal. Oct. 21, 2008).

8        In evaluating the proposed appellate bond, a court considers "(1) the appellant's

9    financial ability to post a bond; (2) the risk that the appellant would not pay the appellee

10    if he loses; and (3) the merits of the appeal." *Embry v. ACER Am. Corp.*, 09-01808-JW,

11    2012 WL 2055030, at \*1 (N.D. Cal. June 5, 2012). Each factor favors imposing a bond

12    on Objectors.

13             **1.**      **Objectors Are Financially Able to Post a Bond**

14        The first factor, ability to pay, is straightforward and weighs in favor of imposing

15    a bond unless "[the objecting] party is financially unable to post bond." *In re Netflix*

16    *Privacy Litig.*, No. 11-00279-EJD, 2013 WL 6173772, at \*3 (N.D. Cal. Nov. 25, 2013).

17    Even where an appellant claims he is unable to pay, this factor only weighs against a

18    bond if the appellant adduces actual evidence of inability to pay. *See Miletak v. Allstate*

19    *Ins.* Co., No. 06-03778-JW, 2012 WL 3686785, at \*2 n.4 (N.D. Cal. Aug. 27, 2012)

20    ("Thus, insofar as Objector [ ] has 'submitted no financial information to indicate that

21    she is financially unable to post a bond, this factor weighs in favor of imposing a

22    bond.'"); *In re Cardizem CD Antitrust Litig.*, 391 F.3d 812, 818 (6th Cir. 2004) (failure to

23    propose an alternative or provide evidence that the bond was improper resulted in

24    dismissal of appeal).

25        Here, evidence supports Objectors ability to pay. First, Objectors have paid the

26    $455 filing fee with the Ninth Circuit. Second, Mr. Gorberg was ordered to post a bond

27    of over $500,000 in a the previously filed objection in *Batista* on behalf of clients. *See*

28    Ex. 1 to the RJN [*Batista* Order], at \*2. The *Batista* court observed that Mr. Gorberg did

1   not show an inability to post a bond. Similarly, he provides no indication that he cannot

2   advance a bond amount on behalf of his clients in this case. Co-Counsel Public Citizen

3   presumably also has funds to post a bond on behalf of its clients. As Objectors' appeal is

4   chiefly an attorney-driven attempt to delay resolution, Objectors' counsel should be

5   expected to advance funds for a bond if Objectors cannot.

6   **2.      The Appellants' Out-of-State Residence Increases the Risk that**

7   **They Will Not Pay Appellees' Costs if Approval is Affirmed**

8   The second factor "assesses the risk that an appellant would not pay the costs if

9   the appeal loses." *See In re Netflix*, 2013 WL 6173772, at *3. An appellant's being

10  located outside the Court's jurisdiction increases the difficulty of collecting payment

11  post-appeal. *Id*. (citing *Schulken v. Washington Mut. Bank*, 09-02708-LHK, 2013 WL

12  1245716, at *5 (N.D. Cal. Apr. 2, 2013)). In *Netflix*, for example, because the objectors

13  lived outside the Ninth Circuit's jurisdiction, the court found "reason for the imposition

14  of an appeal bond" to mitigate the "risk associated with collecting costs from out-of-state

15  objectors." *Id*.

16  In this case, all Objectors similarly live outside Ninth Circuit jurisdiction,[2] which

17  exacerbates the risk of collection and favors the imposition of a bond.

18  **3.      The Appeal Lacks Merit**

19  The third factor is the "likelihood that an appellant will lose the appeal and be

20  subject to costs." *In re Netflix*, 2013 WL 6173772, at *3. This standard is typically met

21  in cases where the district court had already considered and overruled the objections. *Id*.;

22  *Embry*, 2012 WL 2055030, at *1 (finding that the court had already found objectors'

23  arguments to be without merit).

24  This Court has already determined that Objectors' arguments are without merit,

25  (*see* Dkt. No. 192), based on the parties' ample evidence refuting Objectors' points.

26

27  [2] Mses. Lott, Olivant, and Slomine reside in Pennsylvania. (*See* Dkt. No. 151-1, at 3; No. 152-1, at 2; 153-1, at 2.) Ms. Lutz and Mr. Woloszyn reside in New York. (*See*

28  Dkt. No. 151-2, at 2; No. 155-1, at 2.)

1   (Dkt. Nos. 170, 170-1.) This Court's decision was undoubtedly correct.

