**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

SEP 13 2019

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

OMAR VARGAS, et al.,

Plaintiffs-Appellees,

v.

BRENDA LOTT, et al.,

Objectors-Appellants,

v.

JASON DEBOLT,

Objector-Appellant,

v.

FORD MOTOR COMPANY,

Defendant-Appellee.

Nos. 17-56745, 17-56746

D.C. No.
2:12-cv-08388-AB-FFM

MEMORANDUM*

Appeal from the United States District Court
for the Central District of California
Andre Birotte, District Judge, Presiding

Argued and Submitted April 8, 2019
Pasadena, California

---

* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Before: RAWLINSON and MURGUIA, Circuit Judges, and RAKOFF,** District Judge.

This appeal concerns a putative nationwide class action alleging defects in the transmission of the 2011–2016 Ford Fiesta and the 2012–2016 Ford Focus. The district court approved a pre-certification class settlement between defendant Ford Motor Company and a nationwide class of consumers. In exchange for release of all claims, the settlement provided that any class member who brought in their vehicle for transmission repairs would be entitled to cash payments for the third and every subsequent repair. The settlement also allowed class members to seek, through arbitration, repurchase when authorized by the consumer's state's lemon law. Finally, defendant agreed not to object to an award of $8,856,000 in fees to class counsel.

Objectors Brenda Lott, Suzanne Lutz, Carlie Olivant, Gail Slomine, and Philip Woloszyn (collectively, the "Lott Objectors") appeal, arguing that the district court failed to justify its conclusion that the settlement provided meaningful value to class members. Objector Jason DeBolt separately appeals, arguing that the district court erred in refusing to consider his objections.

A class action settlement may be approved only if it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). This Court reviews a district court's approval

** The Honorable Jed S. Rakoff, United States District Judge for the Southern District of New York, sitting by designation.

of a proposed class action settlement for abuse of discretion. *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1038 (9th Cir. 2011). We rarely overturn a proposed settlement based on considerations of substantive fairness unless it is clear that class counsel's self-interest, rather than the class's interests, influenced the agreement. *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015). "However, we hold district courts to a higher *procedural* standard when making that determination of substantive fairness. . . ." *Id.* That procedural burden is stricter still when, as here, settlement is negotiated prior to class certification. *Id.* at 1224. In this posture, "[t]o survive appellate review, the district court must show that it has explored comprehensively all factors, and must give a reasoned response to all non-frivolous objections." *Id.* at 1223–24 (quoting *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012)).

The district court did not undertake the comprehensive review required by our precedent.[1] For example, the court adopted the estimate of class counsel's

[1] Our dissenting colleague relies on *Lane v. Facebook*, 696 F.3d 811 (9th Cir. 2012). But *Lane* emphasizes the "more exacting review of class settlement reached before formal class certification." *Id.* at 819. The district court in *Lane* concluded that the settlement was fair and adequate only after a thorough analysis. *Id.* at 820. Other district courts have confronted similar settlement agreements to the one in this case, and have scrutinized the agreements in the way that our precedent instructs. *See, e.g.*, *In re MyFord Touch Consumer Litig.*, No. 13-CV-03072-EMC, 2019 WL 1411510 (N.D. Cal. March 28, 2019); *Harris v. Vector Marketing Corp.*, No. C-08-5198 EMC, 2012 WL 381202 (C.D. Cal. Feb. 6, 2012); *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 391–93 (C.D. Cal. 2007). A similarly searching

expert that the cash payments were worth around $35 million. As the Lott Objectors noted, however, that calculation was based on the total payments available to every eligible vehicle. Because the actual claims rate is likely to be very much less than 100%, the actual value of the settlement is almost certainly much lower. *Cf. Allen*, 787 F.3d at 1224 n.4 (noting that class counsel anticipated only 10 to 15% of class making claims, and in fact only 8% ultimately did). From the record, we cannot determine whether the district court made an effort to estimate the likely claims rate. Additionally, while plaintiffs represented that the class was likely to include nearly 2,000,000 members, plaintiffs' own expert found that there were only 92,891 eligible vehicles, with another 143,178 close to eligibility. Thus, only a very small fraction of the class likely stands to gain any monetary benefit. The district court's analysis failed to analyze the settlement's fairness in light of this information.

