Ryan H. Wu (SBN 222323)
Ryan.Wu@capstonelawyers.com
Steven R. Weinmann (SBN 190956)
Steven.Weinmann@capstonelawyers.com
Tarek H. Zohdy (SBN 247775)
Tarek.Zohdy@capstonelawyers.com
Cody R. Padgett (SBN 275553)
Cody.Padgett@capstonelawyers.com
**Capstone Law APC**
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Telephone:    (310) 556-4811
Facsimile:    (310) 943-0396

Attorneys for Plaintiffs and Class Members

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA—WESTERN DIVISION

| | |
|---|---|
| OMAR VARGAS, ROBERT BERTONE, MICHELLE HARRIS, and SHARON HEBERLING individually, and on behalf of a class of similarly situated individuals,<br><br>    Plaintiffs,<br><br>    v.<br><br>FORD MOTOR COMPANY,<br><br>    Defendant. | Case No. CV12-08388 AB (FFMx)<br><br>**The Hon. André Birotte Jr.**<br><br>**DECLARATION OF RYAN H. WU IN SUPPORT OF PLAINTIFFS' RENEWED MOTION FOR FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT**<br><br>Date:      February 28, 2020<br>Time:      10:00 a.m.<br>Place:     Courtroom 7B |

# DECLARATION OF RYAN H. WU

I, Ryan H. Wu, declare as follows:

1.       I am an attorney licensed to practice before all courts of the State of California.  Unless the context indicates otherwise, I have personal knowledge of the facts stated in this declaration and, if called as a witness, I could and would testify competently thereto.  I am a partner at Capstone Law APC ("Capstone" or "Lead Class Counsel"), one of the counsel of record for Plaintiffs Omar Vargas, Michelle Harris, Sharon Heberling, Robert Bertone, Kevin Klipfel, Andrea Klipfel, Maureen Cusick, Eric Dufour, Abigail Fisher, Christie Groshong, Virginia Otte, Tonya Patze, Lindsay Schmidt, Patricia Schwennker, Patricia Soltesiz, Joshua Bruno, Jason Porterfield, and Jamie Porterfield in the above-captioned action. I make this declaration in support of Plaintiffs' Renewed Motion for Final Approval of the Class Action Settlement.

2.       Attached as **Exhibit 1** is the Stipulation and Agreement of Settlement ("Settlement Agreement") between Plaintiffs and Defendant Ford Motor Company ("Ford") that was preliminarily approved by the Court on April 25, 2017. (ECF No. 133.) This copy of the Settlement Agreement does not include the attached exhibits, as certain documents will be revised to conform to the revised terms as reflected in the Amendment below.

3.       Attached as **Exhibit 2** is Amendment of Stipulation and Agreement of Settlement ("Amendment") that was negotiated and agreed upon by Plaintiffs, Ford. The Settlement Agreement and Amendment together comprise the "Amended Settlement" or "Amended Settlement Agreement."  Unless specifically defined here, all capitalized terms as used herein are defined in either the Settlement or the Amendment. Because the final version of the Amendment was agreed upon by all parties only a day before the date of this filing, I submit a copy of the Amendment executed by Class Counsel, Ford's counsel, and Ford's corporate representative, and several Class Representatives. The parties expect to file a fully executed Amendment by February 8, 2020, well before the final fairness hearing on February 28, 2020.

4.      Attached as **Exhibit 3** is a chart, which I prepared, comparing recently approved class action settlements alleging automotive defects to the proposed Amended Settlement.

5.      Attached as **Exhibit 4** are summaries of state lemon law provisions involving (a) statute of limitations; (b) pre-dispute resolution requirements; (c) presumption for a buyback; (d) notice requirements; (e) and manufacturers' opportunity to cure previously submitted by Plaintiffs as Exhibits 1 through 5 in support their Response to Objections (ECF No. 170-1, at 5-46).

6.      Attached as **Exhibit 5** is Capstone's firm resume that summarizes the firm's major accomplishments and provides a short professional biography of each attorney at the firm.

## SUMMARY OF ALLEGATIONS AND PROCEDURAL HISTORY

7.      This action consolidates three cases. The original action was filed by Plaintiff Omar Vargas on September 28, 2012, in the Central District of California against Ford. The Complaint alleged that the Transmission, which Ford billed as a new type that combines the best features of automatic and standard transmissions, causes Class Vehicles to slip, buck, jerk, and suffer sudden or delayed acceleration and delays in downshifts ("Alleged Defect"). (ECF No. 1.) Alleging Ford failed to disclose to consumers the Alleged Defect and that it was a safety hazard, Plaintiff sought damages and injunctive relief under California consumer protection laws, breach of express warranty, and breach of implied warranty under the Song-Beverly Consumer Warranty Act. Subsequent amended pleadings added new claims and additional plaintiffs Robert Bertone, Michelle Harris, and Sharon Heberling. (ECF Nos. 24, 57.)  Another suit alleging nearly identical claims, *Klipfel v. Ford Motor Co*., No. 15-CVP0044, was consolidated with *Vargas* and *Klipfel* on December 2, 2015. (ECF No. 34.) Two additional actions alleging similar claims, *Cusick v. Ford Motor Company*, Case No. 2:15-cv-08831-AB (C.D. Cal.), filed on November 12, 2015, and *Anderson v. Ford*

*Motor Co.*, No. 1:16-cv-01632 (N.D. Ill.), filed on April 21, 2016, were also brought by Ford consumers. *Cusick* was consolidated with the instant action on February 22, 2017 (ECF No. 52), and the First Amended Complaint in *Cusick*, filed on February 22, 2016, was deemed the "Operative Complaint" for settlement purposes.

8.      Ford instituted three Customer Satisfaction Programs during the pendency of the litigation. The 14M01 Program attempted to address the problems Plaintiffs identified in this lawsuit by extending the warranty coverage for the Transmission's input shafts, clutch, and software calibration in those Class Vehicles manufactured prior to June 5, 2013. The 14M02 Program extended the warranty on the Transmission Control Module to 10 years of service or 150,000 miles for specific 2011-2015 Fiesta and 2012-2015 Focus vehicles. In August 2019 Ford issued Program 19N08 which extended the warranty on the clutch on additional Class Vehicles to 7 years/100,000 miles. https://static.nhtsa.gov/odi/tsbs/2019/MC-10164603-0001.pdf.

9.      <u>Investigation and Discovery</u>. Both before and after these actions were filed, Plaintiffs thoroughly investigated and litigated their claims, including conducting testing regarding the Alleged Defect, which allowed Plaintiffs' counsel to evaluate Ford's representations concerning the alleged Transmission problems and repair solutions. Among other tasks, Plaintiffs fielded tens of thousands of inquiries from putative Class Members and investigated many of their reported claims. They consulted and retained automotive experts and researched publicly available materials and information provided by the National Highway Traffic Safety Administration ("NHTSA") concerning consumer complaints about the Transmission. They reviewed and researched consumer complaints and discussions of Transmission problems in articles and forums online, in addition to various manuals and technical service bulletins ("TSBs") discussing the alleged defect.

10.      Furthermore, Plaintiffs propounded discovery on Ford. In response, Ford produced over 1.5 million pages of documents, including spreadsheets with millions of lines of data, owners' manuals, maintenance and warranty manuals, design documents

(e.g., technical drawings), VIN Decoders, TSBs, field reports, customer comments detail reports, warranty data, and internal emails and emails between Ford and third parties regarding the Transmission. Class Counsel also defended the depositions of four class representatives. Plaintiffs obtained additional discovery from third parties Getrag Transmission Corporation ("Getrag"), and LuK USA LLC, LuK Clutch Systems, LLC and LuK Transmission Systems, LLC (collectively, "LuK"), the manufacturers and suppliers of the Transmission and its clutches. Plaintiffs subpoenaed and received over 20,000 documents comprised of 117,000 pages from Getrag and nearly 10,000 documents comprised of over 36,000 pages from LuK.

11.     Plaintiffs also took Fed. R. Civ. P. 30(b)(6) depositions, including that of Chris Kwasniewicz, the engineer Ford assigned to "problem solve" the Transmission, and Matt Fyie, a Ford Design Analysis Engineer. These depositions elicited information about the Transmission's design, its dual-clutch function, the manufacturing processes of its various components, the problems it exhibited and their root causes, changes to the clutch material, the input shaft seals, control software, and the customer service programs and warranty extensions Ford initiated during the litigation.

12.     In reviewing this discovery, including hundreds of thousands of pages of email correspondence and databases containing millions of lines of data produced by Ford, Class Counsel identified information that was instrumental to the case and to Plaintiffs' efforts during mediation.

13.     Furthermore, Class Counsel identified topics for Fed. R. Civ. P. 30(b)(6) depositions, including those of Chris Kwasniewicz, the engineer Ford assigned to "problem solve" the Transmission, and Matt Fyie, a Design Analysis Engineer for Ford's automatic transmissions.  Mr. Kwasniewicz's deposition elicited information about the Transmission's design, its dual-clutch function, the manufacturing processes of its various components, the problems it exhibited and their root causes, changes to the clutch material, the input shaft seals, control software, and the customer satisfaction programs and warranty extensions Ford initiated during the litigation. Matt Fyie's

1  deposition elicited information about the incidences of Transmission problems and the
2  number of replacement parts provided to the class.

3       14.     Moreover, over the course of litigation, thousands of Class Members
4  contacted Class Counsel to report problems with their Class Vehicles and seek relief.
5  Class Counsel logged each Class Member's complaint in a database and developed a
6  plan for litigation and settlement based in large part on their reported experiences with
7  their Class Vehicles and with Ford dealers.

8              **ARM'S-LENGTH NEGOTIATIONS AND INITIAL SETTLEMENT**

9       15.     <u>Negotiating the Initial Nationwide Settlement</u>: The proposed Settlement is
10  the culmination of lengthy discussions between the Parties, consultation with their
11  experts, comprehensive discovery, and thorough analysis of the pertinent facts and law at
12  issue. On August 18, 2015, the Parties attended the first of five in-person mediation
13  sessions in Boston, Massachusetts with one of the top mediators in the field, Professor
14  Eric D. Green of Resolutions LLC.  In advance of the mediation, the Parties submitted
15  detailed mediation briefs setting forth their positions.  The Parties were unable to reach
16  an agreement on all material terms of the proposed relief to the Class in this initial
17  mediation but agreed to engage in further negotiations with Prof. Green.

18       16.     Following a second session on May 6, 2016, the Parties made substantial
19  progress, and, with Prof. Green's continuing assistance, agreed to terms regarding relief
20  for the Class during a third session on June 2, 2016. On June 9, 2016, after confirming
21  the terms for Class relief, the Parties participated in a fourth mediation session in Boston
22  with Prof. Green focused solely on the issue of attorneys' fees, costs, and service awards,
23  which they were ultimately able to resolve. Plaintiffs and Class Counsel ensured that
24  their interests aligned with the Class's by negotiating attorneys' fees, costs, and service
25  awards only after the Settlement benefits for the Class had been determined.

26       17.     After completing mediation, the Parties worked diligently to formalize this
27  complex, sweeping Settlement and time to, *inter alia*, (a) refining and harmonizing the
28  separate cash payment components of the Settlement, (b) drafting the Arbitration Rules,

(c) researching each state's lemon laws and class action settlements involving similar

automotive defects, (d) creating notices that would clearly answersupporting documents.

Class Members' questions regarding the Settlement, and (e) drafting the final settlement

and motion papers. The process of finalizing all of the terms of the Settlement spanned

six months. Plaintiffs also spent considerable time vetting arbitration administrators

before choosing DeMars & Associates.  The proposed Settlement was previously

submitted the Court on March 24, 2017, as part of Plaintiffs' Motion for Preliminary

Approval of the Class Action Settlement. (ECF No. 120.) The Court granted preliminary

approval on April 25, 2017, certifying the Settlement Class, designating Plaintiffs as

Class Representatives, and appointed Capstone Law APC, Berger & Montague, P.C.,

and Zimmerman Law Offices, P.C. as Class Counsel and designated Capstone as Lead

Class Counsel. 23(b)(3). (ECF No. 133.)

PRELIMINARY APPROVAL AND INITIAL FINAL APPROVAL

18.    Class Counsel prepared and filed Plaintiffs' Motion for Preliminary

Approval of the Class Action Settlement on March 24, 2017.  (ECF No. 120.) Following

the hearing on April 24, 2017, the Court granted preliminary approval on April 25, 2017.

(ECF No. 133.) In its Order Granting Preliminary Approval, this Court determined that

the Settlement Class, as defined, satisfies the requirements of Rule 23(a)  and Rule

23(b)(3). The Court designated Plaintiffs Omar Vargas, Michelle Harris, Sharon

Heberling, Robert Bertone, Kevin Klipfel, Andrea Klipfel, Maureen Cusick, Eric

Dufour, Abigail Fisher, Christie Groshong, Virginia Otte, Tonya Patze, Lindsay

Schmidt, Patricia Schwennker, Patricia Soltesiz, Joshua Bruno, Jason Porterfield, and

Jamie Porterfield as the Class Representatives of the Settlement Class. The Court also

appointed Capstone Law APC, Berger & Montague, P.C., and Zimmerman Law

Offices, P.C. as Class Counsel, and designated Capstone as Lead Class Counsel.

19.    Upon review of the Settlement terms, this Court also found that the

Settlement's "terms appear sufficiently fair, reasonable, and adequate" for the purposes

of preliminary approval. (ECF No. 133, ¶ 8.) The Court approved the form of the

notices, including the Short Form Class Notice to be disseminated to Class Members and a Long Form Class Notice that will be stored on the Settlement web site. The Court then appointed Kurtzman Carson Consultants ("KCC") as Claims Administrator to administer the notice and claims process.

20.     Following the Parties' Stipulations, the Court entered orders amending the Preliminary Approval Order on scheduling (ECF No. 135) and the temporary restraining order. (ECF No. 139.)  The Claims Administration implemented the notice program.

21.     Plaintiffs then filed their initial Motion for Attorneys' Fees, Costs, and Service Awards on August 21, 2017. (ECF No. 146.) They filed their initial Motion for Final Approval of Class Action Settlement on August 28, 2017. (ECF No. 150.)

22.     The opt-out/objection deadline was September 5, 2017. Approximately 10,350 recipients of the class notice validly opted out. However, several disputes arose regarding the validity of certain Class Members' opt-outs. The Court entered an order memorializing the final opt-out list on December 13, 2017. (ECF No. 240.) The same opt-out list is attached to the Proposed Final Approval Order as Exhibit A.

23.     Fifteen Class Members, including Brenda Lott, Suzanne Lutz, Carlie Olivant, Gail Slomine, and Philip Woloszyn (the "Lott Group") and James "Jason" DeBolt (collectively "Assisting Class Members"), timely objected. The Lott Group took issue with the lack of valuation analysis in the approval papers, the adequacy of the benefits offered by the Settlement, the documentation requirements, and their concern that the Program would not benefit Ford consumers as much as individual litigation would, among other objections. DeBolt objected to, among other things, the relief provided to former owners, the documentation requirements, the scope of the release, the overall sufficiency of the benefits, and the attorneys' fee request. (ECF No. 167.) In response, Plaintiffs submitted a 40-page supplemental brief, attaching painstakingly assembled summaries of the lemon law requirements of the 50 states and the features of comparable automotive settlements. (ECF No. 170.)

24.     At the initial Final Fairness Hearing on October 2, 2017, the Court

questioned Class Counsel, counsel for Ford, and Mr. Michael Kirkpatrick, counsel for the Lott Group for several hours. Following the hearing, this Court issued a Final Order and Judgment, overruling the objections and determining that the Settlement, with its uncapped structure and repurchase benefit under consumer-friendly rules, was fair, reasonable, and adequate. (ECF No. 192-193, 204.) The Court awarded attorneys' fees, costs, and incentive awards under the lodestar method, finding that Plaintiffs' submissions demonstrated reasonable hours and reasonable rates, and applied a modest 1.22 multiplier. (ECF No. 196.) The Court also found the fees reasonable by cross-checking them as a percentage of a settlement that "exceeds $34.12 million" based on Plaintiffs' submissions. (*Id.*)

### APPEAL, POST-APPEAL MEDIATION, AND SETTLEMENT APPROVAL

25.     Both the Lott Group and DeBolt appealed. Following briefing and oral argument, a Ninth Circuit panel issued a memorandum decision on September 13, 2019. In a 2-1 split, the panel vacated the final approval order and remanded the matter for a "more searching inquiry" pursuant to *Allen v. Bedolla*, 787 F.3d 1218, 1224 (9th Cir. 2015). *See Vargas v. Lott*, 787 Fed.Appx. 372, 374 (9th Cir. 2019). The majority complained that this Court's purportedly cursory order did not allow for substantive review. In a sharp dissent, Judge Rawlinson observed that the majority ignored binding precedent supporting this Court's order granting approval and that the Settlement delivers valuable relief to the Class. *Id*. at 375-76.

26.     On December 9, 2019, Class Counsel, counsel for Ford, and counsel for both the Lott Group and DeBolt participated in a mediation conducted by Prof. Green. Through arm's-length negotiations, the parties reached a global settlement to provide additional benefits to the Class. The additional Class benefits include: (1) Ford's guarantee of a minimum payment of $30 million for the cash payment component; (2) a new $20 payment to Class Members who attest to having been turned away from obtaining a Transmission repair; (3) favorable modifications for former owners/lessees, including allowing them to have the same SOL extension covering current

owners/lessees and to obtain a Repurchase under the "fallback" standard; (4) making additional changes to the Arbitration Program for the benefit of Class Members, including removing the "opportunity to repair" prerequisite for certain Claimants and the bar on civil penalties; and (5) an informational notice to all Class Members alerting them to new benefits. These terms resolve the Lott Group's primary concern regarding valuation, the treatment of former owners, and their specific issues with the Arbitration Program. These terms also resolve DeBolt's specific objections to the Arbitration Program's rules regarding former owners and the documentation requirements for cash payments.  Ford also agrees to pay attorneys' fees (up to their documented lodestar enhanced by a 1.2 multiplier) and service awards of $5000 to the Lott Group and DeBolt, if the Court approves their request. The parties have reached final agreement on the proposed language, which is memorialized in the Amendment.

## CONTINUING SERVICES TO CLASS MEMBERS

27.     <u>Services to Class Members</u>. Due to the high interest in this litigation, even before Preliminary Approval, Class Counsel received dozens of inquiries a day, with a substantial number of putative Class Members continuing to submit repair orders or provide other, detailed information about their experiences with the Class Vehicles and the Alleged Defect. Since Preliminary Approval, Class Counsel has continued to devote considerable time and resources to Class Members' inquiries, which now surpass 18,000, confirming and explaining the Settlement benefits. Indeed, the flood of Class Member inquiries following Preliminary Approval required multiple attorneys to work exclusively on this case.

28.     As part of their comprehensive efforts to accommodate Class Members following the dissemination of Class Notice, Lead Class Counsel responded to hundreds of phone calls a day from Class Members, e-mailed another several dozen a day, created an interactive voice response system, developed a content-rich website to educate Class Members about the Settlement's benefits, and worked to resolve numerous administrative issues that arose during this phase. Moreover, Class Counsel, jointly with

Ford's counsel, contributed to the development of the Claims Administrator's Settlement website and interactive voice response system, as well as to the Arbitration Administrator's website.

29.     In addition, Lead Class Counsel will continue to serve Class Members during the claims' period, which will run for years to process both cash payments and arbitration.  Lead Class Counsel expects that it will expend hundreds of hours after the filing of this Motion delivering services to Class Members regarding the Settlement.

30.     Since the entry of the Order Granting Preliminary Approval, nothing has changed that would affect the Court's ruling on class certification. The Court should therefore reaffirm its order granting certification of the Settlement Class.

### VALUE AND BENEFITS OF THE AMENDED SETTLEMENT

31.     <u>$47.4 Million in Confirmed Payouts</u>. A little over two years after the start of the Repurchase process, Class Members who initiated the process (by serving a notice of intent to arbitrate) have already received **$47.4 million** in payments. (*See* Declaration of G. Keith Barron ¶ 3.) This is before the start of the formal Arbitration Program, which would be implemented after all direct appeals are exhausted.[1] Plaintiffs expect, based on consultations with thousands of Class Members, that many more will pursue Repurchase once the formal program begins. While the Ninth Circuit panel did not have the benefit of this payout information, this updated information confirms that the Class has already received valuable benefits.

32.     <u>$30 Million Guaranteed Minimum</u>. The Amended Settlement provides a minimum guarantee of $30 million for the cash payment benefits alone. That is, the $30 million guarantee is separate from (and do not account for) the $47.4 million already paid out for Repurchase claim Thus, the Settlement guarantees that the Class will receive a minimum of **$77.4 million**.

---

[1] The Settling Parties have implemented a voluntary arbitration program, proceeding under the same rules as the Arbitration Program, to meet Class Member demand. However, individual claimants proceeding under the voluntary program must execute a separate release because the Settlement is not yet finally approved with all direct appeals exhausted.

33.     <u>Cash Payments for Service Visits for a Transmission Hardware Replacement</u>. The Settlement provides that Class Members who have had three or more Service Visits to authorized Ford dealers to replace qualifying parts ("Transmission Hardware Replacement")[2] will be entitled to either a cash payment or a Discount Certificate, valued at twice the amount of the cash payment, toward the purchase or lease of a new Ford vehicle. The value of each cash payment or Certificate is determined by the number of Service Visits made, with $2,325 cash or $4,650 Certificate value being the maximum amount payable. The Settlement does not impose a definitive cut-off date for Class Members to submit claims for which they qualify. Each Class Member remains eligible for new or additional benefits if a qualifying Transmission Hardware Replacement is made within the 7 year/100,000 mile period, and the Class Member timely files the claim.

34.     <u>Cash Payments for Software Flashes</u>. The Settlement provides that Class Members are also entitled to receive $50 for each Software Flash, starting with the third, that was performed within the same 7 year/100,000 mile period. (Settlement Agreement ¶ II.B.) Class Members may receive up to $600 in payments for Software Flashes. As with the Transmission Hardware Replacements, Class Members may continue to submit new or additional claims for each qualifying Service Visit made within 7 years or 100,000 miles of the date of delivery to the first retail customer, whichever comes first. Once Class Members have qualified for and submitted a claim for a Transmission Hardware Replacement payment, however, they are no longer eligible for a Software Flash payment

35.     <u>Arbitration Program for Repurchase</u>. Class Members may obtain a Repurchase of their Class Vehicles if they qualify under their state lemon law or under a

---

[2] Qualifying Transmission parts are defined as the following: (1) 7B546 Disc Asy-Clutch; (2) 7Z369 Control Mod Trans (TCM); (3) 7052 Oil Seal-Trans Rear; (4) 7000 Transmission Asy-Aut; (5) 7C604 Motor-Frt Clutch; (6) 7A508 Rod-Cl/Slave Cyl Pus; (7) 6K301 Seal/RetC/Shft Oil; (8) 7060 Shaft/Bshg Asy-Out; (9) 7048 Seal-Input Shaft Oil; and/or (10) 7515 Lever Asy-Clutch Rel.  These ten parts are the most common parts replaced on the Transmission.

Settlement-created fall back standard. (Sett. Agmt. ¶ II.N.) For Claimants who prevail Ford refunds the actual amount that the Class Member paid for the vehicle (excluding any modifications or additions after the vehicle's purchase or lease), including finance charges, less a reasonable allowance for use. If the vehicle was leased, Ford refunds the payments made to the lending institution or lessor plus net trade-in and cash down payment, less a reasonable allowance for use.

36.     The Repurchase remedy is awarded through an Arbitration Program that enhances Class Members' rights in several ways. First, the Program resolves Class Members' lemon law claims within two or three months of submission, rather than the year or more for a lemon law suit filed in court. Second, the Program extends the applicable statute of limitations, preserving claims for six years from the date of original sale or six months of the Effective Date of the Settlement, whichever is later for both current and former owner/lessees. (*Id.*, ¶ II.N.1.d.; Amendment ¶ 12.)

37.     Claims for Repurchase will be governed either by the state lemon law applicable to each Class Member or, if the claims do not qualify under state lemon law, by the Settlement's consumer-friendly fallback standard. (Sett. Agmt. ¶ II.N.1.e.) Under the Settlement's fallback standard, the Arbitrator may award a repurchase if 4 or more Transmission Hardware Replacements were performed within 5 years/60,000 miles, and the vehicle continues to malfunction. This is more generous to consumers than most state's lemon laws. And Ford will pay a maximum of $6,000 in attorneys' fees to each Class Member who prevails on his or her claim.[3] (*Id.*, ¶ II.N.1.h.)

38.     The Amended Settlement removes several prior limitations on

---

[3] Significantly, Class Members will have the opportunity to appeal an adverse Program decision to a JAMS arbitrator, though any costs for an appeal must be advanced by the Class Member, to be reimbursed by Ford if the Class Member prevails. (*Id.*, ¶ II.N.1.g.) Ford has no right to appeal, except for an award of civil penalties, which can be awarded under certain circumstances in jurisdictions that allow for it. (Amendment ¶ 14.)  The Arbitrator may not award punitive damages. (*Id.*, II.N.1.g.) Furthermore, even if a Class Member's first repurchase claim is denied, he or she may pursue a second repurchase claim under the Program if his or her Class Vehicle has subsequent qualifying repairs. (*Id.*, ¶ II.N.1.i.) Finally, Class Members will not be denied the opportunity to re-submit a repurchase claim to the Program, even if an initial claim for a buyback made with the Better Business Bureau or other similar organization prior to the Settlement was denied. (*Id.*)

Repurchases. First, it eliminated the original Settlement's requirement allowing Ford to perform one final repair attempt after receiving a notice of intent to arbitrate from a Claimant with three or fewer repair attempts. (Amendment ¶ 10.) Second, it permits Class Members to recover civil penalties if their state's law authorizes civil penalties, not to exceed the amount of the Repurchase award, if (a) their state's law authorizes civil penalties (b) Ford knew of its obligation under state law or the Settlement Agreement, as amended, to repurchase the vehicle and (c) prior to the arbitrator's award, declined to do so after being provided with the Claimant's notice of intent to proceed to arbitration under the Settlement Agreement.  (*Id*. ¶ 15.) Third, the identical statute of limitations period extension for current owners/lessees will be extended to former owners/lessees. (*Id*. ¶ 12.) Fourth, a former owner/lessee may obtain a Repurchase award if they meet the Settlement's fallback standard, even if her state's lemon law does not allow repurchase for former owners/lessees. (*Id*. ¶ 11.)

39.     Significantly, Class Members will have the opportunity to appeal an adverse Program decision to a JAMS arbitrator, though any costs for an appeal must be advanced by the Class Member, to be reimbursed by Ford if the Class Member prevails. (*Id*., ¶ II.N.1.g.) Ford has no right to appeal, except for an award of civil penalties, which can be awarded under certain circumstances in jurisdictions that allow for it. (Amendment ¶ 15.)  The Arbitrator may not award punitive damages. (*Id*., II.N.1.g.) Furthermore, even if a Class Member's first repurchase claim is denied, he or she may pursue a second repurchase claim under the Program if his or her Class Vehicle has subsequent qualifying repairs. (*Id.*, ¶ II.N.1.i.) Finally, Class Members will not be denied the opportunity to re-submit a repurchase claim to the Program, even if an initial claim for a buyback made with the Better Business Bureau or other similar organization prior to the Settlement was denied. (*Id.*)

40.     <u>Arbitration Program for Breach of New Vehicle Limited Warranty.</u> Class Members who have incurred out-of-pocket expenses for repairs they believe should have been covered by Ford's New Vehicle Limited Warranty ("Warranty") or who believe

that a Ford dealer improperly denied Warranty repairs are eligible to pursue their claims in a qualified version of the Program ("Warranty Arbitration"). Ford will pay the costs of each Warranty Arbitration. The Arbitrator is authorized to award reimbursement, a complimentary repair, or an extension of warranty by Ford. However, the Arbitrator may not award a Class Member's attorneys' fees, and claims must be submitted within the statute of limitations for express warranty claims as determined by law of the state in which the Class Vehicle was purchased or leased.

41.    Reimbursement for Clutch Replacement. The Settlement provides that Class Members who own or lease a Class Vehicle manufactured after June 5, 2013, and had two clutches replaced during the 5-year/60,000-mile Powertrain Warranty are entitled to reimbursement for out-of-pocket costs for a third clutch replacement within 7 years/100,000 miles from delivery to the first retail customer. The replacement clutch will also be covered by a two-year warranty. Ford's Customer Satisfaction Program 19N08, issued in August 2019, improves on this provision. Under Program 19N08 and the previously issued Program 14M01, the clutches on most if not all Class Vehicles are covered by an extended warranty of 7 years/100,000 miles.

42.    The claims process has been designed to minimize the burden on Class Members while ensuring that only valid claims are paid. The Settlement requires Class Members to submit documentation typically required to substantiate such claims. (Settlement Agreement ¶ II.E.) Except for the sworn declaration payment, Class Members need only provide, either electronically through the Claims Administrator's website portal or by mail, a receipt, repair order, or other invoice containing standard information, (*e.g.*, repair date, a description of the vehicle, the dealership or facility where the work was performed, the vehicle' mileage at the time of repair, an itemized list of parts and labor), along with proof of ownership and a sworn written statement attesting to the authenticity of the documents provided.[4] (*Id.*) Subsequent claims for cash

---

[4] For reimbursement of a clutch replacement, Class Members will need to show proof of

payments will have a reduced standard for proof, as the Claims Administrator will retain previous submissions. (*Id.*, ¶ II.E.4.)  For those who were denied repairs and therefore cannot document Service Visits, the Amended Settlement provides a cash payment of $20, if the Class Member attests to those facts. (Amendment ¶ 8.)

43.     Claims can be submitted through the Settlement website. A portal will walk Class Members through a series of prompts and fields in which to provide the information required. The site provides clear instructions, and the portal permits Class Members to upload scanned documents supporting their claims.

44.     The Program is also streamlined. A Class Member initiates the process by calling a dedicated phone number or by submitting a form through the Settlement website or by mail, indicating directly to Ford his or her intent to submit a claim for repurchase or breach of warranty. (Settlement Agreement ¶ II.N.1.) Ford will then have ten days to resolve the matter informally with the Class Member. (*Id.*) After that, the Class Member may proceed directly to arbitration.

### SETTLEMENT ADMINISTRATION

45.     At the request of the attorneys general of California, Arizona, Michigan, New Jersey, North Carolina, Texas, and Washington, the Parties stipulated to amend the Preliminary Approval Order to ensure that Class Members can cooperate with any state investigation, and that stipulation was filed on July 7, 2017. (ECF No. 138.) The Court granted the request and entered the amended order on July 11, 2017. (ECF No. 139.)

46.     Lead Class Counsel also maintains a Settlement website with detailed explanations, in layman's terms, about the Settlement benefits and Class Members' rights.

47.     The Settling Parties have consistently updated the website with new information. And updated information on the Amended Settlement will be posted

---

payment, common for such claims, and a diagnostic from a Ford dealer showing that a clutch replacement was necessary, which is provided as a matter of course. (*Id.* ¶ II.G.1-2.)

1    following the Effective Date.

2    ### FURTHER SUPPORT FOR THE SETTLEMENT BENEFITS

3        48.    Attorneys at my firm researched the application of cross-jurisdictional

4    tolling under *American Pipe & Const. Co. v. Utah*, 414 U.S. 538, 554 (1974) across all

5    fifty states, as well as the census data for each state. Based on this research, fifteen states

6    have rejected cross-jurisdictional tolling: Arizona, California, Illinois, Kansas, Kentucky,

7    Louisiana, Minnesota, New Mexico, Oklahoma, Oregon, Pennsylvania, South Dakota,

8    Tennessee, Texas, & Virginia, with a combined population of 161,922,528. Ten states

9    have not expressly ruled on the issue: Maine, Maryland, Mississippi, New York

10   Nebraska, Nevada, New Hampshire, North Dakota, Rhode Island, Vermont, Wisconsin,

11   Wyoming) with a combined population of 26,346,391.

12       49.    Attorneys at my firm also reviewed the supplemental CAFA notice that

13   recorded the number of Class Notices sent to Class Members in each state. Based on this

14   data, 44% of Class Notice recipients live in states that have rejected cross-jurisdictional

15   tolling, 12.4% of recipients live in states that have not expressly adopted the rule, and

16   43.6% of recipients live in states that do permit cross-jurisdictional tolling. A majority of

17   Class Members do not live in states that authorize cross-jurisdictional tolling.

18       50.    As stated in earlier filings, the relief for attorneys' fees was negotiated

19   separately. The Parties negotiated and agreed on terms for the substantial Class relief on

20   June 2, 2016, with the supervision of well-respected mediator, Professor Eric Green.

21   Only after the class relief was negotiated did the Parties negotiate attorneys' fees, costs,

22   and service awards, with that mediation taking place on June 9, 2016.  The Parties

23   reached an agreement regarding fees after further mediator-guided negotiations

24   following mediation.

25       51.    During the pendency of this lawsuit, attorneys at my firm researched the

26   lemon laws of all fifty states. Based on their research and for the Court's convenience

27   and understanding, my firm has compiled exhibits documenting the lemon laws of all 50

28   states (and the District of Columbia and certain U.S. territories), as they relate to: the

Statute of Limitations (attached hereto as Exhibit 1); Pre-filing Dispute Resolution Requirements (attached hereto as Exhibit 2); Repair/Timeframe To Establish Presumption for Repurchase (attached hereto as Exhibit 3); Notice to Manufacturer (attached hereto as Exhibit 4); and Manufacturer's Opportunity to Cure (attached hereto as Exhibit 5).

52.     During the pendency of this lawsuit, attorneys at my firm reviewed settlement agreements involving alleged automotive defects that have been approved in California district courts and other district courts. For the Court's convenience and understanding, my firm has created a chart summarizing the major terms of the relevant settlements approved within the past five years. (Attached hereto as Exhibit 6 is a true and correct copy of this chart.)

## THE RISK OF FURTHER LITIGATION

53.     First, the difficulty of the litigation, including prevailing on class certification and on the merits, favors approval. While Plaintiffs believe that their allegations have merit, Ford has raised a number of substantive defenses that present serious risks to Plaintiffs' case. These defenses include, among others, that no Transmission defect exists, or that, even if the Alleged Defect existed, Plaintiffs would not be able to show that it constitutes a safety concern. As a threshold matter, the existence of a defect may not lead to legal liability under federal or state statutes. Accordingly, Plaintiffs must meet a high burden to establish violations of state and federal consumer protection and warranty statutes.

54.     Indeed, Plaintiffs may well be unable to maintain class status through trial. Ford contends that, as a result of changes in the manufacturing process, design, and software, there are multiple versions of the Transmission, precluding the likelihood that one common defect exists. Had litigation continued, Ford would have argued that the variations in the Transmission and in the Alleged Defect also preclude class certification of the consumer fraud claims for omission. In addition, Ford would have argued that, among other individual variations, questions regarding each customer's proper

maintenance of the vehicle, driving conditions, and repair attempts, such as whether the vehicle was timely taken to the dealer for repairs, among others, would preclude certification of the warranty claims. While Plaintiffs would vigorously dispute these claims, consumers bringing automotive defect actions face an uphill battle and are frequently denied class certification due to lack of common proof.[5] The Ninth Circuit's decision in *Mazza v. Am. Honda Motor. Co.,* 666 F.3d 581, 594 (9th Cir. 2012), which makes it difficult to certify a nationwide class based on alleged violations of state law, would also likely have stymied Plaintiffs' efforts. Even if Plaintiffs were to prevail certification, *Mazza* would have required subclasses for some states; consumers in many other states may be left out altogether. *See, e.g., In re MyFord Touch,* 2019 WL 1411510, at *6 (settlement involving seven litigation state-specific subclasses).

55.    While Plaintiffs would vigorously dispute these claims, consumers bringing automotive defect actions face an uphill battle and are frequently denied class certification due to lack of common proof.

56.    Aside from certification risk, Plaintiffs could face the termination of their action at summary judgment or at trial. For instance, in another action against Ford involving a different vehicle, summary judgment was recently entered in favor of defendant after years of litigation, underscoring the difficulties faced by Plaintiffs here.