2   On appeal, Objectors must demonstrate much more than simply that the Court

3   committed error or came to incorrect conclusions. They need to show that this Court

4   *lacked the authority* even to reach its determination that the settlement was fair, adequate

5   and reasonable. To reverse the Court's order, Objectors must make "a strong showing"

6   that it was "a clear abuse of discretion" to grant approval. *Hanlon v. Chrysler Corp.*, 150

7   F.3d 1011, 1026 (9th Cir. 1998). Objectors must demonstrate conclusively that this

8   Court's decision was "illogical, implausible, or without support in inference that may be

9   drawn from facts in the record." *Low v. Trump University*, 881 F.3d 1111, 1122 (9th Cir.

10  2018) (citation omitted). So long as the court's decision, "within substantial margins"

11  "could be upheld had it determined the issue one way or another," it will not be

12  disturbed. *Krause & Madole P.C. v. Ortiz*, 271 F.3d 884, 887 (9th Cir. 2001).

13  This is an exceptionally high standard, and Objectors' briefs present no grounds

14  for a reviewing court to conclude that this Court engaged in the illogical or implausible

15  decision-making it alleges. Rather, just as they did below, Objectors' distort the

16  settlement terms, speculate without basis, and make demands that directly flout Ninth

17  Circuit precedent. Indeed, Plaintiffs recently filed their answering brief, which refutes

18  point-by-point Objectors' misstatements of law and fact. (App. Dkt. No. 30.) There is no

19  need to rehash every point here, but suffice it to say Objectors have a very low chance of

20  succeeding on their appeal. This factor also supports the imposition of a bond.

21      **B.      A Bond in an Amount No Less Than $474,574.40 from each Objector**

22              **is Appropriate**

23  Plaintiffs seek a bond from Objectors, jointly or severally, in the amount of

24  $474,574.40, based on the anticipated $300 for ordinary costs of appeal under Fed. R.

25  App. P. 39(c) & (e), $14,000 for the additional costs for settlement administration caused

26  by Objectors' delay, and $460,274.40 for interest on the delay in disbursing the

27  settlement fund.

28  First, an appeal bond amount can include the ordinary costs of appeal and

1    additional costs of administration. *See In re Netflix*, 2013 WL 6173772, at *4. In *Netflix*,

2    the court imposed a bond not only for the costs of appeal, but also for the extra costs of

3    claims administration caused by the appeal. *Id.* (finding that, consistent with *Azizian*, the

4    increased costs of administration caused by the objectors' appeal is appropriately

5    included in the bond amount). The *Netflix* court then imposed an appeal bond of $21,519

6    from each of the eleven objectors, including $21,334 for the extra administrative costs—

7    $1,226 per month multiplied by 17.4 months on appeal (based on the median length of a

8    Ninth Circuit appeal). *Id.* And in *Dennings v. Clearwire Corp.*, No. 10-1859-JLR, 2013

9    WL 945267, at *2 (W.D. Wash. Mar. 11, 2013), the court imposed a bond on each

10   objector that included $39,150 in additional administrative costs caused by the objectors'

11   appeal.

12           Other courts have also imposed administrative costs for delay. *See, e.g., In re*

13   *Cardizem CD Antitrust Litig.*, 391 F.3d at 818 (affirming the trial court's imposition of

14   an appeal bond including $123,429 in incremental administrative costs because the

15   appeal had "the practical effect of prejudicing the other injured parties by increasing

16   transaction costs and delaying disbursement of settlement funds."); *In re NASDAQ*

17   *Market-Makers Antitrust Litig.*, 187 F.R.D. 124, 128 (S.D.N.Y. 1999) (imposing a bond

18   of $50,000 for damages resulting in additional settlement administration expenses

19   caused by the appeal).

20           Because Objectors' appeal has delayed the processing of claims, the Claims

21   Administrator must devote most of its time to answering calls from Class Members

22   regarding the status of the case—time that it would not have otherwise spent. It is

23   difficult to extricate this cost from administrative costs that would be ongoing and

24   incurred normally, absent the appeal. However, given the large size of the Class and the

25   steady stream of inquiries, an estimated amount in additional administrative costs, based

26   on the median between the monthly extra costs of administration in *Netflix* ($1,226) and

27   *Clearwire* ($2,250), or $1,750 per month, is appropriate. And since the appeal is on an

28   expedited track, Plaintiffs conservatively estimate that the appeal will be resolved by the

1   end of 2018. Therefore, the administrative cost for the delay would be $1,750 per month

2   for eight months, or $14,000 total.