The court's analysis of the arbitration provision was similarly truncated, resting largely on the conclusion that "the arbitration procedure appears more favorable to claimants than the typical lemon law suit." This analysis was not the sufficiently reasoned response required by our precedent. For even if that were true, it does not determine whether releasing *all* claims against Ford, including

---

review might justify upholding the settlement at issue in this case; we express no view about the settlement's *substantive* fairness at this time.

those governed by less stringent standards than lemon laws, is fair or reasonable.

Finally, with respect to the fee award, this Court has warned district courts to be alert for certain "subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011). At least two of those signs are present in this settlement, which includes a fee award disproportionate to the class recovery and a "clear sailing" provision whereby defendant agreed not to object to the award sought by class counsel. *Id.* "While the existence of these . . . signs does not mean the settlement cannot still be fair, reasonable, or adequate, they required the district court to examine them, and adequately to develop the record to support its final approval decision." *Allen*, 787 F.3d at 1224. Moreover, "when confronted with a clear sailing provision, the district court has a heightened duty to peer into the provision and scrutinize closely the relationship between attorneys' fees and benefit to the class." *In re Bluetooth*, 654 F.3d at 948. The district court did not undertake that inquiry here.

As in *Allen*, "[w]e take no position on the substantive fairness of the agreement, because the record before use does not allow us to undertake even our deferential substantive review." 787 F.3d at 1224. The district court's failure to "give a reasoned response to all non-frivolous objections," *id.* at 1223–24 (quoting *Dennis*, 697 F.3d at 864), precludes affirmance on this record. Because "the district

court did not satisfy [the] procedural standard" required by our caselaw, we "vacate final settlement approval and remand so that the district court may conduct a more searching inquiry." *Id.* at 1224 (quoting *In re Bluetooth*, 654 F.3d at 938) (internal quotation marks omitted). In light of our disposition, we have no occasion to consider Objector DeBolt's separate arguments for vacatur.

**VACATED AND REMANDED.**

FILED

SEP 13 2019

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

***Vargas v. Ford Motor Co.*, Case No. 17-56745, 17-56746**
**Rawlinson, Circuit Judge, dissenting:**

This is not a case where the claimants received a coupon that was virtually worthless. Instead, under the Settlement Agreement, eligible class members may obtain cash payments of $50 for transmission software replacements. Class members who have replaced their transmission hardware at least three times are entitled to either 1) cash payments in increasing amounts, starting with $200 for the third replacement, and up to $575 for the eighth ($2,325 total for up to eight replacements), or 2) discount certificates of increasing value (ranging from $400 for the third and $1,150 for the eighth replacement).

The Agreement also provides for an arbitration program under which Ford will repurchase a class vehicle pursuant to the lemon law of the state where the claimant took possession and pay up to $6,000 in attorneys' fees if a claimant is successful. Regardless of an arbitration claimant's success, Ford will bear all costs and administrative fees associated with the arbitration, and only the claimant has the right to appeal the arbitration result. The Agreement further allows for arbitration concerning class vehicles of claimants with continued malfunctions after four qualifying transmission repairs within five years or 60,000 miles, even if those claimants are no longer eligible for repurchase under the lemon laws of the

relevant state.

Finally, if a class member is not eligible for vehicle repurchase but claims a breach of Ford's New Vehicle Limited Warranty (or any extensions of that warranty) due to the transmission defects, he or she may submit such claim to the arbitrator, who may order an appropriate remedy, such as repair, reimbursement for repairs, or an extended service plan.

A district court may, in its discretion, approve a class action settlement that is "fair, reasonable, and adequate." *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.,* 895 F.3d 597, 606 (9th Cir. 2018) (citation omitted). Our review of the district court's exercise of this discretion is "extremely limited," and its decision may be reversed only for a "clear abuse of discretion." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 940 (9th Cir. 2011). The district court's careful decision did not come anywhere close to meeting this high standard for reversal.