57.    Second, the anticipated additional expenses that must be incurred also support final approval. Here, Plaintiffs shoulder exceedingly high financial risks in pursuing this action. This class action against a major automotive manufacturer, where Plaintiffs allege that nearly 1.5 million vehicles suffer a serious defect, has the strong

---

[5] *See, e.g., See Philips v. Ford Motor Co.,* No. 14-02989, 2016 WL 7428810, *17 (N.D. Cal. Dec. 22, 2016), *aff'd* 726 Fed.Appx. 608 (9th Cir. 2018) (finding that the plaintiffs failed to present a compelling damages model supporting a classwide determination regarding Ford's alleged omission of a "systemic defect" in the vehicle's electronic steering system); *Grodzitsky v. Am. Honda Motor Co.,* No. 2-01142-SVW, 2014 U.S. Dist. LEXIS 24599 (C.D. Cal. Feb. 19, 2014) (denying certification due to lack of evidence that common materials were used for all defective "window regulators" in the class); *Cholakyan v. Mercedes-Benz USA, LLC,* 281 F.R.D. 534, 553 (C.D. Cal. 2012) ("There is also no evidence that a single design flaw that is common across all of the drains in question is responsible for the alleged water leak defect…").

potential to engulf the Parties in continued protracted, resource-draining court battles. Plaintiffs would rely on the testimony of a technical expert to dispute the import of what they consider to be minor part variations, along with that of a consumer expectations expert and a damages expert. These hefty costs would have to be advanced by Plaintiffs and Class Counsel and would add significantly to the risks of proceeding in litigation, which already exceeds $300,000 without them.

58.     Third, prompt settlements are highly preferable to protracted litigation. Thus, even if Plaintiffs were to certify the Class on contested motion and prevail on dispositive motions and at trial, the years of litigating this action would almost certainly diminish the relief to Class Members, as their Vehicles' value will depreciate over time. Any restitution remedies they could obtain would also be subject to offsets for car owners' use of the vehicles.

59.     Because any repurchase or rescission remedy requires that a consumer return the product in a condition comparable to what he or she received, and because the vehicle's value depreciates significantly with use and time, Plaintiffs believe that a prompt resolution of this action provides the greatest benefit to Class Members.

60.     This case presents substantial risk.  First, this case against a major automotive manufacturer alleging a defect in over a million Class Vehicles has the potential to take up significant amounts of attorneys' time and Court resources. Had litigation continued, Ford would have argued that no defect exists, or that, even if it did exist, Plaintiffs would not be able to show that the defect constitutes a safety concern. Ford would also be expected to argue that individual issues as to liability and damages would prevail over common issues.

61.     The technological issues in this case are complex, and Ford contends that changes in the manufacturing process, design, and software created multiple versions of the Transmission, precluding the likelihood that one common defect exists. Had litigation continued, Ford would likely have argued that the variations in the Transmission and in the Alleged Defect also preclude class certification of the consumer

fraud claims for omission.  In addition, Ford would have argued that, among other individual variations, questions regarding each customer's proper maintenance of the vehicle, driving conditions, and the reasonableness of repair attempts, such as whether the vehicle was taken timely to the dealer for repairs, among others, would preclude certification of the warranty claims.  These are the types of defenses that, if accepted, would support a denial of certification.

62.     Furthermore, in investigating and prosecuting this action, Class Counsel was required to understand the highly-advanced technology at issue, defeat a motion to dismiss, and fashion a sophisticated settlement to address a range of harms.

63.     Finally, because any repurchase or rescission remedy requires that a consumer return the product in a condition comparable to what he or she received, and because the vehicle's value depreciates significantly with use and time, a prompt resolution of this action provides the greatest benefit to Class Members.

### PLAINTIFFS AND CLASS COUNSEL'S ADEQUACY, ATTORNEYS' FEES, DISTRIBUTION AND OTHER AGREEMENTS

64.     There is no suggestion of a conflict between the Class Representatives and Class Counsel on the one hand, and Class Members on the other.

65.     Plaintiffs and Class Counsel have vigorously pursued the claims on behalf of the Class, adducing important facts regarding Ford's pre-sale knowledge of the Alleged Defect, litigating the matter, and negotiating a valuable Settlement to deliver immediate relief to the Class. Thereafter, Class Counsel forcefully defended a Settlement that has already delivered over $47.4 million to the Class and, together with Assisting Class Members, bargained for even greater benefits as part of a global settlement. Given the heightened interest in the Settlement, Class Counsel has devoted substantial resources to answering inquiries and instructing Class Members regarding claims submissions, documentation, problems with Ford Dealers and myriad other issues.

66.     Lead Class Counsel Capstone has fee-sharing agreements with Class Counsel Berger & Montague and Class Counsel Zimmerman Law Offices P.C. These

1  arrangements have been consented to by the firm's respective clients. This was

2  previously disclosed by Class Counsel. (ECF No. 170-1, ¶ 6.)

3  ## CAPSTONE LAW APC'S QUALIFICATIONS AND EXPERIENCE

4  67.    Short biographies summarizing my experience and that of other attorneys

5  at Capstone is set forth in a firm resume attached as Exhibit 1 to my declaration

6  supporting Plaintiffs' Renewed Motion for Attorneys' Fees, Costs, and Service Awards.

7  68.    I am a partner at Capstone and lead the firm's complex motion and appeals

8  practice group. I was one of three of Capstone attorneys named as *California Lawyer*'s

9  Attorneys of the Year ("CLAY") in the employment practice area for 2014 for our work

10 in the landmark case *Iskanian v. CLS Transportation Los Angeles*, 59 Cal. 4th 348

11 (2014). I was also lead counsel on several other landmark decisions. In *McGill v.*

12 *Citibank N.A.*, 2 Cal. 5th 945 (2017), named by Daily Journal as one of 2017's "Top 5

13 Appellate Reversals" in California, I represented the plaintiffs and authored the merits

14 briefs before the California Supreme Court, ultimately securing a major decision holding

15 that the right to seek public injunctive relief under the state's consumer protection laws

16 cannot be waived. In *Williams v. Superior Court (Marshalls of Calif.)*, 3 Cal.5th 531

17 (2017), I authored the merits briefs in the California Supreme Court and achieved a

18 watershed decision as to the broad scope of discovery in PAGA actions.  Recently I was

19 lead attorney on the appeal in the precedential *Nguyen v. Nissan N.A.*, 726 F.3d 811 (9th

20 Cir. 2019), which reversed a denial of certification regarding allegations of an

21 undisclosed automotive defect. *Nguyen* made law regarding the proper use of "benefit of

22 the bargain" damages models in consumer class actions.

23 69.    Capstone has an established practice in automotive defect class actions.

24 Capstone, including Tarek Zohdy and Cody Padgett, is the lone Class Counsel in two

25 pending actions involving alleged undisclosed automotive defects that achieved class

26 certification on contested motion: *Victorino v. FCA US, LLC*, No. 16-1617-GPC, 2019

27 WL 5268670 (S.D. Cal. Oct. 17, 2019) and *Salas v. Toyota Motor Sales, U.S.A., Inc.*,

28 No. 15-8629-FMO, 2019 WL 1940619 (C.D. Cal. Mar. 27, 2019). Capstone is also lead

Page 21

or co-lead Class Counsel in the following class actions involving alleged undisclosed automotive defects that resulted in a classwide settlement: *See Wylie v. Hyundai Motor America*, No. 16-02102-DOC (C.D. Cal.) (preliminary approval granted in settlement resolving allegations of transmission defect); *Weckwerth v. Nissan N.A.*, No. 18-00588 (M.D. Tenn.) (preliminary approval granted in settlement resolving allegations of CVT transmission defect; awaiting final approval); *Granillo v. FCA US LLC*, No. 16-00153-FLW (D. N.J. Feb. 12, 2019) (finally approving settlement [describe]; *Morishige v. Mazda Motor of Am., Inc.*, No. BC595280 (Los Angeles Sup. Ct. Aug. 20, 2019); *Falco v. Nissan N. Am. Inc.*, No. 13-00686-DDP (C.D. Cal. July 16, 2018), Dkt. No. 341 (finally approving settlement after certifying class alleging timing chain defect on contested motion); *Batista v. Nissan N.Am., Inc.*, No. 14-24728-RNS (S.D. Fla. June 29, 2017), Dkt. 191 (finally approving class action settlement alleging CVT defect); *Chan v. Porsche Cars N.A., Inc.*, No. No. 15-02106-CCC (D. N.J. Apr. 11, 2017), Dkt. 43 (preliminarily approving class action settlement involving alleged windshield glare defect); *Klee v. Nissan N. Am., Inc.*, No. 12-08238-AWT, 2015 WL 4538426, at *1 (C.D. Cal. July 7, 2015) (settlement involving allegations that Nissan Leaf's driving range, based on the battery capacity, was lower than was represented by Nissan); *Asghari v. Volkswagen Group of America, Inc.*, Case No. 13-cv-02529-MMM-VBK (C.D. Cal.) (class action settlement providing repairs and reimbursement for oil consumption problem in certain Audi vehicles); *Aarons v. BMW of N. Am.*, LLC, No. CV 11-7667 PSG, 2014 WL 4090564 (C.D. Cal. Apr. 29, 2014), objections overruled, No. CV 11-7667 PSG CWX, 2014 WL 4090512 (C.D. Cal. June 20, 2014) (C.D. Cal.) (class action settlement providing up to $4,100 for repairs and reimbursement of transmission defect in certain BMW vehicles).

70.     Based on the class action experience of Capstone's lawyers, Lead Class Counsel believes the proposed Settlement is fair, adequate, and reasonable and in the best interests of the Class given the risks, expenses, and duration of further litigation.

1

2          I declare under penalty of perjury under the laws of the United States of America

3    that the foregoing is true and correct.  Executed this 24th day of January, 2020, at Los

4    Angeles, California.

5

6                                              /s/ Ryan H. Wu_____
                                               Ryan H. Wu
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit 1

**In the United States District Court**

**for the Central District of California**

*Vargas v. Ford Motor Co*

**Case No. 2:12-cv-08388-AB-FFM**

**STIPULATION AND AGREEMENT OF SETTLEMENT**

This Stipulation and Agreement of Settlement ("Settlement Agreement" or "Settlement") is entered into this __th day of March, 2017 by and among the named Plaintiffs: Omar Vargas, Robert Bertone, Michelle Harris, Sharon Heberling, Kevin Klipfel, Andrea Klipfel, Maureen Cusick, Eric Dufour, Abigail Fisher, Christi Groshong, Virginia Otte, Tonya Patze, Lindsay Schmidt, Patricia Schwennker, and Patricia Soltesiz, Joshua Bruno, Jason Porterfield, and Jamie Porterfield (collectively, the "Named Plaintiffs" or "Class Representatives" or "Plaintiffs") and Defendant, Ford Motor Company ("Ford"), by and through their respective counsel.

**RECITALS**

WHEREAS, on or about September 28, 2012, an action entitled *Omar Vargas v. Ford Motor Company* was filed in the United States District Court for the Central District of California ("*Vargas*"). The case was initially assigned to the Honorable Audrey B. Collins, given the case number 2:12-cv-08388, and subsequently transferred to the calendar of the Honorable André Birotte Jr.;

WHEREAS, the *Vargas* complaint alleged causes of action against Ford for violating California's and Florida's consumer protection laws, breach of express warranty, and breach of implied warranty under the Song-Beverly Consumer Warranty Act. The complaint alleged that the PowerShift Transmission ("Transmission" or "DPS6") installed in the 2011-2013 Ford Fiesta and the 2012-2013 Ford Focus is dangerously defective. Plaintiffs allege that the Transmission slips, bucks, kicks, and jerks, resulting in sudden or delayed acceleration of the vehicle. In the

1

Complaint, Plaintiffs sought certification of a nationwide class of current and former owners and lessees of vehicles equipped with such transmissions;

WHEREAS, another suit, entitled *Klipfel v. Ford Motor Co.*, No. 2:15-cv-02140-AB (FFMx) ("*Klipfel*"), was filed in the San Luis Obispo Superior Court and removed by Ford to the Central District of California and alleged similar claims to *Vargas* but expanded the scope of the class to include additional model year vehicles with the PowerShift Transmission ("Class Vehicles"). The operative First Amended Complaint in *Klipfel*, which was filed on May 20, 2015;

WHEREAS, additional actions alleging similar claims and a common nucleus of facts also have been filed in the Central; District of California and in other districts around the country, including *Cusick, et al v. Ford Motor Company*, No. 2:15-cv-08831-AB-FFM (C.D. Cal.) ("*Cusick*") and *Anderson v. Ford Motor Company*, No. 1:16-cv-01632 (N.D. Ill.) (collectively, the "Actions");

WHEREAS, pursuant to the parties' stipulation, on December 12, 2015, the Court consolidated the *Vargas* and *Klipfel* actions, with *Vargas* designated as the surviving action;

WHEREAS, pursuant to the parties' stipulation, on February 22, 2017, the Court consolidated *Cusick* with *Vargas* for settlement purposes, with *Vargas* designated as the surviving action.  The First Amended Complaint in *Cusick*, filed on February 22, 2016, was deemed the "Operative Complaint" for settlement purposes.

WHEREAS, the Settling Parties participated in significant discovery, including review of voluminous documents and related databases produced by Ford; numerous written discovery requests; discovery from various third parties in response to Plaintiffs' subpoenas; the depositions of two (2) Ford personnel; the deposition of third party Getrag Transmission Corp. and the depositions of approximately four (4) of the Named Plaintiffs;

WHEREAS, Class Counsel conducted a thorough investigation and evaluation of the facts and law relating to the claims asserted to determine how best to serve the interests of the Named Plaintiffs and the Class;

WHEREAS, counsel for the Settling Parties conducted extensive arm's-length negotiations, including four (4) sessions in which Eric D. Green, Esquire participated as a mediator regarding the substance and procedure of a possible class settlement prior to entering into this Settlement Agreement;

WHEREAS, the Plaintiffs, as well as Class Counsel, believe the Released Claims have merit. The Plaintiffs and Class Counsel, however, recognize and acknowledge the expense and length of continued proceedings that would be necessary to prosecute the Released Claims against Ford through trial and appeals, and the importance of providing timely relief to Class Members whose vehicles are aging. The Plaintiffs and Class Counsel also have taken into account the uncertain outcome and risk of any litigation, especially in complex actions such as this Litigation, as well as the difficulties and delays inherent in such litigation. The Plaintiffs and Class Counsel are mindful of the inherent problems of proof under, and possible defenses to, the Released Claims. The Plaintiffs and Class Counsel believe that the proposed Settlement confers substantial benefits upon the Class. Based on their evaluation of all of these factors, the Plaintiffs and Class Counsel have determined that the Settlement is in the best interests of the Class and represents a fair, reasonable, and adequate resolution of the Litigation; and

WHEREAS, Ford denies any liability to the Plaintiffs and the Class. Ford has taken thorough discovery concerning the claims asserted by the Plaintiffs and believes it has meritorious defenses to all of the claims raised in this Litigation. Nevertheless, Ford recognizes and acknowledges the expense and length of continued proceedings that would be necessary to defend the Litigation through trial and appeals. In agreeing to enter into this Settlement, Ford also has taken into account the uncertain outcome and risk of any litigation, especially in complex actions such as this Litigation, as well as the difficulties and delays inherent in such litigation;

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED, by and among the Settling Parties that, subject to approval of the Court, the Litigation and the Released Claims shall be fully and finally compromised, settled, and released, and that the Litigation will be dismissed with prejudice subject to and upon the terms and conditions described below.

## I.   DEFINITIONS.

In addition to words and terms defined elsewhere in this Stipulation and Agreement of Settlement, the following words and terms shall have the definitions stated in this Article I.

### A.   "Action" or "Litigation."

"Action," "Actions" or "Litigation" means *Vargas v. Ford Motor Company*, No. 2:12-cv-08388-AB (FFMx) (C.D. Cal.); *Klipfel v. Ford Motor* Co., No. 2:15-cv-02140-AB (FFMx); *Cusick, et al v. Ford Motor Company*, No. 2:15-cv-08831-AB-FFM (C.D. Cal.); and *Anderson v. Ford Motor Company*, No. 1:16-cv-01632 (N.D. Ill.).

### B.   "Approval Date."

"Approval Date" means the date on which the Court issues the Final Order and Judgment described in Section III.F. below.

### C.   "Arbitration Claimant."

"Arbitration Claimant" refers to any Class Member who has filed a claim with the Arbitrator as part of the Arbitration Program provided by this Settlement.

### D.   "Arbitration Administrator" and "Appellate Arbitration Administrator."

"Arbitration Administrator" means the company retained by Ford and approved by Class Counsel to administer the Arbitration Program established by this Settlement.  "Appellate Arbitration Administrator" means the company retained by Ford and approved by Class Counsel to administer the Appellate Arbitration Program established by this Settlement.  Initially, the Arbitration Administrator shall be DeMars & Associates and the Appellate Arbitration Administrator shall be JAMS.  Ford may retain other companies to perform the services initially provided by DeMars & Associates or by JAMS with the agreement of Lead Class Counsel, or, absent agreement, with the approval of the Court upon a showing of good cause.

4

**E.      "Arbitration Program" and "Appellate Arbitration Program."**

"Arbitration Program" means the arbitration program created by this Settlement and operated by the Arbitration Administrator.  "Appellate Arbitration Program" means the appellate arbitration program created by this Settlement and presided over by arbitrators affiliated with the Appellate Arbitration Administrator.

**F.      "Arbitrator" and "Appellate Arbitrator."**

"Arbitrator" means an arbitrator affiliated with the Arbitration Administrator that presides over an arbitration under the Arbitration Program.  "Appellate Arbitrator" means an arbitrator affiliated with the Appellate Arbitration Administrator that presides over an appeal of an arbitration award relating to a Vehicle Repurchase.

**G.      "Claim Form."**

"Claim Form" means the document a Class Member may submit to the Claims Administrator to seek relief under Sections II.B, II.C., or II.G of this Settlement Agreement.

**H.      "Claimant."**

"Claimant" means a Class Member who has completed and submitted a Claim Form.

**I.      "Claims Administrator."**

"Claims Administrator" shall mean KCC, except that after the Effective Date Ford may retain a different Claims Administrator with the agreement of Lead Class Counsel or, absent agreement, with the approval of the Court on a showing of good cause.

**J.      "Class Counsel."**

"Class Counsel" means Lead Class Counsel Capstone Law APC ("Capstone"), and Co-Class Counsel Berger & Montague, P.C. ("B&M") and Zimmerman Law Offices, P.C. ("Zimmerman").

**K.      "Class Notice," "Short Form Class Notice," "Long Form Class Notice," "Publication Notice."**

"Short Form Class Notice" means the notice of Settlement that will be mailed to the "Settlement Class Members," as defined herein, in substantially the same form as Exhibit A.

"Long Form Class Notice" means the notice of Settlement that will be posted on the Settlement Website in substantially the same form as Exhibit B.  "Class Notice" means the Short Form Class Notice and the Long Form Class Notice, separately or collectively.  "Publication Notice" means a 1/8 page ad in the Marketplace/Legal Notice Section of USA Today that will be in substantially the same form as Exhibit C.

      L.      **"Class," "Class Members," or "Settlement Class Members."**

"Class," "Class Members" or "Settlement Class Members" means, for purposes of the Settlement only, a nationwide class of all current residents of the United States (including territories of the United States) who, prior to the Order Granting Preliminary Approval, purchased or leased new or used Class Vehicles that (1) were originally sold in the United States (including territories of the United States) and (2) were equipped with the PowerShift Transmission. Except as to the named plaintiffs in this Agreement and the *Anderson* plaintiffs, the class definition expressly excludes all owners or lessees of Class Vehicles who have filed and served litigation against Ford alleging problems with the PowerShift Transmission in Class Vehicles that was pending as of the Notice Date and who do not dismiss their actions before final judgment and affirmatively elect to opt-in to the Settlement.  Owners or lessees of Class Vehicles who dismiss such litigation and affirmatively opt-in to the Settlement shall be members of the Class for all purposes.  The class definition also expressly excludes (1) Ford's officers, directors, employees, affiliates and affiliates' officers, directors and employees; their distributors and distributors' officers, directors, and employees; and Ford Dealers and Ford Dealers' officers and directors; (2) judicial officers assigned to the Actions and their immediate family members, and any judicial officers who may hear an appeal on this matter; (3) all entities and natural persons who have previously executed and delivered to Ford releases of their claims based on the PowerShift Transmission; (4) all parties to litigation against Ford alleging problems with the PowerShift Transmission in Class Vehicles in which final judgment has been entered; and (5) all those otherwise in the Class who timely and properly exclude themselves from the Class as provided in this Settlement.

**M.      "Court."**

"Court" means the United States District Court for the Central District of California.

**N.      "Class Vehicles."**

"Class Vehicles" or a "Class Vehicle" means all 2012-2016 Ford Focus and 2011-2016 Ford Fiesta vehicles that (1) were originally sold in the United States (including United States territories) and (2) were equipped with a PowerShift Transmission.

**O.      "Customer Campaign 14M01."**

"Customer Campaign 14M01" means Ford's Customer Satisfaction Campaign Program Number 14M01 that extended the limited warranty on the clutch, the transmission input shaft seals, and the transmission software calibration installed in certain Class Vehicles to a total of seven (7) years or 100,000 from the warranty start date, whichever occurs first, and provided a refund for owners who paid out-of-pocket expenses for fixes on the above Transmission parts.

**P.      "Customer Campaign 14M02."**

"Customer Campaign 14M02" means Ford's Customer Satisfaction Campaign Program Number 14M02 that extended the warranty on the transmission control module installed in certain Class Vehicles to a total of ten (10) years or 150,000 from the warranty start date, whichever occurs first, and provided a refund for owners who paid out-of-pocket expenses for fixes to the transmission control module.

**Q.      "Defendant" or "Ford."**

"Defendant" or "Ford" means Ford Motor Company.

**R.      "Effective Date of Settlement" or "Effective Date."**

"Effective Date of Settlement" or "Effective Date" means the first business day after: (1) the Court enters the Final Order and Judgment, in all material respects similar to the form attached hereto as Exhibit F; and (2) all appellate rights with respect to the Final Order and Judgment have expired or have been exhausted in such a manner as to affirm the Final Order and Judgment.  If any appeal has been taken from the Final Approval Order, the "Effective Date" means the date on which all appeals therefrom, including petitions for rehearing or reargument,

7

petitions for rehearing en banc and petitions for a writ of certiorari or any other form of review, have been fully disposed of in a manner that affirms the Final Approval Order.  An appeal that challenges only attorneys fees, costs, or service awards shall extend the Effective Date only with respect to such attorneys fees, costs, or service awards.

**S.      "Fairness Hearing."**

The "Fairness Hearing" means the final hearing, held after the Preliminary Approval Order is issued, in which the Court will determine whether this Settlement Agreement should be finally approved as fair, reasonable, and adequate, and whether the proposed Final Order and Judgment should be entered, and if so, to determine the amount of attorneys' fees and costs to be awarded to Class Counsel.

**T.      "Ford Dealer" or "Dealer."**

"Ford Dealer" or "Dealer" means any dealer authorized by Ford to sell, lease, and/or service Ford vehicles located in the United States (including territories of the United States).

**U.      "Lead Class Counsel."**

"Lead Class Counsel" means Capstone Law APC.

**V.      "Named Plaintiffs."**

"Named Plaintiffs" means the individuals who are identified as plaintiffs in the Actions.

**W.      "Notice Date."**

"Notice Date" means seven calendar days after the date on which the initial mailing of the Short Form Class Notice to all Class Members is complete.

**X.      "Operative Complaint."**

The "Operative Complaint" means the First Amended Complaint filed on May 20, 2016 in *Cusick v. Ford.*

**Y.      "PowerShift Transmission" or "Transmission."**

"PowerShift Transmission" or "Transmission" means the DPS6 PowerShift Dual-Clutch Transmission that Ford provided as an option for the Class Vehicles.

**Z.      "Preliminary Approval Date."**

8

"Preliminary Approval Date" means the date on which the Court issues the Preliminary Approval Order described in Section III.A. below in a form substantially the same as Exhibit E.

**AA.   "Proof of Ownership."**

"Proof of Ownership" means documentation establishing that the Class Member owned or leased the Class Vehicle at the time of each repair forming the basis for a claim under Sections II.B, II.C, or II.G.  "Proof of Ownership" shall be established through one of the following three methods:

1.   All repair records submitted in support of the claim identify the same Class Member as the person requesting the repairs; OR

2.   Submission of a (a) vehicle title, vehicle purchase agreement, or vehicle lease agreement that identifies the Class Member as the vehicle owner, purchaser, or lessee at the time of the first repair that forms the basis of the claim, AND (b) vehicle registration identifying the same Class Member as the vehicle owner as of the date of the latest repair that forms the basis of the claim (or as of a later date); OR

3.   For each repair that forms the basis for the claim, submission of either (a) a repair record that identifies the same Class Member as the person who requested the repair, OR (b) a vehicle registration that identifies the same Class Member as the vehicle owner as of the date of each repair.

**BB.   "Recall Program."**

"Recall Program" means a program initiated by Ford by which Ford offers to repair or replace, at no cost to vehicle owners, vehicle components in all vehicles covered by the program without regard to whether the vehicle has experienced a failure or malfunction.  "Recall Program" does not include Technical Service Bulletins ("TSBs"), Special Service Messages ("SSMs"), or programs in which Ford extends the duration of vehicle warranties.

**CC.   "Released Claims."**

"Released Claims" means any and all claims, demands, actions, causes of action, and suits based in whole or in part on alleged defects in the PowerShift Transmission, including express and implied warranty, consumer protection, unjust enrichment, and lemon law claims, excluding personal injury and wrongful death claims, and excluding claims for damage to property other than Class Vehicles.  "Released Claims" also includes all other claims, demands, actions, causes of action of any nature whatsoever, including, but not limited to, any claim for violations of federal, state, or other law (whether in contract, tort, or otherwise, including statutory and injunctive relief, common law, property, warranty and equitable claims), and also including Unknown Claims (as defined below) that could be asserted by the Class Members against the Released Parties in the Litigation, or in any other complaint, action, or litigation in any other court or forum, based upon an alleged defect of the PowerShift Transmission, excluding personal injury and wrongful death claims and claims for damage to property other than Class Vehicles.

**DD.    "Released Parties."**

"Released Parties" means Ford, Ford Dealers, their past or present directors, officers, employees, partners, principals, agents, heirs, executors, administrators, successors, reorganized successors, subsidiaries, divisions, parents, related or affiliated entities, underwriters, insurers, coinsurers, re-insurers, licensees, divisions, joint ventures, assigns, associates, attorneys, and controlling shareholders.

**EE.    "Service Visit."**

"Service Visit" means a trip taken by a Class Member to a Ford Dealer within 7 years/100,000 miles of delivery of the Class Vehicle to the first retail customer, whichever occurs first, to inspect and/or repair a problem related to the PowerShift Transmission in a Class Vehicle.  If a Class Member makes more than one trip to the Ford Dealer to address the same complained-about problem, each trip will count as a separate Service Visit.  However, if the subsequent trips are to install components that were ordered during the initial visit, all trips will count as a single Service Visit.

**FF.    "Settlement" or "Class Action Settlement."**

"Settlement" means the settlement contemplated by this Stipulation and Agreement of Settlement.

**GG.    "Settlement Agreement."**

"Settlement Agreement" means this Stipulation and Agreement of Settlement.

**HH.    "Settlement Website."**

"Settlement Website" means the public website that will provide information and key filings regarding the Class Action Settlement, including FAQs and other materials educating Class Members on the content of the settlement and the approval process, and that will, after the Approval Date, allow a Class Member to complete and submit an online Claim Form to the Claims Administrator and to obtain a description of the remedies available to the Class.

**II.    "Settling Parties."**

"Settling Parties" means Named Plaintiffs and Ford.

**JJ.    "Software Flash."**

"Software Flash" includes software flashes, software reflashes, software updates, software resets and software calibrations made by a Ford Dealer to the PowerShift Transmission in a Class Vehicle within 7 years/100,000 miles of delivery of the Class Vehicle to the first retail customer, whichever occurs first, that was not performed as part of a safety or non-safety Recall Program.   The Software Flash must be evidenced by a receipt or invoice from a Ford dealer showing that procedures with one or more of the following labor codes were performed on the Class Vehicle:

| 110333A | 131102A | 150090M | 160109C | 14M01DD |
| 110405A | 131104A | 150090N | 160109D | 14M01E |
| 110513A | 131108A | 150090P | 160129A | 14M01EE |
| 110524A | 131109A | 150090Q | MT131102 | 14M01GG |
| 110902A | 131110A | 150120H | R08101 | 14M01H |

| 120104A | 140131A | 150120L | R08102 | 14M01L |
| 130405A | 140131B | 150120M | R11021 | 14M01M |
| 130405B | 140131C | 150120N | 14M01A | 14M01N |
| 130405C | 140131D | 150120P | 14M01AA | 14M01P |
| 130406A | 140131E | 150120Q | 14M01BB | 14M01Q |
| 130904A | 150017A | 160044A | 14M01C | 14M02B |
| 130904B | 150090H | 160109A | 14M01CC | 14M02C |
| 130904C | 150090L | 160109B | 14M01D | 14M02D |

Ford may supplement this labor code list as necessary.  If more than one Software Flash occurs during the same Service Visit, it shall be counted as a single Software Flash.

**KK.    "Transmission Hardware Replacement."**

"Transmission Hardware Replacement" means a replacement performed by a Ford Dealer of any of the following parts of the PowerShift Transmission: (1) 7B546 Disc Asy-Clutch; (2) 7Z369 Control Mod Trans (TCM); (3) 7052 Oil Seal-Trans Rear; (4) 7000 Transmission Asy-Aut; (5) 7C604 Motor-Frt Clutch; (6) 7A508 Rod-Cl/Slave Cyl Pus; (7) 6K301 Seal/RetC/Shft Oil; (8) 7060 Shaft/Bshg Asy-Out; (9) 7048 Seal-Input Shaft Oil; and/or (10) 7515 Lever Asy-Clutch Rel.  A "Transmission Hardware Replacement" must have been performed on a Class Vehicle within 7 years/100,000 miles of delivery of the Class Vehicle to the first retail customer, whichever occurs first, and cannot have been performed as part of any safety or non-safety Recall Program.  If more than one Transmission Hardware Replacement occurs during the same Service Visit, it shall be counted as a single Transmission Hardware Replacement.

**LL.    "Unknown Claims."**

"Unknown Claims" means any and all Released Claims that any Class Member does not know to exist against any of the Released Parties and that, if known, might have affected his or her decision to enter into or to be bound by the terms of this Settlement. The Plaintiffs and Class

Members acknowledge that they may hereafter discover facts in addition to or different from those that they now know or believe to be true concerning the subject matter of this release, but nevertheless fully, finally, and forever settle and release any and all Released Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, that may exist now, which may have already existed, or which may hereafter exist, based upon the alleged defect in the PowerShift Transmission in the Class Vehicles as described in Operative Complaint, without regard to subsequent discovery or existence of such different or additional facts concerning each of the Released Parties. The foregoing waiver includes, without limitation, an express waiver to the fullest extent permitted by law by the Plaintiffs and the Class Members of any and all rights under California Civil Code § 1542 or any similar law of any other state or of the United States, which provides:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MIGHT HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

####    MM.    **"Vehicle Repurchase."**

"Vehicle Repurchase" means the repurchase or replacement by Ford of a Class Vehicle owned or leased by a Class Member.

####    NN.    **"Vehicle Discount Certificate."**

"Vehicle Discount Certificate" means a non-transferable discount certificate which may be issued electronically and will be valid for a period of twelve months after it is issued.

## II.    SETTLEMENT CONSIDERATION.

In consideration for the Release provided for by the Settlement and for the dismissal of the Litigation with prejudice, under the terms of this Settlement Agreement, Ford agrees to provide consideration to the Class Members as follows.

####    A.    **Notice of Class Settlement.**

Ford agrees to pay all expenses in connection with a notice program on the terms provided in Section III.

**B.      Cash Payments For Three or More Software Flashes.**

Class Members with three or more Software Flashes performed while they owned or leased their Class Vehicle are eligible to receive a cash payment of $50 for the third Software Flash and for each subsequent Software Flash performed while they owned or leased their Class Vehicle.  Payments made under this section shall not exceed a total cumulative payment of $600 per Class Member.  Class Members who have previously received, or are at the time of the claim eligible for, a cash payment or Vehicle Discount Certificate pursuant to Section II.C are not eligible for a cash payment under this section with respect to the same Class Vehicle.

**C.      Cash Payments or Vehicle Discount Certificates For Three or More Transmission Hardware Replacements.**

**1.      Cash Payment and Discount Certificate Value.**

A Class Member who owns or leases a Class Vehicle that had three or more Transmission Hardware Replacements while that Class Member owned or leased the Class Vehicle is eligible to receive, at the Class Member's option, either (1) a cash payment from Ford, or (2) a Vehicle Discount Certificate, according to the following schedule based on the number of those Transmission Hardware Replacements performed on the Class Vehicle while the Vehicle was owned by that Class Member:

| Number of Transmission Hardware Replacement | Cash Payment | Discount Certificate Value |
|---|---|---|
| For the 3rd Replacement | $200 | $400 |
| For the 4th Replacement | $275 | $550 |
| For the 5th Replacement | $350 | $700 |
| For the 6th Replacement | $425 | $850 |

| For the 7th Replacement | $500 | $1000 |
|---|---|---|
| For the 8th Replacement | $575 | $1150 |

2.   Multiple Transmission Hardware Repairs During Same Service Visit.

If more than one Transmission Hardware Replacement occurs during the same Service

Visit, it shall be counted as a single Transmission Hardware Replacement.

3.      Deduction for Prior Cash Payments Pursuant to Section II.B.

Class Members who have not previously received, and are not eligible for, cash payments

under Section II.C may make claims for cash payments under Section II.B based on one or more

Service Visits at which both a Software Flash and a Transmission Hardware Replacement were

performed.  However, a single Service Visit cannot be used to support both a claim for a cash

payment under Section II.B. and a claim for a cash payment or Vehicle Discount Certificate

under Section II.C.  The Claims Administrator, in processing claims submitted pursuant to

Section II.C., shall make whatever deductions are necessary to ensure that Service Visits are not

double counted.  See Sections II.F.6 and 7 below for examples of the intended application of this

Section.

4.   Unused and Expired Vehicle Discount Certificates.

Vehicle Discount Certificates expire twelve months after they are issued.  However, the

amount of any Vehicle Discount Certificate issued pursuant to Section II.C.1 shall be increased

by the amount of any unused and expired vehicle discount certificates previously issued to the

same Class Member for the same Class Vehicle.

5.   Maximum Cash Payment and Discount Amounts.

Payments to Class Members under Section II.C.1 are capped at a cumulative total of

$2,325, which means that Class Members shall not receive any further cash payments beyond the

eighth Transmission Hardware Replacement.  Vehicle Discount Certificates are capped at a

cumulative total of $4,650, which means that a Class Member shall not receive a Vehicle

Discount Certificate beyond the eighth Transmission Hardware Replacement.  Class Members

may apply more than one valid Vehicle Discount Certificate toward the purchase or lease of a new Ford Vehicle from a Ford Dealer, but the maximum discount shall be $4,650.  However, a Class Member may use other valid discount offers from Ford or a Ford Dealer for an additional discount on top of the discount value of the Vehicle Discount Certificate(s).

6.      Deduction  from Vehicle Repurchase Award for Cash Payments or Vehicle Discount Certificates.

Class Members who receive a cash payment or a Vehicle Discount Certificate under II.B or II.C may still pursue claims in the Arbitration Program.   However, any amount awarded by the Arbitrator for a Vehicle Repurchase shall be reduced by any cash payments made to the claimant pursuant to Sections II.B or II.C, or by the value of any used Vehicle Discount Certificates issued pursuant to Secton II.C.  Any amount awarded by the Arbitrator for a Vehicle Repurchase shall also be reduced by the value of any unused and unexpired Vehicle Discount Certificates, unless the Certificate is voided by the Arbitrator.