3        Second, in *Batista*, the court imposed a bond in the amount of $495,353.42,

4   "representing 228 days of compounded interest on $65 million," or the valuation of the

5   extended warranty that Mr. Gorberg's frivolous appeal prevented from being timely

6   implemented. *See* Ex. 1 to the RJN, at *3. The *Batista* court observed that Mr. Gorberg's

7   clients could simply have opted out to pursue their individual claims instead of filing an

8   appeal, thereby "halt[ing] the distribution of benefits to well over 250,000 non-objecting

9   class members." In so holding, *Batista* cited to *In re Checking Account Overdraft Litig*.,

10  No. 090-02036-JLK, 2012 WL 456691, at *2 (S.D. Fla. Feb. 14, 2012), which also

11  imposed a bond in the amount of compounded interest on the delay in disbursing

12  benefits.

13       Here, the Court accepted the $35 million valuation, based on hard warranty data,

14  of Plaintiffs' expert, Ted Stockton, as to just *one component* of the Settlement: cash

15  payments for Transmission Hardware Replacements. (*See* Dkt. No. 192, at 3.) Applying

16  the 1-year treasury yield (per 28 U.S.C. § 1961) of 2% to the $35 million valuation, the

17  daily interest is $1,917.81. Assuming that the appeal is resolved at the end of year (240

18  days), the interest is $460,274.40. Thus, the total amount of the appeal bond should be

19  $474,574.40 for Objectors (inclusive of the interest, additional administrative costs, and

20  costs of appeal) collectively, with each jointly and severally liable.

21       Finally, the *Batista* court observed that the "attorney based motive" for the

22  objections provided an additional ground for imposing a bond. Indeed, this is the second

23  consecutive class action settlement submitted by Lead Class Counsel to which Mr.

24  Gorberg has objected. In the first, *Batista*, Mr. Gorberg stated that "these claims would

25  be better off handled individually, such as [by] our firm." (*See* Excerpts of Transcripts

26  from the *Batista* Final Fairness Hearing, attached to the RJN as Exhibit 2, at 61.) In other

27  words, Mr. Gorberg could not disguise his desire to upend the class settlement in order

28  to market his own services to would-be class members whose settlement benefits he

1    would extinguish.

2    While Mr. Gorberg did not personally appear at the Fairness Hearing to argue his

3    objection, perhaps learning his lesson from *Batista*, his modus operandi is unmistakable:

4    he manufactures generic objections to a class action settlement to create standing for

5    appeal, hoping either to leverage the delay for a favorable individual settlement or try to

6    scuttle a strong class action settlement so he can pick off individual clients. Having dealt

7    with numerous objectors with similar self-serving motives, federal courts have

8    concluded that "an appellant is less likely to bring a frivolous appeal if he is required to

9    post a sizeable bond." *Pedraza v. United Guaranty Corp.*, 313 F.3d 1323, 1333 (11th

10   Cir.2002).

11   Despite Objectors' likely invocation of abstract principles about the valuable role

12   of objectors (in theory), as well as various general justifications for their generic

13   objections to the Settlement, Objectors' counsel's *actual* motives have been previously

14   disclosed and the *actual* harmful consequences of their actions have been laid bare; each

15   day that they persist with their meritless appeal is another day Class Members are

16   deprived of their benefits under this Settlement.

17   Objectors should bear some cost for harming Class Members, and a bond in the

18   amount of $474,574.40 for Objectors should be ordered.

19   **IV.   CONCLUSION**

20   Based on the foregoing, the Court should order Objectors, jointly and severally, to

21   post a bond in the amount of $474,574.40.

22

23   Dated: March 23, 2018                    Respectfully submitted,

24

25                                            By:  /s/ Jordan L. Lurie
                                                   Jordan L. Lurie
26                                                 **CAPSTONE LAW APC**
                                                   1875 Century Park East, Suite 1000
27                                                 Los Angeles, California 90067

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Russell D. Paul
**BERGER & MONTAGUE, P.C.**
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-4601

Thomas A. Zimmerman, Jr.
**ZIMMERMAN LAW OFFICES P.C.**
77 W. Washington St., Suite 1220
Chicago, Illinois 60602

*Attorneys for Plaintiffs and the Class*

CV12-08388 AB (FFMx)                                 Page 10