The majority's reversal rests largely on the majority's view that the district court did not approach the expert's valuation of Plaintiffs' claims with sufficient skepticism. The majority specifically notes that "only a very small fraction of the class likely stands to gain any monetary benefit." *Majority Disposition*, p. 4. The majority faults the district court for failing to "analyze the settlement's fairness in

light of this information." *Id.* But we rejected this very criticism in *Lane v. Facebook, Inc.*, 696 F.3d 811 (9th Cir. 2012). We observed that the number of class members who could pursue successful claims represented "only a fraction of the 3.6 million-person class." *Id.* at 824. Nevertheless, we concluded that the small number of potential successful claimants did "not in itself render the settlement unfair or the $9.5 million recovery among all claims members too low." *Id.* (footnote reference omitted). So long as the recovery is "substantial," no clear abuse of discretion has occurred. *Id.* at 820.[1]

The majority also chastises the district court for apparently failing "to estimate the likely claims rate." *Majority Disposition*, p. 4. Notably, the majority cites no case authority to support this implied error. *See id.* Indeed, our precedent suggests just the opposite—that there is no requirement that the district court perform a microanalysis of the settlement details. *See Lane*, 696 F.3d at 824 (focusing on "the district court's conclusion as to the fairness and adequacy of the overall settlement amount to the class *as a whole*") (emphasis in the original).

Again without citation to any authority, the majority criticizes the district court's discussion of the arbitration provision of the Settlement Agreement.

---

[1] In *Lane*, we determined that a $9.5 million recovery for a class of 3,663,651 was "substantial." 696 F.3d at 818, 820, 824.

Commenting on the district court's observation that "the arbitration procedure appears more favorable to claimants than the typical lawsuit," the majority responds: "[E]ven if that were true, it does not determine whether releasing *all* claims against Ford, including those governed by less stringent standards than lemon laws, is fair or reasonable." *Majority Disposition*, p. 4 (emphasis in the original). But the release of claims is part of the overall determination of reasonableness. And it is not our role to make that assessment. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) (noting that the possibility that "the settlement could have been better . . . does not mean the settlement presented was not fair, reasonable or adequate"); *see also Officers for Justice v. Civil Serv. Comm'n of the City and Cnty. of San Francisco*, 688 F.2d 615, 626 (9th Cir. 1982) ("We are not to substitute our notions of fairness for those of the district judge and the parties to the agreement. . . .") (citations omitted). As previously discussed, it is not appropriate to dissect the settlement agreement on review. *See Hanlon*, 150 F.3d at 1026 ("It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness. . . .") (citation omitted); *see also Officers for Justice*, 688 F.2d at 628 ("It is the complete package taken as a whole rather than the individual component parts that must be examined for overall fairness. . . .")

Finally, the majority disposition takes issue with the amount of attorneys' fees awarded. However, the fee award was reached under the supervision of an able mediator, a factor we have noted with approval. *See Hanlon*, 150 F.3d at 1030.

In sum, the Settlement Agreement between the parties was reached through arms-length negotiations supervised by a mediator, resulted in substantial relief to the parties, and was consummated following extensive investigation of the facts and applicable legal theories. Under these circumstances, I am not persuaded that this is "one of the 'rare' cases" where we should "intrude[] into the discretion of the district court by setting aside its determination that a settlement agreement is fundamentally fair." *Lane*, 696 F.3d at 825 (citation omitted). As we noted in *Officers for Justice*, 688 F.2d at 625, "[u]ltimately the district court's determination is nothing more than 'an amalgam of delicate balancing, gross approximation and rough justice' [and] it must not be overlooked that voluntary conciliation and settlement are the preferred means of dispute resolution[,] especially . . . in complex class action litigation." (citations omitted).

Because this is not one of the rare cases reflecting a *clear* abuse of discretion, and because I do not agree with the majority's hypercritical review in contravention of our precedent instructing that our review be *extremely* limited, I

respectfully dissent.