**D.      Timing and Submission of Claims Under Sections II.B and II.C.**

1.      To obtain a cash payment or Vehicle Discount Certificate as set forth in Sections II.B or II.C, a Class Member must submit a claim, via a Claim Form, to the Claims Administrator.  Ford shall pay all claims that the Claims Administrator approves and finds to be timely submitted. In addition to email copies of Claim Forms and hardcopy Claim Forms, which may be submitted by mail to the Claims Administrator, the Settlement Website shall be designed to permit the submission of claims electronically.  The electronic claim submission process shall include the use of a unique claim number for each Class Member to whom notice is mailed.  Once the unique claim number is entered by a Class Member via the electronic claim submission process, portions of the electronic Claim Form shall be automatically

16

completed with the Class Member's name and Vehicle Identification Number ("VIN") based upon information previously obtained by the Claims Administrator from Ford and/or R.L. Polk & Co. (nka IHS Automotive).

2.    Claims for cash payments under Sections II.B and II.C cannot be submitted prior to the Approval Date.  Claim forms will not be made available until the Approval Date.

3.    Claims for cash payments under Sections II.B and II.C based on three or more Software Flashes or Transmission Hardware Replacements performed prior to or on the Approval Date, along with supporting documentation, must be submitted online or postmarked within 180 days of the Approval Date.  Other claims for cash payments under Sections II.B and II.C must be submitted online or postmarked within 180 days of the Software Flash or Transmission Hardware Replacement for which a cash payment is sought.  Neither the Claims Administrator nor Ford shall have any obligation to pay any claims pursuant to Section II.B or II.C. that are not timely submitted.

**E.    Content of and Support for Claims Submitted Pursuant to Section II.B and II.C.**

1.    Claims for benefits under Section II.B or II.C must include repair orders, receipts, other documentation from a Ford Dealership, or state vehicle inspection reports (or some combination thereof) sufficient to establish for each Transmission Hardware Replacement or Software Flash on which the claim is based all of the following information:

a.    The Vehicle Identification Number ("VIN") of the vehicle on which the Transmission Hardware Replacement or Software Flash repairs were performed;

17

b.     The name and address of the Ford Dealer that performed the Transmission Hardware Replacement or Software Flash repairs;

c.     Whether the Transmission Hardware Replacement or Software Flash repairs were performed on the Class Vehicle within 7 years/100,000 miles of delivery of the Class Vehicle to the first retail customer, whichever occurs first; and

d.     A description of the services rendered and parts provided.

2.     Claims must also include documentation demonstrating the Class Member's Proof of Ownership at the time of each Transmission Hardware Replacement or Software Flash on which the claim is based.

3.     Claims must also include a declaration signed under penalty of perjury by the Class Member that attests to and affirms the authenticity of the documentation provided to support the claim and states that the Class Member actually owned or leased the Class Vehicle at the time of each Transmission Hardware Replacement or Software Flash on which the claim is based.

4.     Once a Class Member has submitted a claim pursuant to Section II.B or II.C. that was approved by the Claims Administrator, the Class Member may submit claims for subsequent Transmission Hardware Replacements or Software Flashes for the same Class Vehicle that are supported with the following documentation:

a.     Repair orders, receipts, other documentation from a Ford Dealership, or state vehicle inspection reports (or some combination thereof) sufficient to establish for each subsequent Transmission Hardware Replacement or Software Flash all of the information set forth in Sections II.E.1.a.-d. above;

18

b.      Documentation establishing the Class Member's Proof of Ownership of the Class Vehicle at the time of the subsequent Transmission Hardware Replacement or Software Flash; and

c.      A declaration signed under penalty of perjury by the Class Member that attests to and affirms the authenticity of the documentation provided to support the claim and stating that the Class Member actually owned or leased the Class Vehicle at the time of each Transmission Hardware Replacement or Software Flash on which the claim is based.

**F.      Examples.**

The following are examples of how the parties intend Sections II.B and II.C to be interpreted.

1.      Class Member A experiences two Transmission Hardware Replacements and two Software Flashes while she owns a Class Vehicle and within 7 years/100,000 miles of delivery of the Class Vehicle to the first retail customer and then sells the Class Vehicle to Class Member Z.  Class Member Z experiences two Transmission Hardware Replacements and two Software Flashes while he owns the Class Vehicle and within 7 years/100,000 miles of delivery of the Class Vehicle to the first retail customer.  Neither Class Member A nor Class Member Z is entitled to any benefits under Sections II.B or II.C. Class Member Z later experiences a third Transmission Hardware Replacement and a Third Software Flash while he owns the Class Vehicle and within 7 years/100,000 miles of delivery of the Class Vehicle to the first retail customer.  Pursuant to Section II.C, Class Member Z is entitled to a cash payment of $200, or a $400 Vehicle Discount Certificate, provided he submits a claim and the required

19

documentation within 180 days of the third replacement.  Class Member Z is not entitled to benefits under Section II.B, because he is eligible to seek a cash payment under Section II.C.

2.    Class Member B experiences four Transmission Hardware Replacements while she owns a Class Vehicle and within 7 years/100,000 miles of delivery of the Class Vehicle to the first retail customer.  Class Member B submits a claim with the required documentation within 180 days of the Third Transmission Hardware Replacement.  Class Member B is entitled to a cash payment of $475 ($200 for the third Transmission Hardware Replacement and $275 for the fourth) or a Vehicle Discount Certificate in the amount of $950 ($400 for the third Transmission Hardware Replacement plus $550 for the fourth).  Class Member B elects the cash payment.  Less than one year later, Class Member B experiences a fifth Transmission Hardware Replacement within 7 years/100,000 miles of delivery of the Class Vehicle to the first retail customer.  She submits a timely claim with the required documentation.  She is entitled to an additional cash payment of $350 or a Vehicle Discount Certificate in the amount of $700.

3.    Class Member C experiences four Transmission Hardware Replacements while she owns a Class Vehicle and within 7 years/100,000 miles of delivery of the Class Vehicle to the first retail customer.  Class Member C would, upon timely submission of a claim and supporting documentation, be entitled to a cash payment of $475 or a Vehicle Discount Certificate in the amount of $950.  However, Class Member C fails to submit a timely claim and is not entitled to either a cash payment or a Vehicle Discount Certificate.  One year

later, Class Member C still owns the Class Vehicle and experiences a fifth Transmission Hardware Replacement within 7 years/100,000 miles of delivery of the Class Vehicle to the first retail customer. Class Member C submits a timely claim with supporting documentation. She is entitled to a cash payment of $350 or a Vehicle Discount Certificate in the amount of $700.

4.     Class Member D experiences three Transmission Hardware Replacements while she owns a Class Vehicle and within 7 years/100,000 miles of delivery of the Class Vehicle to the first retail customer.  Class Member D timely submits a claim with supporting documentation and elects to receive a Vehicle Discount Certificate in the amount of $400.  Class Member D fails to redeem the Vehicle Discount Certificate within twelve months.  At that time, the Certificate expires and cannot be reissued.  However, Class Member D still owns the Class Vehicle and then experiences a fourth Transmission Hardware Replacement within 7 years/100,000 miles of delivery of the Class Vehicle to the first retail customer.  Class Member D submits a claim with supporting documentation within 180 days of the fourth Transmission Hardware Replacement. She is entitled to a cash payment of $275.  Alternatively, she may elect a Vehicle Discount Certificate in the amount of $950 ($550 for the fourth Transmission Hardware Repair plus the amount of the unused and expired certificate).

5.     Class Member E makes a trip to a Ford Dealer seeking repairs of a PowerShift Transmission problem.  The Ford Dealer replaces "Part 7B546 Disc Asy-Clutch" and "Part 7Z396 Control Mod Trans (TCM)".  The Dealer orders "Part 7000 Transmission Asy-Aut,"

which is out of stock.  Class Member E returns to the Dealer two weeks later to have "Part 7000 Transmission Asy-Aut" installed.  The two trips to the Dealer are counted as one Service Visit, and all three Transmission Hardware Replacements are counted as a single Transmission Hardware Replacement.  Therefore, Class Member E is not entitled to a cash payment.

6.    Class Member F brings her Class Vehicle to a Dealer at 10,000 miles and within a year of delivery, complaining of transmission problems.  The Dealer performs a Software Flash and replaces the clutch (Part 7B546 Disc Asy-Clutch).  Three months later, Class Member F brings her vehicle back to the Dealer complaining of continuing transmission problems.  Once again, the Dealer performs a software flash and replaces the clutch (Part 7B546 Disc Asy-Clutch).  One year later, at 24,000 miles, the Dealer performs another Software Flash in an attempt to resolve Class Member F's continuing concerns.  Class Member F is entitled to $50 under Section II.B.  She makes a properly documented claim within 180 days of the third Software Flash and is paid $50.  A year later, at 50,000 miles, while Class Member F still owns the Class Vehicle, the Ford Dealer once again replaces the clutch (Part 7B546 Disc Asy-Clutch).  Class Member F is now entitled to $200 under Section II.C , but that payment must be reduced by the $50 previously paid pursuant to Section II.B, because that payment was based in part on Service Visits at which both a Software Flash and a Transmission Hardware Replacement were performed.  Class Member F makes a timely and properly documented claim and is paid $150.  Class Member F is no longer eligible for any cash payments under Section II.B, but she can make future claims under Section II.C if

22

additional Transmission Hardware Replacements are performed while she owns the Class Vehicle and within 7 years/100,000 miles of delivery of the Class Vehicle to the first retail customer.

7.    Prior to the Approval Date, Class Member G experienced five Software Flashes during five Service Visits, within 7 years/100,000 miles of delivery of the Class Vehicle to the first retail customer and while Class Member G still owns the vehicle.  No Transmission Hardware Replacements were performed during three of these Service Visits.  However, on the fourth and fifth Service Visits, the Ford Dealer both performed a Software Flash and replaced her clutch ("Part 7B546 Disc Asy-Clutch").  As of the Approval Date, Class Member G is entitled to nothing pursuant to Section II.C, but she is entitled to $150 pursuant to Section II.B ($50 for the Software Flash performed on the third Service Visit, $50 for the Software Flash performed on the fourth Service Visit, and $50 for the Software Flash performed on the fifth Service Visit).  She must make a claim for this payment within 180 days of the Approval Date.  A year after the Effective Date, within 7 years/100,000 miles of delivery of the Class Vehicle to the first retail customer and while Class Member G still owns the vehicle, a Ford Dealer once again replaces the clutch ("Part 7B546 Disc Asy-Clutch").  If Class Member G makes a claim within 180 days of this Service Visit, she is entitled to a cash payment of $100 under Section II.C ($200 less $100 attributable to the portion of the payment she previously received under Section II.B. that was based in part on Service Visits that involved both Software Flashes and Transmission Hardware Replacements).  The net effect is that Class Member G collects $50 for the three Software Flashes that were performed

23

independently of the Transmission Hardware Replacements, and $200 for the three Transmission Hardware Replacements that were accompanied by Software Flashes.  Class Member G is not eligible for any further payments under Section II.B, but she is eligible for additional payments under Section II.C if she has additional Transmission Hardware Replacements within 7 years/100,000 miles of delivery of the Class Vehicle to the first retail customer and while Class Member G still owns the vehicle.

G. **Clutch Replacement And Extended Warranty For Vehicles Manufactured After June 5, 2013.**

For Class Vehicles manufactured after June 5, 2013, which are not covered by Customer Campaign 14M01, if (1) the Class Member has replaced the clutch twice within the 5-year/60,000 mile powertrain warranty, and (2) a Ford Dealer performs the appropriate diagnostic procedures and determines based on these procedures that a third clutch replacement is necessary, the Class Member may claim reimbursement for the cost of the additional clutch replacement if all three replacements were performed by a Ford Dealer while the Class Member owned or leased the Class Vehicle and the third replacement is performed by a Ford Dealer within 7 years/100,000 miles of delivery of the Class Vehicle to the first retail customer, whichever occurs first.  This replacement clutch itself shall be warranted for 2 years from the date of the clutch installation.  Claims for reimbursement under this section must be submitted to the Claims Administrator, along with supporting documentation, within 180 days of the additional clutch replacement.  Claims for reimbursement under this section cannot be submitted prior to the Approval Date, however, and all claims for reimbursement for additional clutch replacements under this Section that were performed prior to or on the Approval Date must be submitted within 180 days of the Approval Date.  The supporting documentation for claims for reimbursement under this section must include all of the following:

24

1. Repair orders, receipts, other documentation from a Ford Dealer, or state vehicle inspection reports (or some combination thereof) sufficient to establish for at least two replacements of the clutch (part number 7B546 Disc Asy-Clutch), all of the following information:

   a. The Vehicle Identification Number ("VIN") of the vehicle on which the clutch replacement was performed;

   b. The name and address of the Ford Dealer(s) that replaced the clutch on each occasion;

   c. Whether the clutch replacement was performed on the Class Vehicle within 5 years/60,000 miles of delivery of the Class Vehicle to the first retail customer, whichever occurs first; and

   d. A description of the services rendered and parts provided in connection with each clutch replacement.

2. Repair orders, receipts, other documentation from a Ford Dealer, or state vehicle inspection reports (or some combination thereof) sufficient to establish for an additional replacement of the clutch (part number 7B546 Disc Asy-Clutch), all of the following information:

   a. The Vehicle Identification Number ("VIN") of the vehicle on which the clutch replacement was performed;

   b. The name and address of the Ford Dealer that replaced the clutch;

   c. Whether the clutch replacement was performed on the Class Vehicle within 7 years/100,000 miles of delivery of the Class Vehicle to the first retail customer, whichever occurs first;

   d. A description of the services rendered and parts provided in connection with the clutch replacement;

   e. Information sufficient to establish that the appropriate diagnostic procedures specified in Ford's Service Manual or in applicable

25

Technical Service Bulletins were performed and that based on the results the Ford Dealer determined that a clutch replacement was necessary; and

f.   The documented and unreimbursed amounts paid by the Class Member to a Ford Dealer for the parts and labor for the clutch replacement.  Class Members shall not be reimbursed for consequential damages such as lost revenue/profits, lost employee time from loss of use of the Class Vehicle, or towing charges or other costs of transporting the vehicle to or from the place of repair.

3.   Documentation demonstrating the Class Member's Proof of Ownership of the Class Vehicle at the time of each clutch replacement on which the claim is based.

4.   A declaration signed under penalty of perjury by the Class Member that attests to and affirms the authenticity of the documentation provided to support the claim and stating that the Class Member actually owned or leased the Class Vehicle at the time of each clutch replacement on which the claim is based.

**H.   Submission of Documentation in Support of Claims.**

For each claim for cash payments, Vehicle Discount Certificates, or reimbursement submitted pursuant to Section II.B., II.C., or II.G., Class Members must submit a hard copy or a scanned copy of all required documents to the Claims Administrator by mail, through the Settlement Website, or via email, and these documents shall be retained by the Claims Administrator until the end of the claims administration period.

**I.   Rejected Claims and Claim Investigation.**

The Claims Administrator may reject any claim submitted pursuant to Section II.B., II.C or II.G. that does not include the required information and documentation specified above. The Claims Administrator may investigate any claim, including by requesting further documentation

26

when necessary, in order to determine whether the claim should be approved. If the Claims Administrator rejects the claim, it will advise the Class Member of the reason for the rejection (e.g., missing information, ineligibility for a payment or discount certificate, etc.). If the claim is rejected due to missing information and the original claim was submitted by the applicable deadline noted above, the Claims Administrator will give the Class Member one opportunity to resubmit the claim within 30 days with additional information.

### J.     Inadvertent Submissions.

In the event a Class Member inadvertently submits a claim to the Claims Administrator that pursuant to this agreement is within the jurisdiction of the Arbitration Administrator, the Claims Administrator shall provide notice to the Claimant of the inadvertent submission and provide the claim directly to the Arbitration Administrator on the Class Member's behalf, as long as the claim was timely submitted to the Claims Administrator and the Class Member complied with the notice requirements set forth in section II.N.4, below.  Any inadvertent submission made within the applicable arbitration deadlines shall be considered timely submitted.

### K.     Approved Claims.

Approved claims for cash payments will be paid by prepaid card, which will be issued subject to Terms and Conditions substantially similar to those attached as Exhibit G.  Any unused balance on a prepaid card will expire six months after the card is issued.

### L.     Pre-Sale Disclosure Statement.

Ford shall provide Ford Dealers with the following language that Dealers may use to inform prospective purchasers of DPS6 transmission-equipped vehicles of the characteristics of the DPS6 transmission:

> The PowerShift 6-Speed, dual-clutch automatic transmission is designed to offer drivers both enhanced fuel efficiency and fun to drive performance. This transmission's dual-clutch technology uses electronically shifted clutches to operate two separate transmissions all in a small lightweight package. Since the clutch and gear operation is derived from a manual transmission, the

PowerShift automatic transmission will drive, sound, and feel similar to a manual transmission minus the required user-inputs. For example, the transmission may exhibit mechanical noises, firm gear shifts and/or light clutch vibrations when accelerating slowly as the clutches automatically engage.  These are all considered to be normal and expected driving characteristics.

**M.      Clarifications to Customer Campaign 14M01.**

Ford shall clarify to Ford Dealers that Customer Campaign 14M01 does not require a seal leak for repairs to be performed for excessive shudder at light acceleration.

**N.      The Arbitration Program.**

Class Members may pursue binding arbitration for claims seeking a Vehicle Repurchase based in whole or in part on alleged defects in the PowerShift Transmission under the terms described below. The arbitrator shall follow the rules of arbitration attached as Exhibit H. Except as specifically noted below, Ford shall bear all costs and fees associated with the Arbitration program, irrespective of whether the Arbitration Claimant prevails in the Arbitration. No appeals from the Arbitrator's decisions and no requests for judicial review shall be allowed except as permitted by this Settlement.

1.      Claims for Vehicle Repurchase.

Class members are entitled to binding arbitration of claims for Vehicle Repurchases based in whole or in part on alleged defects in the PowerShift Transmission, subject to the following terms and conditions.

a.      Applicable Law.

Except as modified by Sections II.N.1.b-h, and by Sections II.N.2 and II.N.3, the Arbitrator shall apply the lemon law of the state where the Arbitration Claimant took delivery of the vehicle and shall award a Vehicle Repurchase if, considering Transmission and non-Transmission defects, a Vehicle Repurchase is required by applicable lemon law.

b.      Final Repair Attempt.

If the Class Member has had no more than three (3) transmission repair attempts, Ford must be given a final opportunity to repair the Class Vehicle, free of charge to the Class Member.  If the Class Member has had four (4) or more transmission repair attempts, or if the Class Member has sold or returned the Class Vehicle prior to filing the request for Arbitration, the Class Member has no obligation to provide Ford with any additional repair attempts.

c.  Requests for Arbitration By Class Members Who Have Sold Class Vehicles or Returned Leased Class Vehicles.

Class Members who, prior to the Approval Date, have sold their Class Vehicles or returned leased Class Vehicles will only be entitled to arbitration of claims for Vehicle Repurchases based in whole or in part on alleged defects in the PowerShift Transmission in those Class Vehicles if (1) the lemon law of the state where the Arbitration Claimant took delivery of the vehicle allows vehicle owners or lessees to pursue Vehicle Repurchase claims after they have sold or returned their vehicles; and (2) the request for Arbitration is filed before the expiration of the applicable state statute of limitations for such a claim or 180 days after the Approval Date, whichever is earlier.

Class Members who sell Class Vehicles or return leased Class Vehicles on or after the Approval Date will only be entitled to arbitration of claims for Vehicle Repurchases based in whole or in part on alleged defects in the PowerShift Transmission in those Class Vehicles if (1) the lemon law of the state where the Arbitration Claimant took delivery of the vehicle allows vehicle owners or lessees to pursue Vehicle Repurchase claims after they have sold or returned their vehicles; and (2) the request for Arbitration is filed before the expiration of the applicable state statute of limitations for such a claim or 180 days after the date on which the Class Member sold or returned the Class Vehicle, whichever is earlier.

d.  Extension of Statute of Limitations For Class Members Who Still Own or Lease Class Vehicles At The Time Of An Arbitration Hearing.

Regardless of the applicable state law governing the claims of an Arbitration Claimant who still owns or leases a Class Vehicle as of the time of an Arbitration Hearing, the Statute of Limitations for a Vehicle Repurchase claim brought by such a Claimant that is based in whole or in part on alleged defects in the PowerShift Transmission shall be six (6) years after delivery of the Class Vehicle to the first retail purchaser, or 180 days after the Approval Date, whichever is later.

   e.  Vehicle Repurchase Permitted For Class Members Who Still Own or Lease Class Vehicles At The Time of an Arbitration Hearing, Even When Not Available Under State Law.

Even if an Arbitration Claimant who still owns or leases a Class Vehicle at the time of an Arbitration Hearing is not entitled to a Vehicle Repurchase under the applicable lemon law, the Arbitrator may award a Vehicle Repurchase if the notice requirements and statute of limitations conditions established by this Agreement are satisfied and the following conditions are met:

    i.  During the period when the Class Vehicle was owned or leased by the Arbitration Claimant and within 5 years or 60,000 miles of delivery of the vehicle to the first retail customer (whichever occurs first), the Class Vehicle was repaired on four (4) separate Service Visits and on each Service Visit the Claimant received a Transmission Hardware Replacement, and:

    ii.  The transmission continues to malfunction.

The requisite four Transmission Hardware Replacements may be for unrelated conditions or malfunctions.

   f.  Repurchase Amount.

If the Arbitrator determines that a Vehicle Repurchase is required by the applicable lemon law, the Arbitrator shall award repurchase or replacement according to the terms of state law.  If the Arbitrator determines that a Vehicle Repurchase is not required by the applicable lemon law, but is required under Section II.N.1.d, the Arbitrator shall award a repurchase on the

terms set forth in the rules of arbitration attached as Exhibit H.  In either case, any amount awarded by the arbitrator shall be reduced by any cash payments made to the claimant pursuant to Sections II.B or II.C, or by the value of any used Vehicle Discount Certificates issued pursuant to Section II.C.  Any amount awarded by the Arbitrator for a Vehicle Repurchase shall also be reduced by the value of any unused and unexpired Vehicle Discount Certificates, unless the Certificate is voided by the Arbitrator.

g.       Arbitration Appeal.

The Arbitrator's decision with respect to a Vehicle Repurchase shall be final and binding with no right of appeal by Ford.  However, Arbitration Claimants who do not prevail on a claim for a Vehicle Repurchase are entitled to appeal the Arbitrator's award to an Appellate Arbitrator. The Arbitration Claimant seeking appeal must advance the entire cost of the appeal proceeding as set by the Appellate Arbitration Administrator.  If the Arbitration Claimant prevails on appeal, Ford shall reimburse all fees and costs charged by the Appellate Arbitration Administrator.  The Arbitration Claimant shall not be entitled to reimbursement of fees and costs if Ford prevails on appeal.  No other appeals or requests for judicial review shall be allowed.

h.       Attorney Fees.

An Arbitrator may award reasonable attorneys' fees incurred in pursuing a claim for a Vehicle Repurchase to an Arbitration Claimant who prevails on such a claim.  Fees awarded shall be reasonable and shall not exceed $6,000 total, including any attorneys' fees incurred during the initial arbitration and any Arbitration Appeal.   No fees may be awarded for pursuing or prevailing on any claims other than Vehicle Repurchase claims.

i.       Prior BBB Arbitration and Second Arbitration.

Class Members who were denied a Vehicle Repurchase by the BBB Auto Line before the Effective Date may still submit Vehicle Repurchase claims to the Arbitration Program, provided no lawsuit has been filed.  All Class Members may resubmit denied Vehicle Repurchase claims for a second arbitration if a subsequent Transmission Hardware Replacement has been performed

31

at a Ford Dealer, subject to the applicable statute of limitations established by this Settlement Agreement.

2.      Claims Alleging Breach of New Vehicle Limited Warranty, or Extensions Thereof.

Class Members who do not qualify for a Vehicle Repurchase but claim a breach of Ford's New Vehicle Limited Warranty, or any extensions of that warranty, based in whole or in part on Transmission defects may submit these claims to the Arbitrator.  If a breach is established, the Arbitrator may, as appropriate, order a repair, or reimbursement for any amounts paid by the Class Member for a repair, or may order Ford to provide a Ford extended service plan for the Class Vehicle.  No other relief may be awarded under this section.  Such claims must be filed within the statute of limitations for express warranty claims established by the law of the state where Class Members purchased their vehicles.  The Arbitrator may not award attorney fees for pursuing a claim for breach of Ford's New Vehicle Limited Warranty or any extension of that warranty.

3.      Civil Penalties and Punitive Damages.

Notwithstanding any provision of state law to the contrary, the Arbitrator may not award civil penalties or punitive damages to any Arbitration Claimant.

4.      Notice.

To file any arbitration claim, Class Members must first give direct notice to Ford of their intent to proceed to arbitration and the nature of the claim(s) they intend to pursue in arbitration. This notice must be given at least ten days before the filing of an arbitration claim.  Notice may be given via telephone at 1-888-260-4563 or through the Settlement website.  During this ten-day period, Ford may contact the Class Member or, if the Class Member is represented, the Class Member's counsel, in an attempt to resolve the matter.  If a Class Member accepts monetary compensation offered by Ford in an attempt to resolve the matter, the amount of that compensation shall be deducted from any award later ordered by the Arbitrator.

O.      **Administration of the Settlement.**

32

Ford will retain the Claims Administrator to administer the program described above and will bear all costs and expenses related to the administration of the Settlement.

Promptly after the Preliminary Approval Date and prior to mailing the Short Form Class Notice, the Claims Administrator will establish a Settlement Website and a toll-free telephone number to provide information to Class Members concerning the Settlement, including, but not limited to, relevant Settlement deadlines and dates, the Long Form Class Notice, Claim Forms (when available), administration of the claim process, the status of the Settlement approval process, and applicable Settlement deadlines. The Settlement Website shall permit Class Members to submit their claims electronically beginning shortly after the Approval Date, although the Claims Administrator will not begin reviewing and processing claims until after the Effective Date.  The Claims Administrator shall also establish a toll-free telephone number that Class Members may call for information and a mailing address to which Class Members can send Claim Forms.  The Claims Administrator shall also make arrangements for the Publication Notice.

The Claims Administrator shall provide regular updates to Class Counsel and Ford concerning the number of claims received by the Claims Administrator, the number of claims reviewed by the Claims Administrator, the number of approval letters sent and the value of each approved claim, the total dollar amount of claims approved, the number of denial letters sent and the basis for each rejected claim, and the number of additional claims still undergoing processing. Class Counsel or Ford may request information specific to one or more claims processed by the Claims Administrator to evaluate and assess the claim administration process or any concerns raised by a specific Class Member.  The Claims Administrator shall provide Class Counsel and Ford with the e-mail addresses and other contact information for Class Members who submit claims.

**P.     Attorneys' Fees and Expenses.**

Ford will pay Plaintiffs' counsel reasonable attorneys' fees, costs and expenses as approved by the Court, separate and apart from the consideration flowing to the Class, not to

exceed a total of $8,856,500.  Lead Class Counsel will apply on behalf of all counsel for Plaintiffs to the Court for an award of attorneys' fees and expenses to be paid by Ford of no more than this amount, covering all legal services provided by Plaintiffs' counsel in the past and future to Plaintiffs and the Class Members in connection with the Litigation, the Settlement of the Litigation, any appeal in connection with the Settlement, and implementation of the Settlement Agreement (the "Fee and Expense Application"), except for any fees awarded by Arbitrators pursuant to the Arbitration Program, which is separate from the requested attorneys' fees and expenses identified here.  The Court will determine what amount of fees and expenses shall be awarded and issue an Order stating the amount of fees and expenses to be awarded.  The amount of fees to be awarded shall be determined by California law in effect on the date this agreement is executed.  The parties expressly agree that any change in the law regarding attorneys' fees, including entitlement it fees or timing of payment, shall not affect application of this provision.

Lead Class Counsel shall make all determinations regarding the allocation of fees and expenses among Plaintiffs' counsel.  Should any counsel other than Lead Class Counsel petition the Court for an award of attorneys' fees, costs, or expenses, Lead Class Counsel will oppose such petition. Ford shall not be required to pay any amounts of money to such counsel..  Any appeal of only the award of attorneys' fees and costs  will not affect the Parties and Claims Administrator's obligations under the Order Granting Final Approval.  This means that an appeal of only the attorneys' fees and costs will not extend the Effective Date or otherwise delay implementation of any Settlement benefits.

Within 14 business days after the Effective Date of Settlement, Ford shall pay the amount awarded by the Court for attorneys' fees and expenses to Lead Class Counsel who shall distribute the attorneys' fees among all counsel at their discretion.

Lead Class Counsel must provide Ford with a completed W-9 form for the first payee of attorneys' fees and costs. Any order or proceedings relating to the Fee and Expense Application, or any appeal solely from any order related thereto or reversal or modification thereof, will not

operate to terminate or cancel this Settlement Agreement, or affect or delay the finality of the Judgment approving this Settlement Agreement.

**Q.     Service Award for Named Plaintiffs.**

As part of their motion seeking final approval of the Settlement at the Fairness Hearing, Plaintiffs intend to seek service awards for the Class Representatives in the following amounts, subject to Court approval:

A.  *Vargas Action:*

      a.  Omar Vargas - $10,000

      b.  Michelle Harris - $7,500

      c.  Sharon Heberling - $7,500

      d.  Robert Bertone - $7,500

B.  *Klipfel Action:*

      a.  Kevin Klipfel - $5,000 (Fiesta Class Vehicle)

      b.  Andrea Klipfel - $5,000 (Focus Class Vehicle)

C.  *Cusick Action:*

      a.  Maureen Cusick - $5,000

      b.  Eric Dufour - $5,000

      c.  Abigail Fisher - $5,000

      d.  Christi Groshong - $5,000

      e.  Virginia Otte - $5,000

      f.  Tonya Patze - $5,000

      g.  Lindsay Schmidt - $5,000

      h.  Patricia Schwennker - $5,000

      i.  Patricia Soltesiz - $5,000

      j.  Joshua Bruno - $5,000

      k.  Jason and Jamie Porterfield - $5,000

D.  *Anderson Action:*

  a. Each Named Plaintiff - $1,000 ($46,000 total) in consideration for release of their claims and dismissal of their action with prejudice

Ford will pay to the Claims Administrator, promptly after the Effective Date, the total amount of service awards approved by the Court. The Claims Administrator will distribute the amount to each Named Plaintiff in accordance with the Court's order.

## III. SETTLEMENT APPROVAL PROCESS.

### A. Preliminary Approval of Settlement.

In a reasonable time after the execution of this Settlement Agreement, counsel for Plaintiffs shall present this Settlement Agreement to the Court, along with a motion requesting that the Court issue a Preliminary Approval Order substantially in the form attached as Exhibit E, which shall include, among other things, the following:

1. Preliminary certification under Federal Rule of Civil Procedure 23, for settlement purposes only, of the Class;

2. Preliminary approval of the Settlement memorialized in this Settlement Agreement as fair, reasonable and adequate;

3. Approval of the Short Form Class Notice, the Long Form Class Notice, and the Publication Notice, containing the language contained in Exhibits A, B and C, respectively, or materially the same language;

4. A direction to Ford to distribute, at its expense, the Short Form Class Notice in the form approved by the Court to Class Members; a direction to Ford to publish, at its expense, the Publication Notice in the form approved by the Court; a direction to Ford to establish the Settlement Website as contemplated by this Settlement Agreement; a direction that each potential Class Member who wishes to be excluded from the Class must respond to the Class Notice in accordance with the instructions set forth in the Class Notice; a direction to each owner or lessee of a Class Vehicle with a pending lawsuit against Ford alleging problems with the PowerShift Transmission in a Class Vehicle in

36

which final judgment has not yet been entered of the right to opt-in to the Settlement, and a direction that their opt-in forms must be received by the date set forth in the Preliminary Approval Order;

5. A finding that the Short Form Class Notice, the Long Form Class Notice, and the Publication Notice together constitute the best notice practicable under the circumstances, including individual notice to all Class Members who can be identified with reasonable effort, and constitutes valid, due, and sufficient notice to Class Members in full compliance with the requirements of applicable law, including the due process clause of the United States Constitution;

6. A direction that, pending final determination of the joint application for approval of this Settlement Agreement, all proceedings in this Litigation other than settlement approval proceedings shall be stayed;

7. A direction that any Class Member who has not properly and timely requested exclusion from the Class will be bound by the Final Order and Judgment;

8. The scheduling of a final hearing to determine whether this Settlement Agreement should be approved as fair, reasonable, and adequate and whether the proposed Final Order and Judgment should be entered (the "Fairness Hearing");

9. A direction that Ford shall tabulate communications from prospective Class Members asking to be excluded from the Class and shall report the names and addresses of such entities and natural persons to the Court and to Class Counsel no less than seven days before the Fairness Hearing;

10. A direction that Class Counsel shall file a Fee and Expense Application and Plaintiffs' Service Award application approximately 14 days prior to the date set forth in the Preliminary Approval Order as the deadline for the objections; and that Class Counsel shall file any supplemental brief in support of final

approval of the Settlement Agreement no later than seven days prior to the Fairness Hearing;

11. A direction that any Class Member who wishes to object to the proposed Settlement Agreement, the proposed Final Order and Judgment, the Fee and Expense Application, and/or Plaintiffs' Service Award must file and serve such objections no later than the date set forth in the Preliminary Approval Order, together with copies of all papers in support of his/her/its position as provided in Section III.D.2 of the Settlement Agreement. The Long Form Class Notice shall state that the Court will not consider the objections of any Class Member who has not properly served copies of his/her/its objections on a timely basis or complied with the requirements of Section III.D.2 of the Settlement Agreement.

12. A provision ordering that all Class Members and their representatives who do not timely exclude themselves from the Settlement are preliminarily enjoined from filing, commencing, prosecuting, maintaining, intervening in, participating in, conducting, or continuing, individually, as class members or otherwise, any lawsuit (including putative class actions), arbitration, remediation, administrative or regulatory proceeding or order in any jurisdiction, asserting any claims based on alleged defects in the PowerShift Transmission or asserting any Released Claims.  This preliminary injunction shall not include any claims for non-binding mediation or arbitration filed with the Better Business Bureau pursuant to the provisions in Ford's New Vehicle Limited Warranty.

**B.     Notice to Attorneys General.**

In compliance with the attorney general notification provision of the Class Action Fairness Act, 28 U.S.C. § 1715, within ten days after the motion for Preliminary Approval Order is filed, Ford shall provide notice of this proposed Settlement to the Attorney General of the

United States, and the attorneys general of each state or territory in which a Class Member resides. The notice will include: (1) a copy of the Operative Complaint; (2) a copy of this Settlement Agreement and its exhibits; and (3) a reasonable estimate of the number of class members in each state/territory and their percentage representation in the Class. Ford will provide copies of such notifications to Class Counsel at the time of their submission to the attorneys general.

C.   **Notice to Class Members.**

The Claims Administrator will mail, by first-class mail at Ford's expense, the Short Form Class Notice containing the language in Exhibit A, and substantially in the same form as in Exhibit A. As soon as is practicable after the preliminary approval of the Settlement, the Claims Administrator will obtain from Ford and HIS Automotive (formerly R.L. Polk) the name and last known address of each potential member of the Class.  Lead Class Counsel may request that, to the extent permitted by law, this information also shall be provided to Lead Class Counsel, who agree to use the list for the limited purpose of informing Class members of the Settlement and their rights thereunder and for no other purpose.   Ford does not oppose this request.  Prior to mailing the Short Form Class Notice, the last known address of potential Class Members will be checked and updated going back four years through the use of the National Change of Address Database. Thereafter, the Claims Administrator shall send a copy of the Short Form Class Notice by first-class mail to each Class Member so identified, and each copy of the Short Form Class Notice shall include a claim number unique to the recipient. The Claims Administrator shall use its best efforts to complete the initial mailing of the Short Form Class Notice to potential Class Members within 75 days after the Preliminary Approval Date.

If any Short Form Class Notice mailed to any potential Class Member is returned to the Claims Administrator as undeliverable, then the Claims Administrator shall perform a reasonable search (e.g., the National Change of Address Database) for a more current name and/or address for the potential Class Member and (provided that a more current name and/or address can be found through such a search) re-send the returned Short Form Class Notice to the potential Class

Member by first-class mail. In the event that any Short Form Class Notice mailed to a potential Class Member is returned as undeliverable a second time, then no further mailing shall be required. The Claims Administrator will promptly log each Short Form Class Notice that is returned as undeliverable and provide copies of the log to Class Counsel.  The Claims Administrator shall cause, by the Notice Date, a one-time publication of the Publication Notice, substantially in the form attached as Exhibit C, to appear in the Marketplace/Legal Notice Section of USA Today.  Defendant shall bear the cost of the publication of the Publication Notice.

      **D.**    **Response to Notice.**

            1.    Objection to Settlement.

Any Class Member who intends to object to the fairness of the Settlement Agreement must, by the date specified in the Preliminary Approval Order and recited in the Class Notice (which shall be no later than 130 days after the Preliminary Approval Date), file any such objection with the Court and provide copies of the objection to: (1) Jordan Lurie, Tarek Zohdy, Cody Padgett, Karen Wallace, Capstone Law APC, 1875 Century Park East, Suite 1000, Los Angeles, CA, 90067; and (2) Krista L. Lenart, Dykema Gossett PLLC, 2723 South State Street, Suite 400, Ann Arbor, MI 48104.  Any objection to the Settlement Agreement must be individually and personally signed by the Class Member (if the Class Member is represented by counsel, the objection additionally must be signed by such counsel), and must include:

        a.    The objector's full name, address, and telephone number;

        b.    The model, model year, and vehicle identification number of the Class Member's Class Vehicle, along with proof that the objector has owned or leased a Class Vehicle (e.g., a true copy of a vehicle title, registration, or license receipt);

        c.    A written statement of all grounds for the objection accompanied by any legal support for such objection;

40

d.      Copies of any papers, briefs, or other documents upon which the objection is based;

e.      A list of all cases in which the objector and/or his or her counsel has filed or in any way participated in—financially or otherwise—objections to a class action settlement in the preceding five years;

f.      The name, address, email address, and telephone number of all attorneys representing the objector; and

g.      A statement indicating whether the objector and/or his or her counsel intends to appear at the Fairness Hearing, and if so, a list of all persons, if any, who will be called to testify in support of the objection.

Any member of the Class who does not file a timely written objection to the Settlement and notice of his or her intent to appear at the Fairness Hearing or who fails to otherwise comply with the requirements of this section, shall be foreclosed from seeking any adjudication or review of the Settlement by appeal or otherwise.

2.      Requests for Exclusion and Opt-ins.

Any Class Member who wishes to be excluded from the Class must submit a request for exclusion ("Request for Exclusion") to the Claims Administrator at the address specified in the Class Notice by the date specified in the Preliminary Approval Order and recited in the Class Notice (which shall be no later than 130 days after the Preliminary Approval Date). Class Members who wish to be excluded from the Class must do so with respect to all Class Vehicles they own(ed) or lease(d); Class Members may not exclude themselves from the Class with respect to some Class Vehicles and include themselves in the Class with respect to other Class Vehicles. To be effective, the Request for Exclusion must be sent via first-class U.S. mail to the specified address and must:

a.      Include the Class Member's full name, address, and telephone number;

b.      Identify the model, model year, and vehicle identification number of the Class Member's Class Vehicle(s);

c.      Specifically and unambiguously state his/her/its desire to be excluded from the Class in *Vargas v. Ford Motor Co.*; and

d.      Be individually and personally signed by the Class Member (if the Class Member is represented by counsel, the Request for Exclusion additionally must be signed by such counsel).

Any Class Member who fails to submit a timely and complete Request for Exclusion sent to the proper address, shall be subject to and bound by this Settlement Agreement and every order or judgment entered pursuant to this Settlement Agreement. Any purported Request for Exclusion sent to such address that is ambiguous or internally inconsistent with respect to the Class Member's desire to be excluded from the Class will be deemed invalid unless determined otherwise by the Court. The Claims Administrator will receive purported Requests for Exclusion and will follow guidelines developed jointly by Class Counsel and Ford's counsel for determining whether they meet the requirements of a Request for Exclusion. Any communications from Class Members (whether styled as an exclusion request, an objection, or a comment) as to which it is not readily apparent whether the Class Member meant to exclude himself/herself from the Class will be evaluated jointly by Class Counsel and Ford's counsel, who will make a good faith evaluation, if possible. Any uncertainties about whether a Class Member is requesting exclusion from the Class will be resolved by the Court.

The Claims Administrator will maintain a list of all Requests for Exclusion, and shall report the names and addresses of all such entities and natural persons requesting exclusion to the Court, Ford's counsel, and Class Counsel seven days prior to the Fairness Hearing, and the list of entities and natural persons deemed by the Court to have excluded themselves from the Class will be attached as an exhibit to the Final Order and Judgment.

The Claims Administrator will also maintain a list of all owners or lessees of Class Vehicles with lawsuits against Ford alleging problems with the PowerShift Transmission in

42

Class Vehicles pending on the Notice Date in which final judgment has not yet been entered who opt in to the Settlement pursuant to Section I.L. above.

### E.      Fairness Hearing.

On the date set forth in the Preliminary Approval Order, which shall be approximately one month after the deadline for submitting objections and Requests for Exclusion, a Fairness Hearing will be held at which the Court will consider: (1) whether to finally certify the Settlement Class; (2) whether to approve the Settlement Agreement as fair, reasonable, and adequate; (3) whether to approve the application for a Service Award for the Named Plaintiffs; and (4) whether to approve Class Counsel's Fee and Expense Application.

### F.      Final Order and Judgment.

If this Settlement Agreement is finally approved by the Court, a Final Order and Judgment directing the entry of judgment pursuant to Fed. R. Civ. P. 54(b) shall be entered substantially in the form attached as Exhibit F, as follows:

1.      Certifying the Class solely for purposes of this Settlement Agreement;

2.      Approving the Settlement Agreement as fair, reasonable, and adequate as it applies to the Class;

3.      Declaring the Settlement Agreement to be binding on Ford and the Plaintiffs, as well as all Members of the Class;

4.      Dismissing on the merits and with prejudice the *Vargas*, *Klipfel*, and *Cusick* actions;

5.      Forever discharging the Released Parties from all Released Claims;

6.      Indicating the amount of the Service Award for the Named Plaintiffs;

7.      Indicating the amount of attorneys' fees and expenses to be awarded to Plaintiffs' counsel;

8.      Providing that all Class Members who did not request exclusion from the Class shall be permanently enjoined from commencing or prosecuting any

action, suit, proceeding, claim, or cause of action asserting the Released Claims in any court or before any tribunal; and

9.      Providing that all Class Members who have not made their objections to the Settlement in the manner provided in the Notice are deemed to have waived any objections by appeal, collateral attack, or otherwise.

**G.      Withdrawal from Settlement.**

Either party shall have the option to withdraw from this Settlement Agreement, and to render it null and void, if any of the following occurs:

1.      Any objections to the proposed Settlement are sustained and such objection results in changes to the agreement that the withdrawing party deems in good faith to be material (e.g., because it increases the cost of the settlement, or deprives the withdrawing party of a material benefit of the Settlement);

2.      Any attorney general is allowed to intervene in the action and such intervention results in changes to the agreement that the withdrawing party deems in good faith to be material (e.g., because it increases the cost of the settlement, or deprives the withdrawing party of a material benefit of the Settlement);

3.      The preliminary or final approval of the Settlement Agreement is not obtained without modification and any modification required by the Court for approval (including any modification that increases the attorney fees or service awards agreed to herein) is deemed in good faith to be material and is not agreed to by the withdrawing party (e.g., because it increases the cost of the settlement, or deprives the withdrawing party of a significant benefit of the Settlement); and

4.      Entry of the Final Order and Judgment described in this Settlement is reversed or substantially modified by an appellate court.  However, a

reversal or modification of an order awarding reasonable attorneys' fees and expenses shall not be a basis for withdrawal, provided that the amount of fees and expenses ultimately awarded does not exceed the amounts set forth in this Agreement.

Ford shall, in addition, have the option to withdraw from this Settlement Agreement, and to render it null and void, if Class Members collectively owning or leasing 75,000 or more Class Vehicles exclude themselves from the Settlement.

If any state or federal trial court sustains a collateral attack on this settlement, Ford and Lead Counsel shall cooperate in attempting to reverse that ruling on appeal. If that ruling is affirmed on appeal by a state appellate court or by a federal Circuit Court of Appeal, either party, at its option, may withdraw from this Agreement.

To withdraw from the Settlement Agreement under this Section, the withdrawing party must provide written notice to the other party's lead counsel and to the Court. In the event either party withdraws from the Settlement, this Settlement Agreement shall be null and void, shall have no further force and effect with respect to any party in the Litigation, and shall not be offered in evidence or used in any litigation for any purpose, including the existence, certification, or maintenance of any purported class. In the event of such withdrawal, this Settlement Agreement and all negotiations, proceedings, documents prepared, and statements made in connection herewith shall be without prejudice to the Settling Parties, and shall not be deemed or construed to be an admission or confession by any party of any fact, matter, or proposition of law, and shall not be used in any manner for any purpose, and all parties to the Litigation shall stand in the same position as if this Settlement Agreement had not been negotiated, made, or filed with the Court. Upon withdrawal, either party may elect to move the Court to vacate any and all orders entered pursuant to the provisions of this Settlement Agreement.

### H. Released Claims.

1. Class Members' Claims.

Upon the Effective Date of the Settlement, and except for the rights and entitlements created by this Settlement, including those under Section II herein, the Plaintiffs and each Class Member shall be deemed to have, and by operation of the Final Order and Judgment shall have, released, waived, and discharged the Released Parties from his, her, or its Released Claims as defined above, except with respect to claims that qualify for the Arbitration Program.  This release, and the rights and entitlements created by this Settlement, including those under Section II herein, will run with the vehicle if the Class Member sells the Class Vehicle.

2.      Total Satisfaction of Released Claims**.**

Any benefits offered or obtained pursuant to the Settlement Agreement are in full, complete, and total satisfaction of all of the Released Claims against the Released Parties, the Benefits are sufficient and adequate consideration for each and every term of this Release, and this Release shall be irrevocably binding upon Class Representatives and Class Members who do not opt out of the Class.

3.      Dismissal of *Anderson.*

Within 14 days of the Effective Date, Class Counsel shall secure the dismissal with prejudice of the *Anderson* litigation.

4.      Release Not Conditioned on Claim or Payment.

The Release shall be effective with respect to all Class Members, regardless of whether those Class Members ultimately file a Claim or receive compensation under this Settlement Agreement.

5.      Basis for Entering Release.

Class Counsel acknowledge that they have conducted sufficient independent investigation and discovery to enter into this Settlement Agreement and that they execute this Settlement Agreement freely, voluntarily, and without being pressured or influenced by, or relying on any statements, representations, promises, or inducements made by the Released Parties or any person or entity representing the Released Parties, other than as set forth in this

Settlement Agreement. Class Representatives acknowledge, agree, and specifically represent and warrant that they have discussed with Class Counsel the terms of this Settlement Agreement and have received legal advice with respect to the advisability of entering into this Settlement Agreement and the Release, and the legal effect of this Settlement Agreement and the Release. The representations and warranties made throughout the Settlement Agreement shall survive the execution of the Settlement Agreement and shall be binding upon the respective heirs, representatives, successors and assigns of the Parties.

### I.     Material Term.

Class Representatives and Class Counsel hereby agree and acknowledge that Section III.H. was separately bargained for and constitutes a key, material term of the Settlement Agreement that shall be reflected in the Final Approval Order.

### J.     Agreement to Cooperate to Effectuate Settlement.

Counsel for all Parties warrant and represent that they are expressly authorized by the Parties whom they represent to negotiate this Settlement Agreement. The persons signing this Settlement Agreement on behalf of each Party warrants that he/she is authorized to sign this Settlement Agreement on behalf of that Party.

The Parties and their respective counsel will cooperate with each other, act in good faith, and use their best efforts to effect the implementation of the Settlement Agreement and advance the Arbitration Program. In the event the Parties are unable to reach agreement on the form or content of any document needed to implement the Settlement Agreement, or on any supplemental provisions that may become necessary to effectuate the terms of this Class Action Agreement, the Parties may seek the assistance of the Court to resolve such disagreement.

The Parties further agree to make all reasonable efforts to ensure the timely and expeditious administration and implementation of the Settlement Agreement and to minimize the costs and expenses incurred therein.

### K.     Modification of the Agreement.

The terms and provisions of this Settlement Agreement may be amended, modified, or
expanded by written agreement of the Parties and approval of the Court; provided, however, that
after entry of the Final Approval Order, the Parties may by written agreement effect such
amendments, modifications, or expansions of this Settlement Agreement and its implementing
documents (including all exhibits hereto) without further notice to the Class or approval by the
Court if such changes are consistent with the Court's Final Approval Order and do not limit the
rights of Class Members under this Settlement Agreement.

## IV.    MISCELLANEOUS PROVISIONS.

### A.    Class Certification.

The Parties agree that for the purposes of this Settlement only, certification of the Class
as defined above in Paragraph I.L. is appropriate pursuant to Fed. R. Civ. P. 23(b)(3).

### B.    Effect of Exhibits.

The exhibits to this Settlement Agreement are an integral part of the Settlement and are
expressly incorporated and made a part of this Settlement Agreement.

### C.    No Admission.

This Settlement Agreement is for settlement purposes only. Neither the fact of, nor any
provision contained in this Settlement Agreement, nor any action taken hereunder, shall
constitute, or be construed as, any admission of the validity of any claim or any fact alleged in
the Litigation or of any wrongdoing, fault, violation of law, or liability of any kind on the part of
Ford or any admissions by Ford of any claim or allegation made in any action or proceeding
against Ford. If this Settlement Agreement is terminated and becomes null and void, the class
action portions of this Settlement shall have no further force and effect with respect to any party
to the Litigation and shall not be offered in evidence or used in the Litigation or any other
proceeding. This Settlement Agreement shall not be offered or be admissible in evidence against
Ford or cited or referred to in any action or proceeding, except in an action or proceeding
brought to enforce its terms. Information provided by Ford to the Plaintiffs and Class Counsel in

connection with settlement negotiations is for settlement purposes only and shall not be used or disclosed for any other purpose whatsoever.

### D.    Return of Confidential Documents.

Upon the Effective Date, all documents and information marked or designated as Confidential and all Protected Documents, as defined in and subject to the Protective Order, signed by Magistrate Judge Frederick F. Mumm on June 14, 2013, or any previous or subsequent protective order entered in this Litigation, shall be returned or disposed of within the time frame and according to the procedures set forth in the Protective Order.

### E.    Entire Agreement.

This Settlement Agreement represents the entire agreement and understanding among the Settling Parties and supersedes all prior proposals, negotiations, agreements, and understandings relating to the subject matter of this Settlement Agreement. The Settling Parties acknowledge, stipulate, and agree that no covenant, obligation, condition, representation, warranty, inducement, negotiation, or understanding concerning any part or all of the subject matter of this Settlement Agreement has been made or relied on except as expressly set forth in this Settlement Agreement. No modification or waiver of any provisions of this Settlement Agreement shall in any event be effective unless the same shall be in writing and signed by the person against whom enforcement of the Settlement Agreement is sought.

### F.    Counterparts.

This Settlement Agreement may be executed in one or more counterparts, each of which shall be deemed an original as against any party who has signed it, and all of which shall be deemed a single agreement.

### G.    Arm's-Length Negotiations.

The Settling Parties have negotiated all of the terms and conditions of this Settlement Agreement at arm's length. All terms, conditions, and exhibits in their exact form are material and necessary to this Settlement Agreement and have been relied upon by the Settling Parties in entering into this Settlement Agreement. All Settling Parties have participated in the drafting of

49

this agreement and it is not to be construed in favor of or against any of the Settling Parties.

### H.    Continuing Jurisdiction.

The Court shall retain continuing and exclusive jurisdiction over the Parties to this Settlement Agreement, including all Class Members, for the purpose of the administration, interpretation and enforcement of this Settlement Agreement.

### I.    Dispute Resolution.

Any dispute between Lead Counsel and Ford regarding the interpretation of any provision of this agreement (other than those which the Settlement Agreement shall be resolved otherwise) shall be presented to the mediator, Eric D. Green before it is presented to the Court.

### J.    Binding Effect of Settlement Agreement.

This Settlement Agreement shall be binding upon and inure to the benefit of the Settling Parties and their representatives, heirs, successors, and assigns.

### K.    Nullification.

In the event any one or more of the provisions contained in this Settlement Agreement shall for any reason be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect other provisions if Ford and Class Counsel, on behalf of the Settling Parties, mutually elect to proceed as if such invalid, illegal, or unenforceable provision had never been included in this Settlement Agreement.

### L.    Extensions of Time.

The Settling Parties may agree upon a reasonable extension of time for deadlines and dates reflected in this Settlement Agreement, without further notice (subject to Court approval as to Court dates).

### M.    Service or Notice.

Whenever, under the terms of this Settlement Agreement, a person is required to provide service or written notice to Ford or Class Counsel, such service or notice shall be directed to the individuals and addresses specified below, unless those individuals or their

successors give notice to the other Settling Parties in writing:

<u>As to Plaintiffs</u>:

Jordan L. Lurie
Tarek H. Zohdy
**Cody R. Padgett**
Karen L. Wallace
Capstone Law APC
1875 Century Park East, Suite 1000
Los Angeles, CA, 90067
(310) 556-4811

<u>As to Ford</u>:

John M. Thomas
Krista L. Lenart
Dykema Gossett PLLC
**2723 South State Street**
Suite 400
Ann Arbor, MI 48104

**N.    Authority to Execute Settlement Agreement.**

Each counsel or other person executing this Settlement Agreement or any of its exhibits

on behalf of any party hereto warrants that such person has the authority to do so.

\* \* \* \* \* \*

IN WITNESS HEREOF, the Settling Parties have caused this Settlement Agreement to

be executed, by their duly authorized attorneys, as of March 24, 2017.

<u>APPROVED AS TO FORM AND CONTENT:</u>

<u>ON BEHALF OF FORD MOTOR COMPANY</u>

John M. Thomas
Attorney for Ford Motor Company
DYKEMA GOSSETT PLLC
2723 South State Street
Ann Arbor, MI 48104
Date: 3/23/17

Ford Motor Company
By:    Craig M. Halseth
Counsel, Litigation
Ford Motor Company
Date: 3/22/17

51

ON BEHALF OF THE *VARGAS, KLIPFEL* AND *CUSICK* PLAINTIFFS

_____

Jordan L. Lurie
Tarek H. Zohdy
Cody R. Padgett
Karen L. Wallace
Capstone Law APC
1875 Century Park East, Suite 1000
Los Angeles, CA, 90067


_____

Russell D. Paul
Eric Lechtzin

Lane L. Vines
Berger & Montague, P.C.
1622 Locust Street
Philadelphia, PA 19103


ON BEHALF OF THE *ANDERSON* PLAINTIFFS


_____

Thomas Zimmerman
Zimmerman Law Offices, P.C.
77 W. Washington Street, Suite 1220
Chicago, Illinois 60602

ON BEHALF OF THE *VARGAS, KLIPFEL* AND *CUSICK* PLAINTIFFS

Jordan L. Lurie
Tarek H. Zohdy
Cody R. Padgett
Karen L. Wallace
Capstone Law APC
1875 Century Park East, Suite 1000
Los Angeles, CA, 90067

Russell D. Paul
Eric Lechtzin

Lane L. Vines
Berger & Montague, P.C.
1622 Locust Street
Philadelphia, PA 19103

ON BEHALF OF THE *ANDERSON* PLAINTIFFS

Thomas Zimmerman
Zimmerman Law Offices, P.C.
77 W. Washington Street, Suite 1220
Chicago, Illinois 60602

John M. Thomas
Dykema Gossett PLLC
333 South Grand Avenue, Suite 2100
Los Angeles, California 90071

ON BEHALF OF THE *VARGAS, KLIPFEL* AND *CUSICK* PLAINTIFFS

Jordan L. Lurie
Tarek H. Zohdy
Cody R. Padgett
Karen L. Wallace
Capstone Law APC
1875 Century Park East, Suite 1000
Los Angeles, CA, 90067

Russell D. Paul
Eric Lechtzin

Lane L. Vines
Berger & Montague, P.C.
1622 Locust Street
Philadelphia, PA 19103

ON BEHALF OF THE *ANDERSON* PLAINTIFFS

Thomas Zimmerman
Zimmerman Law Offices, P.C.
77 W. Washington Street, Suite 1220
Chicago, Illinois 60602

By: _____     Date: _____
Title: _____
For Ford Motor Company

52

By: _____   Date: 3/16/2017

Omar Vargas


By: _____   Date: _____

Robert Bertone


By: _____   Date: _____

Michelle Harris


By: _____   Date: _____

Sharon Heberling


By: _____   Date: _____

Kevin Klipfel


By: _____   Date: _____

Andrea Klipfel


By: _____   Date: _____

Maureen Cusick


By: _____   Date: _____

Eric Dufour


By: _____   Date: _____

Abigail Fisher


By: _____   Date: _____

Christi Groshong

DocuSign Envelope ID: 046A2EBB-F938-40E1-B31F-75A74897FD08

By: _____     Date: _____
    Omar Vargas

By: _____     Date: _____ 3/15/2017 _____
    Robert Bertone

By: _____     Date: _____
    Michelle Harris

By: _____     Date: _____
    Sharon Heberling

By: _____     Date: _____
    Kevin Klipfel

By: _____     Date: _____
    Andrea Klipfel

By: _____     Date: _____
    Maureen Cusick

By: _____     Date: _____
    Eric Dufour

By: _____     Date: _____
    Abigail Fisher

By: _____     Date: _____
    Christi Groshong

DocuSign Envelope ID: 8BA4963E-232E-4E2A-9ACA-42EAE7268197

By: _____     Date: _____
    Omar Vargas


By: _____     Date: _____
    Robert Bertone


By: _____     Date: _____ 3/15/2017 _____
    Michelle Harris


By: _____     Date: _____
    Sharon Heberling


By: _____     Date: _____
    Kevin Klipfel


By: _____     Date: _____
    Andrea Klipfel


By: _____     Date: _____
    Maureen Cusick


By: _____     Date: _____
    Eric Dufour


By: _____     Date: _____
    Abigail Fisher


By: _____     Date: _____
    Christi Groshong

DocuSign Envelope ID: 92884634-9469-48DF-AE4B-38B29F25A0CB

By: _____     Date: _____
     Omar Vargas

By: _____     Date: _____
     Robert Bertone

By: _____     Date: _____
     Michelle Harris

By: _____     Date: _3/23/2017_____
     Sharon Heberling

By: _____     Date: _____
     Kevin Klipfel

By: _____     Date: _____
     Andrea Klipfel

By: _____     Date: _____
     Maureen Cusick

By: _____     Date: _____
     Eric Dufour

By: _____     Date: _____
     Abigail Fisher

By: _____     Date: _____
     Christi Groshong

DocuSign Envelope ID: 1E30991F-3F06-4D11-95FC-688794E5B7B8

By: _____    Date: _____
    Omar Vargas


By: _____    Date: _____
    Robert Bertone


By: _____    Date: _____
    Michelle Harris


By: _____    Date: _____
    Sharon Heberling


By: _____    Date: _____ 3/16/2017 _____
    Kevin Klipfel


By: _____    Date: _____
    Andrea Klipfel


By: _____    Date: _____
    Maureen Cusick


By: _____    Date: _____
    Eric Dufour


By: _____    Date: _____
    Abigail Fisher


By: _____    Date: _____
    Christi Groshong


53

DocuSign Envelope ID: DD9934EA-7E34-4222-950A-361D27FBF3EA

By: _____     Date: _____
    Omar Vargas


By: _____     Date: _____
    Robert Bertone


By: _____     Date: _____
    Michelle Harris


By: _____     Date: _____
    Sharon Heberling


By: _____     Date: _____
    Kevin Klipfel


By: _____     Date: _____3/15/2017_____
    Andrea Klipfel


By: _____     Date: _____
    Maureen Cusick


By: _____     Date: _____
    Eric Dufour


By: _____     Date: _____
    Abigail Fisher


By: _____     Date: _____
    Christi Groshong

DocuSign Envelope ID: 7393FB1C-4A9D-4B38-9500-0971B335031D

By: _____        Date: _____
    Omar Vargas

By: _____        Date: _____
    Robert Bertone

By: _____        Date: _____
    Michelle Harris

By: _____        Date: _____
    Sharon Heberling

By: _____        Date: _____
    Kevin Klipfel

By: _____        Date: _____
    Andrea Klipfel

By: _Maureen Cusick_____        Date: 3/15/2017
    Maureen Cusick

By: _____        Date: _____
    Eric Dufour

By: _____        Date: _____
    Abigail Fisher

By: _____        Date: _____
    Christi Groshong

DocuSign Envelope ID: 892A99A5-FA22-408A-8DC5-AEDF1D0CF070

By: _____     Date: _____
    Omar Vargas

By: _____     Date: _____
    Robert Bertone

By: _____     Date: _____
    Michelle Harris

By: _____     Date: _____
    Sharon Heberling

By: _____     Date: _____
    Kevin Klipfel

By: _____     Date: _____
    Andrea Klipfel

By: _____     Date: _____
    Maureen Cusick

By: _____     Date: 3/17/2017 _____
    Eric Dufour

By: _____     Date: _____
    Abigail Fisher

By: _____     Date: _____
    Christi Groshong

DocuSign Envelope ID: 3232C977-0D61-40AC-BA38-7F31A5330789

By: _____     Date: _____
     Omar Vargas


By: _____     Date: _____
     Robert Bertone


By: _____     Date: _____
     Michelle Harris


By: _____     Date: _____
     Sharon Heberling


By: _____     Date: _____
     Kevin Klipfel


By: _____     Date: _____
     Andrea Klipfel


By: _____     Date: _____
     Maureen Cusick


By: _____     Date: _____
     Eric Dufour


By: _Abigail C. Fisher_____     Date: _3/20/2017_____
     Abigail Fisher


By: _____     Date: _____
     Christi Groshong

DocuSign Envelope ID: 3E25B5F7-317D-4015-A3F1-D28A60DD6029

By: _____     Date: _____
    Omar Vargas


By: _____     Date: _____
    Robert Bertone


By: _____     Date: _____
    Michelle Harris


By: _____     Date: _____
    Sharon Heberling


By: _____     Date: _____
    Kevin Klipfel


By: _____     Date: _____
    Andrea Klipfel


By: _____     Date: _____
    Maureen Cusick


By: _____     Date: _____
    Eric Dufour


By: _____     Date: _____
    Abigail Fisher


By: _*Christi Groshong*_____     Date: 3/17/2017
    Christi Groshong

53

By: _Virginia Otte_     Date: 3/16/2017
     Virginia Otte


By: _____     Date: _____
     Tonya Patze


By: _____     Date: _____
     Lindsay Schmidt


By: _____     Date: _____
     Patricia Schwennker


By: _____     Date: _____
     Patricia Soltesiz


By: _____     Date: _____
     Joshua Bruno


By: _____     Date: _____
     Jason Porterfield


By: _____     Date: _____
     Jamie Porterfield

54

By: _____     Date: _____
    Virginia Otte

By: _____     Date: _____ 3/16/2017 _____
    Tonya Patze

By: _____     Date: _____
    Lindsay Schmidt

By: _____     Date: _____
    Patricia Schwennker

By: _____     Date: _____
    Patricia Soltesiz

By: _____     Date: _____
    Joshua Bruno

By: _____     Date: _____
    Jason Porterfield

By: _____     Date: _____
    Jamie Porterfield

DocuSign Envelope ID: 2D2882DA-9303-412B-BCB3-5F4FA66D0D97

By: _____        Date: _____
     Virginia Otte


By: _____        Date: _____
     Tonya Patze


By: _____        Date: _____3/20/2017_____
     Lindsay Schmidt


By: _____        Date: _____
     Patricia Schwennker


By: _____        Date: _____
     Patricia Soltesiz


By: _____        Date: _____
     Joshua Bruno


By: _____        Date: _____
     Jason Porterfield


By: _____        Date: _____
     Jamie Porterfield

DocuSign Envelope ID: C5C69856-5480-43A3-81D7-091539677613

By: _____  Date: _____
    Virginia Otte


By: _____  Date: _____
    Tonya Patze


By: _____  Date: _____
    Lindsay Schmidt

DocuSigned by:
*Patricia Schwennker*
71BA95C9810240C...
By: _____  Date: 3/17/2017
    Patricia Schwennker


By: _____  Date: _____
    Patricia Soltesiz


By: _____  Date: _____
    Joshua Bruno


By: _____  Date: _____
    Jason Porterfield


By: _____  Date: _____
    Jamie Porterfield

DocuSign Envelope ID: D24B97EB-EA33-46F8-AD52-4BF421DC6079

By: _____     Date: _____
    Virginia Otte


By: _____     Date: _____
    Tonya Patze


By: _____     Date: _____
    Lindsay Schmidt


By: _____     Date: _____
    Patricia Schwennker


By: _____*Patricia Soltesiz*_____     Date: _____3/15/2017_____
    Patricia Soltesiz


By: _____     Date: _____
    Joshua Bruno


By: _____     Date: _____
    Jason Porterfield


By: _____     Date: _____
    Jamie Porterfield

By: _____       Date: ___March 7th, 2017_____
    Joshua Bruno


By: _____       Date: _____
    Virginia Otte


By: _____       Date: _____
    Patricia Schwennker


By: _____       Date: _____
    Jason Porterfield


By: _____       Date: _____
    Jamie Porterfield


By: _____       Date: _____
    Abigail Fisher

DocuSign Envelope ID: 0A75CB65-3D6E-49E3-BC60-9C4676C09CF3

By: _____     Date: _____
    Virginia Otte


By: _____     Date: _____
    Tonya Patze


By: _____     Date: _____
    Lindsay Schmidt


By: _____     Date: _____
    Patricia Schwennker


By: _____     Date: _____
    Patricia Soltesiz


By: _____     Date: _____
    Joshua Bruno


By: _____     Date: 3/21/2017
    Jason Porterfield


By: _____     Date: 3/21/2017
    Jamie Porterfield

Exhibit 2

# In the United States District Court

## for the Central District of California

### *Vargas v. Ford Motor Co*

### Case No. 2:12-cv-08388-AB-FFM

## AMENDMENT TO STIPULATION AND AGREEMENT OF SETTLEMENT

This Amendment ("Amendment") to the Stipulation and Agreement of Settlement ("Settlement Agreement") is entered into by and among the named Plaintiffs Omar Vargas, Robert Bertone, Michelle Harris, Sharon Heberling, Kevin Klipfel, Andrea Klipfel, Maureen Cusick, Eric Dufour, Abigail Fisher, Christi Groshong, Virginia Otte, Tonya Patze, Lindsay Schmidt, Patricia Schwennker, and Patricia Soltesiz, Joshua Bruno, Jason Porterfield, and Jamie Porterfield (collectively, the "Named Plaintiffs" or "Class Representatives" or "Plaintiffs"), Defendant Ford Motor Company ("Ford") (collectively, the "Settling Parties"), and Objectors Brenda Lott, Suzanne Lutz, Carlie Olivant, Gail Slomine, Philip Woloszyn (collectively, the "Lott Objectors"). and James "Jason" DeBolt ("Objector DeBolt", and collectively with the Lott Objectors, the "Objectors"), by and through their respective counsel.

## RECITALS

WHEREAS, on September 28, 2012, the action entitled *Omar Vargas v. Ford Motor Company* was filed in the United States District Court for the Central District of California ("*Vargas*"). The case was initially assigned to the Honorable Audrey B. Collins, given the case number 2:12-cv-08388, and subsequently transferred to the calendar of the Honorable André Birotte Jr.;

WHEREAS, the *Vargas* complaint alleged causes of action against Ford for violating California's and Florida's consumer protection laws, breach of express warranty, and breach of implied warranty under the Song-Beverly Consumer Warranty Act. The complaint alleged that the PowerShift Transmission ("Transmission" or "DPS6") installed in certain model year Ford Fiesta and Ford Focus vehicles is dangerously defective. Plaintiffs allege that the Transmission slips, bucks, kicks, and jerks, resulting in sudden or delayed acceleration of the vehicle. In the Complaint, Plaintiffs sought certification of a nationwide class of current and former owners and lessees of vehicles equipped with such

transmissions;

WHEREAS, after multiple mediation sessions, Plaintiffs and Ford reached a nationwide class action settlement that the district court preliminarily approved on April 25, 2017. Following class notice mailed to nearly 2,000,000 Class Members, approximately 10,350 recipients of the class notice opted out, and fifteen Class Members, including the Objectors, objected. The Lott Objectors objected that Plaintiffs did not provide a valuation analysis of the Settlement, the benefits offered by the Settlement were inadequate, the qualifications for obtaining benefits were onerous, and the Arbitration Program (as that term is defined by the Settlement Agreement) would not benefit Ford consumers as much as individual litigation would, among other objections. Objector DeBolt objected to the scope of the release, the sufficiency of the benefits, the form of the notice, and the attorneys' fee request.

WHEREAS, the district court issued a Final Order and Judgment approving the Settlement Agreement, awarding attorneys' fees in full, and overruling all objections. Following appeals by the Objectors, a split Ninth Circuit panel issued a memorandum decision on September 13, 2019, vacating the Final Order and Judgment and remanding the matter for a "more searching inquiry" pursuant to *Allen v. Bedolla*, 787 F.3d 1218, 1224 (9th Cir. 2015), finding that the district court's order did not provide sufficient analysis for substantive appellate review.

WHEREAS, the Settling Parties and Objectors participated in a mediation on December 9, 2019, conducted by Professor Eric Green of Resolutions LLC, and, as a result of arms'-length negotiations, reached a settlement that resolves Objectors' objections, it is hereby agreed by Ford, by Plaintiffs, and by the Objectors as follows:

1. The Lott Objectors and Objector DeBolt shall withdraw their objections to the Settlement.

2. Ford and Plaintiffs acknowledge that the Lott Objectors and Objector DeBolt contributed substantially to the improvements to the Settlement contained in this Amendment. The Lott Objectors successfully pursued increased benefits for both present and former owners, and Objector DeBolt successfully pursued increased benefits for former owners.

3. Ford will not oppose a request by the Lott Objectors and by Objector DeBolt that it pay an award of attorney fees to their counsel, provided (a) the award does not exceed 1.2 times their verified,

reasonable lodestar, plus verified costs; (b) as to the Lott Objectors the award does not exceed $348,004; and (c) as to Objector DeBolt the amount does not exceed $98,340.

4.   Ford will not oppose a request by the Lott Objectors and Objector DeBolt that it pay a service award of $5,000 to each of the Lott Objectors and to Objector DeBolt.

5.   References to "Approval Date" in Sections II.D.3, II.F, II.G, and II.N.1.c shall be replaced with references to the "Effective Date" as redefined in this Amendment.

6.   Section I.R of the Settlement Agreement is amended to read as follows:

"Effective Date of Settlement" or "Effective Date" means the first business day after: (1) the Court enters the Final Order and Judgment, in all material respects similar to the form attached ~~hereto as Exhibit F~~ to the Amendment to Stipulation and Agreement of Settlement; and (2) all appellate rights with respect to the Final Order and Judgment have expired or have been exhausted in such a manner as to affirm the Final Order and Judgment. If any appeal has been taken from the Final Approval Order, the "Effective Date" means the date on which all appeals therefrom, including petitions for rehearing or reargument, petitions for rehearing en banc and petitions for a writ of certiorari or any other form of review, have been fully disposed of in a manner that affirms the Final Approval Order. An appeal that challenges only attorneys' fees, costs, or service awards shall extend the Effective Date only with respect to such attorneys' fees, costs, or service awards.

7.   Section I.S of the Settlement Agreement is amended to read as follows:

The "Fairness Hearing" means the ~~final~~ hearing ~~, held after the Preliminary Approval Order is issued~~ in which the Court will determine whether this Settlement Agreement as amended should be finally approved as fair, reasonable, and adequate, and whether the proposed Final Order and Judgment should be entered, and if so, to determine the amount of attorneys' fees and costs to be awarded to Class Counsel and Objectors' counsel.

8.   Section II.EE is added to immediately follow Section II.E.4.c.

**II.EE.   Cash Payments For Customers Turned Away By Ford Dealers.**

1.   A one-time cash payment of $20 shall be paid to any Class Member who (a) has not received cash payments or Vehicle Discount Certificates under Sections II.B or II.C and (b) submits a declaration under penalty of perjury attesting that he or she experienced Transmission problems and sought relief within 7 years or 100,000 miles of delivery of the Class Vehicle to the first retail customer (whichever occurs first), that a Ford Dealer refused to make hardware or software repairs because the Dealer claimed there was nothing wrong with the vehicle, and that the Ford Dealer did not subsequently make hardware or software repairs.  The declaration must identify the VIN of the Class

Vehicle, the Ford Dealer, and the date on which the Class Member was turned away to receive payment. A form for submitting such claims shall be made available to Class Members on the Settlement Website.

2.  All claims for a cash payment under this section arising from a refused repair prior to the Effective Date must be submitted online or postmarked within 180 days of the Effective Date.  For refused repairs that occur after the Effective Date, the claim for payment must be submitted online or postmarked within 180 days of the refused repair for which a cash payment is sought.  Neither the Claims Administrator nor Ford shall have any obligation to pay any claims pursuant to Section II.EE that are not timely submitted.

3.  If a class member receives a $20 cash payment under this section and later makes a valid claim for a cash payment or Vehicle Discount Certificate under Sections II.B or II.C, the Claims Administrator shall deduct $20 from the amount otherwise payable under Sections II.B or II.C.

Sections II.H, II.I, and II.K shall apply to claims made pursuant to this Section.

9.      Section II.FF is added to the Settlement Agreement to immediately follow Section II.F.7:

**FF.  Guaranteed Minimum Payment.**

1.  Ford will pay a minimum sum of $30,000,000 for the benefits provided for in Sections II.B, II.C, and II.EE of the Settlement ("Guaranteed Minimum Payout").

2.  Within thirty days after October 21, 2024, the Claims Administrator shall calculate and submit to Ford and Class Counsel the Total Payment Amount, which will be the sum of the total dollar value of all prepaid cards issued pursuant to Sections II.B, II.C, and II.EE, plus the total face value of all Vehicle Discount Certificates issued under Section II.C.  If the Total Payment Amount is less than the Guaranteed Minimum Payout, that difference ("the Residue") shall be distributed equally to each Class Member who submitted a valid claim under Sections II.B, II.C or II.EE or who received a payment from Ford after providing Notice of Intent to arbitrate pursuant to Section II.N.4.   In the event the per capita amount of the residual payment would be less than $5.00, the Residue shall be distributed only to Class Members who submitted a valid claim pursuant to Section II.C. If the per capita amount of the residual payment remains less than $5.00, the Residue shall be distributed to a *cy pres* beneficiary to be determined jointly by Class Counsel and Ford.

3. Prior to distributing the residual payment, the Claims Administrator shall perform a reasonable search (via the National Change of Address Database) for a current name and/or address of all Class Members who are entitled to a residual payment.

4.  If any dispute arises regarding Ford's obligations to fulfill the Guaranteed Minimum Payout, and the parties cannot, after good faith negotiations, reach a resolution, the Settling Parties shall submit a joint report to the Court describing the

dispute, summarizing each party's positions. The Court shall make a final determination with respect to the dispute.

     5.  Payments to Class Members made pursuant to this section shall be made by prepaid cards as provided in Section II.K. The unused value of any prepaid cards issued pursuant to this section shall be distributed to the *cy pres* beneficiary designated by Ford and Plaintiffs.

10.    Section II.N.1.b of the Settlement Agreement is deleted.

11.    Section II.N.1.c of the Settlement Agreement is amended to read as follows:

Except as provided in Section II.N.1.e, as amended, Class Members who~~, prior to the Approval Effective Date,~~ have sold their Class Vehicles or returned leased Class Vehicles will only be entitled to arbitration of claims for Vehicle Repurchases based in whole or in part on alleged defects in the PowerShift Transmission in those Class Vehicles if ~~(1)~~ the lemon law of the state where the Arbitration Claimant took delivery of the vehicle allows vehicle owners or lessees to pursue Vehicle Repurchase claims after they have sold or returned their vehicles~~; and (2) the request for Arbitration is filed before the expiration of the applicable state statute of limitations for such a claim or 180 days after the Approval Date, whichever is earlier~~.

~~Class Members who sell Class Vehicles or return leased Class Vehicles on or after the Approval Date will only be entitled to arbitration of claims for Vehicle Repurchases based in whole or in part on alleged defects in the PowerShift Transmission in those Class Vehicles if .1. the lemon law of the state where the Arbitration Claimant took delivery of the vehicle allows vehicle owners or lessees to pursue Vehicle Repurchase claims after they have sold or returned their vehicles; and .2. the request for Arbitration is filed before the expiration of the applicable state statute of limitations for such a claim or 180 days after the date on which the Class Member sold or returned the Class Vehicle, whichever is earlier.~~

12.    Section II.N.1.d of the Settlement Agreement is amended to read as follows:

d. Extension of Statute of Limitations ~~For Class Members Who Still Own or Lease Class Vehicles At The Time Of An Arbitration Hearing~~.

Regardless of the applicable state law governing the claims of an Arbitration Claimant ~~who still owns or leases a Class Vehicle as of the time of an Arbitration Hearing~~, the Statute of Limitations for a Vehicle Repurchase claim brought by such a Claimant that is based in whole or in part on alleged defects in the PowerShift Transmission shall be six (6) years after delivery of the Class Vehicle to the first retail purchaser, or 180 days after the ~~Approval~~ Effective Date, whichever is later.

13.    Section II.N.1.e of the Settlement Agreement is amended to read as follows:

     e.  Vehicle Repurchase Permitted For Class Members ~~Who Still Own or Lease Class Vehicles At The Time of an Arbitration Hearing~~. Even

When Not Available Under State Law.

Even if an Arbitration Claimant ~~who still owns or leases a Class Vehicle at the time of an Arbitration Hearing~~ is not entitled to a Vehicle Repurchase under the applicable lemon law, the Arbitrator may award a Vehicle Repurchase if the notice requirements and statute of limitations conditions established by this Agreement are satisfied and the following conditions are met:

      i. During the period when the Class Vehicle was owned or leased by the Arbitration Claimant and within 5 years or 60,000 miles of delivery of the vehicle to the first retail customer (whichever occurs first), the Class Vehicle was repaired on four (4) separate Service Visits and on each Service Visit the Claimant received a Transmission Hardware Replacement, and:

      ii. The transmission continues to malfunction <u>(or, in the case of former owners or lessees, continued to malfunction at the time the vehicle was disposed of).</u>

The requisite four Transmission Hardware Replacements may be for unrelated conditions or malfunctions.

14.    Section II.N.1.g of the Settlement Agreement is amended to read as follows:

<u>Except as provided in Section II.N.3, T</u>the Arbitrator's decision with respect to a Vehicle Repurchase shall be final and binding with no right of appeal by Ford. However, Arbitration Claimants who do not prevail on a claim for a Vehicle Repurchase are entitled to appeal the Arbitrator's award to an Appellate Arbitrator. The Arbitration Claimant seeking appeal must advance the entire cost of the appeal proceeding as set by the Appellate Arbitration Administrator. If the Arbitration Claimant prevails on appeal, Ford shall reimburse all fees and costs charged by the Appellate Arbitration Administrator. The Arbitration Claimant shall not be entitled to reimbursement of fees and costs if Ford prevails on appeal. No other appeals or requests for judicial review shall be allowed.

15.    Section II.N.3 of the Settlement Agreement is amended to read as follows:

<u>Except as provided in this Section, and n</u>otwithstanding any provision of state law to the contrary, the Arbitrator may not award civil penalties or punitive damages to any Arbitration Claimant.  <u>The Arbitrator may award a civil penalty if applicable state law permits a recovery of civil penalties and if the Claimant establishes that Ford (a) knew of its obligation under state law or this Settlement Agreement, as amended, to repurchase the Claimant's vehicle and, (b) prior to the Arbitrator's award, declined to do so after being provided with the Claimant's notice of intent to proceed to arbitration under Section II.N.4. Civil penalties cannot be awarded if Ford reasonably and in good faith believed that the facts did not require an offer to replace the vehicle or refund the lease payments. The award of civil penalties may not exceed the repurchase amount awarded</u>

by the Arbitrator.  Ford has the right to appeal any award of civil penalties to the Appellate Arbitrator at its own expense.

16.    The first three lines of Section III.F are amended to read as follows:

If this Settlement Agreement, as amended, is finally approved by the Court, a Final Order and Judgment directing the entry of judgment pursuant to Fed. R. Civ. P. 54(b) shall be entered substantially in the form attached to the Amendment to Stipulation and Agreement of Settlementas Exhibit F, as follows:

17.    Section IV.O is added to read as follows:

Ford and Plaintiffs shall jointly prepare an informational, single-page postcard advising Class Members that improvements have been made to the Settlement and referring them to the Settlement Website for details.  Within 14 days of the Effective Date, the Claims Administrator shall mail the postcard, at Ford's expense, using the same mailing list used for the original class notice.  Within 14 days of the Effective Date, Ford and Plaintiffs shall jointly develop a summary of the Settlement, including the new provisions, for inclusion on the Settlement Website.

18.    Ford and Plaintiffs shall jointly develop amendments to the Exhibits to the Settlement Agreement, including the Rules of Arbitration, to the extent necessary to incorporate the terms of these Amendments.

19.    In support of Plaintiffs' motion for final approval of the Settlement, as amended by this agreement, Ford will submit a declaration establishing what it has paid to date to repurchase vehicles owned by Class Members who gave notice of intent to arbitrate pursuant to Section II.N.4.


**IT IS SO AGREED.**



CAPSTONE LAW APC
By: _____          Date: _1 . 24 . 2020_
     Ryan H. Wu
     Class Counsel

**DYKEMA GOSSETT, PLLC**

By:_____     Date:_____
    John Thomas
    Counsel For Ford Motor Company


**PUBLIC CITIZEN**

By: _____     Date:_____
    Michael Kirkpatrick
    Counsel for Lott Objectors

**DAVID J. GORBERG AND ASSOCIATES**

By: _____     Date:_____
    David J. Gorberg
    Counsel for Lott Objectors
_____


**LAW OFFICES OF GEORGE W. COCHRAN**


By: _____     Date: _____
    George W. Cochran
    Counsel for James DeBolt

**FORD MOTOR COMPANY**

By: _____     Date:_____
    Craig W. Halseth
    Counsel, Litigation
    Ford Motor Company

By: _____     Date: _____
    Brenda Lott

By: _____     Date: _____
    Suzanne Lutz

By:_____     Date: _____
    Carlie Olivant

By: _____     Date: _____
    Gail Slomine

By: _____     Date: _____

By: _____    Date: _1/24/2020_
John Thomas
Counsel For Ford Motor Company

**PUBLIC CITIZEN**

By: _____    Date: _____
     Michael Kirkpatrick
     Counsel for Lott Objectors

**DAVID J. GORBERG AND ASSOCIATES**

By: _____    Date: _____
     David J. Gorberg
     Counsel for Lott Objectors

**LAW OFFICES OF GEORGE W. COCHRAN**

By: _____    Date: _____
     George W. Cochran
     Counsel for James DeBolt

**FORD MOTOR COMPANY**

By: _____    Date: _1/24/2020_
     Craig W. Halseth
     Counsel, Litigation
     Ford Motor Company

By: _____    Date: _____
     Brenda Lott

By: _____    Date: _____
     Suzanne Lutz

By: _____    Date: _____
     Carlie Olivant

By: _____    Date: _____
     Gail Slomine

By: _____    Date: _____
     Philip Woloszyn

Philip Woloszyn

By: _____   Date: _____
James "Jason" DeBolt

By: _____   Date: _1/24/2020_____
*Omar Vargas*
44B68E95779C4BF...

By: _____   Date: _1/24/2020_____
*Robert Bertone*
D29FAF83280E4C4...

By: _____   Date: _____
Michelle Harris

By: _____   Date: _____
Sharon Heberling

By: _____   Date: _1/24/2020_____
FA84A5E2854B4D2...

By: _____   Date: _____
Andrea Klipfel

By: _____   Date: _1/24/2020_____
*Maureen Cusick*
77B5E4D2573C46F...

By: _____   Date: _1/24/2020_____
*Tonya Patze*
EAC58444E29D4F2...

By: _____   Date: _1/24/2020_____
*Patricia Soltesiz*
79C19743FE4E40F...

By: _____   Date: _1/24/2020_____
62F90825148F4BB...

Philip Woloszyn

By: _____          Date: _____
    James "Jason" DeBolt

By: _____          Date: _____
    Omar Vargas


By: _____          Date: _____
    Robert Bertone


By: _____          Date: _____
    Michelle Harris


By: _____          Date: _____
    Sharon Heberling


By: _____          Date: _____
    Kevin Klipfel


By: _____          Date: 1/24/2020
    An_____


By: _____          Date: _____
    Maureen Cusick


By: _____          Date: _____
    Tonya Patze


By: _____          Date: _____
    Patricia Soltesiz


By: _____          Date: _____

Philip Woloszyn

By: _____     Date: _____
    James "Jason" DeBolt

By: _____     Date: _____
    Omar Vargas

By: _____     Date: _____
    Robert Bertone

By: _____     Date: _____
    Michelle Harris

By: _____     Date: 1/24/2020

By: _____     Date: _____
    Kevin Klipfel

By: _____     Date: _____
    Andrea Klipfel

By: _____     Date: _____
    Maureen Cusick

By: _____     Date: _____
    Tonya Patze

By: _____     Date: _____
    Patricia Soltesiz

By: _____     Date: _____

Lindsay Schmidt

By: _____     Date: _1/24/2020_____

By: _____     Date: _____
    Virginia Otte

By: _____     Date: _____
    Patricia Schwennker

By: _____     Date: _1/24/2020_____

By: _____     Date: _1/24/2020_____

By: _____     Date: _____
    Abigail Fisher

DocuSign Envelope ID: B9FA1330-8E93-49D8-B93E-827F85701759

Lindsay Schmidt


By: _____     Date: _____
    Joshua Bruno


By: _____     Date: _____1/24/2020_____
    [signature]


By: _____     Date: _____1/24/2020_____
    Patricia Schwennker


By: _____     Date: _____
    Jason Porterfield


By: _____     Date: _____
    Jamie Porterfield


By: _____     Date: _____
    Abigail Fisher

Lindsay Schmidt

By: _____     Date: _____
      Joshua Bruno

By: _____     Date: _____
      Virginia Otte

By: _____     Date: _____
      Patricia Schwennker

By: _____     Date: _____
      Jason Porterfield

By: _____     Date: _____
      Jamie Porterfield

By: _____     Date: _1/24/2020_____
      A

Exhibit 3

# Exhibit 3

## Terms of Selected Settlements Regarding Alleged Automotive Defects

## Approved by California Federal District Courts

| Case | Alleged Undisclosed Defect/Fraud | Extended Warranty | Cash Reimbursement | Cash Payments for Consequential Harms | Opp. for Re-purchase | Realistic High-End Recovery Per Class Member | Special Benefits for Former Owners | Minimum Value of Direct Class Member Benefits | Other Benefits | Length of Claims period |
|---|---|---|---|---|---|---|---|---|---|---|
| *Vargas v. Ford Motor Co.*, No. 2:12-cv-08388-AB-FFM (C.D. Cal.) | Transmission shuddering, slipping and bucking. | No, but the defendant extended the warranty during the lawsuit | Yes, for clutch repairs. | Yes. Warranty repair payments. Range of $200-$2,350 for hardware; $50 for software | Yes. | $25000 | May obtain buyback in arbitration under the Settlement-created standard. | $74,400,000 ($47,400,000 already paid out) + $30,000,000 guaranteed minimum | Claims for breach of warranty (repair demand) & replacement clutch for certain vehicles. | Up to 7 years/100,000 miles for cash payments or 6 years/180 from final approval for Repurchase |
| *In re Hyundai and Kia Engine Lit.*, No. 8:17-00838-JLS (C.D. Cal.) (prelim. approval pending) | Premature engine failure | Yes, to the engine block. | Yes, for qualifying engine repairs & out-of-pocket towing expenses and car rentals. | Yes, goodwill payments if delayed by 60 days. $50. | No. | $2000-$5000 | Reimbursement for diminution of value or loss. | No guaranteed minimum. | Payment for complete loss due to fire damage. Rebate for consumers. | 90 days after notice date |
| *Wylie v. Hyundai Motor America*, No. 16-02102-DOC (C.D. Cal.) (prelim. approval granted) | Trans. control module problems; shuddering & jerking | No. | Yes, for diagnostic and engine repairs. | Yes, for warranty repairs. $250-$675. | No. | $5000 | Loss of value reimbursement. | No guaranteed minimum. | None. | 3 months from notice. |

| Case | Alleged Undisclosed Defect/Fraud | Extended Warranty | Cash Reimbursement | Cash Payments for Consequential Harms | Opp. for Re-purchase | Realistic High-End Recovery Per Class Member | Special Benefits for Former Owners | Minimum Value of Direct Class Member Benefits | Other Benefits | Length of Claims period |
|---|---|---|---|---|---|---|---|---|---|---|
| *In re MyFord Touch Consumer Litig.*, No. 13-03072-EMC (Dec. 17, 2019) | Infotainment system defect | No. | Yes. | Yes, $50/100/$250 for claimants, $55 or $20 for nonclaimants | No. | $445 | No. | Guaranteed minimum payout of $17 million | Free software installation of latest software. | 100 days. |
| *Glenn v. Hyundai Motor America*, No. 15-02052-DOC (Aug. 26, 2019). | Shatter-prone sunroofs. | Yes. | Yes. | Yes, $200 for sunroof breaks. | No. | $600 | $600 compensation vehicle sold due to sunroof problems. | No guaranteed minimum. | Reimbursement for documented rentals/towing expenses; $1000 trade-in rebate. | 3 months from notice. |
| *In re Chysler-Dodge Ecodiesel Mkt. Litig.*, 17-02777 (N.D. Cal. 2019) | Use of emissions defeat devices | Yes | No. | Yes, $2460-$3075 to current owners. | No. | $3075 | Reduced cash payment of $990 | No minimum, but $82.6 million in total benefits as of 1/3/2020. | Free emissions system repairs. | 21 months for current owners/lessess & 3 months for former owners/lessees |
| *In re Hyundai and Kia Fuel Economy Lit.*, 926 F.3d 539 (9th Cir. 2019) | Inflated fuel economy in advertising | No. | Yes, based on miles driven and price of gas. | Yes, lump sum payments. | No. | N/A | None. | Not available. | None. | 6 months. |
| *Sheikh v. Tesla, Inc.*, No. 17-02193, 2018 WL 5794532 (N.D. Cal. Nov. 2, 2018) | Delayed operation of "enhanced autopilot" program. | No. | No. | Yes. | No. | $150 | None. | None. | None. | Not claims based |
| *Falco v. Nissan N.A.*, No. 13-00686-DDP (C.D. Cal. July 19, 2018) | Timing chain system. | No. | Yes, partial payment based on mileage. | No. | No. | $780 | None. | None. | None. | 3 months from notice, and 3 months from repair for additional payments. |

| Case | Alleged Undisclosed Defect/Fraud | Extended Warranty | Cash Reimbursement | Cash Payments for Consequential Harms | Opp. for Re-purchase | Realistic High-End Recovery Per Class Member | Special Benefits for Former Owners | Minimum Value of Direct Class Member Benefits | Other Benefits | Length of Claims period |
|---|---|---|---|---|---|---|---|---|---|---|
| *Warner v. Toyota Motor Sales, U.S.A.*, No 15-02171-FMO (C.D. Cal. May 21, 2017) | Rust-prone truck frames. | Yes, for replaced frames. | Yes, for previously paid out of pocket expenses. | No. | No. | $1000 for reimbursement | None. | Speculative valuation for nonmonetary remedy. | Frame Inspections and Replacement; use of loaner vehicle. | 6 months from notice or 60 days after final approval. |
| *Zakskorn v. Am. Honda Motor Co.*, No. 11-02610-KJM, 2015 WL 3522990 (E.D. Cal. June 9, 2015.) | Premature wear on brake-pads. | No. | Yes, for out of pocket expenses to replace prematurely worn brake pads. | No. | No. | $20 (Cost of brakepad). | None. | None. | None. | 5 months from notice or 60 days after brake pad replacement |
| *Corson v. Toyota Motor Sales USA*, No. 12-8499-JSB, 2016 WL 1375838 (C.D. Cal. Apr. 4, 2016) | Steering defect causing drift | No. | Yes, for out-of-pocket expenses for retuning the electronic control unit. | No. | No. | $700 | None. | None. | Vouchers to those who previously complained about the ECU, and re-tuning ECU at half-price for all others. | 4 months from notice. |
| *Seifi v. Mercedes-Benz USA*, No. 12-05493-THE, 2015 WL 12964340 (N.D. Cal. Aug. 18, 2015) | Balance shaft problem. | Yes, upon confirmation of the need for repair of the sprocket of the balance shaft or the idle gear.. | Yes, up to $4000. | No. | No. | $4000 (cap on reimbursement for repairs) | None. | None. | None. | 135 days of notice or 45 days of date accrued (for claims made after notice period). |
| *Asghari v. Volkswagen Grp. of Am., Inc.*, No. 13- | Excessive oil consumption from engine. | Yes, to correct engine Oil Consumption.. | Yes, for out-of-pocket costs expenses to correct excessive | No. | No. | $100 | None. | None. | Free service adjustment if claimed within 18 | 6 months. |

| Case | Alleged Undisclosed Defect/Fraud | Extended Warranty | Cash Reimbursement | Cash Payments for Consequential Harms | Opp. for Re-purchase | Realistic High-End Recovery Per Class Member | Special Benefits for Former Owners | Minimum Value of Direct Class Member Benefits | Other Benefits | Length of Claims period |
|---|---|---|---|---|---|---|---|---|---|---|
| 02529-MMM, 2015 WL 12732462 (C.D. Cal. May 29, 2015) | | | fuel consumption. | | | | | | months. | |
| *Aarons v. BMW of N. Am., LLC*, No. 11-7667-PSG, 2014 WL 4090564 (C.D. Cal. Apr. 29, 2014) | CVT Transmission problems. | Yes, on the transmission. | Yes, for out-of-pocket expenses for repairs to the transmission. | No. | No. | $4100 | Reimbursement for loss at sale if documented, with graduated reduction based on mileage. | Speculative valuation. | No. | 6 months. |
| *Eisen v. Porsche Cars N. Am.*, No. 11-09405, 2014 WL 439006 (C.D. Cal. Jan. 30, 2014) | Engine shaft problems. | Yes, for damage caused by engine shaft | Yes, for out-of-pocket expenses for an engine shaft repair or replacement. | Yes, up to $200 for towing and rentals. | No. | $2000-$4000 for reimbursement. | None. | Approximately $6 million in total payout. | None. | 3 months. |
| *Keegan v. Am. Honda Motor Co.*, No. 10-09508-MMM, 2014 WL 12551213 (C.D. Cal. Jan. 21, 2014) | Suspension defect creating premature tire wear | No. | Yes, for out-of-pocket expenses for *parts* on the control arm or tires | No. | No. | $500 | Speculative valuation. | Speculative valuation. | Replacement of a control arm on the suspension upon documented proof of premature tire wear. | 160 days after notice. |
| *Sadowska v. Volkswagen Group of Am.*, No. 11-00665-BRO, 2013 WL 9500948 (C.D. Cal. Sep. 25, 2013) | CVT Transmission problem | Yes, 10–year or 100,000–mile warranty extension for transmission parts. | Yes, for transmission repairs/ replacement. | No. | No. | $3000 | Reimbursement for sale at loss due to CVT replacement (rare) | At least an estimated $3,978,625 for claims received, if ultimately validated | None. | 5 months. |

| Case | Alleged Undisclosed Defect/Fraud | Extended Warranty | Cash Reimbursement | Cash Payments for Consequential Harms | Opp. for Re-purchase | Realistic High-End Recovery Per Class Member | Special Benefits for Former Owners | Minimum Value of Direct Class Member Benefits | Other Benefits | Length of Claims period |
|---|---|---|---|---|---|---|---|---|---|---|
| *Kearney v. Hyundai Motor. Am.*, No. 09-1298-JST, 2013 WL 3287996 (C.D. Cal. June 28, 2013) | Airbag detection problems. | No. | No. | No. | Yes . | Repurchase if numerous conditions are met. | None. | Speculative valuation. | A consumer education campaign and free calibration of defective air bag system (OSC), including good faith attempt to resolve complaints | No claims period |
| *Milligan v. Toyota Motor Sales USA*, No. 09-05418-RS, 2012 WL 10277179 (N.D. Cal. 2012) | Transmission shifting problems. | Yes. | Yes, for repairs by current and former owners. | No. | No. | $1000 (for reimbursement) | None. | Approximately $12 million paid out as of claims report. | None. | 2 years. |
| *Mendoza v. Hyundai Motor Co., LTD.*, No. 15-01685, 2017 WL 342059 (E.D. Cal. Jan. 23, 2017) | Engine block causing engine failures. | Yes, extends the Powertrain Warranty | Yes, for past vehicle repairs, rental cars, and towing services. | No. | No. | $2000 (based on Hyundai's discretion) | Loss, if Hyundai decides claimant qualifies. | Since the notice date, Hyundai paid approximately 8.58 million to 2,883 class members as of final approval | Warn drivers about the problem. | N/A |

| Case | Alleged Undisclosed Defect/Fraud | Extended Warranty | Cash Reimbursement | Cash Payments for Consequential Harms | Opp. for Re-purchase | Realistic High-End Recovery Per Class Member | Special Benefits for Former Owners | Minimum Value of Direct Class Member Benefits | Other Benefits | Length of Claims period |
|---|---|---|---|---|---|---|---|---|---|---|
| *Klee v. Nissan N. Am.*, No. 12-08238-AWT, 2015 WL 4538426 (C.D. Cal. July 7, 2015) | Battery range degradation. | Yes, extended to 60–months/60,000–miles for lithium-ion battery capacity loss | No. | Yes, all *former* owners and lessees are entitled to $50. | No. | $50 | None. | Speculative valuation. | Replace the battery with the current OEM 24kWh lithium-ion battery or 90 days of free access to DC Fast charges via an EZ–Charge card | N/A |

Exhibit 4

# Statute of Limitations for Each State's Lemon Law

| STATE | STATUTE OF LIMITATIONS |
|---|---|
| ALABAMA | **Statute of Limitations**: 3 years from original delivery. (Ala. Code 1975 § 8-20A-6)<br><br>**Statute**: Ala. Code 1975 § 8-20A |
| ALASKA | **Statute of Limitations**: Not specified. Assumes 4 yrs (per UCC) from date defect is discovered (latest would be 5 yrs from delivery to original owner). However, requires notice w/in 60 days of qualifying period.<br><br>**Statute**: Alaska Stat. Ann. § 45.45.300 |
| ARIZONA | **Statute of Limitations**: 6 mos from earlier of end of warranty term or 2 yrs / 24,000 miles from delivery<br><br>**Statute**: Ariz. Rev. Stat. Ann. § 44-1261 |
| ARKANSAS | **Statute of Limitations**: 2 yrs from 1st repair attempt + 2 yrs from ADR final decision<br><br>**Statute**: Ark. Code Ann § 4-90-401 |
| CALIFORNIA | **Statute of Limitations**: 4 yrs<br><br>**Statute**: Cal. Civ. Code § 1793.22 |
| COLORADO | **Statute of Limitations**: The earlier of 6 mos after end of warranty term, or 1 yr from original delivery (tolled during arbitration)<br><br>**Statute**: Colo. Rev. Stat. Ann. § 42-10-101 |
| CONNECTICUT | **Statute of Limitations**: Not specified. Assumes 4 yrs (per UCC) from date defect is discovered.<br><br>**Statute**: Conn. Gen. Stat. Ann. § 42-179 |
| DELAWARE | **Statute of Limitations**: 3 yrs from 1st repair or report to manufacturer<br><br>**Statute**: Del. Code Ann. tit. 6, § 5001 |
| FLORIDA | **Statute of Limitations**: 3 yrs (24 mos + 1 yr) OR 1 yr after ADR final action (which must be filed 24 mos + 60 days)<br><br>**Statute**: Fla. Stat. Ann. § 681.10 |
| GEORGIA | **Statute of Limitations**: 3 yrs from original delivery<br><br>**Statute**: Ga. Code Ann. § 10-1-780 |
| HAWAII | **Statute of Limitations**: 3 yrs from original delivery<br><br>**Statute**: Haw. Rev. Stat. Ann. § 481I-1 |
| IDAHO | **Statute of Limitations**: 3 yrs from original delivery<br><br>**Statute**: Idaho Code Ann. § 48-901 |
| ILLINOIS | **Statute of Limitations**: 18 mos from original delivery<br><br>**Statute**: 815 Ill. Comp. Stat. Ann. § 380/1 |
| INDIANA | **Statute of Limitations**: 2yrs from 1st attempt or report of defect (tolled during arbitration)<br><br>**Statute**: Ind. Code Ann. § 24-5-13-1 |

| STATE | STATUTE OF LIMITATIONS |
|-------|------------------------|
| IOWA | **Statute of Limitations**: 3 yrs from purchase |
| | **Statute**: Iowa Code Ann. § 322G.1 |
| KANSAS | **Statute of Limitations**: Not specified. Assumes 4 yrs (per UCC) from date defect is discovered. |
| | **Statute**: Kan. Stat. Ann. § 50-645 |
| KENTUCKY | **Statute of Limitations**: 2yrs from original delivery |
| | **Statute**: Ky. Rev. Stat. Ann. § 367.840 |
| LOUISIANA | **Statute of Limitations**: The longer of 3 yrs from date of purchase or 1 yr from end of warranty term. |
| | **Statute**: La. Stat. Ann. § 51:1941 |
| MAINE | **Statute of Limitations**: The earlier of expiration of express warranty or 3 yrs from original delivery. |
| | **Statute**: Me. Rev. Stat. Ann. tit. 10, § 1161-A |
| MARYLAND | **Statute of Limitations**: 3 yrs from original delivery. |
| | **Statute**: Md. Code Ann., Com. Law § 14-1501 |
| MASSACHUSETTS | **Statute of Limitations**: 18 mos from original delivery. |
| | **Statute**: Mass. Gen. Laws Ann. ch. 90, § 7N |
| MICHIGAN | **Statute of Limitations**: Not specified. Assumes 4 yrs (per UCC) from date defect is discovered, but defect must be reported to manufacturer or authorized dealer w/in 1 yr from original delivery. |
| | **Statute**: Mich. Comp. Laws Ann. § 257.1401 |
| MINNESOTA | **Statute of Limitations**: 3 yrs from original delivery or 6 mos from ADR final decision. |
| | **Statute**: Minn. Stat. Ann. § 325F.665 |
| MISSISSIPPI | **Statute of Limitations**: The earlier of end of express warranty term or 18 mos from original delivery or in 90 days from ADR final decision. |
| | **Statute**: Miss. Code Ann. § 63-17-151 |
| MISSOURI | **Statute of Limitations**: The earlier of the end of warranty term or 18 mos from original delivery. |
| | **Statute**: Mo. Ann. Stat. § 407.560 |
| MONTANA | **Statute of Limitations**: Not specified. Assumes 4 yrs (per UCC) from date defect is discovered. |
| | **Statute**: Mont. Code Ann. § 61-4-501 |
| NEBRASKA | **Statute of Limitations**: The earlier of 1 yr after end of warranty term or 2 yrs from original delivery. |
| | **Statute**: Neb. Rev. Stat. Ann. § 60-2701 |
| NEVADA | **Statute of Limitations**: 18 mos from original delivery. |
| | **Statute**: Nev. Rev. Stat. Ann. § 597.600 |

| STATE | STATUTE OF LIMITATIONS |
|---|---|
| NEW HAMPSHIRE | **Statute of Limitations**: The later of 1 yr from end of express warranty term or 1 yr from final attempt.<br><br>**Statute**: N.H. Rev. Stat. Ann. § 357-D:1 |
| NEW JERSEY | **Statute of Limitations**: Not specified. Assumes 4 yrs (per UCC) from date defect is discovered.<br><br>**Statute**: N.J. Stat. Ann. § 56:12-29 |
| NEW MEXICO | **Statute of Limitations**: 18 mos from original delivery.<br><br>**Statute**: N.M. Stat. Ann. §57-16A-1 |
| NEW YORK | **Statute of Limitations**: 4 yrs from delivery to consumer (new or used)<br><br>**Statute**: N.Y. GEN BUS Law § 198-a |
| NORTH CAROLINA | **Statute of Limitations**: Not specified. Per BBB, NC DOJ advises w/in 3 yrs from the date defect is discovered<br><br>**Statute**: N.C. Gen. Stat. Ann. § 20-351 |
| NORTH DAKOTA | **Statute of Limitations**: The earlier of 6 mos after end of warranty term, or 18 mos from original delivery<br><br>**Statute**: N.D. Cent. Code § 51-07-16 |
| OHIO | **Statute of Limitations**: 5 yrs from original delivery<br><br>**Statute**: Ohio Rev. Code Ann. § 1345.71 |
| OKLAHOMA | **Statute of Limitations**: Not specified. Assumes 4 yrs (per UCC) from date defect is discovered.<br><br>**Statute**: Okla. Stat. Ann. tit. 15, § 901 |
| OREGON | **Statute of Limitations**: 1 yr after qualifying period (2 yrs/24,000 miles)<br><br>**Statute**: Or. Rev. Stat. Ann. § 646A.400 |
| PENNSYLVANIA | **Statute of Limitations**: Not specified. Assumes 4 yrs (per UCC) from date defect is discovered.<br><br>**Statute**: 73 Pa. Stat. and Cons. Stat. Ann. § 1951 |
| PUERTO RICO | **Statute of Limitations**: Not specified.<br><br>**Statute**: |
| RHODE ISLAND | **Statute of Limitations**: The earlier of 3 yrs from date of original delivery or 2 yrs from 15,000 miles<br><br>**Statute**: 6 R.I. Gen. Laws Ann. § 31-5.2-1 |
| SOUTH CAROLINA | **Statute of Limitations**: 3 yrs from original delivery<br><br>**Statute**: S.C. Code Ann. § 56-28-10 |
| SOUTH DAKOTA | **Statute of Limitations**: 3 yrs from original delivery<br><br>**Statute**: S.D. Codified Laws § 32-6D-1 |
| TENNESSEE | **Statute of Limitations**: The later of 6 mos from end of warranty term or 1 yr from original delivery (tolled during ADR).<br><br>**Statute**: Tenn. Code Ann. § 55-24-101 |

| STATE | STATUTE OF LIMITATIONS |
|---|---|
| TEXAS | **Statute of Limitations**: The earlier of 6 mos from end of warranty term or 6 mos from the end of the qualifying period (2 yrs / 24,000 miles)<br><br>**Statute**: Tex. Occ. Code Ann. § 2301.601 |
| US VIRGIN ISLANDS | **Statute of Limitations**: Not specified. Assumes 4 yrs (per UCC) from date defect is discovered.<br><br>**Statute**: V.I. CODE ANN. tit. 12A, § 180 |
| UTAH | **Statute of Limitations**: Not specified. Assumes 4 yrs (per UCC) from date defect is discovered.<br><br>**Statute**: Utah Code Ann. § 13-20-1 |
| VERMONT | **Statute of Limitations**: 1 yr after end of warranty term.<br><br>**Statute**: Vt. Stat. tit. 9 § 4170 |
| VIRGINIA | **Statute of Limitations**: 18 mos from original delivery<br><br>**Statute**: Va. Code Ann. § 59.1-207.9 |
| WASHINGTON | **Statute of Limitations**: 30 mos from original delivery<br><br>**Statute**: Wash. Rev. Code Ann. § 19.118.005 |
| WASHINGTON, DC | **Statute of Limitations**: 4 yrs from original delivery; civil action 20 days after receipt of Board's decision<br><br>**Statute**: DC ST § 50-501 |
| WEST VIRGINIA | **Statute of Limitations**: 1 yr from end of warranty term<br>-but there is a tolling provision for the ADR process<br>(§ 46A-6A-8)<br><br>**Statute**: W. Va. Code Ann. § 46A-6A-1 |
| WISCONSIN | **Statute of Limitations**: 3 yrs from original delivery if purchased after March 1, 2014; presumption is 6 yrs from original delivery if purchased before March 1, 2014<br><br>**Statute**: Wis. Stat. Ann. § 218.0171 |
| WYOMING | **Statute of Limitations**: Not specified. Assumes 4 yrs (per UCC) from date defect is discovered.<br><br>**Statute**: Wyo. Stat. Ann. § 40-17-101 |

## Prefiling Dispute Resolution Requirements For Each State's Lemon Law

| STATE | MANDATORY ADR | STATUTE |
|---|---|---|
| ALABAMA | YES*[1] | Ala. Code 1975 § 8-20A-3(a) |
| ALASKA | YES* | Alaska Stat. Ann. § 45.45.355 |
| ARIZONA | YES* | Ariz. Rev. Stat. Ann. § 44-1265(A) |
| ARKANSAS | YES | Ark. Code Ann § 4-90-404(a)(1) |
| CALIFORNIA | YES* | Cal. Civ. Code § 1793.22(d) |
| COLORADO | YES* | Colo. Rev. Stat. Ann. § 42-10-106 |
| CONNECTICUT | YES* | Conn. Gen. Stat. Ann. § 42-179(j) |
| DELAWARE | YES* | Del. Code Ann. tit. 6, § 5007(a) |
| FLORIDA | YES* | Fla. Stat. Ann. §§ 681.108(1) & 681.104(2) |
| GEORGIA | YES | Ga. Code Ann. § 10-1-785 |
| HAWAII | NO | Haw. Rev. Stat. Ann. § 481I-3 |
| IDAHO | YES | Idaho Code Ann. § 48-906(1) |
| ILLINOIS | YES* | 815 Ill. Comp. Stat. Ann. §§ 380/4(a) & 380/3(a) |
| INDIANA | YES* | Ind. Code Ann. § 24-5-13-19 |
| IOWA | YES* | Iowa Code Ann. § 322G.6 |
| KANSAS | YES* | Kan. Stat. Ann. § 50-645(e) |
| KENTUCKY | YES | Ky. Rev. Stat. Ann. § 367.842(4) |
| LOUISIANA | YES* | La. Stat. Ann. § 51:1944(D) |
| MAINE | YES* | Me. Rev. Stat. Ann. tit. 10, § 1165 |
| MARYLAND | NO | Md. Code Ann., Com. Law § 14-1502 |
| MASSACHUSETTS | NO | Mass. Gen. Laws Ann. Ch. 90, § 7N 1/4 |
| MICHIGAN | YES* | Mich. Comp. Laws Ann. § 257.1405 |
| MINNESOTA | DEPENDS[2] | Minn. Stat. Ann. § 325F.665 |
| MISSISSIPPI | YES* | Miss. Code Ann. § 63-17-163 |
| MISSOURI | YES* | Mo. Ann. Stat. § 407.575 |
| MONTANA | YES | Mont. Code Ann. § 61-4-507 |
| NEBRASKA | YES* | Neb. Rev. Stat. Ann. § 60-2705 |
| NEVADA | YES* | Nev. Rev. Stat. Ann. § 597.620 |
| NEW HAMPSHIRE | YES | N.H. Rev. Stat. Ann. § 357-D:4 |
| NEW JERSEY | NO | N.J. Stat. Ann. § 56:12-29 |
| NEW MEXICO | YES* | N.M. Stat. Ann. §57-16A-6 |
| NEW YORK | YES* | N.Y. GEN BUS Law § 198-a(g) |
| NORTH CAROLINA | YES* | N.C. Gen. Stat. Ann § 20-351.7 |
| NORTH DAKOTA | YES* | N.D. Cent. Code § 51-07-18 |
| OHIO | YES | Ohio Rev. Code Ann. § 1345.77 |
| OKLAHOMA | YES* | Okla. Stat. Ann. tit. 15, § 901(F) |
| OREGON | YES* | Or. Rev. Stat. Ann. § 646A.408 |
| PENNSYLVANIA | YES* | 73 Pa. Stat. and Cons. Stat. Ann § 1959 |
| PUERTO RICO | | |
| RHODE ISLAND | YES* | 6 R.I. Gen. Laws Ann. § 31-5.2-7 |
| SOUTH CAROLINA | YES* | S.C. Code Ann. § 56-28-60 |
| SOUTH DAKOTA | YES* | S.D. Codified Laws § 32-6D-6 |
| TENNESSEE | YES* | Tenn. Code Ann. § 55-24-106 |
| TEXAS | YES | Tex. Occ. Code Ann. § 2301.607 |

[1] "Yes*" means yes if the manufacturer provided for ADR.

[2] The manufacturer can allow a consumer to commence an action without first using its mechanism.

| STATE | MANDATORY ADR | STATUTE |
|---|---|---|
| US VIRGIN ISLANDS | YES | V.I. CODE ANN. tit. 12A, § 185 |
| UTAH | YES | Utah Code Ann. § 13-20-6 |
| VERMONT | YES | Vt. Stat. tit. 9 § 4173 |
| VIRGINIA | NO | Va. Code Ann. § 59.1-207.15 |
| WASHINGTON | YES | Wash. Rev. Code Ann. § 19.118.080 |
| WASHINGTON, DC | YES | DC ST § 50-501 |
| WEST VIRGINIA | YES | W. Va. Code Ann. § 46A-6A-8 |
| WISCONSIN | YES | Wis. Stat. Ann. § 218.0171 |
| WYOMING | YES* | Wyo. Stat. Ann. § 40-17-101 |

## Presumptions and Remedies Under Each State's Lemon Law

| STATE | LEMON LAW PRESUMPTIONS AND REMEDIES |
|---|---|
| ALABAMA | **Presumption for Repurchase:** 3 attempts for same defect in 1 yr / 12,000 miles from original delivery + final attempt after notice<br><br>**Must All Repair Attempts Be Made Within Qualifying Period:** Yes, but on written notice to manufacturer during original qualifying period, obligation to repair extends period to 2 yrs / 24,000 miles.<br><br>**Other Requirements (if applicable):** Out of service for 30 days; significantly impairs car's use, value, or safety<br><br>**Formula to Determine Repurchase:** Full contract price + collateral charges + incidental damages<br><br>**Formula for Offset:** Full purchase price x (miles at 1st attempt / 100,000)<br><br>**Fee-shifting:** One-way. |
| ALASKA | **Presumption for Repurchase:** 3 attempts for same defect in 1 yr from original delivery<br><br>**Must All Repair Attempts Be Made Within Qualifying Period:** Yes.<br><br>**Other Requirements (if applicable):** Out of service for repair for 30 business days; substantially impairs use or value<br><br>**Formula to Determine Repurchase:** Depreciable asset cost (total purchase cost - est. salvage value)<br><br>**Formula for Offset:** % depreciation rate (depreciable asset cost / 7) x depreciable asset cost<br><br>**Fee-shifting:** None. |
| ARIZONA | **Presumption for Repurchase:** 4 attempts for same defect in 2 yrs / 24,000 miles (new); 2 attempts for same defect in 15 days/500 miles (used);<br><br>**Must All Repair Attempts Be Made Within Qualifying Period:** No.<br><br>**Other Requirements (if applicable):** Out of service for 30 days; substantially impairs use or value<br><br>**Formula to Determine Repurchase:** Total purchase price<br><br>**Formula for Offset:** Not specified. (See Moreno v. Gen. Motors Co., No. 2:09-CV-00602 JWS, 2010 WL 276744, at *3 (D. Ariz. Jan. 19, 2010), which used CA formula of mileage/120,000 x purchase price)<br><br>**Fee-shifting:** One-way. |

| STATE | LEMON LAW PRESUMPTIONS AND REMEDIES |
|---|---|
| ARKANSAS | **Presumption for Repurchase:** 3 attempts for same defect OR 5 or more repairs for any substantial impairment OR 1 repair attempt for defect likely to result in death or serious injury in 2 yrs / 24,000 miles from original delivery + final attempt after written notice to manufacturer<br><br>**Must All Repair Attempts Be Made Within Qualifying Period:** No.<br><br>**Other Requirements (if applicable):** Out of service for 30 days; substantially impairs use or value or fails to conform to warranties (express or implied)<br><br>**Formula to Determine Repurchase:** Full purchase price + incidental damages + extended warranty by manufacturer/agent/subsidiary<br><br>**Formula for Offset:** Full purchase price  x (miles at 1st attempt / 120,000)<br><br>**Fee-shifting:** One-way. |
| CALIFORNIA | **Presumption for Repurchase:** 4 attempts for the same defect or 2 attempts for condition that could result in death or serious injury in 18 mos / 18,000 miles (Tanner Consumer Protection Act).<br><br>**Must All Repair Attempts Be Made Within Qualifying Period:** Yes.<br><br>**Other Requirements (if applicable):** Out of service for 30 days; substantially impairs use, value, or safety.<br><br>**Formula to Determine Repurchase:** Total purchase price + incidental damages<br><br>**Formula for Offset:** Purchase price  x (miles at 1st repair / 120,000)<br><br>**Fee-shifting:** One-way. |
| COLORADO | **Presumption for Repurchase:** 4 attempts for same defect in 1 yr from original delivery, including final attempt after written notice to manufacturer<br><br>**Must All Repair Attempts Be Made Within Qualifying Period:** No.<br><br>**Other Requirements (if applicable):** Out of service for 30 business days; substantially impairs use or value.<br><br>**Formula to Determine Repurchase:** Total purchase price<br><br>**Formula for Offset:** Miles at first written report of defect  + subsequent mileage<br><br>**Fee-shifting:** Two-way. |
| CONNECTICUT | **Presumption for Repurchase:** 4 attempts for same defect in 2 yrs/24,000 miles from original delivery; 2 attempts for defect likely to cause death or serious bodily injury in 1 yr from original delivery<br><br>**Must All Repair Attempts Be Made Within Qualifying Period:** No.<br><br>**Other Requirements (if applicable):** Out of service for 30 days; car continues to malfunction; substantially impairs use, value or safety.<br><br>**Formula to Determine Repurchase:** Total purchase price + incidental damages<br><br>**Formula for Offset:** Contract price x (miles before "manufacturer's acceptance of return / 120,000)<br><br>**Fee-shifting:** One-way. (Two-way if lack of substantial justification found). |

| STATE | LEMON LAW PRESUMPTIONS AND REMEDIES |
|---|---|
| DELAWARE | **Presumption for Repurchase:** 4 attempts for same defect in 1 yr from original delivery, including final attempt after written notice to manufacturer<br><br>**Must All Repair Attempts Be Made Within Qualifying Period:** No.<br><br>**Other Requirements (if applicable):** Out of service for 30 days + defect documented; substantially impairs use, value or safety.<br><br>**Formula to Determine Repurchase:** Total purchase cost<br><br>**Formula for Offset:** Total purchase price x (miles before 1st attempt or report / 100,000)<br><br>**Fee-shifting:** One-way. (Two-way if found to be frivolous or in bad faith). |
| FLORIDA | **Presumption for Repurchase:** 3 attempts for same defect in 2 yrs from original delivery + final attempt after written notice to manufacturer<br><br>**Must All Repair Attempts Be Made Within Qualifying Period:** No.<br><br>**Other Requirements (if applicable):** Out of service for 30 days; substantially impairs use, value, or safety.<br><br>**Formula to Determine Repurchase:** Total purchase price.<br><br>**Formula for Offset:** Base price x miles up to settlement agreement or arbitration / 120,000<br><br>**Fee-shifting:** One-way. (Two-way if found to be frivolous or in bad faith). |
| GEORGIA | **Presumption for Repurchase:** 3 attempts for same defect or 1 attempt for serious safety defect in 2 yrs / 24,000 miles from delivery<br><br>**Must All Repair Attempts Be Made Within Qualifying Period:** Yes.<br><br>**Other Requirements (if applicable):** Out of service 30 days; substantially impairs use, value, or safety.<br><br>**Formula to Determine Repurchase:** Contract + trade-in value (purchase). Contract (lease)<br><br>**Formula for Offset:** Purchase price x (miles at 1st attempt / 120,000)<br><br>**Fee-shifting:** One-way. (Two-way if found to be frivolous or in bad faith). |
| HAWAII | **Presumption for Repurchase:** 3 attempts for same defect or 1 attempt for defect likely to cause death or serious bodily injury in 2 yrs / 24,000 miles of original delivery<br><br>**Must All Repair Attempts Be Made Within Qualifying Period:** No.<br><br>**Other Requirements (if applicable):** Out of service 30 business days; substantially impairs use, value, or safety.<br><br>**Formula to Determine Repurchase:** Contract + trade-in value<br><br>**Formula for Offset:** Purchase price x .01 x (miles at 3rd attempt / 1,000)<br><br>**Fee-shifting:** Two-way. |

| STATE | LEMON LAW PRESUMPTIONS AND REMEDIES |
|---|---|
| IDAHO | **Presumption for Repurchase:** 4 attempts for same defect or 1 attempt for complete failure of steering or braking systems likely to cause death or serious injury in 2 yrs / 24,000 miles of original delivery<br><br>**Must All Repair Attempts Be Made Within Qualifying Period:** No.<br><br>**Other Requirements (if applicable):** Out of service for 30 business days; substantially impairs use or value.<br><br>**Formula to Determine Repurchase:** Full purchase price (= < 105% of MSRP) + sales tax + fees + incidental damages (purchase).   (Mos of lease / down payment) x mos remaining after arbitration + sales tax + fees + incidental damages (lease).<br><br>**Formula for Offset:** Purchase price x (miles up to arbitration / 120,000) (purchase). Payments made until the award of a refund (lease).<br><br>**Fee-shifting:** None. (Two-way if found frivolous or bad faith). |
| ILLINOIS | **Presumption for Repurchase:** 4 attempts for the same defect in 1 yr / 12,000 miles<br><br>**Must All Repair Attempts Be Made Within Qualifying Period:** Yes.<br><br>**Other Requirements (if applicable):** Out of service for 30 business days; substantially impairs use, value, or safety.<br><br>**Formula to Determine Repurchase:** Purchase price, excluding tax, or "lease cost" (including deposits, fees, taxed, down payments, and periodic payments)<br><br>**Formula for Offset:** Miles at first written report of defect  + subsequent mileage<br><br>**Fee-shifting:** None. |
| INDIANA | **Presumption for Repurchase:** 4 attempts for same defect in 18 mos / 18,000 miles of original delivery<br><br>**Must All Repair Attempts Be Made Within Qualifying Period:** No.<br><br>**Other Requirements (if applicable):** Out of service for 30 business days; substantially impairs use, value, or safety.<br><br>**Formula to Determine Repurchase:** Purchase price + taxes + fees + incidental damages (purchase). Purchase price + fees + insurance fees/costs paid by lessor for lessee + sales tax + (purchase price x .05) (lease).<br><br>**Formula for Offset:** Total contract price OR original lease obligation x (miles before return / 100,000)<br><br>**Fee-shifting:** One-way. |

| STATE | LEMON LAW PRESUMPTIONS AND REMEDIES |
|-------|--------------------------------------|
| IOWA | **Presumption for Repurchase:** 3 attempts for same condition or 1 attempt for condition likely to cause death or substantial bodily injury in 2 yrs / 24,000 miles of original delivery + final attempt after written notice to manufacturer<br><br>**Must All Repair Attempts Be Made Within Qualifying Period:** Yes.<br><br>**Other Requirements (if applicable):** Out of service for 30 days; substantially impairs use, value, or safety.<br><br>**Formula to Determine Repurchase:** "Purchase price" (Contract + trade-in value)<br><br>**Formula for Offset:** Purchase price x miles at 3rd attempt (purchase). Actual lease price + (purchase price x .02) / 120,000 (lease).<br><br>**Fee-shifting:** One-way. |
| KANSAS | **Presumption for Repurchase:** 4 attempts for same defect or 10 attempts for various defects in 1 yr<br><br>**Must All Repair Attempts Be Made Within Qualifying Period:** No.<br><br>**Other Requirements (if applicable):** Out of service for 30 days; substantially impairs use and value.<br><br>**Formula to Determine Repurchase:** Full purchase or lease price + collateral charges<br><br>**Formula for Offset:** Use per current edition of Your Driving Costs for small sedan (http://exchange.aaa.com/wp-content/uploads/2015/04/Your-Driving-Costs-2015.pdf)<br><br>**Fee-shifting:** None. |
| KENTUCKY | **Presumption for Repurchase:** 4 attempts for same defect in 1 yr / 12,000 miles from original delivery<br><br>**Must All Repair Attempts Be Made Within Qualifying Period:** Yes<br><br>**Other Requirements (if applicable):** Out of service for 30 days for the same defect; impairs use, value, or safety.<br><br>**Formula to Determine Repurchase:** Full purchase price + collateral charges<br><br>**Formula for Offset:** Miles attributable to "buyer"<br><br>**Fee-shifting:** One-way. |
| LOUISIANA | **Presumption for Repurchase:** 4 attempts for the same defect in 1 yr from original delivery.<br><br>**Must All Repair Attempts Be Made Within Qualifying Period:** No.<br><br>**Other Requirements (if applicable):** Out of service for 45 days (conflicting provision says 90 days); substantially impairs use, value, or both.<br><br>**Formula to Determine Repurchase:** Full purchase price + collateral costs (purchase). All reasonable expenditures (lease).<br><br>**Formula for Offset:** Miles attributable to "consumer"<br><br>**Fee-shifting:** One-way. |

| STATE | LEMON LAW PRESUMPTIONS AND REMEDIES |
|---|---|
| MAINE | **Presumption for Repurchase:** 3 attempts for the same defect or 1 attempt for a serious failure of the braking or steering system in 3 yrs / 18,000 miles from original delivery + final attempt after written notice to manufacturer or authorized dealer<br><br>**Must All Repair Attempts Be Made Within Qualifying Period:** No.<br><br>**Other Requirements (if applicable):** Out of service 15 business days; substantially impairs use, value, or safety.<br><br>**Formula to Determine Repurchase:** Full contract price (or total payments made) + collateral charges + incidental damages.<br><br>**Formula for Offset:** Total contract price (or total lease payments made) x (miles before "manufacturer's acceptance of return" / 100,000)<br><br>**Fee-shifting:** One-way. |
| MARYLAND | **Presumption for Repurchase:** 4 attempts for the same defect or 1 attempt for a brake or steering failure that cause's car to fail MD's safety inspection in 2 yrs / 18,000 of original delivery.<br><br>**Must All Repair Attempts Be Made Within Qualifying Period:** Yes.<br><br>**Other Requirements (if applicable):** Out of service for 30 days; substantially impairs use and value.<br><br>**Formula to Determine Repurchase:** Full purchase price + incidental damages<br><br>**Formula for Offset:** Not to exceed 15% of purchase price.<br><br>**Fee-shifting:** One-way. (Two-way if claim is frivolous or in bad faith) |
| MASSACHUSETTS | **Presumption for Repurchase:** 3 attempts for the same defect in 1 yr / 15,000 miles from original delivery + 1 final attempt. See § 7N1/4 re: used cars.<br><br>**Must All Repair Attempts Be Made Within Qualifying Period:** Yes.<br><br>**Other Requirements (if applicable):** Out of service for 15 business days + 1 final repair attempt w/in 7 days; substantially impair's use, value, or safety. See § 7N1/4 re: used cars.<br><br>**Formula to Determine Repurchase:** Total purchase price - cash awared accepted to resolve dispute - refunds or rebates + incidental damages<br><br>**Formula for Offset:** Total contract price (or total payments made) x (miles before return / 100,000)<br><br>**Fee-shifting:** One-way. |
| MICHIGAN | **Presumption for Repurchase:** 1 attempt in 1st yr from original delivery + 3 subsequent attempts in 2 yrs from 1st attempt for same defect (4th attempt after written notice to manufacturer).<br><br>**Must All Repair Attempts Be Made Within Qualifying Period:** Yes.<br><br>**Other Requirements (if applicable):** Out of service 30 days; impairs use or value.<br><br>**Formula to Determine Repurchase:** Purchase or lease price + collateral costs + trade-in value + incidental damages.<br><br>**Formula for Offset:** Purchase or lease price x (miles up to 1st attempt + miles after 25,000 / 100,000)<br><br>**Fee-shifting:** One-way. |

| STATE | LEMON LAW PRESUMPTIONS AND REMEDIES |
|---|---|
| MINNESOTA | **Presumption for Repurchase:** 4 attempts for same defect or 1 attempt for a complete failure of the braking or steering system likely to cause death or serious bodily injury in 2 yrs from original delivery (3yrs if notice to manufacturer/dealer is given w/in express warranty term)<br><br>**Must All Repair Attempts Be Made Within Qualifying Period:** No.<br><br>**Other Requirements (if applicable):** Out of service for 30 business days; substantially impairs use or value.<br><br>**Formula to Determine Repurchase:** Total purchase price + incidental damages<br><br>**Formula for Offset:** The lesser of $.10 per mile driven during which car's use and market value are not substantially impaired (to 1st attempt?) or 10% of the purchase price.<br><br>**Fee-shifting:** One-way. (Two-way if appeal of arbitrator's decision is found to be frivolous or in bad faith). |
| MISSISSIPPI | **Presumption for Repurchase:** 3 attempts for the same defect in 1 yr from original delivery, including 1 final attempt after written notice to manufacturer. 1 yr limit may be extended if 1st attempt was timely made.<br><br>**Must All Repair Attempts Be Made Within Qualifying Period:** No.<br><br>**Other Requirements (if applicable):** Out of service for 15 days for the same defect; impairs use, value, or safety.<br><br>**Formula to Determine Repurchase:** Full purchase price + collateral charges<br><br>**Formula for Offset:** Mileage x $.20<br><br>**Fee-shifting:** One-way. (Two-way if found to be frivolous or in bad faith). |
| MISSOURI | **Presumption for Repurchase:** 4 attempts for same defect in 1 yr from original delivery (1 yr may be extended if 1st attempt was timely made)<br><br>**Must All Repair Attempts Be Made Within Qualifying Period:** No.<br><br>**Other Requirements (if applicable):** Out of service for same defect for 30 working days; substantially impairs use, value, or safety.<br><br>**Formula to Determine Repurchase:** Full purchase price + collateral charges<br><br>**Formula for Offset:** "Reasonable allowance for use" not defined.<br><br>**Fee-shifting:** One-way. (Two-way if found to be frivolous or in bad faith). |
| MONTANA | **Presumption for Repurchase:** 4 attempts in 2 yrs / 18,000 miles from original delivery (3 yrs if written notice given to dealer or manufacturer during warranty term), including final attempt after notice to manufacturer<br><br>**Must All Repair Attempts Be Made Within Qualifying Period:** No.<br><br>**Other Requirements (if applicable):** Out of service for same defect for 30 business days; substantially impairs use, value, or safety.<br><br>**Formula to Determine Repurchase:** Full purchase price + collateral charges + incidental damages<br><br>**Formula for Offset:** Total contract price x (miles up to manufacturer's acceptance of return / 100,000)<br><br>**Fee-shifting:** None. |

| STATE | LEMON LAW PRESUMPTIONS AND REMEDIES |
|---|---|
| NEBRASKA | **Presumption for Repurchase:**  4 attempts for same defect in 1 yr from original delivery.<br><br>**Must All Repair Attempts Be Made Within Qualifying Period:**  No.<br><br>**Other Requirements (if applicable):**  Out of service for 40 days;  substantially impairs use or value.<br><br>**Formula to Determine Repurchase:**  Total purchase price<br><br>**Formula for Offset:** Mileage<br><br>**Fee-shifting:** One-way. |
| NEVADA | **Presumption for Repurchase:**  4 attempts for the same defect in 1 yr from original delivery<br><br>**Must All Repair Attempts Be Made Within Qualifying Period:**  No.<br><br>**Other Requirements (if applicable):**  Out of service for 30 days;  substantially impairs use or value.<br><br>**Formula to Determine Repurchase:**  Full purchase price<br><br>**Formula for Offset:** Mileage<br><br>**Fee-shifting:** None. |
| NEW HAMPSHIRE | **Presumption for Repurchase:**  3 attempts for same defect identified in writing (e.g. RO) by same dealer/authorized agent in warranty term + final attempt after written notice to manufacturer<br><br>**Must All Repair Attempts Be Made Within Qualifying Period:**  No.<br><br>**Other Requirements (if applicable):**  Out of service for 30 days;  substantially impairs use, value, or safety.<br><br>**Formula to Determine Repurchase:**  Full purchase price + collateral charges + incidental damages + consequential damages<br><br>**Formula for Offset:** Full purchase price  x (miles at 1st attempt / 100,000)<br><br>**Fee-shifting:** One-way. (Two-way if no substantial justification found) |
| NEW JERSEY | **Presumption for Repurchase:**  2 attempts for same defect or 1 attempt for "serious safety defect" in 2 yrs / 24,000 miles from original delivery + final attempt after written notice to manufacturer<br><br>**Must All Repair Attempts Be Made Within Qualifying Period:**  Yes.<br><br>**Other Requirements (if applicable):**  Out of service for 20 days;  substantially impairs use, value, or safety.<br><br>**Formula to Determine Repurchase:**  Purchase price/lease costs + incidental damages + consequential damages (new). Contract price (used).<br><br>**Formula for Offset:** Total purchase price OR lease payments made x (miles before 1st attempt / 100,000) (new). Miles from purchase to repurchase x $.51 (current IRS mileage usage) (used).<br><br>**Fee-shifting:** One-way. |

| STATE | LEMON LAW PRESUMPTIONS AND REMEDIES |
|---|---|
| NEW MEXICO | **Presumption for Repurchase:** 4 attempts for the same defect in 1 yr from original delivery (new). 2 attempts in 15 days / 500 miles from delivery (used).<br><br>**Must All Repair Attempts Be Made Within Qualifying Period:** Yes.<br><br>**Other Requirements (if applicable):** Out of service for 30 business days; substantially impairs use or value.<br><br>**Formula to Determine Repurchase:** Full purchase price + collateral charges<br><br>**Formula for Offset:** Mileage<br><br>**Fee-shifting:** One-way. (Two-way if found to be frivolous or in bad faith). |
| NEW YORK | **Presumption for Repurchase:** 4 attempts for the same defect from 2 yrs / 18,000 miles from original delivery (3 attempts for used car)<br><br>**Must All Repair Attempts Be Made Within Qualifying Period:** No.<br><br>**Other Requirements (if applicable):** Out of service for 30 days (15 or 45 days for used car depending on availability of parts); substantially impairs value.<br><br>**Formula to Determine Repurchase:** Full purchase (lease) price<br><br>**Formula for Offset:** (Mileage from 12,000 x purchase (or lease) price) / 100,000<br><br>**Fee-shifting:** One-way. |
| NORTH CAROLINA | **Presumption for Repurchase:** 3 attempts for same defect in 2 yrs / 24,000 miles from original delivery + final attempt after written notice to manufacturer<br><br>**Must All Repair Attempts Be Made Within Qualifying Period:** No.<br><br>**Other Requirements (if applicable):** Out of service for 20 business days in 12 mos of warranty term; substantially impairs value.<br><br>**Formula to Determine Repurchase:** Full contract price + non-refundable portions of extended warranties and service contracts + incidental damages<br><br>**Formula for Offset:** (Miles to 3rd attempt or 20th day x purchase price) / 120,000<br><br>**Fee-shifting:** Two-way (if found frivolous or bad faith). |
| NORTH DAKOTA | **Presumption for Repurchase:** 3 attempts for same defect in 1 yr from original delivery<br><br>**Must All Repair Attempts Be Made Within Qualifying Period:** No.<br><br>**Other Requirements (if applicable):** Out of service for 30 business days; substantially impairs use and value<br><br>**Formula to Determine Repurchase:** Full purchase price OR Lease payments made<br><br>**Formula for Offset:** The lesser of $.10 x mile driven or purchase price x .10<br><br>**Fee-shifting:** None. |

| STATE | LEMON LAW PRESUMPTIONS AND REMEDIES |
|---|---|
| OHIO | **Presumption for Repurchase:** 3 attempts for the same defect or 8 attempts for any or 1 attempt for defect that can cause death or serious injury in 1 yr / 18,000 miles from original delivery<br><br>**Must All Repair Attempts Be Made Within Qualifying Period:** No.<br><br>**Other Requirements (if applicable):** Out of service for 30 days; substantially impairs use, value, or safety<br><br>**Formula to Determine Repurchase:** Full purchase price + incidental damages<br><br>**Formula for Offset:** None.<br><br>**Fee-shifting:** One-way. |
| OKLAHOMA | **Presumption for Repurchase:** 4 attempts for the same defect in 1 yr from original delivery<br><br>**Must All Repair Attempts Be Made Within Qualifying Period:** No.<br><br>**Other Requirements (if applicable):** Out of service for 30 business days; substantially impairs use and value<br><br>**Formula to Determine Repurchase:** Full purchase price<br><br>**Formula for Offset:** Purchase or lease price x (miles after 15,000 / 120,000)<br><br>**Fee-shifting:** One-way. |
| OREGON | **Presumption for Repurchase:** 3 attempts for same defect or 1 attempt for defect that can cause injury or death in 2 yrs / 24,000 miles from original delivery<br><br>**Must All Repair Attempts Be Made Within Qualifying Period:** No.<br><br>**Other Requirements (if applicable):** Out of service for 30 business days; substantially impairs use, safety or value<br><br>**Formula to Determine Repurchase:** Full purchase or lease price + collateral charges<br><br>**Formula for Offset:** (Miles at 1st attempt - 10 miles for mileage accrued during each repair) x (cash or lease price + collateral charges) / 120,000<br><br>**Fee-shifting:** One-way. (Two-way if found to be frivolous or in bad faith). |
| PENNSYLVANIA | **Presumption for Repurchase:** 3 attempts for the same defect in 1 yr / 12,000 from delivery to purchaser<br><br>**Must All Repair Attempts Be Made Within Qualifying Period:** Yes.<br><br>**Other Requirements (if applicable):** Out of service for 30 days; defect substantially impairs use, value, or safety<br><br>**Formula to Determine Repurchase:** Full purchase or lease price + collateral charges<br><br>**Formula for Offset:** The lesser of $.10 x mile driven or purchase price x .10<br><br>**Fee-shifting:** One-way. |

| STATE | LEMON LAW PRESUMPTIONS AND REMEDIES |
|---|---|
| PUERTO RICO | **Presumption for Repurchase:**  None. Warranty period is the longer of factory warranty or 3 yrs/36,000 miles.<br><br>**Must All Repair Attempts Be Made Within Qualifying Period:**  N/A<br><br>**Other Requirements (if applicable):**  Significantly impairs use, value, or safety<br><br>**Formula to Determine Repurchase:**  Rescind contract or reduce purchase price.<br><br>**Formula for Offset:** None.<br><br>**Fee-shifting:** Two-way. |
| RHODE ISLAND | **Presumption for Repurchase:**  4 attempts for same defect in 1 yr / 15,000 miles (new); 3 attempts for same defect in  warranty term (used)<br><br>**Must All Repair Attempts Be Made Within Qualifying Period:**  Yes.<br><br>**Other Requirements (if applicable):**  Out of service for 30 days (new), 15 days in warranty term (used); defect substantially impairs use, value, or safety<br><br>**Formula to Determine Repurchase:**  Full contract or lease price + incidental damages<br><br>**Formula for Offset:** Total contract price or lessee cost x (miles / 100,000)<br><br>**Fee-shifting:** One-way. |
| SOUTH CAROLINA | **Presumption for Repurchase:**  3 attempts for same defect in 1 yr / 12,000 miles from original delivery + final attempt after written notice<br><br>**Must All Repair Attempts Be Made Within Qualifying Period:**  No. (But must be made w/in warranty term)<br><br>**Other Requirements (if applicable):**  Out of service for 30 days; substantially impairs use, value, or safety<br><br>**Formula to Determine Repurchase:**  Full purchase price + incidental damages<br><br>**Formula for Offset:** Full purchase price x (miles at 1st attempt  / 120,000)<br><br>**Fee-shifting:** One-way. |
| SOUTH DAKOTA | **Presumption for Repurchase:**  4 attempts for same defect in 1 yr / 12,000 miles from + final attempt after notice<br><br>**Must All Repair Attempts Be Made Within Qualifying Period:**  Yes, but on written notice to manufacturer during original qualifying period, obligation to repair extends period to 2 yrs / 24,000 miles.<br><br>**Other Requirements (if applicable):**  Out of service for 30 days; significantly impairs use, value, or safety<br><br>**Formula to Determine Repurchase:**  Full purchase price + incidental damages<br><br>**Formula for Offset:** Full purchase price x (miles to 1st attempt / 100,000)<br><br>**Fee-shifting:** One-way. |

| STATE | LEMON LAW PRESUMPTIONS AND REMEDIES |
|---|---|
| TENNESSEE | **Presumption for Repurchase:** 3 attempts in 1 yr from original delivery<br><br>**Must All Repair Attempts Be Made Within Qualifying Period:** Yes.<br><br>**Other Requirements (if applicable):** Out of service for 30 days; substantially impairs use, value, or safety<br><br>**Formula to Determine Repurchase:** Full purchase price + collateral charges; All lease payments made + deposit (no offset)<br><br>**Formula for Offset:** Miles not to exceed 1/2 the amount the IRS allows per mile + loss to fair market value from other damage beyond normal wear and tear<br><br>**Fee-shifting:** One-way. |
| TEXAS | **Presumption for Repurchase:** 4 attempts for same defect or 2 attempts for serious safety hazard in 2 yrs / 24,000 miles from original delivery<br><br>**Must All Repair Attempts Be Made Within Qualifying Period:** Yes + attempts must be evenly split between 1st and 2nd yrs of qualifying period (2/2, 1/1).<br><br>**Other Requirements (if applicable):** Out of service for 30 days + 2 attemps in 1 yr / 12,000 miles from original delivery; substantially impairs use or value<br><br>**Formula to Determine Repurchase:** Full purchase price + incidental costs<br><br>**Formula for Offset:** Miles<br><br>**Fee-shifting:** None. |
| US VIRGIN ISLANDS | **Presumption for Repurchase:** 3 attempts in warranty period + final attempt after notice<br><br>**Must All Repair Attempts Be Made Within Qualifying Period:**<br><br>**Other Requirements (if applicable):** Out of service for 40 business days; substantially impairs use, value, or safety<br><br>**Formula to Determine Repurchase:** Purchase price + incidental costs.<br><br>**Formula for Offset:** (Cost - salvage value x 7) / yrs driven<br><br>**Fee-shifting:** One-way. (Two-way if found frivolous or bad faith) |
| UTAH | **Presumption for Repurchase:** 4 attempts for the same defect in 1 yr from original delivery<br><br>**Must All Repair Attempts Be Made Within Qualifying Period:** No.<br><br>**Other Requirements (if applicable):** Out of service for 30 days (at least 4 hrs per day); substantially impairs  use, value, or safety<br><br>**Formula to Determine Repurchase:** Full purchase price + collateral charges<br><br>**Formula for Offset:** Miles<br><br>**Fee-shifting:** Two-way. |

| STATE | LEMON LAW PRESUMPTIONS AND REMEDIES |
|-------|--------------------------------------|
| VERMONT | **Presumption for Repurchase:** 3 attempts for same defect (documented by 1 repair facility) w/in warranty term + final attempt<br><br>**Must All Repair Attempts Be Made Within Qualifying Period:** No.<br><br>**Other Requirements (if applicable):** Out of service for 30 days; substantially impairs use, value, or safety<br><br>**Formula to Determine Repurchase:** Full purchase price (or lease payments + deposit) + incidental damages + consequential damages<br><br>**Formula for Offset:** Full purchase price x (miles at 1st attempt / 100,000);  (Lease payments + deposit) x (miles to 1st attempt / miles allowed by lease agreement)<br><br>**Fee-shifting:** One-way. |
| VIRGINIA | **Presumption for Repurchase:** 3 attempts for same defect or 1 attempt for serious safety defect in 18 mos from original delivery<br><br>**Must All Repair Attempts Be Made Within Qualifying Period:** No.<br><br>**Other Requirements (if applicable):** Out of service for 30 days; significantly impairs use, value, or safety<br><br>**Formula to Determine Repurchase:** Full contract price + collateral charges + incidental damages<br><br>**Formula for Offset:** Miles to 1st attempt or notice, not to exceed 1/2 the amount the IRS allows per mile + loss to fair market value from other damage beyond normal wear and tear<br><br>**Fee-shifting:** One-way. (Two-way if found to be frivolous). |
| WASHINGTON | **Presumption for Repurchase:** 4 attempts for same defect or 2 attempts for serious safety defect or 1 attempt each for 2 serious safety defects in 1 yr in 2 yrs / 24,000 miles from original delivery<br><br>**Must All Repair Attempts Be Made Within Qualifying Period:** No.<br><br>**Other Requirements (if applicable):** Out of service for 30 days (at least 15 during warranty term); subtantially impairs use, value, or safety<br><br>**Formula to Determine Repurchase:** Purchase price + collateral charges + incidental costs (see statute for "purchase price" of used car")<br><br>**Formula for Offset:** Miles to 1st attempt x purchase price / 120,000<br><br>**Fee-shifting:** One-way. |
| WASHINGTON, D.C. | **Presumption for Repurchase:** 4 attempts for same defect or 1 attempt for safety-related defect in 2 yrs / 18,000 miles of original delivery.<br><br>**Must All Repair Attempts Be Made Within Qualifying Period:** No.<br><br>**Other Requirements (if applicable):** Out of service for 30 days; significantly impairs car<br><br>**Formula to Determine Repurchase:** Full purchase or lease price + collateral charges<br><br>**Formula for Offset:** Miles after 12,000 x .10 (max)<br><br>**Fee-shifting:** One-way. |

| STATE | LEMON LAW PRESUMPTIONS AND REMEDIES |
|---|---|
| WEST VIRGINIA | **Presumption for Repurchase:** 3 attempts for same defect or 1 attempt for condition likely to cause death or serious bodily injury in 1 yr from original delivery + final attempt after written notice<br><br>**Must All Repair Attempts Be Made Within Qualifying Period:** Yes.<br><br>**Other Requirements (if applicable):** Out of service for 30 days; substantially impairs use or value<br><br>**Formula to Determine Repurchase:** + incidental damages<br><br>**Formula for Offset:**<br><br>**Fee-shifting:** One-way. |
| WISCONSIN | **Presumption for Repurchase:** 4 attempts for same defect in 1 yr from original delivery<br><br>**Must All Repair Attempts Be Made Within Qualifying Period:** Yes.<br><br>**Other Requirements (if applicable):** Out of service for 30 days; substantially impairs use, value, or safety<br><br>**Formula to Determine Repurchase:** Full purchase price + collateral costs + incidental damages<br><br>**Formula for Offset:** Full purchase price x (miles to 1st attempt / 100,000)<br><br>**Fee-shifting:** One-way. |
| WYOMING | **Presumption for Repurchase:** 3 attempts for the same defect in 1 yr from original delivery + final attempt after written notice.<br><br>**Must All Repair Attempts Be Made Within Qualifying Period:** No.<br><br>**Other Requirements (if applicable):** Out of service for 30 business days; substantially impairs use or value.<br><br>**Formula to Determine Repurchase:** Full purchase or lease price + collateral charges<br><br>**Formula for Offset:** Miles.<br><br>**Fee-shifting:** One-way. |

## Mandatory Pre-Suit Notice to Manufacturer

| STATE | NOTICE REQUIREMENTS |
|---|---|
| ALABAMA | **Notice Required:** YES<br>**Written Notice:** YES<br>**Time Period for Notification:**<br>**Statute:** Ala. Code 1975 § 8-20A-3a |
| ALASKA | **Notice Required:** YES<br>**Written Notice:** YES<br>**Time Period for Notification:** Before 60 days have elapsed after the expiration of the express warranty OR the one-year period of delivery (whichever occurs first)<br>**Statute:** Alaska Stat. Ann. § 45.45.310 |
| ARIZONA | **Notice Required:** YES<br>**Written Notice:** YES<br>**Time Period for Notification:** The term of the express warranty OR the earlier of either 2 years following the date of the original delivery to the consumer or 24K miles<br>(Ariz. Rev. Stat. Ann. § 44-1263(A))<br>**Statute:** Ariz. Rev. Stat. Ann. § 44-1264(C) |
| ARKANSAS | **Notice Required:** YES<br>**Written Notice:** YES<br>**Time Period for Notification:** After 3 attempt to address a (1) non-conformity OR 1 attempt to repair a nonconformity that is likely to cause death or serious bodily injury<br>**Statute:** Ark. Code Ann § 4-90-406(a)(1) |
| CALIFORNIA | **Notice Required:** CONDITIONAL, upon disclosure to consumer<br>**Written Notice:**<br>**Time Period for Notification:** After the occurrence of the events giving rise to the presumption<br>(Cal. Civ. Code § 1793.4(c)(3))<br>**Statute:** Cal. Civ. Code § 1793.22(b)(1)-(3) |
| COLORADO | **Notice Required:** YES<br>**Written Notice:** YES<br>**Time Period for Notification:**<br>**Statute:** Colo. Rev. Stat. Ann. § 42-10-103(c) |

| STATE | NOTICE REQUIREMENTS |
|---|---|
| CONNECTICUT | **Notice Required:** CONDITIONAL, upon disclosure to consumer<br><br>**Written Notice:** YES<br><br>**Time Period for Notification:**<br><br>**Statute:** Conn. Gen. Stat. Ann. § 42-179(c) |
| DELAWARE | **Notice Required:** YES<br><br>**Written Notice:** YES<br><br>**Time Period for Notification:**<br><br>**Statute:** Del. Code Ann. tit. 6, § 5004(b) |
| FLORIDA | **Notice Required:** YES<br><br>**Written Notice:** YES<br><br>**Time Period for Notification:** After either definition of Reasonable Attempts<br><br>**Statute:** Fla. Stat. Ann. § 681.104(1)(a) & (b) |
| GEORGIA | **Notice Required:** YES<br><br>**Written Notice:** YES<br><br>**Time Period for Notification:** After a reasonable number of attempts<br><br>**Statute:** Ga. Code Ann. § 10-1-784(a)(2)(A) |
| HAWAII | **Notice Required:** CONDITIONAL upon disclosure to consumer<br><br>**Written Notice:** YES<br><br>**Time Period for Notification:**<br><br>**Statute:** Haw. Rev. Stat. Ann. § 481I-3(h) |
| IDAHO | **Notice Required:** YES<br><br>**Written Notice:** YES<br><br>**Time Period for Notification:**<br><br>**Statute:** Idaho Code Ann. § 48-901(5) |
| ILLINOIS | **Notice Required:** YES<br><br>**Written Notice:** YES<br><br>**Time Period for Notification:**<br><br>**Statute:** 815 Ill. Comp. Stat. Ann. § 380/3(h) |
| INDIANA | **Notice Required:** CONDITIONAL upon disclosure to consumer<br><br>**Written Notice:** YES<br><br>**Time Period for Notification:**<br><br>**Statute:** Ind. Code Ann. § 24-5-13-9(a) |

| STATE | NOTICE REQUIREMENTS |
|---|---|
| IOWA | **Notice Required:** YES<br><br>**Written Notice:** YES<br><br>**Time Period for Notification:** After 3 attempts have been made on same non-conformity OR car has been out of service for 20 or more days<br><br>**Statute:** Iowa Code Ann. § 322G.4(1)(a) |
| KANSAS | **Notice Required:** YES<br><br>**Written Notice:**<br><br>**Time Period for Notification:**<br><br>**Statute:** Kan. Stat. Ann. § 50-645(d) |
| KENTUCKY | **Notice Required:** YES<br><br>**Written Notice:** YES<br><br>**Time Period for Notification:** After a reasonable number of repair attempts<br><br>**Statute:** Ky. Rev. Stat. Ann. § 367.842(1) |
| LOUISIANA | **Notice Required:** Not specified<br><br>**Written Notice:**<br><br>**Time Period for Notification:**<br><br>**Statute:** |
| MAINE | **Notice Required:** CONDITIONAL upon disclosure to consumer<br><br>**Written Notice:** YES<br><br>**Time Period for Notification:**<br><br>**Statute:** Me. Rev. Stat. Ann. tit. 10, § 1163(6) |
| MARYLAND | **Notice Required:** YES<br><br>**Written Notice:** YES<br><br>**Time Period for Notification:** During warranty period<br><br>**Statute:** Md. Code Ann., Com. Law § 14-1502(b)(1) |
| MASSACHUSETTS | **Notice Required:** NO<br><br>**Written Notice:**<br><br>**Time Period for Notification:**<br><br>**Statute:** Mass. Gen. Laws Ann. ch. 90, § 7N1/2(5) |
| MICHIGAN | **Notice Required:** YES<br><br>**Written Notice:** YES<br><br>**Time Period for Notification:** Anytime after the 3rd attempt to repair the same non-conformity OR after vehicle OOS for at least 25 days in repair facility<br><br>**Statute:** Mich. Comp. Laws Ann. § 257.1403(5)(a) & (b) |

| STATE | NOTICE REQUIREMENTS |
|---|---|
| MINNESOTA | **Notice Required:** YES<br><br>**Written Notice:** YES<br><br>**Time Period for Notification:**<br><br>**Statute:** Minn. Stat. Ann. § 325F.665(3)(e) |
| MISSISSIPPI | **Notice Required:** YES<br><br>**Written Notice:** YES<br><br>**Time Period for Notification:**<br><br>**Statute:** Miss. Code Ann. § 63-17-159(5) |
| MISSOURI | **Notice Required:** YES<br><br>**Written Notice:** YES<br><br>**Time Period for Notification:**<br><br>**Statute:** Mo. Ann. Stat. § 407.573(2) |
| MONTANA | **Notice Required:** YES<br><br>**Written Notice:** YES<br><br>**Time Period for Notification:**<br><br>**Statute:** Mont. Code Ann. § 61-4-502(2) |
| NEBRASKA | **Notice Required:** YES<br><br>**Written Notice:** YES<br><br>**Time Period for Notification:**<br><br>**Statute:** Neb. Rev. Stat. Ann. § 60-2704 |
| NEVADA | **Notice Required:** Not specified<br><br>**Written Notice:**<br><br>**Time Period for Notification:**<br><br>**Statute:** |
| NEW HAMPSHIRE | **Notice Required:** YES<br><br>**Written Notice:** YES<br><br>**Time Period for Notification:** After 3rd repair attempt to correct the non-conformity or after the motor vehicle is OOS for 30 cumulative business days<br><br>**Statute:** N.H. Rev. Stat. Ann. § 357-D:4(I) |

| STATE | NOTICE REQUIREMENTS |
|---|---|
| NEW JERSEY | **Notice Required:** YES<br><br>**Written Notice:** YES<br><br>**Time Period for Notification:** After subject to repair two or three times for substantially same non-conformity or OOS for a cumlative of 20 or more calendar days; or,<br><br>3. for vehicles purchased or leased on or after October 1, 2009, a nonconformity that is likely to cause death or seri<br><br>**Statute:** N.J. Stat. Ann. § 56:12-33(b) |
| NEW MEXICO | **Notice Required:** YES<br><br>**Written Notice:** YES<br><br>**Time Period for Notification:**<br><br>**Statute:** N.M. Stat. Ann. §57-16A-3(C)(2) |
| NEW YORK | **Notice Required:** Not specified beyond initial notifications that fulfill the "reasonable number of attempts" standard for return or refund<br><br>**Written Notice:** Only if notification given to Agents/Dealer of Manuf, they must forward as a written notification<br><br>**Time Period for Notification:**<br><br>**Statute:** N.Y. GEN BUS Law § 198-a(b)(1) |
| NORTH CAROLINA | **Notice Required:** CONDITIONALupon disclosure to consumer<br><br>**Written Notice:** YES<br><br>**Time Period for Notification:**<br><br>**Statute:** N.C. Gen. Stat. Ann. § 20-351.5(a) |
| NORTH DAKOTA | **Notice Required:** YES<br><br>**Written Notice:** YES<br><br>**Time Period for Notification:**<br><br>**Statute:** N.D. Cent. Code § 51-07-19 |
| OHIO | **Notice Required:** Not specified beyond initial notifications that fulfill the "reasonable number of attempts" standard for return or refund<br><br>**Written Notice:**<br><br>**Time Period for Notification:**<br><br>**Statute:** Ohio Rev. Code Ann. § 1345.72(A) |
| OKLAHOMA | **Notice Required:** YES<br><br>**Written Notice:** YES<br><br>**Time Period for Notification:**<br><br>**Statute:** Okla. Stat. Ann. tit. 15, § 901(C) |

| STATE | NOTICE REQUIREMENTS |
|---|---|
| OREGON | **Notice Required:** YES<br><br>**Written Notice:** YES<br><br>**Time Period for Notification:**<br><br>**Statute:** Or. Rev. Stat. Ann. § 646A.402(3) |
| PENNSYLVANIA | **Notice Required:** Not specified beyond initial notifications that fulfill the "reasonable number of attempts" standard for return or refund<br><br>**Written Notice:**<br><br>**Time Period for Notification:**<br><br>**Statute:** 73 Pa. Stat. and Cons. Stat. Ann. § 1954 |
| PUERTO RICO | **Notice Required:** NO<br><br>**Written Notice:**<br><br>**Time Period for Notification:**<br><br>**Statute:** |
| RHODE ISLAND | **Notice Required:** Not specified beyond initial notifications that fulfill the "reasonable number of attempts" standard for return or refund<br><br>**Written Notice:**<br><br>**Time Period for Notification:**<br><br>**Statute:** 6 R.I. Gen. Laws Ann. § 31-5.2-2 |
| SOUTH CAROLINA | **Notice Required:** CONDITIONAL upon disclosure to consumer<br><br>**Written Notice:** YES<br><br>**Time Period for Notification:**<br><br>**Statute:** S.C. Code Ann. § 56-28-50(B) |
| SOUTH DAKOTA | **Notice Required:** YES<br><br>**Written Notice:** YES<br><br>**Time Period for Notification:**<br><br>**Statute:** S.D. Codified Laws § 32-6D-6 |
| TENNESSEE | **Notice Required:** YES<br><br>**Written Notice:** YES<br><br>**Time Period for Notification:**<br><br>**Statute:** Tenn. Code Ann. § 55-24-105(c) |
| TEXAS | **Notice Required:** YES<br><br>**Written Notice:** YES<br><br>**Time Period for Notification:**<br><br>**Statute:** Tex. Occ. Code Ann. § 2301.606(c)(1) |

| STATE | NOTICE REQUIREMENTS |
|---|---|
| US VIRGIN ISLANDS | **Notice Required:** Not specified beyond initial notifications that fulfill the "reasonable number of attempts" standard for return or refund<br><br>**Written Notice:** YES<br><br>**Time Period for Notification:**<br><br>**Statute:** V.I. CODE ANN. tit. 12A, § 181(a)(2) |
| UTAH | **Notice Required:** Not specified beyond initial notifications that fulfill the "reasonable number of attempts" standard for return or refund<br><br>**Written Notice:**<br><br>**Time Period for Notification:**<br><br>**Statute:** Utah Code Ann. § 13-20-3 |
| VERMONT | **Notice Required:** YES<br><br>**Written Notice:** YES<br><br>**Time Period for Notification:**<br><br>**Statute:** Vt. Stat. tit. 9 § 4173(a) |
| VIRGINIA | **Notice Required:** YES<br><br>**Written Notice:** NO<br><br>**Time Period for Notification:**<br><br>**Statute:** Va. Code Ann. § 59.1-207.13(E) |
| WASHINGTON | **Notice Required:** YES<br><br>**Written Notice:** YES<br><br>**Time Period for Notification:** After Reasonable Attempts<br><br>**Statute:** Wash. Rev. Code Ann. § 19.118.041(1) |
| WASHINGTON, DC | **Notice Required:** Not specified beyond initial notifications that fulfill the "reasonable number of attempts" standard for return or refund<br><br>**Written Notice:**<br><br>**Time Period for Notification:**<br><br>**Statute:** DC ST § 50-502(d)(1) & (2) |
| WEST VIRGINIA | **Notice Required:** YES<br><br>**Written Notice:** YES<br><br>**Time Period for Notification:**<br><br>**Statute:** W. Va. Code Ann. § 46A-6A-5(c) |
| WISCONSIN | **Notice Required:** YES<br><br>**Written Notice:** YES<br><br>**Time Period for Notification:**<br><br>**Statute:** Wis. Stat. Ann. § 218.0171(2)(b)(1) |

| STATE | NOTICE REQUIREMENTS |
|---|---|
| WYOMING | **Notice Required:** YES<br><br>**Written Notice:** YES<br><br>**Time Period for Notification:**<br><br>**Statute:** Wyo. Stat. Ann. § 40-17-101(h) |

## Manufacturer's Opportunity to Repair Defect For Each State

| STATE | MANDATORY OPPORTUNITY TO CURE |
|---|---|
| ALABAMA | **Must the Consumer Provide the Manufacturer With an Opportunity to Repair?** YES<br><br>(Ala. Code 1975 § 8-20A-3(a))<br><br>**Deadline for Notice to Consumer of Reasonably Accessible Repair Facility:** Within 7 days of receiving notice<br><br>**Deadline to Complete Repair Attempt:** Within 14 days of delivery of car |
| ALASKA | **Must the Consumer Provide the Manufacturer With an Opportunity to Repair?** YES<br><br>(Alaska Stat. Ann. § 45.45.310)<br><br>**Deadline for Notice to Consumer Of Reasonably Accessible Repair Facility:**<br><br>**Deadline to Complete Repair Attempt:** Within 30 days of receiving required notice |
| ARIZONA | **Must the Consumer Provide the Manufacturer With an Opportunity to Repair?** YES<br><br>(Ariz. Rev. Stat. Ann. § 44-1264(C))<br><br>**Timing of Notice To Consumer Of Reasonably Accessible Repair Facility:**<br><br>**Mandatory Timing of Attempt To Cure:** |
| ARKANSAS | **Must the Consumer Provide the Manufacturer With an Opportunity to Repair?** YES<br><br>(Ark. Code Ann § 4-90-406(a)(1))<br><br>**Timing of Notice To Consumer Of Reasonably Accessible Repair Facility:** Within 10 days notify & provide the consumer with opportunity to have vehicle repaired<br><br>**Mandatory Timing of Attempt To Cure:** Within 10 days after delivery of motor vehicle to perform repairs |
| CALIFORNIA | **Must the Consumer Provide the Manufacturer With an Opportunity to Repair?** YES<br><br>(Cal. Civ. Code § 1793.3(d))<br><br>**Timing of Notice To Consumer Of Reasonably Accessible Repair Facility:** OPTIONAL<br><br>if Manufacturer does not decide to attempt repair themselves<br><br>**Mandatory Timing of Attempt To Cure:** Within 30 days (unless buyer agrees in writing to the contrary)<br><br>(Cal. Civ. Code § 1793.4) |

| STATE | MANDATORY OPPORTUNITY TO CURE |
|---|---|
| COLORADO | **Must the Consumer Provide the Manufacturer With an Opportunity to Repair?** YES<br><br>(Colo. Rev. Stat. Ann. § 42-10-103(c))<br><br>**Timing of Notice To Consumer Of Reasonably Accessible Repair Facility:**<br><br>**Mandatory Timing of Attempt To Cure:** |
| CONNECTICUT | **Must the Consumer Provide the Manufacturer With an Opportunity to Repair?** YES<br><br>(Conn. Gen. Stat. Ann. § 42-179(e))<br><br>**Timing of Notice To Consumer Of Reasonably Accessible Repair Facility:**<br><br>**Mandatory Timing of Attempt To Cure:** |
| DELAWARE | **Must the Consumer Provide the Manufacturer With an Opportunity to Repair?** YES<br><br>(Del. Code Ann. tit. 6, § 5004(b))<br><br>**Timing of Notice To Consumer Of Reasonably Accessible Repair Facility:**<br><br>**Mandatory Timing of Attempt To Cure:** |
| FLORIDA | **Must the Consumer Provide the Manufacturer With an Opportunity to Repair?** CONDITIONAL<br><br>upon manufacturer responding to notice<br><br>(Fla. Stat. Ann. § 681.104(1)(a) & (b))<br><br>**Timing of Notice To Consumer Of Reasonably Accessible Repair Facility:** Within 10 days of receipt of notice, respond with info<br><br>**Mandatory Timing of Attempt To Cure:** 10 days comencing on receipt of the motor vehicle |
| GEORGIA | **Must the Consumer Provide the Manufacturer With an Opportunity to Repair?** CONDITIONAL<br><br>**Timing of Notice To Consumer Of Reasonably Accessible Repair Facility:** Within 7 days of receipt of notice, must notify the consumer of the location<br><br>(Ga. Code Ann. § 10-1-784(a)(2)(B))<br><br>**Mandatory Timing of Attempt To Cure:** 28 days from receipt of notice |
| HAWAII | **Must the Consumer Provide the Manufacturer With an Opportunity to Repair?** YES<br><br>(Haw. Rev. Stat. Ann. § 481I-3(d))<br><br>**Timing of Notice To Consumer Of Reasonably Accessible Repair Facility:**<br><br>**Mandatory Timing of Attempt To Cure:** "reasonable opportunity" |

| STATE | MANDATORY OPPORTUNITY TO CURE |
|---|---|
| IDAHO | **Must the Consumer Provide the Manufacturer With an Opportunity to Repair?** YES<br><br>(even if no notification)<br><br>(Idaho Code Ann. § 48-901(5))<br><br>**Timing of Notice To Consumer Of Reasonably Accessible Repair Facility:**<br><br>**Mandatory Timing of Attempt To Cure:** |
| ILLINOIS | **Must the Consumer Provide the Manufacturer With an Opportunity to Repair?** YES<br><br>(815 Ill. Comp. Stat. Ann. § 380/3(h))<br><br>**Timing of Notice To Consumer Of Reasonably Accessible Repair Facility:**<br><br>**Mandatory Timing of Attempt To Cure:** |
| INDIANA | **Must the Consumer Provide the Manufacturer With an Opportunity to Repair?** Not Specified<br><br>**Timing of Notice To Consumer Of Reasonably Accessible Repair Facility:**<br><br>**Mandatory Timing of Attempt To Cure:** |
| IOWA | **Must the Consumer Provide the Manufacturer With an Opportunity to Repair?** YES<br><br>(Iowa Code Ann. § 322G.4(1)(a))<br><br>**Timing of Notice To Consumer Of Reasonably Accessible Repair Facility:** Within ten days of receipt of notification<br><br>**Mandatory Timing of Attempt To Cure:** Within ten days of delivery of vehicle |
| KANSAS | **Must the Consumer Provide the Manufacturer With an Opportunity to Repair?** Not Specified<br><br>**Timing of Notice To Consumer Of Reasonably Accessible Repair Facility:**<br><br>**Mandatory Timing of Attempt To Cure:** |
| KENTUCKY | **Must the Consumer Provide the Manufacturer With an Opportunity to Repair?** Not Specified<br><br>**Timing of Notice To Consumer Of Reasonably Accessible Repair Facility:**<br><br>**Mandatory Timing of Attempt To Cure:** |
| LOUISIANA | **Must the Consumer Provide the Manufacturer With an Opportunity to Repair?** CONDITIONAL<br><br>upon manufacturer performing repairs during specific times<br><br>(La. Stat. Ann. § 51:1943(3))<br><br>**Timing of Notice To Consumer Of Reasonably Accessible Repair Facility:**<br><br>**Mandatory Timing of Attempt To Cure:** |

| STATE | MANDATORY OPPORTUNITY TO CURE |
|---|---|
| MAINE | **Must the Consumer Provide the Manufacturer With an Opportunity to Repair?** YES<br><br>**Timing of Notice To Consumer Of Reasonably Accessible Repair Facility:** The final repair effort must be at a repair facility reasonably accessible to the consumer.<br><br>**Mandatory Timing of Attempt To Cure:** 7 business days following receipt by the dealer or manufacturer of the written notice from the consumer |
| MARYLAND | **Must the Consumer Provide the Manufacturer With an Opportunity to Repair?** YES<br><br>(Md. Code Ann., Com. Law § 14-1502(b)(2))<br><br>**Timing of Notice To Consumer Of Reasonably Accessible Repair Facility:**<br><br>**Mandatory Timing of Attempt To Cure:** Within 30 days of manufacturer's receipt of the consumer's written notification<br><br>(Md. Code Ann., Com. Law § 14-1502(b)(3)) |
| MASSACHUSETTS | **Must the Consumer Provide the Manufacturer With an Opportunity to Repair?** YES<br><br>(Mass. Gen. Laws Ann. ch. 90, § 7N1/2(4))<br><br>**Timing of Notice To Consumer Of Reasonably Accessible Repair Facility:**<br><br>**Mandatory Timing of Attempt To Cure:** Seven (7) business days, and begins on the day the manufacturer first knows or should have known that a reasonable number of repair attempts has occurred. |
| MICHIGAN | **Must the Consumer Provide the Manufacturer With an Opportunity to Repair?** YES<br><br>(Mich. Comp. Laws Ann. § 257.1403(5)(a) & (b))<br><br>**Timing of Notice To Consumer Of Reasonably Accessible Repair Facility:** "As soon as reasonably possible"<br><br>**Mandatory Timing of Attempt To Cure:** 5 business days |
| MINNESOTA | **Must the Consumer Provide the Manufacturer With an Opportunity to Repair?** YES<br><br>(Minn. Stat. Ann. § 325F.665(3)(e))<br><br>**Timing of Notice To Consumer Of Reasonably Accessible Repair Facility:**<br><br>**Mandatory Timing of Attempt To Cure:** |
| MISSISSIPPI | **Must the Consumer Provide the Manufacturer With an Opportunity to Repair?** YES<br><br>(Miss. Code Ann. § 63-17-159(5))<br><br>**Timing of Notice To Consumer Of Reasonably Accessible Repair Facility:** Immediately<br><br>**Mandatory Timing of Attempt To Cure:** 10 days after consumer delivers the vehicle. |

| STATE | MANDATORY OPPORTUNITY TO CURE |
|---|---|
| MISSOURI | **Must the Consumer Provide the Manufacturer With an Opportunity to Repair?** YES<br><br>(Mo. Ann. Stat. § 407.573(2))<br><br>**Timing of Notice To Consumer Of Reasonably Accessible Repair Facility:** Immediately<br><br>**Mandatory Timing of Attempt To Cure:** 10 days after the consumer delivers the vehicle. |
| MONTANA | **Must the Consumer Provide the Manufacturer With an Opportunity to Repair?** YES<br><br>(Mont. Code Ann. § 61-4-502(2))<br><br>**Timing of Notice To Consumer Of Reasonably Accessible Repair Facility:**<br><br>**Mandatory Timing of Attempt To Cure:** |
| NEBRASKA | **Must the Consumer Provide the Manufacturer With an Opportunity to Repair?** YES<br><br>(Neb. Rev. Stat. Ann. § 60-2704)<br><br>**Timing of Notice To Consumer Of Reasonably Accessible Repair Facility:**<br><br>**Mandatory Timing of Attempt To Cure:** |
| NEVADA | **Must the Consumer Provide the Manufacturer With an Opportunity to Repair?** Not specified<br><br>**Timing of Notice To Consumer Of Reasonably Accessible Repair Facility:**<br><br>**Mandatory Timing of Attempt To Cure:** |
| NEW HAMPSHIRE | **Must the Consumer Provide the Manufacturer With an Opportunity to Repair?** YES<br><br>(N.H. Rev. Stat. Ann. § 357-D:4(V))<br><br>**Timing of Notice To Consumer Of Reasonably Accessible Repair Facility:**<br><br>**Mandatory Timing of Attempt To Cure:** Within 40 days |
| NEW JERSEY | **Must the Consumer Provide the Manufacturer With an Opportunity to Repair?** YES<br><br>(N.J. Stat. Ann. § 56:12-33(b))<br><br>**Timing of Notice To Consumer Of Reasonably Accessible Repair Facility:**<br><br>**Mandatory Timing of Attempt To Cure:** Within 10 calendar days following receipt of notification |
| NEW MEXICO | **Must the Consumer Provide the Manufacturer With an Opportunity to Repair?** YES<br><br>(N.M. Stat. Ann. §57-16A-3(C)(2))<br><br>**Timing of Notice To Consumer Of Reasonably Accessible Repair Facility:**<br><br>**Mandatory Timing of Attempt To Cure:** |

| STATE | MANDATORY OPPORTUNITY TO CURE |
|---|---|
| NEW YORK | **Must the Consumer Provide the Manufacturer With an Opportunity to Repair?** Not Specified<br><br>beyond initial notifications that fulfill the "reasonable number of attempts" standard for return or refund<br><br>(N.Y. GEN BUS Law § 198-a(b)(1))<br><br>**Timing of Notice To Consumer Of Reasonably Accessible Repair Facility:**<br><br>**Mandatory Timing of Attempt To Cure:** |
| NORTH CAROLINA | **Must the Consumer Provide the Manufacturer With an Opportunity to Repair?** YES<br><br>(N.C. Gen. Stat. Ann. § 20-351.5(a))<br><br>**Timing of Notice To Consumer Of Reasonably Accessible Repair Facility:**<br><br>**Mandatory Timing of Attempt To Cure:** 15 days (not to exceed) |
| NORTH DAKOTA | **Must the Consumer Provide the Manufacturer With an Opportunity to Repair?** YES<br><br>(N.D. Cent. Code § 51-07-19)<br><br>**Timing of Notice To Consumer Of Reasonably Accessible Repair Facility:**<br><br>**Mandatory Timing of Attempt To Cure:** |
| OHIO | **Must the Consumer Provide the Manufacturer With an Opportunity to Repair?** Not Specified<br><br>beyond initial notifications that fulfill the "reasonable number of attempts" standard for return or refund<br><br>(Ohio Rev. Code Ann. § 1345.72(A))<br><br>**Timing of Notice To Consumer Of Reasonably Accessible Repair Facility:**<br><br>**Mandatory Timing of Attempt To Cure:** |
| OKLAHOMA | **Must the Consumer Provide the Manufacturer With an Opportunity to Repair?** YES<br><br>(Okla. Stat. Ann. tit. 15, § 901(C))<br><br>**Timing of Notice To Consumer Of Reasonably Accessible Repair Facility:**<br><br>**Mandatory Timing of Attempt To Cure:** |
| OREGON | **Must the Consumer Provide the Manufacturer With an Opportunity to Repair?** YES<br><br>(Or. Rev. Stat. Ann. § 646A.402(3))<br><br>**Timing of Notice To Consumer Of Reasonably Accessible Repair Facility:**<br><br>**Mandatory Timing of Attempt To Cure:** |

| STATE | MANDATORY OPPORTUNITY TO CURE |
|---|---|
| PENNSYLVANIA | **Must the Consumer Provide the Manufacturer With an Opportunity to Repair?** Not Specified<br><br>beyond initial notifications that fulfill the "reasonable number of attempts" standard for return or refund<br><br>(73 Pa. Stat. and Cons. Stat. Ann. § 1954)<br><br>**Timing of Notice To Consumer Of Reasonably Accessible Repair Facility:**<br><br>**Mandatory Timing of Attempt To Cure:** |
| PUERTO RICO | **Must the Consumer Provide the Manufacturer With an Opportunity to Repair?** NO<br><br>**Timing of Notice To Consumer Of Reasonably Accessible Repair Facility:**<br><br>**Mandatory Timing of Attempt To Cure:** |
| RHODE ISLAND | **Must the Consumer Provide the Manufacturer With an Opportunity to Repair?** YES<br><br>(6 R.I. Gen. Laws Ann. § 31-5.2-5(b))<br><br>**Timing of Notice To Consumer Of Reasonably Accessible Repair Facility:**<br><br>**Mandatory Timing of Attempt To Cure:** within 7 calendar days after the manufacturer first knows or should have known that the terms of the presumption have been met. |
| SOUTH CAROLINA | **Must the Consumer Provide the Manufacturer With an Opportunity to Repair?** CONDITIONAL<br><br>upon disclosure to consumer<br><br>(S.C. Code Ann. § 56-28-50(B))<br><br>**Timing of Notice To Consumer Of Reasonably Accessible Repair Facility:** Within 10 business days<br><br>**Mandatory Timing of Attempt To Cure:** Not to exceed 10 business days |
| SOUTH DAKOTA | **Must the Consumer Provide the Manufacturer With an Opportunity to Repair?** YES<br><br>(S.D. Codified Laws § 32-6D-6)<br><br>**Timing of Notice To Consumer Of Reasonably Accessible Repair Facility:** Within 7 days.<br><br>**Mandatory Timing of Attempt To Cure:** 14 calendar days |
| TENNESSEE | **Must the Consumer Provide the Manufacturer With an Opportunity to Repair?** YES<br><br>(Tenn. Code Ann. § 55-24-105(c))<br><br>**Timing of Notice To Consumer Of Reasonably Accessible Repair Facility:**<br><br>**Mandatory Timing of Attempt To Cure:** 10 DAYS |

| STATE | MANDATORY OPPORTUNITY TO CURE |
|---|---|
| TEXAS | **Must the Consumer Provide the Manufacturer With an Opportunity to Repair?** YES <br><br> (Tex. Occ. Code Ann. § 2301.606(c)(2)) <br><br> **Timing of Notice To Consumer Of Reasonably Accessible Repair Facility:** <br><br> **Mandatory Timing of Attempt To Cure:** |
| US VIRGIN ISLANDS | **Must the Consumer Provide the Manufacturer With an Opportunity to Repair?** YES <br><br> (V.I. CODE ANN. tit. 12A, § 181(d)(2)) <br><br> **Timing of Notice To Consumer Of Reasonably Accessible Repair Facility:** <br><br> **Mandatory Timing of Attempt To Cure:** |
| UTAH | **Must the Consumer Provide the Manufacturer With an Opportunity to Repair?** Not Specified <br><br> beyond initial repairs that fulfill the "reasonable number of attempts" standard for return or refund <br><br> (Utah Code Ann. § 13-20-3) <br><br> **Timing of Notice To Consumer Of Reasonably Accessible Repair Facility:** <br><br> **Mandatory Timing of Attempt To Cure:** |
| VERMONT | **Must the Consumer Provide the Manufacturer With an Opportunity to Repair?** YES <br><br> (Vt. Stat. tit. 9 § 4173(a)) <br><br> **Timing of Notice To Consumer Of Reasonably Accessible Repair Facility:** <br><br> **Mandatory Timing of Attempt To Cure:** 45 days, but at least 5 days before the hearing <br><br> (Vt. Stat. tit. 9 § 4173(d)) |
| VIRGINIA | **Must the Consumer Provide the Manufacturer With an Opportunity to Repair?** YES <br><br> (Va. Code Ann. § 59.1-207.13(E)) <br><br> **Timing of Notice To Consumer Of Reasonably Accessible Repair Facility:** <br><br> **Mandatory Timing of Attempt To Cure:** 15 Days (not to exceed) |
| WASHINGTON | **Must the Consumer Provide the Manufacturer With an Opportunity to Repair?** Not Specified <br><br> beyond initial repairs that fulfill the "reasonable number of attempts" standard for return or refund <br><br> (Wash. Rev. Code Ann. § 19.118.041(1)) <br><br> **Timing of Notice To Consumer Of Reasonably Accessible Repair Facility:** <br><br> **Mandatory Timing of Attempt To Cure:** |

| STATE | MANDATORY OPPORTUNITY TO CURE |
|---|---|
| WASHINGTON, DC | **Must the Consumer Provide the Manufacturer With an Opportunity to Repair?** Not Specified<br><br>beyond initial notifications that fulfill the "reasonable number of attempts" standard for return or refund<br><br>(DC ST § 50-502(d)(1) & (2))<br><br>**Timing of Notice To Consumer Of Reasonably Accessible Repair Facility:**<br><br>**Mandatory Timing of Attempt To Cure:** |
| WEST VIRGINIA | **Must the Consumer Provide the Manufacturer With an Opportunity to Repair?** YES<br><br>(W. Va. Code Ann. § 46A-6A-5(c))<br><br>**Timing of Notice To Consumer Of Reasonably Accessible Repair Facility:**<br><br>**Mandatory Timing of Attempt To Cure:** |
| WISCONSIN | **Must the Consumer Provide the Manufacturer With an Opportunity to Repair?** Not Specified<br><br>beyond initial repairs that fulfill the "reasonable number of attempts" standard for return or refund<br><br>(Wis. Stat. Ann. § 218.0171(2)(b)1.)<br><br>**Timing of Notice To Consumer Of Reasonably Accessible Repair Facility:**<br><br>**Mandatory Timing of Attempt To Cure:** |
| WYOMING | **Must the Consumer Provide the Manufacturer With an Opportunity to Repair?** YES<br><br>(Wyo. Stat. Ann. § 40-17-101(h))<br><br>**Timing of Notice To Consumer Of Reasonably Accessible Repair Facility:**<br><br>**Mandatory Timing of Attempt To Cure:** |

Exhibit 5



**FIRM PROFILE**

Capstone Law APC is one of California's largest plaintiff-only labor and consumer law firms. With over twenty-five seasoned attorneys, many formerly with prominent class action or defense firms, Capstone has the experience, resources, and expertise to successfully prosecute complex employment and consumer actions.

Since its founding in 2012, Capstone has emerged as a major force in aggregate litigation, making law on cutting-edge issues and obtaining over a hundred million dollars in recovery for employees and consumers:

- Capstone has made important contributions to consumer protection law. In *McGill v. Citibank N.A.*, 2 Cal. 5th 945 (2017), Capstone represented plaintiffs in a major decision holding that the right to seek public injunctive relief under the state's consumer protection laws cannot be waived and that consumers need not satisfy class certification requirements to enjoin unfair business practices on behalf of the public. In *Nguyen v. Nissan N.A.*, 726 F.3d 811 (9th Cir. 2019), Capstone attorneys reversed a denial of class certification, making law that clarified the use of "benefit of the bargain" damages models in consumer class actions.

- In February 2015, Capstone attorneys Raul Perez and Ryan H. Wu were honored with the *California Lawyer* Attorney of the Year (CLAY) award in labor and employment for their work in the landmark case *Iskanian v. CLS Transportation Los Angeles*, 59 Cal.4th 348 (2014), which preserved the right of California workers to bring representative actions under the Labor Code Private Attorneys General Act ("PAGA") notwithstanding a representative action waiver in an arbitration agreement.

- Recognized as a leading firm in the prosecution of PAGA enforcement actions, Capstone is responsible for some of the most important decisions in this area. In *Williams v. Superior Court (Marshalls of Calif.)*, 3 Cal.5th 531 (2017), Capstone attorneys achieved a watershed decision before the California Supreme Court as to the broad scope of discovery in PAGA actions. In *Baumann v. Chase Inv. Servs. Corp*, 747 F.3d 1117 (9th Cir. 2014), a case of first impression, Capstone successfully argued that PAGA actions are state enforcement actions not covered by the Class Action Fairness Act.

- Capstone has an established practice in automotive defect class actions and is currently appointed sole class counsel, following contested class certification, in *Victorino v. FCA US, LLC*, No. 16-1617-GPC, 2019 WL 5268670 (S.D. Cal. Oct. 17, 2019) and *Salas v. Toyota Motor Sales, U.S.A., Inc.*, No. 15-8629-FMO, 2019 WL 1940619 (C.D. Cal. Mar. 27, 2019). Capstone has negotiated numerous class action settlements providing relief to owners/lessees the last five years. *See Granillo v. FCA US LLC*, No. 16-00153-FLW (D. N.J. Feb. 12, 2019); *Morishige v. Mazda Motor of Am., Inc.*, No. BC595280 (Los Angeles Sup. Ct. Aug. 20, 2019); *Falco v. Nissan N. Am. Inc.*, No. 13-00686-DDP (C.D. Cal. July 16, 2018), Dkt. No. 341 (finally approving settlement after certifying class alleging timing chain defect on contested motion); *Vargas v. Ford Motor Co.*, No. CV12-08388 AB (FFMX), 2017 WL 4766677 (C.D. Cal. Oct. 18, 2017) (class action settlement involving transmission defects for 1.8 million class vehicles; final approval pending); *Batista v. Nissan N. Am., Inc.*, No. 14-24728-RNS (S.D. Fla. June 29, 2017), Dkt. 191 (finally approving class action settlement alleging CVT defect); *Chan v. Porsche Cars N.A., Inc.*, No. No. 15-02106-CCC (D. N.J. Oct. 6, 2017), Dkt. 65 (finally approving class action settlement involving alleged windshield glare defect); *Klee v. Nissan N. Am., Inc.*, No. 12-08238-AWT, 2015 WL 4538426, at *1 (C.D. Cal. July 7, 2015) (settlement involving allegations that Nissan Leaf's



driving range, based on the battery capacity, was lower than was represented by Nissan); *Asghari v. Volkswagen Group of America, Inc.*, Case No. 13-cv-02529-MMM-VBK, 2015 WL 12732462 (C.D. Cal. May 29, 2015) (class action settlement providing repairs and reimbursement for oil consumption problem in certain Audi vehicles); *Aarons v. BMW of N. Am.*, LLC, No. CV 11-7667 PSG, 2014 WL 4090564 (C.D. Cal. Apr. 29, 2014), objections overruled, No. CV 11-7667 PSG CWX, 2014 WL 4090512 (C.D. Cal. June 20, 2014) (C.D. Cal.) (class action settlement providing up to $4,100 for repairs and reimbursement of transmission defect in certain BMW vehicles).

- Capstone has served as class counsel in a number of significant consumer class actions, providing relief and protection to consumers from deceptive and unlawful business practices, data breaches, and deceptive and false advertising by large corporations and manufacturers. These cases include *Aceves v. AutoZone, Inc.*, No. 14-2032 (C.D. Cal.); *Fernandez v. Home Depot U.S.A.*, No. 13-648 (C.D. Cal.); *Livingston v. MiTAC*, No. 18-05993 (N.D. Cal.).

- Capstone served as class counsel in a number of significant wage and hour settlements, including $12 million on behalf of a nationwide class in *Hightower v. JPMorgan Chase Bank*, Case No. 11-01802 (C.D. Cal.), over $10 million on behalf of non-exempt hourly workers in *Zamora v. Balboa Life & Casualty LLC*, Case No. BC360026 (L.A. Super. Ct.); and $9 million on behalf of pharmacists in *Dittmar v. Costco Wholesale Corp.*, No. 14-1156 (S.D. Cal.). In *Vorise v. 24 Hour Fitness USA, Inc.*, No. C 15-02051 (Contra Costa Super. Ct.), Capstone and co-counsel negotiated an $11 million PAGA settlement on behalf of over 36,000 employees for Labor Code violations.

## SUMMARY OF SIGNIFICANT SETTLEMENTS

Since its founding, Capstone has settled over 100 high-stakes class and representative actions totaling well over $200 million dollars. Capstone's settlements have directly compensated hundreds of thousands of California workers and consumers. Capstone's actions have also forced employers to modify their policies for the benefit of employees, including changing the compensation structure for commissioned employees and changing practices to ensure that workers will be able to take timely rest and meal breaks. A leader in prosecuting PAGA enforcement actions, Capstone has secured millions of dollars in civil penalties for the State of California.

The following is a representative sample of Capstone's settlements:

- *Hightower et al v. Washington Mutual Bank*, No. 2:11-cv-01802-PSG-PLA (N.D. Cal.): gross settlement of $12 million on behalf of approximately 150,000 personal bankers, tellers, sales associates, and assistant branch manager trainees for wage and hour violations;
- *Moore v. Petsmart, Inc.*, No. 5:12-cv-03577-EJD (N.D. Cal.): gross settlement of $10 million on behalf of over 19,000 non-exempt PetSmart employees for wage and hour violations;
- *Dittmar v. Costco Wholesale Corp.*, No. 14-1156 (S.D. Cal.): gross settlement of $9 million on behalf of approximately 1,200 pharmacists for wage and hour violations;
- *Perrin v. Nabors Well Services Co.*, No. 56-2007-00288718 (Ventura Super. Ct.): gross settlement of over $6.5 million on behalf of oil rig workers for sleep time and other wage violations;
- *Cook v. United Insurance Co.*, No. C 10-00425 (Contra Costa Super. Ct.): gross settlement of $5.7 million on behalf of approximately 650 sales representatives;



- *Alvarez v. MAC Cosmetics, Inc.*, No. CIVDS1513177 (San Bernardino Super. Ct.): gross settlement of $5.5 million for approximately 5,500 non-exempt employees.
- *Aceves v. AutoZone, Inc.*, No. 14-2032 (C.D. Cal.): gross settlement of $5.4 million in a case alleging FCRA violations;
- *Berry v. Urban Outfitters Wholesale, Inc.*, No. 13-02628 (N.D. Cal.): gross settlement of $5 million on behalf of over 12,000 nonexempt employees;
- *The Children's Place Retail Stores Wage & Hour Cases*, No. JCCP 4790: gross settlement of $5 million on behalf of 15,000 nonexempt employees;
- *York v. Starbucks Corp.*, Case No. 08-07919 (C.D. Cal.): gross settlement of nearly $5 million on behalf of over 100,000 non-exempt workers for meal break and wage statement claims;
- *Rodriguez v. Swissport USA*, No. BC 441173 (Los Angeles Super. Ct.): gross settlement of nearly $5 million on behalf of 2,700 non-exempt employees following contested certification;
- *Asghari v. Volkswagen Group of North America*, Case No. 13-02529 (C.D. Cal.): Settlement providing complementary repairs of oil consumption defect, reimbursement for repairs, and extended warranty coverage of certain Audi vehicles valued at over $20 million;
- *Klee v. Nissan of North America*, Case No. 12-08238 (C.D. Cal.): Settlement providing complimentary electric vehicle charging cards and extending warranty coverage for the electric battery on the Nissan Leaf valued at over $10 million.

**PROFESSIONAL BIOGRAPHIES**

### Partners

**Rebecca Labat.**  Rebecca Labat is co-managing partner of Capstone Law APC, supervising the litigation for all of the firm's cases. She also manages the firm's co-counsel relationships and assists the firm's other partners and senior counsel with case management and litigation strategy.  Under Ms. Labat's leadership, Capstone has successfully settled over 100 cases, delivering hundreds millions of dollars to California employees and consumers while earning statewide recognition for its cutting-edge work in developing new law.

Ms. Labat's career accomplishments representing consumers and employees in class actions include the certification of a class of approximately 3,200 current and former automobile technicians and shop employees for the miscalculation of the regular rate for purposes of paying premiums for missed meal and rest breaks.

Before her work representing plaintiffs in class and representative actions, Ms. Labat was an attorney with Wilson Elser and represented life, health, and disability insurers in litigation throughout California in both state and federal courts.  She graduated from the University of California, Hastings College of the Law in 2002, where she was a member of the Hastings Civil Justice Clinic, served as a mediator in Small Claims Court for the City and County of San Francisco, and received the CALI Award for Excellence in Alternative Dispute Resolution.  She received her undergraduate degree from the University of California, Los Angeles. Ms. Labat is a member of the National Employment Lawyers Association (NELA), the Consumer Attorneys Association of Los Angeles (CAALA), and the Beverly Hills Bar Association.



**Raul Perez.**  Raul Perez is co-managing partner at Capstone, and has focused exclusively on wage and hour and consumer class litigation since 2011. Mr. Perez is the lead negotiator on numerous large settlements that have resulted in hundreds of millions to low-wage workers across California, including many of the most valuable settlements reached by Capstone.

During his career, Mr. Perez has successfully certified by way of contested motion and/or been appointed Lead Counsel or Interim Lead Counsel in several cases, including:  *Lopes v. Kohl's Department Stores, Inc.*, Case No. RG08380189 (Alameda Super. Ct.); *Hightower v. JPMorgan Chase Bank*, Case No. 11-01802 (C.D. Cal.); *Tameifuna v. Sunrise Senior Living Managements, Inc.*, Case No. 13-02171 (C.D. Cal.) (certified class of over 10,000 hourly-paid employees); and *Berry v. Urban Outfitters Wholesale, Inc.*, Case No. 13-02628 (N.D. Cal.) (appointed lead counsel in a class action involving over 10,000 non-exempt employees).  As the lead trial attorney in *Iskanian v. CLS Transportation Los Angeles*, 59 Cal. 4th 348 (2014), Mr. Perez, along with Mr. Wu, received the 2015 CLAY Award in labor and employment.

Mr. Perez received both his undergraduate degree and his law degree from Harvard University and was admitted to the California Bar in December 1994.  Earlier in his career, Mr. Perez handled a variety of complex litigation matters, including wrongful termination and other employment related actions, for corporate clients while employed by some of the more established law firms in the State of California, including Morgan, Lewis & Bockius; Manatt Phelps & Phillips; and Akin Gump Strauss Hauer & Feld. Before Capstone, Mr. Perez was a partner at another large plaintiff's firm, helping to deliver millions of dollars in relief to California workers.

**Melissa Grant.**  Melissa Grant is a partner at Capstone.  Ms. Grant is responsible for litigating many of the firm's most contentious and high-stakes class actions. The author of numerous successful motions for class certification, Ms. Grant is the lead or co-lead attorney on multiplied certified class actions currently on track for trial, representing over 140,000 California employees in pursuing their wage and hour claims. She is also at the forefront in developing the law on PAGA, including administrative exhaustion, standing, the nature of PAGA violations, the scope of discovery, and trials.

Prior to joining Capstone, Ms. Grant worked at the Securities and Exchange Commission as a staff attorney in the Enforcement Division, investigating ongoing violations of federal securities regulations and statutes and for Quinn Emanuel Urquhart & Sullivan, LLP, where she was an associate on the trial team that prosecuted the *Mattel v. Bratz* case.  Ms. Grant began her legal career as a law clerk to the Honorable Harry Pregerson, Justice of the Ninth Circuit Court of Appeals before joining Sidley & Austin as an associate.  She graduated from Southwestern Law School in 1999, where she served as editor-in-chief of the Law Review, and graduated *summa cum laude* and first in her class.  Ms. Grant earned her undergraduate degree from Cornell University, where she received the JFK Public Service Award and the Outstanding Senior Award. Her published articles include: *Battling for ERISA Benefits in the Ninth Circuit: Overcoming Abuse of Discretion Review*, 28 Sw. U. L. Rev. 93 (1998), and CLE Class Actions Conference (SF) CAFA: *Early Decisions on Commencement and Removal of Actions* (2006).

**Ryan H. Wu.**  Ryan H. Wu is a partner at Capstone and is primarily responsible for complex motion work and supervising court approval of class action settlements. Mr. Wu handles many of the most challenging legal issues facing Capstone's clients, including the scope and operation of PAGA, contested attorneys' fees motions, responding to objectors, and high-impact appeals. Mr. Wu is responsible for the merits briefing in *McGill v. Citibank, N.A.*, 2 Cal. 5th 945 (2017), where the California Supreme Court unanimously held that consumers' right to pursue public injunctive relief cannot be impeded by a contractual waiver or class



certification requirements. He briefed the closely-watched *Williams v. Superior Court (Marshalls of CA LLC)*, 3 Cal.5th 531(2017), an important pro-employee ruling that broadened the scope of discovery in PAGA actions and resolved a longstanding conflict regarding third-party constitutional privacy rights. He also authored the briefs in *Baumann v. Chase Inv. Servs. Corp*, 747 F.3d 1117 (9th Cir. 2014), where, on an issue of first impression, the Ninth Circuit sided with Plaintiffs in holding that PAGA actions are state enforcement actions not covered by the CAFA.  In February 2015, Mr. Wu, along with Mr. Perez, received the prestigious CLAY award for his successful appellate work, including briefing to the California Supreme Court, in *Iskanian*. Mr. Wu recently achieved an important consumer victory in *Nguyen v. Nissan N.A.*, 932 F.3d 811 (9th Cir. 2019), which clarified the use of "benefit of the bargain" damages models in consumer class actions.

Mr. Wu graduated from the University of Michigan Law School in 2001, where he was an associate editor of the *Michigan Journal of Law Reform* and contributor to the law school newspaper.  He received his undergraduate degree in political science with honors from the University of California, Berkeley.  He began his career litigating international commercial disputes and commercial actions governed by the Uniform Commercial Code.  Mr. Wu is co-author of "*Williams v. Superior Court: Employees' Perspective*" and "*Iskanian v. CLS Transportation*: Employees' Perspective," both published in the *California Labor & Employment Law Review*.

**Robert Drexler.**  Robert Drexler is a partner with Capstone Law where he leads one of the firm's litigation teams prosecuting wage-and-hour class actions.  He has more than 25 years of experience representing clients in wage-and-hour and consumer rights class actions and other complex litigation in state and federal courts. Over the course of his career, Mr. Drexler has successfully certified dozens of employee classes for claims such as misclassification, meal and rest breaks, and off-the-clock work, ultimately resulting in multi-million dollar settlements. He has also arbitrated and tried wage-and-hour and complex insurance cases.  Mr. Drexler has been selected as one of Southern California's "Super Lawyers" every year from 2009 through 2015.

Before joining Capstone, Mr. Drexler was head of the Class Action Work Group at Khorrami Boucher, LLP and led the class action team at The Quisenberry Law Firm.  Mr. Drexler graduated from Case Western Reserve University School of Law, where he served as Managing Editor of the Case Western Reserve Law Review and authored Defective Prosthetic Devices: Strict Tort Liability for the Hospital? 32 CASE W. RES. L. REV. 929 (1982). He received his undergraduate degree in Finance at Ohio State University where he graduated *cum laude*.  Mr. Drexler is a member of Consumer Attorneys of California (CAOC) and Consumer Attorneys of Los Angeles (CAALA).  He has been a featured speaker at class action and employment litigation seminars, and has published articles in CAOC's Forum Magazine and The Daily Journal. Mr. Drexler was named a "Super Lawyer" in 2017.

**Jamie Greene.**  Jamie Greene is a partner at Capstone where she evaluates potential new cases, develops new claims, and manages client relations. Well-versed in wage and hour law and federal and state consumer protection statutes, Ms. Greene supervises the pre-litigation phase for all cases, including investigation, analysis, and client consultation.  Ms. Greene began her legal career at Makarem & Associates representing clients in a wide array of cases ranging from wrongful death, insurance bad faith, employment, personal injury, construction defect, consumer protection, and privacy law.  She is a graduate of the University of Southern California Gould School of Law and earned her bachelor's degree from Scripps College in Claremont, California. She is an active member of the Consumer Attorneys Association of Los Angeles (CAALA), and the Beverly Hills, Los Angeles County, and Santa Monica Bar Associations.

## Senior Counsel



**Theresa Carroll**. Theresa Carroll is a senior counsel at Capstone Law. Her practice is devoted to the Appeals & Complex Motions team, working on various settlement and approval projects.

Prior to joining Capstone, Ms. Carroll was an associate with Parker Stanbury, LLP, advising small business owners on various employment matters and worked as an associate attorney for O'Donnell & Mandell litigating employment discrimination and sexual harassment cases. In 1995, she graduated from Southwestern University School of Law where she was on the trial advocacy team and was awarded the prestigious Trial Advocate of the Year award sponsored by the American Board of Trial Advocates (ABOTA) for Southwestern University School of Law. Ms. Carroll received her Bachelor of Science degree in speech with an emphasis in theatre from Iowa State University.

**Liana Carter.**  Liana Carter is senior counsel with Capstone Law APC, specializing in complex motions, writs, and appeals.  Her work on recent appeals has included reversing a denial of class certification decision in *Brown v. Cinemark USA, Inc.*, No. 16-15377, 2017 WL 6047613 (9th Cir. Dec. 7, 2017), affirming a denial of a motion to compel arbitration in *Jacoby v. Islands Rests., L.P.*, 2014 Cal. App. Unpub. LEXIS 4366 (2014) and reversal of a dismissal of class claims in *Rivers v. Cedars-Sinai Med. Care Found.*, 2015 Cal. App. Unpub. LEXIS 287 (Jan. 13, 2015). Ms. Carter was responsible for drafting the successful petition for review in *McGill v. Citibank N.A.*, as well as the petition for review and briefing on the merits in *Williams v. Superior Court*, 2017 WL 2980258.  Ms. Carter also has extensive prior experience in overseeing settlement negotiations and obtaining court approval of class action settlements.

Ms. Carter was admitted to the California bar in 1999 after graduating from the University of Southern California Gould School of Law, where she was an Articles Editor on the board of the *Southern California Law Review*.  She received her undergraduate degree with honors from the University of California, Irvine.

**Molly DeSario.**  Molly DeSario is a senior counsel with Capstone Law, specializing in employment class action litigation. Ms. DeSerio's practice focuses primarily on wage-and-hour class action and Private Attorneys General Act litigation on behalf of employees for failure to pay overtime and minimum wages, provide meal and rest breaks, and provide compensation for off-the-clock work. She has experience briefing and arguing a multitude of dispositive motions in state and federal court and has successfully certified and settled numerous classes for claims such as exempt misclassifications, unpaid wages, missed meal and rest breaks, and unreimbursed business expenses.

Ms. DeSario began her career as a general practice litigation associate with Sandler & Mercer in Rockville, Maryland, handling a wide range of civil and criminal matters. Since 2005, she has primarily litigated class action cases and, for the last seven years, has focused on representing employees and consumers in class and collective actions across California and the nation, helping them recover millions of dollars in unpaid wages, restitution, and penalties. Molly graduated from Northeastern University School of Law in 2002. During law school, she interned for the U.S Attorney's Office in Boston, Massachusetts, and the Honorable Paul L. Friedman at the U.S. District Court for the District of Columbia. She received her undergraduate degree in Marketing and International Business from the University of Cincinnati, where she graduated summa cum laude.

**Robert Friedl.**  Robert Friedl is senior counsel at Capstone, where he devotes most of his time to the briefing and litigation strategy of consumer protection cases.  Mr. Friedl has over 20 years of experience representing plaintiffs and defendants in consumer class actions, insurance coverage and defense, employment law, and personal injury.  His lengthy service as an appellate attorney has yielded several



published cases, including successful outcomes in *Goldstein v. Ralphs*, 122 Cal. App. 4th 229 (2004), *Morgan v. AT&T*, 177 Cal. App. 4th 1235 (2009), and *Hecimovich v. Encinal School Parent Teacher Organization*, 203 Cal. App. 4th 450 (2012). At Capstone, Mr. Friedl was responsible for the appellate win in *Grant v. Unifund CCR, LLC*, 577 Fed. Appx. 693 (9th Cir. 2014).

Prior to joining Capstone, Mr. Friedl was a partner at civil litigation boutique, where he handled the firm's most complex briefing. He is a graduate of the University of Connecticut, and received his law degree from Southwestern School of Law, where he earned an American Jurisprudence Book Award.

**Mark A. Ozzello**. Mark A. Ozzello is a senior counsel with Capstone Law, where he leads the firm's consumer team. He is a nationally recognized and respected consumer and employment attorney who has litigated those issues throughout the country. He has always been at the forefront of consumer rights, sitting on the Board of Governors for the Consumer Attorneys of California and regularly appearing as a featured speaker on consumer rights issues nationwide.

Mr. Ozzello is a former partner of Arias Ozzello & Gignac and, most recently, was Of Counsel to Markun Zusman Freniere & Compton, LLP. In his capacity as a litigator, he has obtained results for his clients in excess of $200 million dollars. Mark has also achieved consistent success in the California Courts of Appeal, and several judicial opinions regularly cite to his matters as authority for class certification issues. He has also argued appellate issues in several Circuit Courts of Appeals with great success. Mr. Ozzello attended Pepperdine University School of Law where he was an Editor to the Law Review, publishing several articles during his tenure in that capacity. He received his undergraduate degree from Georgetown University.

Mr. Ozzello has always strived to be an integral part of local communities. He has established educational scholarship programs at several charitable organizations, including El Centro De Amistad in Los Angeles and St. Bonaventure Indian Mission and School in Thoreau, New Mexico, and presides over a legal clinic in Los Angeles which provides pro bono legal assistance to non-English speaking individuals.

**Bevin Allen Pike.** Bevin Allen Pike is a senior counsel with Capstone Law where she focuses primarily on wage-and-hour class actions. Ms. Pike has spent her entire legal career representing employees and consumers in wage-and-hour and consumer rights class actions. Over the course of her career, Ms. Pike has successfully certified dozens of employee and consumer classes for claims such as meal and rest breaks, unpaid overtime, off-the-clock work, and false advertising.

Before joining Capstone, Ms. Pike's experience included class and representative action work on behalf of employees and consumers at some of the leading plaintiffs' firms in California. Ms. Pike graduated from Loyola Law School, Los Angeles, where she was an Editor for the International and Comparative Law Review. She received her undergraduate degree from the University of Southern California. Ms. Pike has been selected as one of Southern California's "Super Lawyers – Rising Stars" every year from 2012 through 2015.

**Eduardo Santos.** Eduardo Santos is a senior counsel at Capstone Law, concentrating his practice on managing and obtaining court approval of many of Capstone's wage-and-hour, consumer, and PAGA settlements, from the initial contract drafting phase to motion practice, including contested motion practice on attorneys' fees. Over the course of his career, Mr. Santos has helped to secure court approval of over one hundred high-stakes class and representative action settlements totaling over $100 million.



Before joining Capstone, Mr. Santos began his career at a prominent plaintiff's firm in Los Angeles specializing in mass torts litigation, with a focus on complex pharmaceutical cases. Most notably, he was involved in the national Vioxx settlement, which secured a total of $4.85 billion for thousands of individuals with claims of injuries caused by taking Vioxx. Mr. Santos graduated from Loyola Law School, Los Angeles, where he was a recipient of a full-tuition scholarship awarded in recognition of academic excellence. While in law school, Mr. Santos served as an extern for the Honorable Thomas L. Willhite, Jr. of the California Court of Appeal. He graduated magna cum laude from UCLA and was a recipient of the Ralph J. Bunche Scholarship for academic achievement.

**John Stobart.**  John Stobart is a senior counsel with Capstone Law. He focuses on appellate issues in state and federal courts and contributes to the firm's amicus curiae efforts to protect and expand the legal rights of California employees and consumers. Mr. Stobart has significant appellate experience having drafted over two dozen writs, appeals and petitions, and having argued before the Second, Fourth, and Fifth Districts of the California Court of Appeal.

Prior to joining Capstone, Mr. Stobart was a law and motion attorney who defended against civil liability in catastrophic injury and wrongful death cases brought against his clients, which included the railroad, public schools, small businesses, and commercial and residential landowners. He has drafted and argued scores of dispositive motions at the trial court level and had success in upholding judgments and verdicts on appeal. He graduated cum laude from Thomas Jefferson School of Law where he was on the mock trial competition team and earned his undergraduate degree from the Ohio State University.

**Orlando Villalba.** Orlando Villalba is a senior counsel at Capstone Law. His practice primarily involves wage-and-hour class actions and PAGA litigation on behalf of employees for the failure to pay overtime and minimum wages, failure to provide meal and rest breaks, claims under the Fair Labor Standards Act, and other California Labor Code violations.

Mr. Villalba began his career at Kirkland & Ellis where he handled a wide range of business litigation matters, including transnational contract disputes, insurance-related tort claims, developer litigation, and civil rights actions. He also has extensive plaintiff-side experience representing government agencies and note-holders in the pursuit of mortgage and other fraud losses. Mr. Villalba graduated from Stanford Law School, where he served as an articles editor on the Stanford Journal of Law, Business & Finance. After law school, he clerked for the Honorable Warren Matthews of the Alaska Supreme Court. Orlando received his bachelor's degree in International Business from the University of Southern California.

**Tarek Zohdy.**  An associate with Capstone, Tarek Zohdy litigates automotive defect class actions, along with other consumer class actions for breach of warranty and consumer fraud.  At Capstone, he has worked on several large-scale automotive class action settlements that have provided significant relief to thousands of defrauded car owners. Before joining Capstone, Mr. Zohdy spent several years representing individual consumers in their actions against automobile manufacturers and dealerships for breaches of express and implied warranties pursuant to the Song-Beverly Consumer Warranty Act and the Magnuson-Moss Warranty Act, commonly referred to together as "Lemon Law."  He also handled fraudulent misrepresentation and omission cases pursuant to the Consumers Legal Remedies Act.  Mr. Zohdy graduated from Louisiana State University *magna cum laude* in 2003, and Boston University School of Law in 2006, where he was a member of the criminal clinic representing underprivileged criminal defendants.

## Associates



**Brandon Brouillette**. Brandon Brouillette is an associate with Capstone Law, where his practice focuses on representing employees and consumers in complex litigation, primarily wage-and-hour class actions and PAGA representative actions. Mr. Brouillette's entire legal career has been devoted to representing individual and class representative plaintiffs against large corporate entities. Prior to joining Capstone, he served as an associate at Boucher LLP where he managed the firm's wage-and-hour class actions. He earned his Juris Doctor from Loyola Law School, Los Angeles, where he spent a summer interning for the legal clearance and corporate legal departments at Warner Bros. He received his undergraduate degree from the University of Southern California, where he majored in Business Administration and spent a semester abroad in Budapest, Hungary. In 2016, Brandon was selected as one of Super Lawyers' "Rising Stars" in Southern California.

**Anthony Castillo.** Anthony Castillo is an associate with Capstone Law. His practice focuses on analyzing pre-litigation wage-and-hour and consumer claims, including claims for overtime wages, meal and rest periods, and off-the-clock work violations. Prior to joining Capstone, he was an associate at a California bankruptcy practice, where he represented individual and business debtors in liquidations and re-organizations as well as various debt and foreclosure defense-related issues. Mr. Castillo graduated from Loyola Law School, Los Angeles in 2009, where he volunteered with the Disability Rights Legal Center.  He attended Stanford University for his undergraduate degree, majoring in Political Science and minoring in History. Anthony is admitted to practice law in California and Washington and before the United States District Court for the Central and Southern Districts of California.

**Joseph Hakakian**. Joseph Hakakian is an associate with Capstone Law. His practice focuses on prosecuting wage-and-hour class and representative actions in state and federal court. Prior to joining Capstone Law, Mr. Hakakian served as a summer clerk for Mark Ozzello at Markun Zusman Freniere & Compton, LLP, working on various actions including wage-and-hour claims, unpaid overtime, false advertising, and unfair competition. He graduated from UCLA School of Law, with a business law specialization, where he served as a staff editor for the Journal of Environmental Law and Policy and worked as a law clerk with the Consumer Protection Division of the Los Angeles District Attorney's Office. Prior to attending law school, Mr. Hakakian received his undergraduate degree from University of California, Los Angeles, in 2013, where he graduated summa cum laude, Dean's Honor List, and College Honors, and received scholastic achievement awards from Golden Key Honor Society and Phi Alpha Theta Honor Society. Joseph is an active member of the Consumer Attorneys Association of Los Angeles (CAALA), Consumer Attorneys of California (CAOC), and Beverly Hills, Los Angeles County, and Santa Monica Bar Associations.

**Michelle Kennedy.** Michelle Kennedy is an associate with Capstone Law. Her practice focuses on analyzing pre-litigation wage-and-hour and consumer claims, including claims for overtime wages, meal and rest periods, and off-the-clock work violations. She began her career as a contract attorney in the Utah Attorney General's Civil Litigation Division handling torts, civil rights, and employment law matters. She later founded her own firm handling business and intellectual property matters, where she settled a copyright infringement suit. Prior to moving to Southern California, Ms. Kennedy was recognized by Super Lawyers as a Mountain States Rising Star in 2017 and 2018. She also served as President of the Utah Minority Bar Association and as an Ex-Officio Member of the Utah State Bar Commission. Michelle graduated from the University of Utah S.J. Quinney College of Law in 2013, where she served as President of the Art Law Alliance and Vice President of the Minority Law Caucus. She earned her undergraduate degree from Brigham Young University in 2010, where she majored in Philosophy. Ms. Kennedy is an active member of the Consumer Attorneys Association of Los Angeles (CAALA) and the Los Angeles County Bar Association. Michelle is admitted to practice law in Utah and California.



**Jonathan Lee.**  An associate with Capstone, Jonathan Lee primarily litigates employment class actions.  At Capstone, Mr. Lee has worked on several major successful class certification motions, and his work has contributed to multi-million dollar class settlements against various employers, including restaurant chains, retail stores, airport staffing companies, and hospitals.  Prior to joining Capstone, Mr. Lee defended employers and insurance companies in workers' compensation actions throughout California.  Mr. Lee graduated in 2009 from Pepperdine University School of Law, where he served as an editor for the Journal of Business, Entrepreneurship and the Law; he received his undergraduate degree from UCLA.

**Trisha Monesi**.  Trisha Monesi is an associate with Capstone. Her practice focuses on prosecuting consumer class actions in state and federal court. Ms. Monesi graduated from Loyola Law School, Los Angeles in 2014, where she served as an editor of the Loyola of Los Angeles Entertainment Law Review and was a certified law clerk at the Center for Juvenile Law and Policy. She earned her undergraduate degree from Boston University in 2011, where she majored in Political Science and International Relations. She is an active member of the Women Lawyers Association of Los Angeles, and the Los Angeles County and Beverly Hills Bar Associations.

**Cody Padgett.**  An associate with Capstone, Cody Padgett's practice focuses on prosecuting automotive defect and other consumer class action cases in state and federal court.  He handles consumer cases at all stages of litigation, and has contributed to major settlements of automobile defect actions valued in the tens of millions.  Prior to joining Capstone Law, Mr. Padgett was a certified legal intern with the San Diego County Public Defender's Office. During law school, Mr. Padgett served as a judicial extern to the Honorable C. Leroy Hansen, United States District Court for the District of New Mexico. He graduated from California Western School of Law in the top 10% of his class and received his undergraduate degree from the University of Southern California, where he graduated *cum laude*.

**Mao Shiokura.**  Mao Shiokura is an associate with Capstone.  Her practice focuses on identifying, analyzing, and developing new wage-and-hour and consumer claims, including violations of the Fair Credit Reporting Act, Consumers Legal Remedies Act, False Advertising Law, and Unfair Competition Law.  Prior to joining Capstone, Ms. Shiokura was an associate at a California lemon law firm, where she represented consumers in Song-Beverly, Magnuson-Moss, and fraud actions against automobile manufacturers and dealerships.  Ms. Shiokura graduated from Loyola Law School, Los Angeles in 2009, where she served as a staff member of Loyola of Los Angeles Law Review. She earned her undergraduate degree from the University of Southern California, where she was a Presidential Scholar and majored in Business Administration, with an emphasis in Cinema-Television and Finance.

**Brooke Waldrop.**  Brooke Waldrop is an associate with Capstone Law. Her practice focuses on the pre-litigation analysis of wage-and-hour and consumer claims, including claims for overtime wages, meal and rest periods, and off-the-clock work. Ms. Waldrop graduated from University of Utah S.J. Quinney College of Law in 2008, where she was a member of Extra Muros, an international law journal and think tank. During law school, she volunteered and clerked for the Disability Law Center, International Rights Advocates in Washington, D.C., the Utah Crime Victims Legal Center, and the Utah Council for Victims of Crime. After law school, Brooke obtained an MFA at USC's School of Cinematic Arts Writing for Screen and Television program where she was also awarded the prestigious Annenberg Fellowship. Before joining Capstone as an associate, she worked at Capstone as a contract attorney and settled a copyright infringement suit for a commercially-successful property. She earned her undergraduate degree from Westminster College of Salt

Capstone
LAW APC

Lake, majoring in Political Studies with an emphasis in Philosophy, and minoring in Theater, where she graduated summa cum laude.

## OUTREACH AND EDUCATION

To increase public awareness about the issues affecting class action and other representative litigation in the consumer and employment areas, Capstone publishes the Impact Litigation Journal (www.impactlitigation.com).  Readers have access to news bulletins, op-ed pieces, and legal resources.  By taking advantage of social media, Capstone hopes to spread the word about consumer protection and employee rights to a larger audience than has typically been reached by traditional print sources, and to thereby contribute to the enforcement of California's consumer and workplace protection laws.